# Exhibit A

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "Agreement"), effective as of October 4, 2016 (the "Effective Date"), is made by and among Mohammad Anwar Farid Al-Saleh ("Al-Saleh"), on the one hand, and Harry Sargeant, III ("Sargeant") and Mustafa Abu-Naba'a ("Abu-Naba'a") (collectively "the SA Parties"), on the other hand, who collectively shall be referred to throughout as the "Parties" and each, individually, as "Party." The Parties enter into this Agreement to fully and finally resolve any and all disputes and to settle any litigation between them subject to the terms and conditions of this Agreement.

## Recitals

**THIS AGREEMENT** is made in light of the following:

A.       On or about April 10, 2008, Al-Saleh filed suit against the SA Parties and International Oil Trading Company, LLC ("IOTC USA") in the Circuit Court of the Fifteenth Judicial Circuit, in and for Palm Beach County, Florida ("Florida Court"), in an action styled *Al-Saleh v. Sargeant*, et al., Case No. 50 2008 CA 010187 ("Florida Action").

B.       The SA Parties and IOTC USA appeared through counsel in the Florida Action and presented defenses.

C.       On July 27, 2011, following a trial, the jury in the Florida Action returned a verdict finding the SA Parties and IOTC USA jointly and severally liable to Al-Saleh in the amount of $28,800,000.00.

D.       The Florida Court entered the following judgments in favor of Al-Saleh and jointly and severally against the SA Parties and IOTC USA: (1) on September 19, 2011, a judgment for compensatory damages in the amount of $28,800,000.00, together with post-judgment interest at the statutory rate *nunc pro tunc* to July 27, 2011; (2) on February 9, 2012, a judgment for costs in the amount of $85,489.97, together with post-judgment interest at the statutory rate; (3) on September 16, 2013 (and by later amendment on October 30, 2013), a judgment for pre-judgment interest in the amount of $3,484,753.92, together with interest at the statutory rate *nunc pro tunc* to July 27, 2011 (collectively referred to herein as the "Judgments"). The Judgments are final and no longer appealable. The Judgments were not obtained by default or by confession of judgment.

E.       As of and including the Effective Date, the total amount due on the Judgments is $39,635,590.22, which is comprised of $32,338,843.89 in principal plus $7,296,746.33 in accrued and unpaid post-judgment interest, and reflects a credit of $31,400.00 in relation to certain items of personal property and stock that were levied and sold ("Current Judgment Amount"). Post-judgment interest accrues in the aggregate of the Judgments at a rate of $4,196.97 per day. Hereinafter, the Current Judgment Amount plus the post-judgment interest accruing from time to time shall be referred to as the "Base Judgment Amount."

F.       In addition to the Base Judgment Amount, Al-Saleh claims not less than

$8,000,000.00 in attorney's fees and costs incurred in the execution and collection of the Judgments that should be added to the amount owed in connection with the Judgments.

G.      The SA Parties have not satisfied the Judgments.

H.      To collect on the unpaid Judgments, Al-Saleh commenced by motion in the Florida Court seven proceedings supplementary to execution (collectively referred to herein as "Proceedings Supplementary", and singly as "Proceeding Supplementary"), all of which bear the same case number as the Florida Action.

I.      As of the Effective Date, the following Proceedings Supplementary are not resolved: (1) the "First" Proceeding Supplementary in which Al-Saleh seeks relief against Sargeant and his wife, Deborah Sargeant, as tenants by the entirety, and International Oil Trading Company, Ltd. ("IOTC Bahamas"); (2) the "Fifth" Proceeding Supplementary in which Al-Saleh seeks relief against BTB Refining, LLC ("BTB"); (3) the "Sixth" Proceeding Supplementary in which Al-Saleh seeks to foreclose on certain stock certificates issued by Floridian Community Holdings, Inc.; and (4) the "Seventh" Proceeding Supplementary in which Al-Saleh seeks relief against Abu-Naba'a and Tennyson Villa, LLC ("Tennyson").

J.      In the First Proceeding Supplementary, by its *Amended Answer to First Amended Motion for Proceedings Supplementary to Execution and for Related Relief, Affirmative Defenses, and Counterclaim*, filed on October 20, 2014, IOTC Bahamas answered Al-Saleh's operative *First Amended Motion for Proceedings Supplementary to Execution and for Related Relief*, filed on September 20, 2013, asserted affirmative defenses, and lodged a counterclaim ("IOTC Bahamas Counterclaim").

K.      On or about June 19, 2014, Al-Saleh filed a Notice of Civil Claim in the Supreme Court of British Columbia, through which Al-Saleh seeks to recognize the Judgments and a certain Order of the Florida Court, dated June 10, 2013, assigning all of Sargeant's right, title, and interest in a certain 144-foot yacht bearing vessel number QE014225C010 to Al-Saleh, as enforceable orders of the British Columbia Supreme Court ("Canada Action").

L.      On November 20, 2014, Al-Saleh domesticated the Judgments in the 319th Judicial District Court of Nueces County, Texas ("Texas Court"), in an action styled, *Al-Saleh v. Sargeant III*, et al., Cause No. 2014 DCV-5860-G ("Texas Action").

M.      By amended petition filed with the Texas Court on June 2, 2015, Al-Saleh asserted, *inter alia*, a claim alleging that BTB effected fraudulent transfers to Al-Saleh's detriment, a claim alleging that BTB is the alter ego of Sargeant and liable for the Judgments, and requested the entry of a temporary injunction.

Settlement Agreement
Page 3 of 26

N.      On July 2, 2015, after an evidentiary hearing, the Texas Court entered an Order on Temporary Injunction, which commanded, among other things, that BTB "desist and refrain from using or transferring to any person or entity $21,828,446.65 or transferring such amount of the jurisdiction of this Court, from the date of this Order until further Order of this Court."

O.      In the Texas Action, Defendants Harry Sargeant, IV, Abu-Naba'a, Sargeant Marine Limited ("SML"), and SA Acquisitions, LLC ("SAA") have appeared by Special Appearance to contest the exercise of jurisdiction over them by the Texas Court ("Texas Special Appearances").

P.      Al-Saleh commenced, by writ of summons filed on June 9, 2015, proceedings in the Supreme Court of the Commonwealth of the Bahamas against SML in action CLE/gen/00770/2015 ("First Bahamian Proceeding").

Q.      In the First Bahamian Proceeding, Al-Saleh applied by ex parte summons for a freezing injunction against SML, which was granted by Acting Justice Brian Moree Q.C. on June 9, 2015 ("First Ex Parte Order").  The First Ex Parte Order was continued by consent and reflected in an interlocutory Order filed on June 23, 2015.

R.      On July 23, 2015, Al-Saleh filed a Statement of Claim alleging that SML was liable to account to Al-Saleh for funds it received from the underlying fraud that was the subject of the Florida Action, to pay Al-Saleh equitable compensation on account of such receipt of funds, and/or to pay damages for its role in the underlying fraud to injure Plaintiff by unlawful means.  The Statement of Claim sought damages against SML in the amount of US$58,250,778.49.

S.      By writ of summons filed on May 24, 2016, Al-Saleh commenced a fresh proceeding in the Supreme Court of the Commonwealth of the Bahamas against SML, IOTC Bahamas, and Global Oil Management Group Ltd. ("Global Oil Bahamas") in action CLE/gen/00762/2015 ("Second Bahamian Proceeding").

T.      By ex parte summonses filed on May 24, 2016 in both the First Bahamian Proceeding and the Second Bahamian Proceeding, Al-Saleh applied for the appointment of Receivers and Managers over SML, IOTC Bahamas and Global Oil Bahamas.

