# Exhibit B

## AMENDMENT TO SETTLEMENT AGREEMENT

**THIS AMENDMENT** (the "Amendment") is effective as of January 6, 2017 (the "Amendment Effective Date"), and modifies the Settlement Agreement effective as of October 4, 2016 (the "Settlement Agreement") made by and among Mohammad Anwar Farid Al-Saleh on the one hand, and Harry Sargeant, III and Mustafa Abu-Naba'a on the other hand.  Capitalized terms not defined herein shall have the meaning set forth in the Settlement Agreement.

**NOW THEREFORE**, pursuant to Section 31 of the Settlement Agreement, each of the Parties hereby agrees as follows:

**Section 1.     Amended Settlement Amount and Payment Schedule.**

**§1.1     Amended Settlement Amount.**  In consideration for the accelerated payment schedule set forth below, the Parties agree to reduce the Settlement Amount by $190,000, resulting in a total payment of $32,810,000 (thirty two million, eight hundred and ten thousand U.S. dollars) (the "Amended Settlement Amount"), in full and final settlement of any and all disputes between the Parties and the Burford Entities.

**§1.2.     Payments to Date.**  Al-Saleh acknowledges that as of the Amendment Effective Date, he has already received a total of $20,900,000 (twenty million, nine hundred thousand U.S. dollars) (the "Payments to Date"), which consists of the timely Initial Payment of $20,000,000 (twenty million U.S. dollars) and three timely periodic payments of $300,000 (three hundred thousand U.S. dollars) each, in October, November, and December 2016.   As a result of these Payments to Date, the amount remaining that the SA Parties owe Al-Saleh on the Amended Settlement Amount is $11,910,000 (eleven million, nine hundred and ten thousand U.S. dollars) (the "Remaining Settlement Amount").

**§1.2.     Payment of Remaining Settlement Amount.**  The SA Parties shall remit or cause to be remitted to Al-Saleh the Remaining Settlement Amount, totaling $11,910,000 (eleven million, nine hundred and ten thousand U.S. dollars), by January 10, 2017.  Except as provided below regarding the DR Property, this payment of the Remaining Settlement Amount shall constitute full and final satisfaction of the SA Parties' obligations pursuant to the Settlement Agreement.

The SA Parties shall cause the Remaining Settlement Amount to be paid by wire transfer, with the following payment details:

Valley National Bank, Passaic, New Jersey

ABA#:                        021201383

or

SWIFT:                     MBNYUS33

Amendment to Settlement Agreement
Page 2 of 4

For Credit to:          ASTIGARRAGA DAVIS MULLINS & GROSSMAN PA
                        IOTA ACCOUNT 1207016831
Ref#:                   10184.4002

**Section 2. Dismissals of Litigation.**

**§2.1.    Exchange of Executed Dismissal Documents and Satisfactions of Judgment.** By January 9, 2017, the Parties shall have completed the exchange of fully executed copies of any documents, including, but not limited to, any stipulations of dismissal and satisfactions of judgment, needed to dismiss the Texas Action, the First Bahamian Proceeding, the Second Bahamian Proceeding, the Delaware Chancery Action, the Canada Action, the UK Action, the 1782 Actions, the Proceedings Supplementary that remain pending, and any other action Al-Saleh commenced, under 28 U.S.C. § 1782 or otherwise, pertaining to the Judgments, enforcement of the Judgments, or the SA Parties (collectively, the "Litigation Actions").

**§2.2.    Satisfactions of Judgment and Documents to Dismiss the Litigation Actions.** The SA Parties will cause the dismissals of the Litigation Actions and record the satisfactions of judgments where possible, but Al-Saleh agrees to cooperate as needed to file or record any satisfactions of judgment, to file any stipulations of dismissal or other documents necessary to dismiss the Litigation Actions, and to effectuate the final dismissals of the Litigation Actions.

**Section 3. Releases.**  By January 9, 2017, the Parties shall have completed the exchange of copies of the fully executed Releases referenced in Sections 2.1, 2.2, 2.3, and 12.3 of the Settlement Agreement.