U.      By ex parte Orders dated May 25, 2016 and filed on May 26, 2016 in the First Bahamian Proceeding and the Second Bahamian Proceeding ("the Ex Parte Receivership Orders"), Justice Ian Winder appointed Roy Bailey and Keiran Hutchison Receivers and Managers (the "Receivers") of SML, IOTC Bahamas and Global Oil Bahamas ("the Bahamas Receivership Companies").

V.      By summonses filed in the First Bahamian Proceeding and the Second Bahamian Proceeding on June 13, 2016, June 21, 2016 and June 27, 2016, the Bahamas Receivership

Companies applied, *inter alia*, for the Ex Parte Receivership Orders to be set aside ("the Setting Aside Application").

W.      By summons filed on June 16, 2016, Al-Saleh applied for the First Bahamian Proceeding and the Second Bahamian Proceeding to be consolidated, which summons has not been heard.

X.      By Orders made on June 16, 2016 in the First Bahamian Proceedings and the Second Bahamian Proceeding, the Ex Parte Receivership Orders were varied to limit the powers of the Receivers in certain respects.

Y.      By summons dated June 24, 2016, the Receivers applied for the reinstatement of the powers curtailed by the Court on June 16, 2016 ("Reinstatement Application"), which was heard on July 7, 2016 and the ruling is pending.

Z.      The Setting Aside Application has been heard by the Bahamian Court at hearings dated June 16, 2016, July 20, 2016, July 25, 2016 and August 17, 2016 and the ruling is pending.

AA.     On or about June 28, 2016, Al-Saleh filed suit in the Court of Chancery of the State of Delaware, styled as *Al-Saleh v. Global Oil 604, LLC*, C.A. No. 12510-VCG ("Delaware Chancery Action"), in which Al-Saleh sought the entry of a temporary restraining order and claims, *inter alia*, that Global Oil 604, LLC ("GO604") was a fraudulent transferee as the recipient and owner of that certain Bombardier Inc. CL-600-2B16 aircraft bearing U.S. Federal Aviation Administration ("FAA") Registration number N604SA and manufacturer's serial number 5408, together with its engines, avionics and equipment, and associated books and records ("Aircraft").

BB.     In defense to the Delaware Chancery Action, GO604 alleged that, prior to Al-Saleh filing suit, GO604 sold the Aircraft to CMG 604 5408 LLC ("CMG") for $2,250,000.00 ("Aircraft Purchase Price") and obtained from CMG a lease on the Aircraft under that certain Lease Agreement dated June 13, 2016 and recorded with the FAA as document JP017101 ("Aircraft Lease"), together with an Early Purchase Option, dated June 13, 2016, under the Aircraft Lease ("Aircraft Purchase Option").

CC.     On June 26, 2015, Al-Saleh filed an involuntary petition under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") against IOTC USA in the United States Bankruptcy Court for the Southern District of Florida, Case No.: 15-21596-BKC-EPK (the "Bankruptcy Case").

DD.     On June 27, 2016, the Bankruptcy Court in the Bankruptcy Case entered an Order for Relief pursuant to 11 U.S.C. Section 303(h).

Settlement Agreement
Page 5 of 26

EE.    Trustee Nicole Testa Mehdipour, Esq. ("Trustee") is the duly appointed and acting Bankruptcy Trustee for the Bankruptcy Estate of IOTC USA.

FF.    IOTC USA has filed a motion to convert its Chapter 7 case to a Chapter 11 case (the "Motion to Convert"), for which the Bankruptcy Court has scheduled a trial on October 7, 2016.

GG.    On August 10, 2016, the Trustee filed her Notice of Removal, removing some of Al-Saleh's proceedings supplementary to execution pending in the Florida Action.

HH.    On August 18, 2016, the Trustee filed an adversary action against Sargeant, Deborah Sargeant and Abu-Naba'a seeking declaratory relief that Sargeant and Abu-Naba'a are alter-egos of IOTC USA and the avoidance of alleged fraudulent transfers to Sargeant, Deborah Sargeant and Abu-Naba'a. Adv. No. 16-1430.

II.    On August 19, 2016, the Trustee filed an adversary action against International Oil Trading Company, B.V., a Netherlands corporation ("IOTC B.V."), seeking declaratory relief that IOTC B.V. is an alter-ego of IOTC USA and other damage claims against IOTC B.V., in Adv. No. 16-1435.

JJ.    On or about October 27, 2015, Al-Saleh filed an action to recognize the Judgments in England and Wales, in an action styled *Al-Saleh v. Sargeant III*, Claim No. CL-2015-000777, in The High Court of Justice of England and Wales, Queen's Bench Division, Commercial Court ("UK Action").

KK.    On or about June 14, 2016, the following three suits were filed, before the Court of First Instance of Amman North, in the Hashemite Kingdom of Jordan, asserting various claims against Al-Saleh: (1) International Oil Trading Company, LLC (a/k/a IOTC USA) and Harry Sargeant, III v. Mohammad Al-Saleh, Case No. 654/2016 ("IOTC USA Jordan Lawsuit"); (2) International Oil Trade Centre (a/k/a IOTC Jordan) v. Mohammad Al-Saleh, Case No. 655/2016; and (3) International Oil Trade Centre (a/k/a IOTC Jordan) and Harry Sargeant III v. Mohammad Al-Saleh, Case No. 656/2016, Before the Court of First Instance of Amman North, in the Hashemite Kingdom of Jordan (Nos. 2 and 3 collectively referred to as "Jordan Lawsuits").  (FINE)

LL.    The following proceedings have been filed, since the entry of the Judgments, in the Dominican Republic seeking relief directly or indirectly against Al-Saleh (collectively, "Amparo Actions"):  (1) the application of Karim N. Abu-Naba'a for *amparo* relief, brought in the Second Division, Criminal Chamber, of the Court of First Instance of the National District; and (2) the application of Abu-Naba'a for *amparo* relief, brought in the Ninth Division, Criminal Chamber, of the Court of First Instance of the National District.

Settlement Agreement
Page 6 of 26

MM.    On September 13 and 29, 2016, the Parties participated in mediation before Mediator Scott Silverman.  As a result of the mediation and subsequent negotiations, the Parties have agreed to settle on the terms and conditions set forth herein.

**NOW THEREFORE**, in light of the foregoing, and in exchange for ten dollars ($10.00) and the promises set forth herein, the receipt and sufficiency of which are hereby acknowledged, each of the parties hereto hereby agrees as follows:

**Section 1.**      **Representations and Warranties.**

**§1.1      Representations and Warranties by the SA Parties**.  The SA Parties, individually and jointly, represent and warrant to Al-Saleh as follows (which representations and warranties shall survive the signing of this Agreement):

(a)      Each of the Recitals set forth above is true and correct in all respects and each of the Recitals set forth above is incorporated herein by reference and shall be deemed to be contractual in nature.

(b)      The making and performance of this Agreement and any documents to be delivered by any of them in connection with this Agreement (collectively "Settlement Documents") by each or any of them do not and will not violate any provision of law or regulation, or any writ, order or decree of any court, governmental, regulatory authority or agency and do not and will not, with the passage of time or the giving of notice, result in a breach of, or constitute a default or require any consent under, or result in the creation of any lien, charge or encumbrance (except in favor of Al-Saleh) upon any property or assets of them, under any instrument or agreement to which any of them is a party or by which any of them or any of their property may be bound or affected, provided that, to the extent the consent of the Receivers of the Bahamian Receivership Companies is required to effectuate this Agreement, Al-Saleh shall be responsible for securing such consent.

(c)      Each of them has the power and authority to execute, deliver, and perform this Agreement.

(d)      None of them has assigned, transferred, hypothecated, or in any other way disposed of all or any portion of any of the claims or counterclaims that are being released by operation of this Agreement.

(e)      In deciding to execute this Agreement, the SA Parties did not rely upon any material fact stated by Al-Saleh or his representatives.