**Section 4.  Security Not Needed**.  Except as provided below regarding the DR Property, in light of the payment of the Remaining Settlement Amount , the Collateral described in Section 11 of the Settlement Agreement (including, but not limited to, the SA Mortgages, Stock Pledges, Additional Pledges, Pledged Company Documents, Aircraft Mortgage and any other documents relating to the Collateral), and the Solvochem Pledge referenced in Section 12.2 of the Settlement Agreement, and any documents relating to the Solvochem Pledge, are not needed.

**Section 5.  Full Performance Pursuant to Settlement Agreement**.  Except as provided below regarding the DR Property, Al-Saleh agrees that upon receipt of the Remaining Settlement Amount the SA Parties will have fully performed their obligations pursuant to the Settlement Agreement and  no Actionable Event will have occurred.  The SA Parties agree that Al-Saleh has fully performed his obligations to date pursuant to the Settlement Agreement.

**Section 6**.  **DR Property Transfer.**  Section 9.2 of the Settlement Agreement is amended in its entirety to provide that:

2

Amendment to Settlement Agreement
Page 3 of 4

Notwithstanding anything in the Settlement Agreement, Abu-Naba'a hereby proposes to Al-Saleh to purchase all of Al-Saleh's right, title and interest in whatever interest Al-Saleh owns in the DR Property or companies involved with the DR Property for the total sum of $250,000.00 (two hundred fifty thousand dollars). Al-Saleh shall have three (3) business days from the Amendment Effective Date to accept or reject such offer. If Al-Saleh rejects such offer, then on or before March 31, 2017, Abu-Naba'a shall either (a) effectuate the transfer to Al-Saleh of whatever interest Al-Saleh owns in the DR Property or companies involved with the DR Property, or (b) execute and deliver to Al-Saleh a mortgage on the Mutiny Condominium (the "Mortgage") as security for Abu-Naba'a's obligations set forth in this subsection with respect to the DR Property, (the form of which Abu-Naba'a and Al-Saleh have already agreed upon in connection with the Settlement Agreement, but which shall be modified to reflect that the Mortgage is security solely for Abu-Naba'a's obligations pursuant to this subsection with respect to the DR Property) and shall thereafter continue to utilize best efforts to effectuate the transfer to Al-Saleh of whatever interest Al-Saleh owns in the DR Property or companies involved with the DR Property as soon as is reasonably practicable. If the Mortgage is necessary, the Mortgage shall stand as security for the obligation of Abu-Naba'a under this subsection and shall survive the payment of the Amended Settlement Amount, and the Forbearance Period. To the extent any dispute arises regarding performance under this subsection, such dispute shall be submitted to Scott Silverman of JAMS (or in the event he is no longer with JAMS, to another arbitrator of JAMS in Miami, Florida) to act as arbitrator of such dispute under the JAMS arbitration rules. The Parties agree to treat any decision rendered in such arbitration as final and binding. A failure to perform under this subsection shall not constitute an Actionable Event. Once Abu-Naba'a has complied with his obligations under this subsection or, if the dispute is submitted to arbitration, once Abu-Naba'a has complied with any order or award from the arbitration, then the mortgage on the Mutiny Condominium shall be released.

**Section 7.    Counterparts.**  This Amendment may be executed in any number of counterparts, each of which shall constitute an original but all together shall constitute but one and the same instrument.

**[SIGNATURES ON FOLLOWING PAGE]**

Amendment to Settlement Agreement
Page 4 of 4

**IN WITNESS WHEREOF**, the Parties hereto have caused this Amendment effective as of the Amendment Effective Date to be executed and delivered.

Harry Sargeant, III

Sign: _____

Print: _Horry Sorgent III_

Mustafa Abu-Naba'a

Sign: _____

Print: _____

Mohammad Anwar Farid Al-Saleh

Sign: _____

Print: _____

4

Scanned by CamScanner

Mustafa Abu-Naba'a

Sign: _____

Print: _____

Mohammad Anwar Farid Al-Saleh

Sign: _____

Print: _____

4

Amendment to Settlement Agreement
Page 4 of 4

**IN WITNESS WHEREOF**, the Parties hereto have caused this Amendment effective as of the Amendment Effective Date to be executed and delivered.


Harry Sargeant, III

Sign: _____

Print: _____


Mustafa Abu-Naba'a

Sign: _____

Print: _____


Mohammad Anwar Farid Al-Saleh

Sign: _____

Print: _____