**§1.2      Representations and Warranties by Al-Saleh**.  Al-Saleh represents and warrants to the SA Parties as follows (which representations and warranties shall survive the signing of this

Agreement):

(a)     Each of the Recitals set forth above is true and correct in all respects and each of the Recitals set forth above is incorporated herein by reference and shall be deemed to be contractual in nature.

(b)     The making and performance of this Agreement do not and will not violate any provision of law or regulation, or any writ, order or decree of any court, governmental, regulatory authority or agency.

(c)     Al-Saleh has the power and authority to execute, deliver, and perform this Agreement.

(d)     Other than those rights provided by Al-Saleh to Burford Capital, LLC or its affiliates, Al-Saleh has not assigned, transferred, hypothecated, or in any other way disposed of all or any portion of any of the claims or counterclaims that are being released by operation of this Agreement.

(e)     In deciding to execute this Agreement, Al-Saleh did not rely upon any material fact stated by the SA Parties, the SA Release Parties, IOTC USA, Deborah Sargeant individually, Harry Sargeant, III and Deborah Sargeant as Tenants by the Entireties ("Sargeant TBE"), or their representatives.

**§1.3.   Representations and Warranties are True and Correct**.   Each of the representations and warranties of the  Parties contained herein and in all of the Settlement Documents shall be true and correct in all material respects on and as of the Effective Date.

**Section 2. Releases.**

**§2.1.   Release by SA Parties and SA Release Parties**.  Within ten (10) business days after the Effective Date, the SA Parties and Harry Sargeant, IV, Kevin G. Kirkeide, Karim Abu-Naba'a, BTB Refining, LLC, Global Oil Management Group, Ltd., Global Oil 604, LLC, International Oil Trade Centre ("IOTC Jordan"), International Oil Trading Company, Ltd. (a/k/a IOTC Bahamas), International Oil Trading Company, B.V. (a/k/a IOTC B.V.), S.A. Acquisitions, LLC, Sargeant Marine Limited, and Tennyson Villa, LLC ("SA Release Parties") shall have executed and delivered to Al-Saleh a release in favor of Burford Capital, LLC and Dundrod Investments Ltd. (collectively "the Burford Entities") and Al-Saleh in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement hereto and made a part hereof (the "SA Release").  For avoidance of doubt, such release shall not release (a) any claims related to the performance under this Agreement, (b) any claims of Abu-Naba'a or Al-Saleh with respect to that certain parcel of real property of approximately 2800 square meters at Malecon near the Lebanese, Syrian, Palestian Club in Santo Domingo, Dominican Republic ("DR Property") or that certain company that owns or has

rights to the DR Property which property was referenced on pages 197-200 of the deposition transcript of Abu-Naba'a dated December 17, 2013 ("DR Property Claims"), or (c) any claims regarding the imposition, liability, or payment of taxation to the Hashemite Kingdom of Jordan relating to IOTC Jordan ("Jordan Tax Issue Claims").

**§2.2.   Releases by Al-Saleh and Burford Entities**.  Within ten (10) business days after the Effective Date, Al-Saleh shall execute and shall cause the Burford Entities to execute a release (the "Al-Saleh Release") in favor of the SA Parties, the SA Release Parties, Deborah Sargeant individually, Sargeant TBE, and International Oil Trading Company, LLC (a/k/a IOTC USA), in a form and substance mutually agreeable to the Parties, which release shall be annexed to this Agreement hereto and made a part hereof, and deliver such releases to counsel for the SA Parties, where they shall be held in escrow by counsel for the SA Parties until such releases become effective pursuant to this Agreement.  For avoidance of doubt, such releases shall not release (a) any claims related to the performance under this Agreement, (b) any DR Property Claims, or (c) any Jordan Tax Issue Claims.

**§2.3.   Release by Deborah Sargeant Individually and Sargeant TBE.**  Within ten (10) business days after the Effective Date, Deborah Sargeant individually and Sargeant TBE shall have executed and delivered to Al-Saleh a release (the "Deborah Sargeant Release") in favor of Al-Saleh and the Burford Entities in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement hereto and made a part hereof, and deliver such release to counsel for Al-Saleh, where it shall be held in escrow by counsel for Al-Saleh until such release becomes effective pursuant to this Agreement.

**Section 3.   Acknowledgement of Judgment Amount.**  The SA Parties acknowledge and agree that as of and including the Effective Date, the Judgments total the Current Judgment Amount and that post-judgment interest continues to accrue on the Judgments.  The SA Parties acknowledge and agree that Al-Saleh is entitled to $7,000,000.00 in attorney's fees and costs incurred in the execution and collection of the Judgments ("Judgment Enforcement Amount").  The Base Judgment Amount plus the Judgment Enforcement Amount shall hereinafter be referred to as the "Judgment Amount."

**Section 4.   Payment of the Settlement Amount.**  In consideration for the terms set forth in this Agreement, and in full and final settlement of any and all disputes between the Parties and the Burford Entities, the SA Parties shall cause Al-Saleh to receive the payment of $33,000,000.00 (thirty-three million U.S. Dollars) ("Settlement Amount") according to the following sub-sections:

**§4.1.   Initial Payment**.  The Parties shall cooperate to cause the sum of $20,000,000.00 (twenty million U.S. dollars) ("Initial Payment"), from the funds currently held under the injunction issued in the Texas Action, to be received by Al-Saleh.  To that end, the Parties shall cause, within ten (10) business days after the Effective Date, a stipulation, agreed motion, or other paper, in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement, to be

Settlement Agreement
Page 9 of 26

filed and prosecuted in the Texas Action to release all of the funds currently held under the injunction in the Texas Action, to cause the Initial Payment to be received into the trust account of counsel for Al-Saleh, to permit BTB to retain or transfer any funds held under the injunction in the Texas Action in excess of the Initial Payment, and to cause the injunction bond posted in the Texas Action to be discharged.  If the Initial Payment is made by wire transfer, the SA Parties shall cause the payment to be made with the following payment details:

Valley National Bank, Passaic, New Jersey

ABA#:                           021201383

or

SWIFT:                          MBNYUS33

For Credit to:                  ASTIGARRAGA DAVIS MULLINS & GROSSMAN PA
                                IOTA ACCOUNT 1207016831
Ref#:                           10184.4002

**§4.2.    Periodic Payments of Remaining Settlement Amount**.  The SA Parties shall remit or cause to be remitted to Al-Saleh the Settlement Amount less the Initial Payment periodically (each payment being a "Periodic Payment") on or before the dates set forth below ("Payment Dates") at the account specified above or other account designated by Al-Saleh:

| No. | Amount | Payment Date |
|-----|--------|--------------|
| 1 | $300,000.00 | October 31, 2016 |
| 2 | $300,000.00 | November 30, 2016 |
| 3 | $300,000.00 | December 31, 2016 |
| 4 | $750,000.00 | January 31, 2017 |
| 5 | $400,000.00 | February 28, 2017 |
| 6 | $400,000.00 | March 31, 2017 |
| 7 | $400,000.00 | April 30, 2017 |
| 8 | $800,000.00 | May 31, 2017 |
| 9 | $9,350,000.00 | June 30, 2017 |

**Section 5.    Texas Action.**  Within ten (10) business days after the Effective Date, the Parties shall execute and cause their affiliates or insiders who are parties to the Texas Action to execute a stipulation, agreed motion, or other paper in a form and substance mutually agreeable to the Parties which shall be annexed to this Agreement ("Texas Abatement Pleading"), which provides

9

for: (a) the abatement of the Texas Action until the earlier of the occurrence of an Actionable Event or full compliance with this Agreement; (b) the release of the monies held under injunction in accordance with this Agreement; and (c) notice to the Court of the Texas Settlement Stipulation (as defined below), which notice shall reference the existence of the Texas Settlement Stipulation but shall not disclose the terms thereof unless required by the Court.  The Parties shall use best efforts to have the Texas Abatement Pleading approved by the Court in the Texas Action as soon as practicable.

Within ten (10) business days after the Effective Date, the SA Parties shall execute and cause their affiliates or insiders who are parties to the Texas Action to execute a stipulation, agreed motion, or other paper in a form and substance mutually agreeable to the Parties which shall be annexed to this Agreement ("Texas Settlement Stipulation"), which provides: (a) an agreement to withdraw with prejudice the Texas Special Appearances; and (b) the entry of a consent judgment ("Texas Consent Judgment") holding BTB, SML, and SAA liable for the Judgment Amount less all payments made prior the entry of such consent judgment.  Unless and until an Actionable Event occurs, Al-Saleh shall hold with his counsel the Texas Settlement Stipulation in escrow.  Upon the occurrence of an Actionable Event, Al-Saleh shall be entitled to file the Texas Settlement Stipulation with the Court in the Texas Action and seek and obtain the Texas Consent Judgment.

**Section 6.      The Bahamas Proceedings.**  Within ten (10) business days after the Effective Date, the Parties shall execute and cause their affiliates or insiders who are parties to the First Bahamas Proceeding and the Second Bahamas Proceeding to execute stipulations, agreed motions, or other papers in a form and substance mutually agreeable to the Parties which shall be annexed to this Agreement ("Bahamas Abatement Pleadings"), which provide for: (a) the abatement of the First Bahamas Proceeding and the Second Bahamas Proceeding until the earlier of the occurrence of an Actionable Event or full compliance with this Agreement; and (b) notice to the Court of the Bahamas Settlement Stipulations (as defined below), which notice shall reference the existence of the Bahamas Settlement Stipulations but shall not disclose the terms thereof unless required by the Court.  The Parties shall use best efforts to have the Bahamas Abatement Pleadings approved by the Court in the First Bahamas Proceeding and the Second Bahamas Proceeding as soon as practicable.

Within ten (10) business days after the Effective Date, the SA Parties shall execute and cause their affiliates or insiders who are parties to the First Bahamas Proceeding and the Second Bahamas Proceeding to execute stipulations, agreed motions, or other papers in a form and substance mutually agreeable to the Parties which shall be annexed to this Agreement ("Bahamas Settlement Stipulations"), which provide: (a) the immediate withdrawal with prejudice of the Setting Aside Application and the withdrawal and waiver of any objection to the Ex Parte Receivership Orders; (b) the consent to the Reinstatement Application; and (c) the entry of  consent judgments (the "Bahamas Consent Judgments") holding SML, IOTC Bahamas, and Global Oil Bahamas liable for the Judgment Amount less all payments made prior to the entry of such order.  Unless and until an Actionable Event occurs, Al-Saleh shall hold with his counsel the Bahamas Settlement Stipulations in escrow.  Upon the occurrence of an Actionable Event, Al-Saleh shall be entitled to file the

Settlement Agreement
Page 11 of 26

Bahamas Settlement Stipulations with the Court in the First Bahamas Proceeding and the Second Bahamas Proceeding and seek and obtain the Bahamas Consent Judgments.

**Section 7.** **Delaware Chancery Action.**  Within ten (10) business days after the Effective Date, the Parties shall execute and cause their affiliates or insiders who are parties to the Delaware Chancery Action to execute a stipulation, agreed motion, or other paper in a form and substance mutually agreeable to the Parties which shall be annexed to this Agreement ("Delaware Abatement Pleading"), which provides for: (a) the abatement of the Delaware Chancery Action until the earlier of the occurrence of an Actionable Event or full compliance with this Agreement; and (b) notice to the Court of the Delaware Settlement Stipulation (as defined below), which notice shall reference the existence of the Delaware Settlement Stipulation but shall not disclose the terms thereof unless required by the Court.  The Parties shall use best efforts to have the Delaware Abatement Pleading approved by the Court in the Delaware Chancery Action as soon as practicable.

Within ten (10) business days after the Effective Date, the SA Parties shall execute and cause their affiliates or insiders who are parties to the Delaware Chancery Action to execute a stipulation, agreed motion, or other paper in a form and substance mutually agreeable to the Parties which shall be annexed to this Agreement ("Delaware Settlement Stipulation"), which provides the entry of a consent judgment (the "Delaware Consent Judgment") holding GO604 liable for $5,206,750.00 in the event an Actionable Event under this Agreement occurs less all payments made prior the entry of such consent judgment.  Unless and until an Actionable Event occurs, Al-Saleh shall hold with his counsel the Delaware Settlement Stipulation in escrow.  Upon the occurrence of an Actionable Event, Al-Saleh shall be entitled to file the Delaware Settlement Stipulation with the Court in the Delaware Chancery Action and seek and obtain the Delaware Consent Judgment.

**Section 8.** **UK Action**.  Within ten (10) business days after the Effective Date, the Parties shall execute a stipulation, agreed motion, or other paper in a form and substance mutually agreeable to the Parties which shall be annexed to this Agreement ("UK Abatement Pleading"), which provides for: (a) the abatement of the UK Action until the earlier of the occurrence of an Actionable Event or full compliance with this Agreement; and (b) notice to the Court of the UK Settlement Stipulation, which notice shall reference the existence of the UK Settlement Stipulation but shall not disclose the terms thereof unless required by the Court.  The Parties shall use best efforts to have the UK Abatement Pleading approved by the Court in the UK Action as soon as practicable.

Within ten (10) business days after the Effective Date, the SA Parties shall execute a stipulation, agreed motion, or other paper in a form and substance mutually agreeable to the Parties which shall be annexed to this Agreement ("UK Settlement Stipulation"), which provides for: (a) the withdrawal of all objections, defenses, or motions opposing Al-Saleh's request for recognition of the Judgments in the UK Action; and (b) the entry of a consent judgment recognizing the Judgments as enforceable final judgments of the Court in the UK Action ("UK Consent Judgment").  Unless and until an Actionable Event occurs, Al-Saleh shall hold with his counsel the UK Settlement Stipulation

Settlement Agreement
Page 12 of 26

in escrow.  Upon the occurrence of an Actionable Event, Al-Saleh shall be entitled to file the UK Settlement Stipulation with the Court in the UK Action and seek and obtain the UK Consent Judgment.

**Section 9.**    **Dismissal of Jordanian Actions; IOTC Jordan Letter; DR Property Documents and Transfer.**

**§9.1.**    **Dismissal of Jordan Lawsuits**.  Within ten (10) business days after the Effective Date, the SA Parties shall cause the dismissal with prejudice of the Jordan Lawsuits and the claim of Sargeant in the IOTC USA Jordan Lawsuit by executing drop case agreements in a form and substance mutually agreeable to the Parties and their respective Jordanian counsel, which shall be annexed to this Agreement, and filing such drop case agreements with the Court in the Jordan Lawsuits and the IOTC USA Jordan Lawsuit.  Al-Saleh shall cooperate to effectuate such dismissal by having his counsel attend any necessary hearing.

**§9.2**.    **DR Property Documents and Transfers**.  Within ten (10) business days after the Effective Date, Abu-Naba'a shall provide documents sufficient to identify the DR Property and the interest that Al-Saleh has regarding the DR Property or companies involved with the DR Property. Abu-Naba'a shall effectuate the transfer to Al-Saleh of whatever interest Al-Saleh owns in the DR Property or companies involved with the DR Property.  To the extent any dispute arises regarding performance under this provision, such dispute shall be submitted to Scott Silverman of JAMS (or in the event he is no longer with JAMS, to another arbitrator of JAMS) within ninety (90) days of the Effective Date to act as arbitrator (the "Arbitrator") of such dispute under the JAMS arbitration rules.  The Parties agree to treat any decision rendered in such arbitration as final and binding.  A failure to perform under this subsection shall not constitute an Actionable Event.  However, notwithstanding anything in this Agreement to the contrary, the mortgage on the Mutiny Condominium, referenced in Section 11 below, shall remain as security for the obligations set forth in this subsection and shall survive the payment of the Settlement Amount and the Forbearance Period.  Once Abu-Naba'a has complied with his obligations under this subsection or, if the dispute is submitted to an Arbitrator, once Abu-Naba'a has complied with any order of the Arbitrator, then the mortgage on the Mutiny Condominium shall be released as security for the obligations set forth in this subsection.

**Section 10.**    **Forbearance on Judgment or Assertion of Claims.**  From the Effective Date until the earlier of the occurrence of any Actionable Event (as defined below) or 5:00 p.m. E.S.T. on June 30, 2017 ("Forbearance Period"), Al-Saleh agrees to forbear from exercising his rights or remedies to enforce the Judgments or assert any claim that arises from conduct or events that occurred prior to the Effective Date and that would be subject to the release delivered under §2.2 of this Agreement if such release were effective as of the Effective Date, including but not limited to forbearing from asserting any claim against the SA Parties, the SA Release Parties, IOTC USA, Deborah Sargeant individually, and/or Sargeant TBE, other than the DR Property Claims or the Jordan Tax Issue Claims, except as necessary to effectuate the terms of this

Settlement Agreement
Page 13 of 26

Agreement or as provided in this Agreement.  Unless an Actionable Event has occurred, Al-Saleh and the Burford Entities shall not file or solicit the filing of an involuntary bankruptcy or other insolvency proceeding against the SA Parties or SA Release Parties, or acquire any claim against any of them except as permitted by this Agreement.

**§10.1.  Permitted Recordings**.  Notwithstanding anything in this section, Al-Saleh may record any documents in public records reasonable and necessary to perfect any lien, interest, or encumbrance granted to him under this Agreement.  Any documents which, pursuant to this Agreement, are to be held by Al-Saleh's counsel and not filed unless and until an Actionable Event has occurred shall not be recorded in any public records or otherwise disclosed to any person or entity other than Al-Saleh, the Burford Entities, and their respective counsel, unless and until an Actionable Event has occurred unless required by law or a court of competent jurisdiction.

**§10.2.  Bankruptcy Proceedings.**  Notwithstanding anything in this section but subject to all other provisions of this Agreement, Al-Saleh may assert any and all of his rights and remedies in connection with the Bankruptcy Case, or any adversary proceeding related to the Bankruptcy Case, including, without limitation, the filing of his proof of claim.

**Section 11.     Security.**  The SA Parties shall grant or cause to be granted to Al-Saleh or his designee a lien, mortgage, encumbrance, pledge, or assignment as to all real or personal property described more particularly in the following sub-sections (collectively, "Collateral") to secure the Judgment Amount and any payment due under this Agreement, including the Settlement Amount, the Initial Payment, and each Periodic Payment.

**§11.1   The SA Real Property**.  No later than ten (10) business days after the Effective Date, the SA Parties shall grant or cause to be granted to Al-Saleh or his designee a mortgage, security interest, lien and/or assignment ("SA Mortgages") on the following described real or personal property (collectively, "SA Real Property"):

(a)     a mortgage on the Excelsior Condominium, Residence No. 9, in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement, which for avoidance of doubt will acknowledge that such mortgage is subject to the first mortgage of Floridian Community Bank;

(b)     a mortgage on the Excelsior Condominium, Cabana No. 7 in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement;

(c)     an assignment of all of 400 S. Ocean #9, LLC's right title and interest in a certain Boat Slip License Agreement, dated May 14, 2002, in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement, which for avoidance of doubt will acknowledge that such mortgage is subject to the first mortgage of Floridian Community Bank;

(d)      a mortgage on the Tennyson Villa Condominium, Unit No. 5001, in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement; and

(e)      a mortgage on The Mutiny Condominium, Unit Nos. 1014-1016, in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement.

**§11.2  <u>Stock Pledges</u>**.  No later than ten (10) business days after the Effective Date, the SA Parties shall grant or cause to be granted to Al-Saleh or his designee a security interest, lien, and/or assignment (collectively, "Stock Pledges"), as described below on the ownership interests of the following entities (collectively referred to as "Pledged Companies" and singly as "Pledged Company"):

(a)      a pledge of all the ownership interest in S.A. Acquisitions, LLC, in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement;

(b)      subject, if necessary, to the consent of the Receivers, a pledge of all the ownership interest in IOTC USA in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement;

(c)      subject, if necessary, to the consent of the Receivers, a pledge of all the ownership interest in IOTC Bahamas in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement;

(d)      subject, if necessary, to the consent of the Receivers, a pledge of all the ownership interest in SML in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement;

(e)      subject, if necessary, to the consent of the Receivers, a pledge of all the ownership interest in Global Oil Bahamas in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement;

(f)      a pledge of all the ownership interest in GO604 in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement;

(g)      a pledge of all the ownership interest in BTB in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement;

(h)      a pledge of all the ownership interest in Global Oil Financial Services, LLC ("GOFS") in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement;

(i)      a pledge of all the ownership interest in 400 S. Ocean #9, LLC ("Excelsior #9") in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement;

(j)      a pledge of all the ownership interest in 400 S. Ocean Cabana #7, LLC ("Cabana #7") in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement;

(k)      a pledge of all the ownership interest in Tennyson in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement.

**§11.3   Additional Pledges**.  No later than ten (10) business days after the Effective Date, the SA Parties shall grant or cause to be granted to Al-Saleh or his designee a security interest, lien, pledge or assignment on the following property ("Additional Pledges"):

(a)      A pledge of the stock held in Floridian Community Holdings, Inc. in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement.

(b)      An assignment of any rights and claims the SA Parties have to any monies held in connection with the Canada Action in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement.

**§11.4   Additional Obligations Regarding Stock Pledges**.  The SA Parties shall execute and deliver, or cause to be executed and delivered, in a form satisfactory to Al-Saleh, any resolution, agreement, amendment to an operating agreement or shareholder's agreement, or any other document necessary to allow any person or entity to become the plenary owner with all rights and powers of an owner (including without limitation the right to vote and receive distributions) after the enforcement of a Stock Pledge in or over any of the Pledged Companies ("Pledged Company Documents").  Al-Saleh's counsel shall retain possession of the Pledged Company Documents other than to the extent necessary to perfect Al-Saleh's interest in the Collateral.

**§11.5   Aircraft Mortgage**.  If, during the pendency of this Agreement and prior to the SA Parties' completion of the payment of the Settlement Amount, GO604 exercises, or causes its successor, assign, insider, or affiliate to exercise, the Aircraft Purchase Option, then no later than five (5) days after such exercise of the Aircraft Purchase Option, the SA Parties shall cause a mortgage, lien, or encumbrance on the Aircraft to be granted to Al-Saleh in a form and substance mutually agreeable to the Parties, which mortgage, lien, or encumbrance document shall be annexed to this Agreement.  Notwithstanding the foregoing, in the event GO604 exercises the Aircraft Purchase Option in connection with a loan to be secured by the Aircraft ("Refinance Mortgage"), then the SA Parties shall remit to Al-Saleh the difference, if any, between the amount loaned under the Refinance Mortgage and the amount necessary to exercise the Aircraft Purchase Option which amount shall be

applied to the last Periodic Payment and the mortgage granted to Al-Saleh under this provision shall be subordinate to such Refinance Mortgage.

**§11.6   Notice of Intent to Purchase Aircraft**.  During the pendency of this Agreement and prior to the SA Parties' completion of the payment of the Settlement Amount, no later than ten (10) days before GO604, or its successor, assign, insider, or affiliate intends to exercise the Aircraft Purchase Option, the SA Parties shall provide notice to Al-Saleh in a manner compliant with the section titled "Notices" below.

**§11.7.   Withdrawal of IOTC Bahamas Counterclaim**. No later than ten (10) business days after the Effective Date, the SA Parties shall execute and deliver, to be held in escrow by Al-Saleh's counsel unless and until an Actionable Event occurs, a dismissal with prejudice of the IOTC Bahamas Counterclaim ("Counterclaim Withdrawal") in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement.

**Section 12.       Dismissal of the Bankruptcy Case**.

**§12.1   Support of Dismissal**.  Provided no Actionable Event has occurred, Al-Saleh agrees to support a motion for dismissal or abstention in the Bankruptcy Case which motion would assert the position that the amount of allowed Chapter 7 administrative expenses (including all professional fees) in the Bankruptcy Case should not exceed $500,000.00.  Provided no Actionable Event has occurred, in the event the motion for dismissal or abstention in the Bankruptcy Case is denied, Al-Saleh agrees to support conversion of the Bankruptcy Case to one under Chapter 11 and will support, during the Forbearance Period, a Chapter 11 plan that implements the terms of this Agreement.

**§12.2   Pledge of Solvochem Ownership Interest**.  As soon as practicable, but no later than thirty (30) days after the dismissal or abstention of the Bankruptcy Case, the SA Parties shall cause IOTC USA to execute and deliver, to the extent permissible at law or pursuant to the relevant governing documents, to Al-Saleh a pledge of all of IOTC USA's ownership interest in Solvochem Logistics, Ltd. ("Solvochem") in a form and substance mutually agreeable to the Parties which shall be annexed to this Agreement ("Solvochem Pledge").  In the event the relevant governing documents do not permit the Solvochem Pledge, then the SA Parties shall use their best efforts, including instructing IOTC USA and any director appointed by IOTC USA to the board of Solvochem, to take the steps necessary to obtain consent for the Solvochem Pledge and to effectuate such pledge once consent is obtained.

**§12.3   Release by IOTC USA**.  No later than ten (10) business days after the dismissal of the Bankruptcy Case, the SA Parties shall cause IOTC USA to execute and deliver to Al-Saleh a release of Al-Saleh in a form and substance mutually agreeable to the Parties which shall be annexed to this Agreement.

**§12.4   Dismissal of the IOTC USA Jordan Lawsuit**.  As soon as practicable but no later

16

than twenty (20) business days after dismissal of the Bankruptcy Case, the SA Parties shall cause IOTC USA to dismiss the IOTC USA Jordan Lawsuit with prejudice and Al-Saleh shall cooperate to effectuate such dismissal by having his counsel attend any necessary hearing.

**§12.5.  Dismissal of Jordanian Recognition Action**.  As soon as practicable but no later than ten (10) business days after the dismissal of the IOTC USA Jordan Lawsuit pursuant to this section, Al-Saleh shall dismiss without prejudice that certain proceeding to recognize the Judgments filed in the Hashemite Kingdom of Jordan and the SA Parties shall cooperate to effectuate such dismissal by having their counsel attend any necessary hearing.

**Section 13.    Actionable Event.**  As used in this Agreement, "Actionable Event" means the occurrence of any one or more of the following:

(a)    Any representation or warranty made by the SA Parties or any of the SA Release Parties in this Agreement or any of the Settlement Documents, other than in connection with Section 9.2, proves to be incorrect in any material respect; or

(b)    Any of the SA Parties or any of the SA Release Parties defaults in the performance of this Agreement, other than Section 9.2, or the provision of any of the Settlement Documents; or

(c)    Any payment due under this Agreement or any of the Settlement Documents, whether the Initial Payment or any Periodic Payment, is not paid when due;

(d)    Other than IOTC USA, any of the SA Parties or any non-natural entities who are SA Release Parties commences a voluntary case under the United States Bankruptcy Code, or petitions or files for relief under any other law relating to bankruptcy, insolvency, reorganization, winding-up, or composition or adjustment of debts including an assignment for the benefit of creditors;

(e)    Notwithstanding the above, the SA Parties may cure any late payment by adding to the amount of the payment 10% per annum simple interest for each day the payment is late, provided the SA Parties make the payment no later than the tenth (10th) day after the due date.  If any late payment is made in accordance with this cure provision, then no Actionable Event has occurred.

**Section 14.    Occurrence of Actionable Event**.  If an Actionable Event occurs:

(a)    The SA Parties shall remain, jointly and severally, liable for the Judgment Amount less any payments received by Al-Saleh after the Effective Date as applied under this Agreement.  For avoidance of doubt, the Parties agree the Initial Payment and any Periodic Payments shall be applied first to the Judgment Enforcement Costs then to

the Base Judgment Amount;

(b)      The Forbearance Period shall terminate;

(c)      Al-Saleh may exercise all of his rights and remedies under the SA Mortgages, Stock Pledges, Pledged Company Documents, the Additional Pledges; the Aircraft Mortgage, the Counterclaim Withdrawal, and the Solvochem Pledge;

(d)      Al-Saleh may exercise all of his rights under the Texas Abatement Pleading, Texas Settlement Stipulation, Texas Consent Judgment, Bahamas Abatement Pleadings, Bahamas Settlement Stipulations, Bahamas Consent Judgments, Delaware Abatement Pleading, Delaware Settlement Stipulation, Delaware Consent Judgment, UK Abatement Pleading, UK Settlement Stipulation, and UK Consent Judgment.

**Section 15.    Dismissal of Litigation.**  Provided no Actionable Event has occurred, no later than the tenth (10th) day after the earlier of the final day of the Forbearance Period or the receipt by Al-Saleh of the Settlement Amount, the Parties shall mutually and simultaneously cause the dismissal of their respective lawsuits as follows:

**§15.1   Dismissal of Al-Saleh's Actions.**  The SA Parties may cause the dismissal with prejudice of the Canada Action, the First Bahamian Proceeding, the Second Bahamian Proceeding, the Texas Action, the Delaware Chancery Action, the UK Action, and each of the Proceedings Supplementary that remains pending, and any other action Al-Saleh commenced, under 28 U.S.C. § 1782 or otherwise, pertaining to the Judgments, enforcement of the Judgments, or the SA Parties that remains pending, with each respective party to bear his/their own attorney's fees and costs by filing the stipulations held by their counsel in escrow.

**§15.2    SA Parties' Dismissal of Amparo Actions.**  The SA Parties shall cause the dismissal with prejudice of the Amparo Actions, to the extent any matters in the Amparo Actions remain pending.

**§15.3    Escrow of Stipulations for Dismissal**.  No later than ten (10) business days after the Effective Date, the Parties shall execute, or cause their affiliates to execute, stipulations for dismissal, as provided in and to effectuate the dismissals referenced in this section, in a form and substance mutually agreeable to the Parties, which stipulations for dismissal shall be annexed to this Agreement.  Such stipulations for dismissal shall be delivered to counsel for the respective parties and held in escrow.

**Section 16.    Satisfaction or Assignment of Judgments for Full Performance.**  Provided no Actionable Event has occurred, no later than the tenth (10th) day after the earlier of the final day of the Forbearance Period or the receipt by Al-Saleh of the Settlement Amount, or as soon as practicable thereafter, the SA Parties may: (a) record satisfactions of the Judgments in each state or

Settlement Agreement
Page 19 of 26

country in which Al-Saleh domesticated any of the Judgments; and (b) release all Collateral, including property subject to the SA Mortgages, Stock Pledges, Pledge Company Documents, and Additional Pledges, by filing the satisfactions and release of Collateral documents held by the SA Parties in escrow.

Within ten (10) business days after the Effective Date, Al-Saleh shall execute satisfactions of the Judgments and releases of Collateral in a form and substance mutually agreeable to the Parties, which satisfactions of the Judgments and releases of Collateral shall be annexed to this Agreement. Such satisfactions of the Judgments and releases of Collateral shall be delivered to counsel for the SA Parties and held in escrow.

**Section 17.**    **Effectiveness of Certain Releases.**   If an Actionable Event has not occurred, upon the earlier of the final day of the Forbearance Period or the receipt by Al-Saleh of the Settlement Amount, the releases from Al-Saleh, the Burford Entities, Deborah Sargeant individually, and Sargeant TBE shall automatically become effective.

**Section 18.**    **Additional Documents; Further Assurances.**   The Parties shall deliver any and all other instruments and documents, and shall do, and cause to be done, all such additional acts and things, required to be delivered or done pursuant to, or necessary or proper in order to give effect to, all of the terms and provisions of this Agreement.

**Section 19.**    **Annexes to Agreement.**   In any instance where this Agreement refers to an attached or annexed exhibit, the exhibit shall be in a form mutually agreed to by the Parties, and the Parties agree to cooperate in the timely preparation and delivery of all documents or instruments. If the Parties are unable to agree to the form and/or substance of such document or instrument, the Parties shall submit competing forms to Mediator Scott Silverman who shall resolve any disputes as to the form, and the resulting form shall be annexed to this Agreement. For avoidance of doubt, during the time in which the Parties await the resolution of any dispute by Mediator Scott Silverman under this section, the period of time set forth in this Agreement for attaching or annexing such exhibit shall be suspended. The Parties agree to treat any decision rendered by Mediator Scott Silverman under this section as final and binding. In addition, the SA Parties may seek Al-Saleh's consent and Al-Saleh may seek the SA Parties' consent for a reasonable extension of time to meet any of the deadlines under this Agreement to complete an attached or annexed exhibit, which consent shall not be unreasonably withheld.

**Section 20.**    **No Fiduciary, Agency, Partnership or Joint Venture Relationship.** Nothing in this Agreement, nor the acts of the Parties, shall be deemed or construed as in any way creating a relationship, including, without limitation, those of fiduciary, agency, partnership, joint venture or any other similar relationship, other than lender and borrower or lender and guarantor.

**Section 21.**    **No Waiver/Estoppel; Cumulative Remedies.**  No failure on the part of the Parties to exercise and no delay in exercising any right granted under this Agreement or any

agreements or documents contemplated to be executed in connection with this Agreement, including any of the Settlement Documents, shall be a waiver thereof or create an estoppel against the other Parties regarding the exercising of any right under this Agreement, nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.  No Party shall be deemed to have waived or to be estopped to assert any right granted it under this Agreement except in a writing signed by all Parties to this Agreement.  The remedies provided herein are cumulative and may be exercised alternatively, concurrently, successively or in any other manner and are not exclusive of any remedies provided by law.

**Section 22.**   **No Third Party Beneficiaries.**   Nothing expressed or implied in this Agreement is intended, or shall be construed, to confer upon or give any person other than the Parties to this Agreement, the SA Release Parties, Deborah Sargeant individually, Sargeant TBE, IOTC USA, the Burford Entities, and their respective heirs, personal representatives, legal representatives, successors and assigns, any rights or remedies under or by reason of this Agreement.

**Section 23.**   **Severability.**   Each of the words, phrases, sentences, clauses, sections or subsections contained in this Agreement or any part hereof, is inserted conditionally on its being valid in law and, in the event that any one or more of the words, phrases, sentences, clauses, sections or subsections contained in this Agreement shall be declared invalid, this Agreement shall be construed as if such word or words, phrase or phrases, sentence or sentences, section or sections, or subsection or subsections, had not been inserted.

**Section 24.**   **Limitations and Laches.** The Parties waive, and hereby agree not to assert, to the fullest extent possible, any claim or defense based on the statute of limitations, laches, or the passage of time arising in, under or in connection with this Agreement.

**Section 25.**   **Section Headings.**   The section and other headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

**Section 26.**   **Counterparts.**   This Agreement may be executed in any number of counterparts, each of which shall constitute an original but all together shall constitute but one and the same instrument.

**Section 27.**   **Entire Agreement.**  This Agreement and the Settlement Documents constitute the entire agreement among the Parties hereto with respect to the subject matter of this Agreement and supersedes all prior agreements, understandings, negotiations and discussions, both written and oral, among the Parties hereto with respect to the subject matter of this Agreement.

**Section 28.**   **No Reliance; No Rescission.**   The SA Parties, the SA Release Parties, Deborah Sargeant individually, Sargeant TBE, and IOTC USA acknowledge and agree that they have relied upon no statements of fact made by or promises of future conduct by Al-Saleh other than as

Settlement Agreement
Page 21 of 26

expressly and specifically set forth in this Agreement.  Accordingly, the SA Parties acknowledge and agree that this Agreement cannot be rescinded on the basis of fraud or on the basis of mistake, whether unilateral or mutual.  Al-Saleh acknowledges and agrees that he has relied upon no statements of fact made by or promises of future conduct by the SA Parties, the SA Release Parties, Deborah Sargeant individually, Sargeant TBE, or IOTC USA other than as expressly and specifically set forth in this Agreement.  Accordingly, Al-Saleh acknowledges and agrees that this Agreement cannot be rescinded on the basis of fraud or on the basis of mistake, whether unilateral or mutual.

Section 29.    **Counsel**.  The Parties acknowledge that they have had independent counsel to assist in the negotiation and preparation of this Agreement.  Each Party has read this Agreement, is aware of its terms, and has executed it acknowledging all Parties have acted in good faith in negotiating the terms and provisions contained herein.

Section 30.    **Time of Essence.**  Time is of the essence under this Agreement, and each of the Settlement Documents. Without limiting the generality of the foregoing, the time periods referenced for the performance of an act or satisfaction of an obligation as specified in this Agreement were a material inducement to the execution by the Parties to this Agreement.

Section 31.    **Modifications.**  This Agreement may not be amended or modified in any way except by a written instrument executed by all of the Parties hereto.  Without limiting the generality of the foregoing, each Party acknowledges (a) that modifications of this Agreement that would be binding upon a Party that is not a natural person require affirmative written consent of a Senior Official of such Party and the execution of a formal written document executed by all of the Parties hereto and (b) because the occurrence of a breach of this Agreement is likely to lead to the filing of litigation to enforce this Agreement unless a subsequent agreement is reached, any requests by a Party for modifications of this Agreement shall constitute settlement discussions within the ambit of the applicable evidentiary rules governing settlement discussion, including as applicable Rule 408 of the Federal Rules of Evidence or the state law equivalent thereof.

Section 32.    **Notices.**  All notices, requests, demands or other communications required or contemplated by the provisions hereof shall be in writing, and shall be deemed to have been given or made on the third business day after the deposit in the United States Mail by First Class Mail postage prepaid, or when received if sent by telefax or delivered by hand, addressed to the respective Parties as follows (which may be changed by a writing sent to the other Parties to this Agreement):

Settlement Agreement
Page 22 of 26

If to Al-Saleh:

_____

with a copy to:

Edward H. Davis, Jr.
Gregory S. Grossman
Andres H. Sandoval
Astigarraga Davis Mullins & Grossman, P.A.
1001 Brickell Bay Drive, 9th Floor
Miami, Florida 33131
Tel: (305) 372-8282
Fax: (305) 372-8202
edavis@astidavis.com
ggrossman@astidavis.com
asandoval@astidavis.com


If to Harry Sargeant, III:

_____

with copy to:

Christopher M. Kise
Melissa B. Coffey
Joshua M. Hawkes
FOLEY & LARDNER LLP
106 East College Avenue
Tallahassee, FL 32301-7732
Telephone: (850) 222-6100
Facsimile:  (850) 561-6475
ckise@foley.com
mcoffey@foley.com
jhawkes@foley.com

Settlement Agreement
Page 23 of 26

If Mustafa Abu-Naba'a:

_____

with copy to:

Christopher M. Kise
Melissa B. Coffey
Joshua M. Hawkes
FOLEY & LARDNER LLP
106 East College Avenue
Tallahassee, FL 32301-7732
Telephone: (850) 222-6100
Facsimile:  (850) 561-6475
ckise@foley.com
mcoffey@foley.com
jhawkes@foley.com

**Section 33.     Effectiveness of Agreement.**  Upon the execution of this Agreement by each of the Parties hereto, this Agreement shall be effective.

**Section 34.     Governing Law; Consent to Jurisdiction and Venue.**  This Agreement and any and all claims, defenses, disputes, or controversies arising out of or related to (a) this Agreement, (b) the drafting and negotiation of this Agreement, or (c) the relationship of the Parties, whether in contract, quasi-contract, tort, at law, in equity, or otherwise, shall be governed by and construed in accordance with the internal laws of the State of Florida without regard to any conflict of law rule that would call for the application of the laws of another jurisdiction other than the State of Florida. With respect to disputes that arise in, under, or in connection with this Agreement, each Party consents to the personal jurisdiction and venue of the courts of the State of Florida or the Courts of the United States located within the State of Florida and waives any claims that such courts are an inconvenient venue.

**Section 35.     Service of Process.**  Each of the Parties agrees that service of process for any lawsuits arising in, under, related to, or in connection with this Agreement may be effected by delivery of such process by First Class U.S. Mail with return receipt or delivery confirmation or hand-delivery to the person listed in the section of this Agreement entitled "Notices" and each of the Parties hereby appoints the respective person(s) listed therein as agent(s) for service of such process.

**Section 36.     Attorneys Fees and Costs.**  In addition to all other remedies, if a breach of this Agreement occurs, the breaching Party agrees that in the event of legal action or other proceeding arising in, under, or in connection with (including but not limited to any alleged breach, default, claim, misrepresentation, or declaratory relief regarding) this Agreement, the non-breaching

Settlement Agreement
Page 24 of 26

Party shall be entitled to recover its reasonable Attorneys' Fees and Costs. "Attorneys' Fees and Costs" means all amounts incurred by the non-breaching Party before or during a legal action or proceeding (including actions or proceedings on appeal, in bankruptcy cases, contested matters, or adversary proceedings, or in administrative or regulatory proceedings and regardless of whether same are commenced by or against a Party) for the fees and costs charged for the non-breaching Party's legal representation relating to the alleged breach of this Agreement including but not limited to the fees and costs incurred in litigating the entitlement, reasonableness, and quantification of such amounts due to the non-breaching Party, relating to the alleged breach of this Agreement. For avoidance of doubt, the non-breaching Party shall be entitled to all costs incurred for its legal representation relating to the alleged breach of this Agreement whether or not such costs are specifically enumerated in any applicable statute, rule or guideline including (a) costs of investigation, (b) costs of copying of documents or other materials, whether for discovery, filing with the court, or internal review, (c) costs for electronic discovery including outside vendor costs, (d) electronic research charges, (e) telephone charges, (f) mailing, commercial delivery service, and courier charges, (g) travel expenses, (h) expert witness fees regardless of whether such expert was a consulting expert or testimonial expert and regardless of whether such expert testified at a deposition, hearing, or trial, (i) stenographer and videographer expenses including costs of transcription or preparation regardless of whether incurred for deposition, hearing, or trial, (j) costs of interpretation and translation to or from the English language, (k) mediator and mediation expenses, and (l) expenses associated with special master, referee, receivership, monitor, or other court appointed fiduciaries or officers.

     **Section 37.**   **Sale/Assignment.**  Each of the Parties agree that neither may sell or assign their rights in, under, and to the Judgments and this Agreement to any other person without the written consent of all Parties except that Al-Saleh may sell or assign his rights in, under, and to the Judgments to one or more of the Burford Entities ("Purchaser/Assignee"), and Al-Saleh agrees that in such event, Al-Saleh and the Purchaser/Assignee will become jointly responsible for any duties under this Agreement. Prior to any such assignment, Al-Saleh shall cause the Burford Entity that is the Purchaser/Assignee to sign an acknowledgement that such Burford Entity will be bound by all terms of this Agreement (the "Acknowledgement"), including but not limited to the terms relating to jurisdiction and enforcement of this Agreement, and Al-Saleh shall provide a copy of the Acknowledgement to counsel for the SA Parties. Such assignment shall not be valid or effective until the Acknowledgement has been signed by the Burford Entity that is the Purchaser/Assignee and provided to the SA Parties' counsel.

     **Section 38.**   **Weekends and Legal Holidays.**  Any act by or any deadline of any Party under this Agreement that falls on a Saturday, Sunday, or legal holiday shall be performed and such deadline extended to the next day that is not a Saturday, Sunday, or legal holiday in the United States or, for any Settlement Documents to be filed in other countries, to the next day that is not a legal holiday in the country in which the Settlement Document is to be filed.

     **Section 39.**   **Authority to Sign.**  Each of the undersigned signatories represents and

24

Settlement Agreement
Page 25 of 26

warrants that he or she is authorized to sign this Agreement on behalf of the Party or Parties on whose behalf he or she is signing.

**Section 40.    Revival and Reinstatement.**  If any Party receives a demand, notice of claim, or lawsuit that seeks to require the repayment, restoration, or return, in whole or in part, of any payment or property previously paid or transferred to such Party applied in full or partial satisfaction of any debt under this Agreement, because the payment or transfer, or the incurrence of the obligation so satisfied, is asserted or declared to be void, voidable, or otherwise recoverable under any state or federal law, including without limitation under 11 U.S.C. §§544, 547, 548, 549, or 550 (collectively, a "Voidable Transfer"), such Party shall notify the other Party within fourteen (14) days of receipt.  If such Party, by judgment or by settlement, repays, restores, or returns monies claimed as a Voidable Transfer, then, as to any such Voidable Transfer, or the amount thereof that such Party repays, restores, or returns, by judgment or by settlement and as to all reasonable Attorney's Fees and Costs of Lender related thereto, the liability of the other Party will automatically and immediately be revived, reinstated, and restored and will exist as though the Voidable Transfer had never been made. The SA Parties shall have ninety (90) days to cure any obligation revived or reinstated under this section by making further payment for any amount repaid pursuant to this section.

**Section 41.    Waiver of Jury Trial.**  EACH OF THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES THE RIGHT ANY OF THEM MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OR OMISSIONS OF ANY PARTY; OR ANY OTHER AGREEMENTS EXISTING BETWEEN ANY ONE OR MORE OF THE PARTIES TO THIS AGREEMENT.   THIS PROVISION IS A MATERIAL INDUCEMENT TO EACH PARTY ENTERING INTO THIS AGREEMENT.    FURTHER,  EACH  PARTY  HEREBY  CERTIFIES  THAT  NO REPRESENTATIVE OR AGENT OF ANOTHER PARTY, NOR COUNSEL FOR SUCH PARTY, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH PARTY WOULD NOT, IN THE EVENT OF SUCH LITIGATION, SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION.

**[SIGNATURES ON FOLLOWING PAGE]**

Settlement Agreement
Page 26 of 26

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement effective as of the Effective Date to be executed and delivered.


Harry Sargeant, III

Sign: _____

Print: _____

Its: _____


Mustafa Abu-Naba'a

Sign: _____

Print: _____

Its: _____


Mohammad Anwar Farid Al-Saleh

Sign: _____

Print: _____

Its: _____