# Exhibit D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No: 9:17-cv-81070-BLOOM/Hopkins

HARRY SARGEANT, III,

     Plaintiff,

     vs.

MAROIL TRADING, INC., SEA PIONEER
SHIPPING CORPORATION, WILMER
RUPERTI PEDROMO, DANIEL SARGEANT,
DANIEL HALL, and ANDREW PRESTON,

     Defendants,

     and

LATIN AMERICAN INVESTMENTS, LTD.,

     Intervenor.

_____/      **JURY TRIAL DEMANDED**

## SECOND AMENDED COMPLAINT

Plaintiff, Harry Sargeant, III ("HS3") hereby files this Second Amended Complaint against intervenor, Latin American Investments, Ltd. ("LAIL"), and the defendants, Daniel Sargeant ("DSargeant"), Daniel Hall ("Hall"), and Andrew Preston ("Preston") (collectively the "Defendants"), and states as follows:

## SUMMARY OF THE ACTION

1.     This is an action seeking injunctive and other equitable relief, compensatory and punitive damages, and asserting violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 *et seq.*; Florida's Computer Abuse and Data Recovery Act ("CADRA"), Fla. Stat. § 668.801 *et seq.*; and claims under Florida law for breach of contract, invasion of privacy, and civil conspiracy.

1

## PARTIES

2.      HS3 is a citizen and resident of Palm Beach County, Florida, United States of America.

3.      LAIL is a company incorporated in the Isle of Man, owned currently by DSargeant, James Sargeant, and Harry Sargeant, Jr. (collectively, the "Sargeant Family") in equal shares. HS3 previously served as a director and 25% shareholder in LAIL.  The other shareholders of LAIL at that time were DSargeant, James Sargeant, and Harry Sargeant, Jr.

4.      DSargeant is a citizen and resident of Boca Raton, Florida.  At all times herein material, DSargeant owned, controlled, and/or managed numerous Sargeant Family owned businesses, including LAIL.

5.      Hall is a citizen and resident of the United Kingdom ("UK"), and is a UK trained solicitor and employee of Burford Capital, LLC.  Hall is formally a director of Focus Intelligence, Ltd., an investigations firm acquired by Burford Capital, LLC in or about 2015.  As used herein, "Burford" shall refer collectively to both Burford Capital, LLC and Focus Intelligence, Ltd., and other affiliates and subsidiaries of Burford Capital, LLC.

6.      Preston is a citizen and resident of the UK.  Preston is a UK trained solicitor currently employed at Clyde & Co., and has served as legal counsel for LAIL and other Sargeant Family businesses.

7.      Nominal defendants Maroil Trading, Inc. ("Maroil") and Sea Pioneer Shipping Corp. ("SPSC") (collectively the "Panamanian Companies") are owned and controlled by Nominal Defendant Wilmer Ruperti Pedromo ("Ruperti"), a Venezuelan businessman (the Panamanian Companies and Ruperti are collectively referred to herein as the "Ruperti Parties").

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction over HS3's CFAA claim under 18 U.S.C. § 1030, and 28 U.S.C. § 1331, as such claim arises under the laws of the United States.

9.    This Court has subject matter jurisdiction over HS3's SCA claim under 18 U.S.C. § 2701 *et seq.*, and 28 U.S.C. § 1331, as such claim arises under the laws of the United States.

10.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over HS3's state-law claims under CADRA, his invasion of privacy and civil conspiracy tort claims, and the breach of contract claim, all asserted under Florida law, as these claims comprise the same case and controversy as the federal claims under CFAA and SCA.

11.    This Court has personal jurisdiction over LAIL because it submitted itself to the jurisdiction of this Court by voluntary intervention in this action.

12.    This Court has personal jurisdiction over DSargeant as he resides and is domiciled in Palm Beach County, Florida.

13.    This Court has personal jurisdiction over Hall under Florida's long arm statute, Florida Statutes Section 48.193, because *inter alia*, as set forth herein, Hall conspired with the other Defendants to commit a tort and violate federal and Florida law in Florida (*i.e.*, the violation of CFAA and CADRA and invasion of HS3's privacy), resulting in harm in Florida, and one or more overt acts in furtherance of the conspiracy were committed within this judicial district in Florida.

14.    This Court has personal jurisdiction over Preston under Florida's long arm statute, Florida Statutes Section 48.193, because *inter alia*, as set forth herein, Preston conspired with the other Defendants to commit a tort and violate federal and Florida law in Florida (*i.e.*, the violation of CFAA and CADRA and invasion of HS3's privacy), resulting in harm in Florida,

and one or more overt acts in furtherance of the conspiracy were committed within this judicial district in Florida.

15.     The Court has continuing jurisdiction over the Ruperti Parties pursuant to the order administratively closing the case as to the Ruperti Parties [ECF No. 91].

16.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims set forth in this Second Amended Complaint occurred in this judicial district.

## HS3 AND THE SARGEANT FAMILY BUSINESSES

17.     From in or about 1990 through 2012, HS3, DSargeant (brother), Harry Sargeant, Jr. (father), and James Sargeant (brother) owned, operated, and were employed by a number of for-profit Sargeant Family business entities engaged in the sale, transport, and distribution of asphalt and related petroleum products and materials (the "Sargeant Family Businesses"). Defendant LAIL was one such business entity.

18.     At all times herein material, the Sargeant Family Businesses were engaged in interstate and foreign commerce.

19.     At all times herein material, the Sargeant Family Businesses maintained a computer server (the "Sargeant Server") located in Florida within this judicial district at 3020 North Military Trail, Boca Raton, in Palm Beach County, Florida.

20.     The Sargeant Server was utilized, *inter alia*, in connection with the operation of a business in Florida within this judicial district and in connection with the conduct of interstate and foreign commerce from within this judicial district.

21.     At all times herein material, HS3 maintained and utilized his own email account on the Sargeant Server, denominated as hsargeantjr@sargeant.net (the "HS3 Email Account").

4

The HS3 Email Account was password protected, and HS3 did not provide the password associated with the HS3 Email Account to any of the Defendants or their representatives or agents. Access to the Sargeant Server was also password protected.

22. The HS3 Email Account and the Sargeant Server contained, *inter alia*, 478 separate business, personal, and confidential items belonging to and relating to HS3, including business information, business and personal communications, documents, Microsoft outlook email files, and personal, sensitive photographs and videos ("HS3 Material"). A summary and index of the HS3 Material was produced by counsel for LAIL on January 24, 2018, and a redacted copy of same is attached as **Exhibit A**.

23. The business information contained within the HS3 Material included certain details and communications regarding HS3's private business ventures, which were unrelated to the Sargeant Family Businesses. This business information included links to prototype operations of a new steam generator system being developed by one of HS3's businesses, trade articles, and updates on global business operations from employees of HS3's businesses.

24. The personal information contained within the HS3 Material included extremely sensitive videos and photographs of intimate activity and private consensual relations involving HS3.

25. HS3 never explicitly or implicitly authorized any of the Defendants to access the HS3 Email Account or to access or obtain the HS3 Material contained in the HS3 Email Account or on the Sargeant Server.

26. The Sargeant Family Businesses had no official or unofficial policies or procedures authorizing the Defendants, or anyone else, to access the HS3 Email Account or to

access or obtain the HS3 Material contained in the HS3 Email Account or on the Sargeant Server.

## THE DEFENDANTS' UNLAWFUL AGREEMENT

27.     In or about August 2016, the Defendants devised a scheme whereby they agreed together to, unlawfully and without authorization, access the HS3 Email Account, and to, unlawfully and without authorization and/or in excess of any authorization, access the Sargeant Server, obtain the HS3 Material, and exchange the HS3 Material for certain other illicit and confidential materials to advance their own individual and mutual interests.  The profit-minded Defendants intentionally agreed to exploit this unauthorized and unlawful access to such materials to reap financial gain.

28.     The Defendants intended for their scheme to result in harm inside Florida, where HS3 is a citizen and resident, and where the Sargeant Server, which stored/contained the HS3 Email Account, was located and utilized in connection with the operation of a business in Florida.

29.     In or about August 2016, Hall advised DSargeant, LAIL, and Preston that he had access to certain material regarding the Ruperti Parties ("Ruperti Material"), which was of great value to DSargeant, LAIL, and Preston.  Hall knew DSargeant, LAIL, and Preston had been seeking such information as part of efforts to recover tens of millions of dollars they believed the Ruperti Parties had misappropriated.

30.     Hall had access to the Ruperti Material through Burford's relationship with a separate Burford client, Sovcomflot, as the Ruperti Material was disclosed as part of litigation between Ruperti and Sovcomflot.  The Ruperti Material was subject to a confidential settlement between Sovcomflot and Ruperti, and a non-disclosure agreement ("NDA") as part of that

6

settlement. Hall nonetheless ignored any obligations to Burford client Sovcomflot and/or under the settlement between Sovcomflot and Ruperti and the NDA, and plotted to abuse his access to the Ruperti Material to advance the Defendants' conspiratorial agreement.

31. At that same time, Hall was engaged as an investigator in a bitter, global feud with HS3 seeking recovery of millions of dollars from HS3 on behalf of a separate Burford client, Mohammed Al-Saleh. As part of those efforts, Hall sought information regarding HS3 that Burford could use to leverage and/or extort HS3 into a payment or settlement. Hall knew he could do so by taking advantage of a known rift between HS3 on the one hand and DSargeant, LAIL, and Preston on the other.

32. Hall also knew DSargeant, LAIL, and Preston could unlawfully access the HS3 Material, and therefore proposed to provide to them the Ruperti Material in exchange for the HS3 Material.

33. In or about August 2016, the Defendants agreed together that DSargeant and LAIL would unlawfully access the HS3 Email Account, obtain the HS3 Material, and provide the HS3 Material to Hall. In exchange, the Defendants agreed together that Hall would access the Ruperti Material, disregard the settlement and the NDA between Sovcomflot and Ruperti applicable to the Ruperti Material, and provide the Ruperti Material to DSargeant, LAIL, and Preston, for Preston to use in litigation between LAIL and the Ruperti Parties.

34. DSargeant, LAIL, and Preston knew they had no authorization to access the HS3 Email Account and lacked authorization or exceeded any authorization they had to access the Sargeant Server, and no authorization to obtain the HS3 Material and/or to provide same to Hall. DSargeant, LAIL, and Preston also knew, or later became aware, that Hall would violate the

Sovcomflot settlement and NDA in order to access and provide to them the Ruperti Material in exchange for the HS3 Material.

35.     On or about October 6, 2016, in furtherance of their agreement, Hall provided to DSargeant, LAIL, and Preston, a portion of the Ruperti Material.

36.     On or about October 6, 2016, and again on or about October 28, 2016, DSargeant and LAIL unlawfully accessed the Sargeant Server and the HS3 Email Account in Florida, and obtained the HS3 Material from the HS3 Email Account.

37.     On or about October 28, 2016, DSargeant and LAIL provided the HS3 Material to Hall in exchange for the remainder of the Ruperti Material.

38.     On or about March 1, 2017, DSargeant, LAIL, and Preston utilized the Ruperti Material to prepare and file an action against Maroil and SPSC on behalf of LAIL in the High Court of Justice, London (the "London Litigation").

39.     On or about May 5, 2017, the Defendants met in London to discuss, *inter alia*, Hall's request to share in any proceeds from the London Litigation.  Hall advised DSargeant, LAIL, and Preston that, because he and/or Burford may be exposed to liability for the violation of the Sovcomflot settlement and the NDA, and the provision of the Ruperti Material in exchange for the HS3 Material, that he (Hall) should receive compensation from them (DSargeant, LAIL, and Preston).

40.     On or about May 11, 2017, Preston, on behalf of himself, DSargeant, and LAIL, communicated with Hall regarding Hall's request for compensation, and indicated a willingness to consider providing Hall a portion of any recovery from the Ruperti Parties in the London Litigation on the basis that the information Hall provided was of great value to DSargeant/LAIL in advancing that litigation.

41.     On or about July 26, 2017, Preston, on behalf of himself, DSargeant, and LAIL, again communicated with Hall to advise that if a substantial recovery were made in the London Litigation then DSargeant would be happy to sit down with Hall to discuss some form of a success fee.

42.     Preston expressly averred under oath that the Ruperti Material provided the evidence essential to the successful assertion of the claims advanced in the London Litigation. LAIL has now recovered in excess of $30 million from the Ruperti Parties in the London Litigation as a result of the Defendants' unlawful scheme.

## COUNT I
## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT
### *Against LAIL and DSargeant*

43.     Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 42 above as if herein fully set forth.

44.     At all times herein material, the Sargeant Server and the computers used in the Sargeant Family Businesses constituted "protected computers" as defined in 18 U.S.C. § 1030(e)(2)(B), as they were used by the Sargeant Family Businesses to engage in interstate and foreign commerce and communications, including e-mail communications with individuals located out of state and in foreign countries, and to otherwise conduct the Sargeant Family Businesses across state lines, via the internet.

45.     On or about October 6, 2016, and again on or about October 28, 2016, Defendants LAIL and DSargeant intentionally accessed the Sargeant Server and one or more of the computers used in the Sargeant Family Businesses and thereby obtained information, namely the HS3 Material, from a protected computer without authorization and/or by exceeding any authorized access, in violation of 18 U.S.C. § 1030(a)(2)(C).

9

46.     The HS3 Material accessed by LAIL and DSargeant was maintained on protected computers within the meaning of 18 U.S.C. § 1030(e)(2)(B).

47.     LAIL and DSargeant were not authorized to access and/or exceeded their authorized access to the protected computers and the HS3 Material.

48.     By engaging in the conduct described above, LAIL and DSargeant intentionally accessed at least one protected computer without authorization or exceeded any authorized access, and thereby obtained information from a protected computer in violation of the CFAA, 18 U.S.C. § 1030(a)(2)(C).

49.     As a result of LAIL and DSargeant engaging in the conduct described above, HS3 suffered damage and LAIL and DSargeant received an unjust benefit and enrichment in the form of the profits derived from the recovery in excess of $30 million in the London Litigation.

50.     LAIL and DSargeant's violations of the CFAA and misuse of the HS3 Material in order to benefit from the London Litigation were inequitable, and it would be inequitable for LAIL and DSargeant to retain such benefit.

51.     As a result of LAIL and DSargeant's violations of the CFAA, 18 U.S.C. § 1030(a)(2)(C), HS3 suffered "damage" and/or "loss" under the CFAA, in an amount exceeding $5,000.00, and HS3 is entitled to an award of compensatory damages, injunctive and other equitable relief under 18 U.S.C. § 1030(g).  Such an award includes the cost of reasonably investigating and otherwise responding to the CFAA violations (including the hiring of a forensic computer analyst to conduct investigation and analysis).

52.     WHEREFORE, HS3 asks the Court to enter a judgment against Defendants LAIL and DSargeant awarding him (a) HS3's actual damages, including without limitation, compensatory, incidental, and consequential damages; (b) injunctive and other equitable relief,

including without limitation, an injunction prohibiting LAIL and DSargeant from disclosing the HS3 Material and requiring that they return all such information in their possession to HS3, disgorgement of DSargeant and LAIL's profits and unjust enrichment resulting from their unlawful acts, and a constructive trust over such profits; and (c) such additional relief that this Court deems fair and equitable.

## COUNT II
## CONSPIRACY TO VIOLATE THE CFAA
### *Against LAIL, DSargeant, Hall, and Preston*

53.     Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 42, and 44 through 48, above as if herein fully set forth.

54.     In or about August 2016, the Defendants conspired to commit an offense under the CFAA, 18 U.S.C. § 1030(a)(2)(C), and to thereby unlawfully obtain the HS3 Material, all in violation of the CFAA, 18 U.S.C. § 1030(b).

55.     The overt acts committed in furtherance of the Defendants' unlawful conspiracy include, but are not limited to: On or about October 6, 2016, and again on or about October 28, 2016, Defendants DSargeant and LAIL intentionally accessed the Sargeant Server and the HS3 Email Account and thereby obtained information, namely the HS3 Material, from a protected computer without authorization and/or by exceeding any authorized access, in violation of 18 U.S.C. § 1030(a)(2)(C).

56.     On or about October 28, 2016, DSargeant and LAIL provided the HS3 Material to Hall in exchange for the remainder of the Ruperti Material.

57.     On or about October 28, 2016, Preston received the Ruperti Materials obtained from Hall in exchange for the HS3 Material and utilized the Ruperti Materials to advance LAIL's position in the London Litigation.

58.     On or about March 1, 2017, Preston utilized and incorporated the Ruperti Materials received from Hall in exchange for the HS3 Materials into a filing in the London Litigation to advance LAIL's interest in that litigation.

59.     The Defendants also engaged in numerous personal and electronic communications in furtherance of their conspiracy, including without limitation on May 5, May 11, and July 26, 2017.

60.     By engaging in the conduct herein set forth, the Defendants violated the CFAA, 18 U.S.C. § 1030(b).

61.     As a result of the Defendants' violation of the CFAA, 18 U.S.C. § 1030(b), HS3 suffered "damage" and/or "loss" under the CFAA, in an amount exceeding $5,000.00, and HS3 is entitled to an award of compensatory damages, injunctive and other equitable relief under 18 U.S.C. § 1030(g).  Such an award includes the cost of reasonably investigating and otherwise responding to the CFAA violations (including the hiring of a forensic computer analyst to conduct investigation and analysis).

62.     WHEREFORE, HS3 asks the Court to enter a judgment against the Defendants awarding him (a) HS3's actual damages, including without limitation, compensatory, incidental, and consequential damages; (b) injunctive and other equitable relief, including without limitation, an injunction prohibiting DSargeant, Preston, Hall, and LAIL from disclosing the HS3 Material and requiring that the return of all such information in their possession to HS3, disgorgement of DSargeant and LAIL's profits and unjust enrichment resulting from their unlawful acts, and a constructive trust over such profits; and (c) such additional relief that this Court deems fair and equitable.

## COUNT III
## VIOLATION OF THE STORED COMMUNICATIONS ACT
### *Against LAIL and DSargeant*

63.     Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 42 above as if herein fully set forth.

64.     At all times herein material, the Sargeant Server was a "facility" through which an electronic communication service was provided, as that term is used under the SCA.

65.     At all times herein material, HS3 maintained and operated the HS3 Email Account on the Sargeant Server.  The Sargeant Server holds all emails until downloaded to a local computer for viewing and once downloaded, maintains backup copies of all emails opened on a local computer.

66.     At all times herein material, the HS3 Material was in "electronic storage" in the above-mentioned facility (the Sargeant Server), as defined under the SCA, 18 U.S.C. § 2510(17).

67.     On or about October 6, 2016, and again on or about October 28, 2016, Defendants DSargeant and LAIL intentionally accessed without authorization or in excess of any authorization the Sargeant Server and thereby obtained from a facility electronic communications, namely the HS3 Material, while same was in electronic storage in such system, in violation of the SCA, 18 U.S.C. § 2701.

68.     HS3 has been damaged as a result of DSargeant and LAIL's violations of the SCA, 18 U.S.C. § 2701, and is entitled, under 18 U.S.C. § 2707(b), to an award of actual damages, injunctive relief, and to an award of the profits made by DSargeant and LAIL as a result of the violations of the SCA.

69.     WHEREFORE, HS3 asks the Court to enter a judgment against DSargeant and LAIL awarding him (a) HS3's actual damages; (b) DSargeant and LAIL's profits from

misappropriating and disclosing the HS3 Material in violation of the SCA pursuant to 18 U.S.C. § 2707(b)(2); (c) injunctive and other equitable or declaratory relief as may be appropriate, pursuant to 18 U.S.C. § 2707(b)(1), including without limitation, an order prohibiting DSargeant and LAIL from disclosing the HS3 Material and requiring the return all such information in its possession to HS3; (d) punitive damages, pursuant to 18 U.S.C. § 2707(c), for wilfully and intentionally violating the SCA; (e) HS3's reasonable attorney's fees and other litigation costs, pursuant to 18 U.S.C. § 2707(b)(3); and (f) such additional relief that this Court deems fair and equitable.

<u>**COUNT IV**</u>
**VIOLATION OF FLORIDA COMPUTER ABUSE AND DATA RECOVERY ACT**
*Against LAIL and DSargeant*

70.     Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 42 above as if herein fully set forth.

71.     At all times herein material, the Sargeant Server constituted a "protected computer" as defined under CADRA, Florida Statutes Section 668.802(6), because it was used in connection with the operation of the Sargeant Family Businesses and stored information, programs or code in connection with the operation of the Sargeant Family Businesses that could be accessed only by employing a technological access barrier (a password).  At all times herein material, the HS3 Email Account was protected with a password authentication system, which constitutes a "technological access barrier" as defined under CADRA, Florida Statutes Section 668.802(7).

72.     At all times herein material, the HS3 Material was stored on the Sargeant Server and constituted information stored in a protected computer.

73. HS3 is the owner of the HS3 Material, information stored in a protected computer, and used certain HS3 Material in connection with the operation of a business.

74. On or about October 6, 2016, and again on or about October 28, 2016, Defendants LAIL and DSargeant knowingly, with intent to cause harm or loss, and without authorization or in excess of any authorization, accessed the Sargeant Server and the HS3 Email Account, and one or more of the computers used in the Sargeant Family Businesses, and thereby obtained information, namely the HS3 Material, from a protected computer without authorization and as a result caused harm or loss, all in violation of CADRA, Florida Statutes Section 668.803(1).

75. Defendants LAIL and DSargeant committed the acts set forth herein knowingly and with intent to cause "loss" as defined under CADRA, Florida Statutes Section 668.802(5), including intending to profit as a result of their CADRA violations.

76. Defendants LAIL and DSargeant in fact gained in excess of $30 million in profits as a direct result of their CADRA violations through the recovery in the London Litigation.

77. HS3 has been damaged by LAIL and DSargeant's violations of CADRA, and is entitled under CADRA, Florida Statutes Section 668.804(1), to recover such damages, to recover LAIL and DSargeant's profits gained as a result of their CADRA violations, to injunctive relief to prevent any future violations of CADRA, and to recovery of the HS3 Material.

78. WHEREFORE, HS3 asks the Court to enter a judgment against LAIL and DSargeant awarding him (a) HS3's actual damages pursuant to Fla. Stat. § 668.04(1)(a); (b) LAIL and DSargeant's profits from violating CADRA that are not included in HS3's actual damages, pursuant to Fla. Stat. § 668.04(1)(b); (c) injunctive and other equitable relief from the Court to prevent a future violation of § 668.803, including without limitation, an order

prohibiting LAIL and DSargeant from further disclosing the HS3 Material; (d) an order requiring LAIL and DSargeant to return the HS3 Material and all copies thereof, pursuant to Fla. Stat. § 668.04(1)(d); (e) HS3's reasonable attorney's fees and other litigation costs, pursuant to Fla. Stat. § 668.04(2), as the prevailing party; and (e) such additional relief that this Court deems fair and equitable.

## COUNT V
## BREACH OF CONTRACT
### *Against LAIL and DSargeant*

79.     Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 42, as if herein fully set forth.

80.     On or about April 18, 2015, HS3, LAIL, and DSargeant entered into a written contract for the purposes of resolving certain litigation between them and related Sargeant Family and other business entities (the "Sargeant Settlement").  A true and correct copy of the Sargeant Settlement is attached hereto as **Exhibit B** and incorporated herein by reference.

81.     The Sargeant Settlement included, *inter alia*, a provision prohibiting the parties from "mak[ing] any statement, releas[ing] any document or otherwise tak[ing] any action, directly or indirectly, publicly or privately, which may or will tend to disparage the other in any manner whatsoever." (the "Non-disparagement Provision").

82.     At all times herein material, LAIL and DSargeant therefore were contractually bound under the Sargeant Settlement to not "make any statement, release any document or otherwise take any action, directly or indirectly, publicly or privately, which may or will tend to disparage [Plaintiff] in any manner whatsoever."  Exhibit B at 19.

83.     On or about October 6, 2016, and again on or about October 28, 2016, LAIL and DSargeant unlawfully accessed the Sargeant Server and the HS3 Email Account, and unlawfully obtained the HS3 Material from that account.

84.     On or about October 28, 2016, LAIL and DSargeant provided the HS3 Material to Hall in direct violation of the Sargeant Settlement Non-disparagement Provision.

85.     LAIL and DSargeant's actions in unlawfully obtaining, and then disclosing to HS3's known adversary and others, the HS3 Material, which included extremely sensitive videos and photographs of intimate activity and private consensual relations involving HS3, were actions that "may or will tend to disparage [HS3] in any manner whatsoever" in violation of the Sargeant Settlement Non-disparagement Provision.

86.     LAIL and DSargeant's actions as set forth herein therefore constitute a direct violation of the Non-disparagement Provision.

87.     HS3 has suffered damage as a result of Defendant LAIL and DSargeant's breach of the Sargeant Settlement Non-disparagement Provision, including, *inter alia*, reputational harm, costs of recovery of the HS3 Material, and increased litigation costs and exposure.

88.     WHEREFORE, HS3 asks the Court to enter a judgment against LAIL and DSargeant awarding him (a) HS3's actual damages, including without limitation, compensatory, incidental, and consequential damages; (b) HS3's reasonable attorney's fees and other litigation costs, as the prevailing party under paragraph 9 of the Sargeant Settlement; and (c) such additional relief that this Court deems fair and equitable.

## COUNT VI
## INVASION OF PRIVACY (INTRUSION)
### *Against LAIL and DSargeant*

89.     Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 42 above as if herein fully set forth.

90.     The HS3 Email Account contained the HS3 Material, which included extremely sensitive personal information regarding HS3.

91.     HS3 had a reasonable expectation of privacy as to the HS3 Email Account and as to the HS3 Material stored/contained in the HS3 Email Account on the Sargeant Server.  The HS3 Email Account was password protected.  Access to the Sargeant Server was also password protected.  There were no explicit or implicit policies or procedures authorizing the Defendants, or anyone else, to access the HS3 Email Account, the HS3 Material, or the Sargeant Server.

92.     HS3 never explicitly or implicitly authorized the Defendants, the Sargeant Family, the Sargeant Family Businesses, or any of their employees, shareholders, representatives or agents to access the HS3 Email Account or the HS3 Material on the Sargeant Server.

93.     On or about October 6, 2016, and again on or about October 28, 2016, LAIL and DSargeant electronically intruded into the HS3 Email Account on the Sargeant Server and obtained the HS3 Material from the HS3 Email Account.

94.     LAIL and DSargeant's actions in obtaining the HS3 Material, which contained, *inter alia*, extremely sensitive videos and photographs of intimate activity and private consensual relations involving HS3, and then disclosing the HS3 Material to Hall and others for pecuniary gain, is conduct unacceptable in a civilized community and clearly offensive to any reasonable person.

95.     LAIL and DSargeant's actions have caused HS3 significant damage and harm, including, but not limited to, lost profits, economic damages, reputational harm, and LAIL's profits from recovery in the London Litigation.

96.     WHEREFORE, HS3 asks the Court to enter a judgment against LAIL and DSargeant awarding him (a) HS3's actual damages, including without limitation, his lost profits and compensatory, incidental, and consequential damages; (b) punitive damages because LAIL and DSargeant wilfully and intentionally invaded HS3's privacy to access, review and disclose the HS3 Material; and (c) such additional relief that this Court deems fair and equitable.

## COUNT VII
## INVASION OF PRIVACY (PUBLIC DISCLOSURE OF PRIVATE FACTS)
### *Against LAIL and DSargeant*

97.     Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 42 above as if herein fully set forth.

98.     On or about October 6, 2016, and again on or about October 28, 2016, LAIL and DSargeant electronically intruded into the HS3 Email Account on the Sargeant Server and obtained the HS3 Material from the HS3 Email Account.

99.     The HS3 Material contained, *inter alia*, private and extremely sensitive videos and photographs of intimate activity and private consensual relations involving HS3.

100.    On or about October 28, 2016, LAIL and DSargeant then publicized the HS3 Material to Hall and an unknown number of other persons through electronic and/or other means.

101.    Upon information and belief, Hall, on or about October 28, 2016, and thereafter, further publicized the HS3 Material to others within Burford, and to an unknown number of other persons, through electronic and/or other means.

19

102.    The HS3 Material was and is highly personal, private, and sensitive in nature and not of legitimate public interest.

103.    The publication of the HS3 Material as set forth herein would be considered offensive and objectionable and would cause mental distress and injury to a reasonable person having ordinary dealings and sensibilities.

104.    LAIL and DSargeant's unauthorized actions have caused HS3 significant damage and harm, including, but not limited to, lost profits, economic damages, reputational harm, and LAIL's profits from recovery in the London Litigation.

105.    WHEREFORE, HS3 asks the Court to enter a judgment against LAIL and DSargeant awarding him (a) HS3's actual damages, including without limitation, his lost profits and compensatory, incidental, and consequential damages; (b) punitive damages because LAIL and DSargeant wilfully and intentionally invaded HS3's privacy to access, review, and publicize the HS3 Material; and (c) such additional relief that this Court deems fair and equitable.

**COUNT VIII**
**CIVIL CONSPIRACY**
*Against LAIL, DSargeant, Hall and Preston*

106.    Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 42 above as if set forth herein in full.

107.    In or about August, 2016, the Defendants conspired together and agreed to invade HS3's privacy and violate CADRA by unlawfully obtaining, using and publicizing the HS3 Material.

108.    The following overt acts were committed in furtherance of the Defendants' unlawful conspiracy: On or about October 6, 2016, and again on or about October 28, 2016, Defendants DSargeant and LAIL intentionally accessed the Sargeant Server and the HS3 Email

20

Account in Florida and thereby obtained information, namely the HS3 Material, from a protected computer without authorization and/or by exceeding any authorized access, in violation of HS3's right to privacy and in violation of CADRA.

109.    On or about October 28, 2016, DSargeant and LAIL provided the HS3 Material to Hall in exchange for the remainder of the Ruperti Material.

110.    On or about October 28, 2016, LAIL and DSargeant then publicized the HS3 Material to Hall and an unknown number of other persons through electronic and/or other means.

111.    Upon information and belief, Hall on or about October 28, 2016, and thereafter further publicized the HS3 Material to others within Burford, and to an unknown number of other persons, through electronic and/or other means.

112.    On or about October 28, 2016, Preston received the Ruperti Materials and utilized such materials to advance LAIL's position in the London Litigation.

113.    On or about March 1, 2017, Preston utilized and incorporated the Ruperti Materials received from Hall in exchange for the HS3 Materials into a filing in the London Litigation to advance LAIL's interest in that litigation.

114.    The Defendants also engaged in numerous personal and electronic communications in furtherance of their conspiracy, including without limitation on May 5, May 11, and July 26, 2017.

115.    As set forth herein, certain overt acts in furtherance of the conspiracy took place within this judicial district in Florida.

116.    The Defendants intended for their tortious and unlawful acts to result in harm inside Florida, where HS3 is a citizen and resident, and where the Sargeant Server was located and utilized in connection with the operation of a business in Florida.

21

117.    HS3 has suffered damage as a result of the Defendants' unlawful and conspiratorial conduct including, but not limited to, lost profits, economic damages, and reputational harm.

118.    WHEREFORE, HS3 asks the Court to enter a judgment against LAIL and DSargeant awarding him (a) HS3's actual damages, including without limitation, his lost profits and compensatory, incidental, and consequential damages; (b) punitive damages because the Defendants wilfully and intentionally conspired to invade HS3's privacy to further their own pecuniary interest; and (c) such additional relief that this Court deems fair and equitable.

## PRAYER FOR RELIEF

**WHEREFORE**, HS3 respectfully requests judgment against the Defendants as follows:

(a)     That the Court enter judgment for HS3 on all claims for relief asserted in the Second Amended Complaint;

(b)     That the Court award HS3's actual damages, including lost profits and compensatory, incidental, and consequential damages in an amount to be determined at trial with interest at the legal rate;

(c)     That the Court award HS3 damages in the form of LAIL's profits from misappropriating the HS3 Material, beyond his actual damages, pursuant to Florida Statutes, Sections 668.804(1)(b) and 18 U.S.C. § 2707(c), in an amount to be determined at trial with interest at the legal rate;

(d)     That the Court issue an injunction, or other equitable relief, (1) prohibiting Defendants and any of their agents from disclosing or distributing HS3's personal information to any other person; (2) directing the Defendants and any of their agents to return all HS3 Material back to HS3, deleting all copies thereof on their respective computer systems, and certifying completion to this Court and HS3; and (3) directing the Defendants to disgorge all profits obtained as a result of possession or exchange of the HS3 Material to HS3;

(e)     That the Court award HS3 punitive damages pursuant to 18 U.S.C. § 2707(c) and for Defendants' willful invasion of privacy and unlawful conspiracy;

(f)     That the Court award HS3 his reasonable attorney's fees;

(g)     That the Court assess all costs against Defendants;

(h)     That the Court award HS3 pre- and post-judgment interest as applicable; and

(i)     Any other relief this Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial on all issues so triable.

Dated:  February 20, 2018

Respectfully Submitted,

*/s/ Christopher M. Kise*
Christopher M. Kise
Florida Bar No. 855545
ckise@foley.com
Melissa B. Coffey
Florida Bar No. 84090
mcoffey@foley.com
Joshua M. Hawkes
Florida Bar No. 112539
jhawkes@foley.com
**FOLEY & LARDNER LLP**
106 East College Avenue, Suite 900
Tallahassee, FL 32301-7732
Telephone: (850) 222-6100
Facsimile: (850) 561-6475

Gregory W. Coleman
Florida Bar No. 846831
gcoleman@lawclc.com
**CRITTON, LUTTIER & COLEMAN, LLP**
303 Banyan Blvd., Suite 400
West Palm Beach, FL 33401
Telephone: (561) 842-2820
Facsimile: (561) 844-6929

Ramon A. Abadin
Florida Bar No. 707988
rabadin@abadinlaw.com
**RAMON A. ABADIN, P.A.**
2333 Ponce de Leon Blvd, Suite 314
Coral Gables, FL 33134
Telephone:  (305) 768-9839
Facsimile: (786) 217-0133

*Attorneys for Harry Sargeant, III*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by electronic mail on February 20, 2018 on all parties of record reflected in the Service List below.

## SERVICE LIST

Charles H. Lichtman
Jeffrey S. Wertman
BERGER SINGERMAN LLP
350 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, Florida 33301
Telephone: (954) 525-9900
Fax: (954) 523-2872
clichtman@bergersingerman.com
jwertman@bergersingerman.com

*Attorneys for Intervenor-Defendant Latin
American Investments, Ltd.*

By:   */s/ Joshua M. Hawkes*
       Joshua M. Hawkes

# EXHIBIT A

**From:** Jeffrey S. Wertman [mailto:JWertman@bergersingerman.com]
**Sent:** Wednesday, January 24, 2018 2:32 PM
**To:** Kise, Chris
**Cc:** Gregory W. Coleman
**Subject:** RE: HS3/Lail - Flash Drive Review

Attached is the directory listing.

Here are the metrics from our IT Dept.:

Total of 478 documents, including attachments on this flash drive.

278 parent emails. The remaining 200 are attachments to those emails. The file types and their respective counts for the 478 documents on this drive are shown below.

| File Type | Count |
|---|---|
| Microsoft Outlook Message File | 278 |
| JPEG File Interchange | 93 |
| Text - ANSI - 8bit | 70 |
| QuickTime Movie | 30 |
| Internet HTML | 5 |
| Adobe Acrobat (PDF) | 1 |
| ISO Base Media File Format | 1 |

-----Original Message-----
From: CKise@foley.com [mailto:CKise@foley.com]
Sent: Wednesday, January 24, 2018 2:01 PM
To: Jeffrey S. Wertman
Cc: Gregory W. Coleman; CKise@foley.com
Subject: HS3/Lail - Flash Drive Review

jeffrey

following up on the hearing and our conversation.

greg can be at your office in ft lauderdale at 930am tomorrow.  please send us today as soon as able a copy of the flash drive directory.  you noted there are approximately 278 files on the drive but you do not as yet know volume, content, etc.  but with that number we are hoping the initial discussion tomorrow will not take more than an hour or two.  getting the directory this afternoon will help keep this moving.

let's plan to talk again at 245pm today if that works.  we can discuss what we will need to report to the magistrate.

thanks

best

Sent from my iPad

Directory Listing.txt
5 Star Hotels Ireland  5 Star Hotels In Ireland  Hotels In Clare - The Lodge at
Doonbeg  Co  Clare.msg
alexander mcqueen fur coat - Google Search.msg
As Taxes Rise  France's Richest Man Eyes Belgium - Businessweek.msg
Awesome  `America Needs Mitt Romney' Blimp Flies Over Obama Rally in Columbus  Ohio
(Photos)  The Rightnewz.msg
Bakersfield-20120813-00047 jpg.msg
Best Steaks - AskMen.msg
Boynton Beach-Delray Beach-20111104-00022 jpg (20).msg
Boynton Beach-Delray Beach-20111104-00022 jpg.msg
Boynton Beach-Delray Beach-20111104-00023 jpg (21).msg
Boynton Beach-Delray Beach-20111104-00023 jpg.msg
Check this out!.msg
Ferrari Maserati of Atlanta    2013 Maserati GranTurismo - New Maserati Vehicles.msg
Forever Yours (34).msg
Forever Yours.msg
Fredriksen to Spend $3 Billion From Seadrill Stake on Ships  Arctic Says - Bloomberg
(23).msg
Fredriksen to Spend $3 Billion From Seadrill Stake on Ships  Arctic Says -
Bloomberg.msg
FW   (10).msg
FW   (11).msg
FW   (12).msg
FW   (13).msg
FW   (14).msg
FW   (18).msg
FW   (19).msg
FW   (8).msg
FW   (9).msg
Fw  (1).msg
Fw  (2).msg
Fw  (24).msg
Fw  (25).msg
Fw  (26).msg
Fw  (27).msg
Fw  (28).msg
Fw  (3).msg
Fw  (5).msg
Fw  (6).msg
Fw  (7).msg
FW  .msg
Fw  alexander mcqueen fur coat - Google Search.msg
Fw  An opportunity for you and your company in Congo (2).msg
Fw  An opportunity for you and your company in Congo.msg
Fw  C  Crist (22).msg
Fw  C  Crist.msg
Fw  carole rome - Google Search (2).msg
Fw  carole rome - Google Search.msg
Fw  Dinner in Calgary on Wednesday.msg
Fw  Emailing  Report St  Thomas Aquinas lacrosse player suspended for punching St
Andrew1s Jordan Todd  High School Buzz.msg
Fw  Fwd  Letter to King Abdullah.msg
Fw  Fwd  Monica Lewinski Strikes Back !!!!! (32).msg
Fw  Fwd  Monica Lewinski Strikes Back !!!!!.msg
Fw  Fwd  New Navy Ships.msg
Fw  Fwd  Six Truths in Life (2).msg
Fw  Fwd  Six Truths in Life.msg
Fw  Fwd  Talk about luck .msg
Fw  Fwd  Wall Street Journal Sizes Up Obama --SUPER PRICELESS.msg
Fw  Fwd  Wilmers case !.msg
Fw  Fwd  Wondering why! (2).msg
Fw  Fwd  Wondering why!.msg
Fw  Happy New Year!.msg

Directory Listing.txt

```
Fw      Redacted   !I.msg
Fw          Redacted    ! He demolished her! (2).msg
FW          Redacted    ! He demolished her! (3).msg
Fw          Redacted    ! He demolished her! (34).msg
FW          Redacted     ! He demolished her!.msg
Fw  Men are not Complicated (2).msg
Fw  Men are not Complicated.msg
Fw  Miami (2).msg
Fw  Miami.msg
Fw  Nails Booth.msg
Fw  new med.msg
Fw  Noles vs Gators.msg
Fw  Penta II test afternoon of 12-14-2012.msg
Fw  Police close Paris swingers club - France - RFI (2).msg
Fw  Police close Paris swingers club - France - RFI.msg
Fw  Rashad on Saudi TV interview.msg
Fw  SANTO DOMINGO  Dominican Republic  Following the trail of Sen  Robert Menendez
scandal leads to dead end in Dominican Republic - Political Currents - MiamiHerald
com.msg
Fw  So nice to meet you guys.msg
Fw  steam generator (44).msg
Fw  Steam generator video (45).msg
Fw  Steam generator video.msg
Fw  steam generator.msg
Fw  This just about sums it all up.msg
Fw  THREE LEGENDARY AMERICANS      .msg
Fw  WHY DON'T YOU CHANGE FROM TANKERS TO CRUISE SHIPS   (2).msg
Fw  WHY DON'T YOU CHANGE FROM TANKERS TO CRUISE SHIPS  .msg
Fw .msg
Fwd   (35).msg
Fwd   (36).msg
Fwd   (37).msg
Fwd   (38).msg
Fwd   (39).msg
Fwd   (40).msg
Fwd   (41).msg
Fwd   .msg
Fwd  1.msg
Fwd  Greeting from the big geek !!.msg
Fwd  This is a hoot! Obama & Reagan.msg
Fwd  Tr   Fwd  Saudi women can now drive (30).msg
Fwd  Tr   Fwd  Saudi women can now drive.msg
Fwd  UD   Your New Mistress-Friendly Date Spot.msg
Good Morning Amor           Redacted           ! .msg
IMG-20111031-00006 jpg (35).msg
IMG-20111031-00006 jpg.msg
IMG-20111104-00020 jpg (36).msg
IMG-20111104-00020 jpg.msg
IMG_0574 jpeg.msg
Lochte favors partying  hookups at Games - USATODAY com.msg
Miami Condo Market  Bust to Boom  - US Business News Blogs - CNBC (37).msg
Miami Condo Market  Bust to Boom  - US Business News Blogs - CNBC.msg
On date with Jessy.msg
Parrot by Starck - ZIKMU IN COLOR - Introduction.msg
Police close Paris swingers club - France - RFI (38).msg
Police close Paris swingers club - France - RFI.msg
Police eager to find Jet Ski thieves  Palm Beach County News - WPBF Home.msg
Re  (1).msg
RE  (10).msg
RE  (11).msg
RE  (12).msg
RE  (13).msg
RE  (14).msg
```

Directory Listing.txt

```
RE  (15).msg
RE  (16).msg
RE  (17).msg
RE  (18).msg
RE  (19).msg
Re  (2).msg
RE  (20).msg
RE  (21).msg
RE  (22).msg
RE  (23).msg
RE  (24).msg
RE  (25).msg
RE  (26).msg
RE  (27).msg
RE  (28).msg
RE  (29).msg
Re  (3).msg
RE  (30).msg
RE  (31).msg
RE  (32).msg
RE  (33).msg
RE  (34).msg
RE  (35).msg
RE  (36).msg
RE  (37).msg
RE  (38).msg
RE  (39).msg
RE  (4).msg
RE  (40).msg
RE  (41).msg
RE  (42).msg
RE  (43).msg
RE  (44).msg
RE  (45).msg
Re  (46).msg
Re  (47).msg
Re  (48).msg
Re  (49).msg
RE  (5).msg
Re  (50).msg
Re  (51).msg
Re  (52).msg
Re  (53).msg
Re  (54).msg
Re  (55).msg
Re  (56).msg
Re  (57).msg
Re  (58).msg
Re  (59).msg
RE  (6).msg
Re  (60).msg
Re  (61).msg
Re  (62).msg
Re  (63).msg
Re  (64).msg
Re  (65).msg
Re  (66).msg
Re  (67).msg
Re  (68).msg
Re  (69).msg
RE  (7).msg
Re  (70).msg
Re  (71).msg
```

Page 3

Directory Listing.txt
```
Re  (72).msg
RE  (8).msg
RE  (9).msg
Re  .msg
Re  Fwd  (1).msg
Re  Fwd  (2).msg
Re  Fwd  (29).msg
Re  Fwd  (3).msg
Re  Fwd  (30).msg
Re  Fwd  (31).msg
Re  Fwd  IMG_0497 jpg.msg
Re  Fwd  Post Turtle.msg
Re  Fwd  UD   Your New Mistress-Friendly Date Spot (33).msg
Re  Fwd  UD   Your New Mistress-Friendly Date Spot.msg
Re  Fwd .msg
Re  Good Morning Amor              Redacted              ! .msg
Re    Redacted   !I.msg
Re  IMG_0574 jpeg.msg
Re  IMG_1517 jpeg.msg
Re  New Navy Ships.msg
Re  On date with Jessy.msg
Re  Parrot by Starck - ZIKMU IN COLOR - Introduction.msg
Re  Ur fav Mistress.msg
Re .msg
Report  Charlie Crist paid men to hide gay affair   The News-Press  news-press
com.msg
SANTO DOMINGO  Dominican Republic  Following the trail of Sen  Robert Menendez
scandal leads to dead end in Dominican Republic - Political Currents - MiamiHerald
com.msg
Secret Service agents relieved in Colombia amid prostitution allegations - CNN
com.msg
Squirrel monkey named 'Banana-Sam' stolen from SF Zoo   www ktvu com (43).msg
Squirrel monkey named 'Banana-Sam' stolen from SF Zoo   www ktvu com.msg
Test (2).msg
Test.msg
The Risk Of Being A Shipping Magnate - Forbes.msg
Untitled (1).msg
Untitled (10).msg
Untitled (11).msg
Untitled (12).msg
Untitled (13).msg
Untitled (14).msg
Untitled (15).msg
Untitled (16).msg
Untitled (17).msg
Untitled (18).msg
Untitled (19).msg
Untitled (2).msg
Untitled (20).msg
Untitled (21).msg
Untitled (22).msg
Untitled (23).msg
Untitled (24).msg
Untitled (25).msg
Untitled (26).msg
Untitled (27).msg
Untitled (28).msg
Untitled (29).msg
Untitled (3).msg
Untitled (30).msg
Untitled (31).msg
Untitled (32).msg
Untitled (33).msg
```

Directory Listing.txt

```
Untitled (34).msg
Untitled (35).msg
Untitled (36).msg
Untitled (37).msg
Untitled (38).msg
Untitled (39).msg
Untitled (4).msg
Untitled (40).msg
Untitled (41).msg
Untitled (42).msg
Untitled (43).msg
Untitled (44).msg
Untitled (45).msg
Untitled (46).msg
Untitled (47).msg
Untitled (48).msg
Untitled (49).msg
Untitled (5).msg
Untitled (50).msg
Untitled (51).msg
Untitled (52).msg
Untitled (53).msg
Untitled (54).msg
Untitled (55).msg
Untitled (6).msg
Untitled (7).msg
Untitled (8).msg
Untitled (9).msg
Untitled 1.msg
Untitled 2.msg
Untitled 3.msg
Untitled 4.msg
Untitled 5.msg
Untitled 6.msg
Untitled 7.msg
Untitled.msg
Ur fav Mistress.msg
```

# EXHIBIT B

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| In re: | Case No. 14-29027-EPK |
| TRIGEANT HOLDINGS, LTD., *et al.*,[1] | Chapter 11 |
| Debtors. | (Jointly Administered) |

### DEBTORS' NOTICE OF FILING
### FULLY EXECUTED COPY OF SARGEANT SETTLEMENT AGREEMENT

Trigeant Holdings, Ltd., Trigeant, LLC, and Trigeant, Ltd., debtors and debtors in possession in the above-captioned bankruptcy cases (collectively, the "**Debtors**"), by and through undersigned counsel, file a fully executed copy of the Sargeant Settlement Agreement, which is Exhibit 1.2(wwww) to *Debtors' Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [ECF No. 567], attached as Exhibit "A" hereto.

Dated: May 1, 2015          Respectfully Submitted,

**GREENBERG TRAURIG, P.A.**

 /s/ Mark D. Bloom
Mark D. Bloom
Fla. Bar No. 30383
John R. Dodd
Fla. Bar No. 38091
333 S.E. 2nd Avenue
Miami, Florida  33131
Telephone:  (305) 579-0500
Facsimile:  (305) 579-0717
Email: bloomm@gtlaw.com
doddj@gtlaw.com

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Trigeant Holdings, Ltd., (5375); Trigeant, LLC (2035); and Trigeant Ltd. (2037).  The Debtors' business address is 3020 North Military Trail, Ste 100, Boca Raton, FL 33431.

-and-

Scott M. Grossman
Fla. Bar No. 176702
401 East Las Olas Boulevard
Suite 2000
Fort Lauderdale, FL 33301
Telephone: (954) 765-0500
Facsimile: (954) 765-1477
Email: grossmansm@gtlaw.com

*Counsel for the Debtors*

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document, without exhibits, is being served this day on all counsel of record or pro se parties identified on the Service List below, either via transmission of Notices of Electronic Filing generated by CM/ECF or by first class U.S. mail for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.  Copies of the exhibits can be obtained pursuant to the Notices provision in the Plan.

/s/ Mark D. Bloom
Mark D. Bloom

**Electronic Mail Notice List**

The following is the list of **parties** who are currently on the list to receive e-mail notice/service for this case.

- Vincent F Alexander vfa@kttlaw.com, lf@kttlaw.com
- David M Bennett    david.bennett@tklaw.com
- Mark D. Bloom    bloomm@gtlaw.com,
  MiaLitDock@gtlaw.com;miaecfbky@gtlaw.com
- Mark Bonacquisti    mark@mbpa-law.com,
  atty_ellison@trustesolutions.com,allusers@mbpa-law.com,annmarie@mbpa-law.com
- Alan R Crane    acrane@furrcohen.com,
  pmouton@furrcohen.com;atty_furrcohen@bluestylus.com
- John R. Dodd    doddj@gtlaw.com, miaecfbky@gtlaw.com;mialitdock@gtlaw.com
- Heidi A Feinman    Heidi.A.Feinman@usdoj.gov
- Michael I Goldberg, Esq michael.goldberg@akerman.com,
  charlene.cerda@akerman.com
- Gregory S Grossman    ggrossman@astidavis.com, ngonzalez@astidavis.com
- Scott M. Grossman    grossmansm@gtlaw.com, smithl@gtlaw.com;
  MiaLitDock@gtlaw.com;FTLLitDock@GTLaw.com;miaecfbky@gtlaw.com
- Jordi Guso    jguso@bergersingerman.com,
  fsellers@bergersingerman.com;efile@bergersingerman.com;efile@ecf.inforuptcy.com
- Charles H Lichtman    clichtman@bergersingerman.com,
  lwebster@bergersingerman.com;efile@bergersingerman.com
- Demetra L Liggins    demetra.liggins@tklaw.com
- Isaac M Marcushamer    imarcushamer@bergersingerman.com,
  fsellers@bergersingerman.com;efile@bergersingerman.com;efile@ecf.inforuptcy.com
- Michael C Markham    mikem@jpfirm.com, minervag@jpfirm.com
- Paul J McMahon    pjm@pjmlawmiami.com
- Ari Newman    newmanar@gtlaw.com,
  crossmann@gtlaw.com;mialitdock@gtlaw.com;miaecfbky@gtlaw.com
- Office of the US Trustee    USTPRegion21.MM.ECF@usdoj.gov
- Jodi Ann Pandolfi    jodi.pandolfi@bakermckenzie.com
- David L Rosendorf    dlr@kttlaw.com,
  rcp@kttlaw.com;CWT@kttlaw.com;ycc@kttlaw.com
- Deirdre B. Ruckman    druckman@gardere.com, koliver@gardere.com
- Jay Sakalo    jsakalo@bilzin.com, eservice@bilzin.com;lflores@bilzin.com
- Luis Salazar    salazar@salazarjackson.com,
  jackson@salazarjackson.com;dagley@salazarjackson.com;aguilar@salazarjackson.com;
  Lee-Sin@SalazarJackson.com;pacetti@salazarjackson.com;cloyd@salazarjackson.com
- Diane W Sanders    austin.bankruptcy@lgbs.com
- Paul Steven Singerman    singerman@bergersingerman.com,
  mdiaz@bergersingerman.com;efile@bergersingerman.com;efile@ecf.inforuptcy.com
- Jeffrey I. Snyder, Esq. jsnyder@bilzin.com, eservice@bilzin.com;lflores@bilzin.com
- Cristina M Suarez    csuarez@astidavis.com
- Charles W Throckmorton    cwt@kttlaw.com, lf@kttlaw.com;ycc@kttlaw.com

**Manual Notice List**

AT&T
P.O. Box 5001
Carol Stream, IL 60197-5001

Citgo Refining and Chemicals
Co.
1802 Nueces Bay Blvd.
Corpus Christi, TX 78407-2222

Daegis
c/o Sinead O' Carroll, Esq.
Reeves & Brightwell LLP
221 W. 6th Stt, Ste 1000
Austin TX 78701-3418

Daegis Inc.
600 East Las Colinas Boulevard
Suite 1500
Dallas, TX 75039-5651

Gonzales, Raul
1641 W Manor Dr
Corp Christi, TX 78412-4408

Johann Haltermann Ltd.
Payable Acctg Service Center
P.O. Box 6004
Midland, MI 48641-6004

Lussier, Michael
261 County Road 625
Sinton, TX 78387-5146

McDonnell, Rex G., IV
P.O. Box 2193
Georgetown TX 78627-2193

Missouri Pacific Railroad
Company
1400 Douglas Street
Omaha, NE 68179-0002

Nueces County Tax Collector
901 Leopard Street
Room 301
Corpus Christi, TX 78401-3602

Paymaster, Inc.
1880 North Congress Avenue
Suite 222
Boynton Beach, FL 33426-8675

Princeton Economics Group, Inc.
c/o Steven L. Gutter, Esq.
21301 Powerline Rd Ste 100
Boca Raton, FL 33433-2389

Sargeant Bulktainers
3020 North Military Trail
Suite 100
Boca Raton, FL 33431-1805

Ramos, Jose Sr.
6902 Anastasia
Corpus Christi, TX 78413-4486

Rich, Terri
24765 County Road 350
Mathis, TX 78368-4002

Harry Sargeant II
3020 North Military Trail
Suite 100
Boca Raton FL 33431-1805

Daniel Sargeant
3020 North Military Trail
Suite 100
Boca Raton FL 33431-1805

James Sargeant
3020 North Military Trail
Suite 100
Boca Raton, FL 33431

Reliant Energy Retail Services,
LLC
P.O. Box 1046
Houston, TX 77251-1046

Tequesta Insurance Advisors
218 S US Highway 1
Suite 300
Tequesta, FL 33469-2725

Texas Workforce Commission
Special Actions Unit
Regulatory Integrity Division
101 E. 15th Street, Room 556
Austin, TX 78778-0001

Isaías Medina
Coordinator of Litigation and Claims
Management of International Matters
General Counsel's Office
Petróleos de Venezuela, S.A.
Av. Liberador, Torre Este Piso 1, Oficina 10-30
Consultoria Juridica, La Campina
Caracas. Venezuela 1050

Trigeant, Ltd.
3020 North Military Trail
Suite 100
Boca Raton, FL 33431-1805

U.S. Securities and Exchange
Commission Office of
Reorganization
950 East Paces Ferry Rd, Ste 900
Atlanta, GA 30326-1382

Rosa A Shirley
Baker & McKenzie LLP
2001 Ross Avenue #2300
Dallas, TX 75201

Benjamin Mintz
Kaye Scholer
250 West 55th Street
New York, NY 10019-9710

Jonathan J. Walsh, Esq.
Curtis, Mallet-Prevost,
Colt & Mosle LLP
101 Park Avenue
New York, New York 10178-0061

Sundeep S. Sidhu, Esq.
Akerman LLP
420 S. Orange Avenue, Ste 1200
Orlando, FL 32801

Valverde, Gary
6902 Anastasia
Corpus Christi, TX 78413-4486

Neal Hampton
Kaye Scholer
250 West 55th Street
New York, NY 10019-9710

Christina K. Schovajsa
808 Travis St., Suite 1300
Houston, TX 77002

Valero Terminaling
and Distribution Company
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

Honorable Anne M. Gannon, CFC
Tax Collector
Palm Beach County
P.O. Box 3715
West Palm Beach, FL 33402-3715

David W. Parham
Baker & McKenie LLP
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75201

Theresa A. Foudy
Curtis, Mallet-Prevost,
Colt & Mosle LLP
101 Park Avenue
New York, NY 10178

Valero Terminaling and Distribution
Company
One Valero Way
San Antonio, Texas 78249-1616
(Bexar County)

Label Matrix for local noticing
113C-9
Case 14-29027-EPK
Southern District of Florida
West Palm Beach
Fri Jan 23 16:04:42 EST 2015

BTB Refining, LLC
c/o Charles W.Throckmorton, Esquire
Kozyak Tropin & Throckmorton, P.A.
9th Floor
Coral Gables, FL 33134
Via ECF

Bay Ltd.
Schauer & Simank, PC
c/o Ronald A. Simank
615 North Upper Braodway
Suite 700
Corpus Christi, TX 78401-0857

Berry Contracting LP
c/o Jodi Pandolfi Esq
1111 Brickell Ave #1700
Miami, FL 33131-3137
Via ECF

Berry GP Inc.
c/o Jodi Pandolfi Esq
1111 Brickell Ave #1700
Miami, FL 33131-3137
Via ECF

EnCap Flatrock Midstream Fund II, L.P.
Salazar Jackson, LLP
Attn: Luis Salazar
Two South Biscayne Blvd, Suite 3760
Miami, FL 33131-1815
Via ECF

Gravity Midstream Corpus Christi, LLC
Salazar Jackson, LLP
c/o Luis Salazar, Esq.
2 South Biscayne Blvd. Suite 3760
Miami, FL 33131-1815
Via ECF

Oil Refinery, LLC
c/o Moffa & Bonacquisti, P.A.
1776 N. Pine Island Rd.
Suite 102
Plantation, FL 33322-5200
Via ECF

PDVSA Petroleo, S.A.
c/o Jay M. Sakalo, Esq.
Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue
Suite 2300
Miami, FL 33131-3456 - Via ECF

Trigeant Holdings, Ltd.
3020 North Military Trail, Ste. 100
Boca Raton, FL 33431-1805

Trigeant, LLC
3020 North Military Trail, Ste. 100
Boca Raton, FL 33431-1805

Union Pacific Railroad Company
1400 Douglas Street Stop 1580
Omaha, NE 68179-0002

BTB Refining, LLC
c/o David L. Rosendorf
Kozyak Tropin Throckmorton LLP
2525 Ponce de Leon Boulevard
Coral Gables, Florida 33134-6039
Via ECF

BTB Refining, LLC
c/o Mark T. Mitchell, Esq.
Gardere Wynne Sewell LLP
600 Congress Ave., Ste. 3000
Austin TX 78701-3056

Bay Ltd.
P.O. Box 9908
Corpus Christi, TX 78469-9908

Bay, Ltd.
c/o Ronald A. Simank
Schauer & Simank, PC
615 North Upper Broadway, Suite 700
Corpus Christi, TX 78401-0857

Berry Contracting, Inc.
P.O. Box 4858
Corpus Christi, TX 78469-4858

Berry GP, Inc. d/b/a Bay, Ltd.
P.O. Box 9908
Corpus Christi, TX 78469-9908

Cameron-McKinney, LLC
1001 McKinney
Suite 580
Houston, TX 77002-6425

City of Corpus Christi
1201 Leopard Street
Corpus Christi, TX 78401-2120

Claims Purchase Systems, Inc.
c/o Alan R. Crane, Esq.
Furr & Cohen, P.A.
One Boca Place, Ste. 337W
Boca Raton FL 33431
Via ECF

Corpus Christi Area Oil Spill Control
1231 Navigation Blvd.
Corpus Christi, TX 78402-1911
Returned Mail / Underliverable

Crowell & Moring LLP
1001 Pennsylvania Avenue
Washington, DC 20004-2595

Crowell & Moring LLP
Attn:  Matthew W Cheney
1001  Pennsylvania Ave NW
Washington, DC 20004-2595

Cunningham Law Group
2221 Brun Street
Houston, TX 77019-6507

Davis & Co.
700 Bay Street East
Nassau, Bahamas

Direct Energy Business
1001 Liberty Avenue
12th Floor
Pittsburgh, PA 15222-3715

Freepoint Commodities Trading and Market
58 Commerce Blvd.
Stamford, CT 06902-4506

Grant Thornton, LLP
33911 Treasury Center
Chicago, IL 60694-3900

Hartline, Dacus, Barger,Dreyer LLP
c/o Michael G Terry
800 N Shoreline Blvd #2000 North
Corpus Christi, TX 78401-3759

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

International Oil Trading Company, Ltd.
c/o David L. Rosendorf
Kozyak Tropin Throckmorton LLP
2525 Ponce de Leon Boulevard
Coral Gables, Florida 33134-6039
Via ECF

Merrill Communications, LLC
Attn:  Leif Simpson
1 Merrill Cir
St Paul MN 55108-5267

Merrill Communications, LLC
CM-9638
Saint Paul, MN 55170-9638

Message Labs, Inc.
512 Seventh Avenue
6th Floor
New York, NY 10018-4606
Returned Mail / Underliverable

Nueces County
c/o Diane W. Sanders
Linebarger Goggan Blair & Sampson, LLP
P.O. Box 17428
Austin, Tx 78760-7428
Via ECF

Odfjell Tankers AS
c/o Robert L. Klawetter, Esq.
Eastham, Watson, Dale & Forney, LLP
808 Travis, Suite 1300
Houston, TX 77002-5825

Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130-1614
Via ECF

PDVSA
c/o Steven J. Reisman, Esq.
Curtis, Mallet-Prevost, et al.
101 Park Avenue
New York, NY 10178-0061

PDVSA Petroleos, S.A.
c/o Steven J. Reisman, Esq.
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178-0002

Reliant Energy
Dept. 650475
1501 N. Plano Road
Richardson, TX 75081-2430

Sargeant Marine, Inc.
3020 N. Military Trail
Boca Raton, FL 33431-1805

Swordfish Asphalt Investments, LLC
3020 North Military Trail
Suite 100
Boca Raton, FL 33431-1805

Texas Asphalt Refining Company, LLC
c/o David M. Toblan, Esq.
Oldcastle Law Group
900 Ashwood Pkwy., Ste. 700
Atlanta, GA 30338-4780

Travieso Evans Arria Rengel & Paz
Edificio Atlantic, Piso 6
Avenida Andres Bello
Los Grandes
Caracas 1060, Venezuela

Union Pacific Railroad Company
Attn:  Mary Ann Kilgore, Jennie L Anders
1400 Douglas St STOP 1580
Omaha, NE 68179-0002

Whiteford, Taylor & Preston LLP
1025 Connecticut Avenue NW
Washington, DC 20036-5410

Whiteford, Taylor & Preston L.L.P.
c/o Dennis Shaffer, Esquire
Seven Saint Paul Street, 18th Floor
Baltimore, MD 21202-1697

Ari Newman Esq.
333 S.E. 2nd Avenue, Suite 4400
Miami, FL 33131-2184
Via ECF

Bill Hardin
c/o Navigant Consulting, Inc
30 S Wacker Dr #3100
Chicago, IL 60606-7444

Charles H Lichtman
350 E Las Olas Blvd # 1000
Ft Lauderdale, FL 33301-4215
Via ECF

Daniel Sargeant
c/o Isaac M. Marcushamer
Berger Singerman LLP
1450 Brickell Avenue
Suite 1900
Miami, FL 33131-5319 - Via ECF

Harry Sargeant III
c/o Kozyak Tropin & Throckmorton LLP
2525 Ponce de Leon Blvd.
9th Floor
Coral Gables, FL 33134-6039
Via ECF

Harry Sargeant, II
c/o Isaac M. Marcushamer
Berger Singerman LLP
1450 Brickell Avenue
Suite 1900
Miami, FL 33131-5319 - Via ECF

James Sargeant
c/o Isaac M. Marcushamer
Berger Singerman LLP
1450 Brickell Avenue
Suite 1900
Miami, FL 33131-5319 - Via ECF

John R. Dodd Esq.
333 Ave of the Americas #4400
Miami, FL 33131-2184
Via ECF

Mark D. Bloom Esq.
333 S.E. 2nd Avenue #4400
Miami, FL 33131-2184
Via ECF

Mohammad Anwar Farid Al-Saleh
c/o Astigarraga Davis Mullins & Grossman
1001 Brickell Bay Drive
9th Floor

Scott M. Grossman Esq.
401 E Las Olas Blvd #2000
Fort Lauderdale, FL 33301-4223
Via ECF

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

| | | |
|---|---|---|
| (u)Berger Singerman LLP | (u)Claims Purchase Systems, Inc. | (u)Nueces County |
| (u)Odfjell Tankers AS<br>c/o Paul Joseph McMahon, P.A.<br>Miami | (d)Trigeant, Ltd.<br>3020 North Military Trail<br>Suite 100<br>Boca Raton, FL 33431-1805 | (u)West Palm Beach |
| (d)BTB Refining, LLC<br>c/o Mark T. Mitchell, Esq.<br>Gardere Wynne Sewell LLP<br>600 Congress Ave., Ste. 3000<br>Austin, TX 78701-3056 | (d)Trigeant Holdings, Ltd.<br>3020 North Military Trail<br>Suite 100<br>Boca Raton, FL 33431-1805 | (d)Trigeant, LLC<br>3020 North Military Trail<br>Suite 100<br>Boca Raton, FL 33431-1805 |
| (u)Isaac Marcushamer | End of Label Matrix<br>Mailable recipients     58<br>Bypassed recipients     10<br>Total                   68 | |

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "**Agreement**") is entered into as of April 18, 2015, between, on the one hand:

- Trigeant Holdings, Ltd. ("**Holdings**"); Trigeant, LLC ("**LLC**"); Trigeant, Ltd. ("**Trigeant,**" and together with Holdings and LLC, the "**Debtors**"); Harry Sargeant, Jr. ("**Harry Jr.**"); Daniel Sargeant; James Sargeant (Harry Jr., Daniel Sargeant and James Sargeant, collectively, the "**Consenting Owners**"); Stephen L. Roos; Trigeant Holdings, LLC; Claims Purchase Systems, Inc. ("**CPSI**"); Sargeant Marine, Inc., Sargeant Trading Ltd. ("**STL**"); Sargeant Bulktainers, Inc. ("**Sargeant Bulktainers**"); Latin American Investments Limited ("**LAIL**"); Global Asphalt Logistics and Trading, LLC; Global Asphalt Logistics and Trading SAGL Asphalt Carrier Shipping Company Limited; Asphalt Java Sea Corp.; and Java Sea Navigation PTE Ltd.; and as to the foregoing entities, all of their respective subsidiaries (collectively with the Debtors and the Consenting Owners, the "**Sargeant Parties**"),

and, on the other hand,

- Harry Sargeant, III ("**Harry III**"); Kevin Kirkeide; Mustafa Abu-Naba'a; BTB Refining, LLC ("**BTB**"); Silca Investments, Ltd. ("**Silca**"); International Oil Trading Company, LLC; International Oil Trading Company Limited ("**IOTC**"); International Oil Shipping Company, Inc. ("**IOSC**"); Sargeant Marine, SA; IOTC Asphalt LLC; Geonet Biofuels; and as to the foregoing entities, all of their respective affiliates and subsidiaries (collectively, the "**Harry Parties,**" and together with the Sargeant Parties, the "**Parties**," and, each individually, a "**Party**").

All capitalized terms not separately defined have the definitions set forth in the "Definitions" section of this Agreement or in the Plan.

## Recitals

### The Bankruptcy Cases

A.      The Debtors are debtors-in-possession in the Bankruptcy Cases pending in the United States Bankruptcy Court for the Southern District of Florida, West Palm Beach Division (the "**Bankruptcy Court**").

B.      Certain of the Harry Parties have asserted the Harry Party Claims in the Bankruptcy Cases.

C.      The Consenting Owners and the Debtors have disputed some or all of the Harry Party Claims (the "**Objections to Harry Party Claims**").

D.      BTB and Silca also hold an option to acquire Amended Claim #8 filed by PDVSA Petróleo, S.A. ("**PDVSA**"), in the amount of $40,374,663.08 (the "**PDVSA Claim**"). The

EXHIBIT A

Consenting Owners and the Debtors have disputed a portion of the PDVSA Claim (the **"PDVSA Claim Objection"**).

E.  Certain of the Sargeant Parties have asserted claims in the Bankruptcy Cases, including the following claims (the **"Sargeant Party Claims"**):

(1)  Claim #2 filed by CPSI in the amount of $854,519.64 against Holdings.

(2)  Amended Claim #5 filed by CPSI in the amount of $2,804,508.61 against Trigeant.

(3)  Scheduled claim of Sargeant Bulktainers against Trigeant in the amount of $48,810.88.

(4)  Scheduled claim of Harry Jr. against Trigeant in the amount of $323,464.93.

(5)  Scheduled claim of Harry Jr. against LLC in the amount of $322,156.98.

(6)  Scheduled claim of Holdings against LLC in the amount of $72,243.52.

F.  Certain of the Harry Parties have disputed some or all of the Sargeant Party Claims (the **"Objections to Sargeant Party Claims"**)

G.  On April 13, 2015, BTB filed *BTB Refining, LLC's Motion for Relief from Automatic Stay* [ECF No. 518] (the **"Stay Relief Motion"**). The Stay Relief Motion is currently scheduled to be heard on May 4, 2015.

H.  The Parties are parties to various other contested matters in the Bankruptcy Cases pursuant to Rule 9014 of the Federal Rules of Bankruptcy Procedure as well as various appeals of orders and judgments of the Bankruptcy Court (together with the Objections to Harry Party Claims, PDVSA Claim Objection, Objections to Sargeant Party Claims, and Stay Relief Motion, the **"Contested Matters"**).

The Pending Litigation

I.  In addition to the Bankruptcy Cases and the Contested Matters pending therein, several of the Parties are parties to the Pending Litigation.

The Gravity Transaction

J.  Trigeant owns a crude processing unit and related assets located in Corpus Christi, Texas (the **"CPU"**).

K.  The Debtors have entered into an Asset Purchase Agreement (as amended) with Gravity Midstream Corpus Christi, LLC (**"Gravity"**) for the sale of the CPU for the purchase price of $100 million, to be implemented through the Plan (the **"Gravity Transaction"**).

L.  A hearing to consider confirmation of the Plan (the **"Confirmation Hearing"**) is scheduled to commence on May 4, 2015, in the Bankruptcy Court.

M.     Certain of the Harry Parties have objected to confirmation of the Plan (the **"Confirmation Objection"**).

<u>The Settlement</u>

N.     The Sargeant Parties, on the one hand, and the Harry Parties, on the other hand, desire to settle all claims and controversies between them, including the Confirmation Objection and all matters that are or could have been asserted in the Pending Litigation and Bankruptcy Cases (including the Contested Matters), and all other claims of every kind or character, whether known or unknown, which each Party has or may have against the other Party, on the terms set forth in this Agreement.

## Agreement

In consideration of the mutual promises and covenants contained in this Agreement, and other good and valuable consideration, the Parties agree as follows:

1.     **Recitals**. Each of the Recitals set forth above are true and correct and incorporated by reference herein.

2.     **Definitions**.

2.1 **Amended Plan** means the *Debtors' Third Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, as amended from time to time in a manner not inconsistent with this Agreement.

2.2 **Bankruptcy Cases** means the jointly administered Chapter 11 bankruptcy cases of *In re Trigeant, Ltd.*, Case No. 14-30727-EPK; *In re Trigeant, LLC*, 14-29030-EPK; and *In re Trigeant Holdings, Ltd.*, Case No. 14-29027-EPK, pending in the Bankruptcy Court.

2.3 **Confirmation Order** has the meaning ascribed to it in the Amended Plan.

2.4 **Dock Use Agreement** means the Dock Use, Agreement Construction Maintenance and Option Agreement, effective as of November 1, 2001, among Berry GP, Inc., Berry Contracting, LP and Trigeant.

2.5 **Effective Date** has the meaning ascribed to it in the Amended Plan.

2.6 **Interim Matters** has the meaning set forth in section 5 of this Agreement

2.7 **Harry Party Claims** means all of the Claims of the Harry Parties against the Debtors, including the Claims in Class 2, Class 3, Class 5, and Class 7 of the Amended Plan.

2.8 **Harry Parties' Settlement Payment** has the meaning ascribed to it in section 4.1 of this Agreement.

2.9 **Odfjell Claim** has the meaning ascribed to it in section 4.3(a) of this Agreement.

3

2.10 **Plan** means the *Debtors' Second Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code.*

2.11 **Pending Litigation** means the following actions or proceedings:

- *Trigeant Ltd. v. BTB Refining LLC*, Adv. No. 14-01335- EPK (Bankr. S.D. Fla.);

- *Trigeant Ltd., et al. v. Harry Sargeant III, et al.*, Adv. No. 15-01079 (Bankr. S.D. Fla.);

- *Sargeant, et al. v. PDVSA Petróleo, S.A., et al.*, Case No. 9:15-CV-80386-DMM (S.D. Fla.);

- *PDVSA v. Trigeant Holdings, Ltd., et al.*, Case No. 15-CV- 80132-DMM (S.D. Fla.);

- *BTB Refining, LLC. v. Trigeant Holdings, Ltd.*, 9:15-cv-80481-KLR (S.D. Fla.);

- *PDVSA v. Trigeant, Ltd.*, Case No. 2:09-cv-00038 (S.D. Tex.);

- *BTB Refining, Inc. v. Trigeant Ltd.*, Case No. 2013-38405 (S.D. Tex.);

- *Sargeant Trading Ltd. v. Harry Sargeant III*, Case No. 2013 CA 015262 (15th Jud. Cir., Palm Beach County, Fla.);

- *Daniel Sargeant v. Harry Sargeant III*, Case No. 2013 CA 007925 AN, (15th Jud. Cir., Palm Beach County, Fla.);

- *Harry Sargeant III v. Harry Sargeant, Jr.*, Case No. 2013 CA 010505 AD (15th Jud. Cir., Palm Beach County, Fla.);

- *Harry Sargeant III v. Harry Sargeant Jr.*, Case No. 2013 CA 010868 AN (15th Jud. Cir., Palm Beach County, Fla.);

- *Trigeant, Ltd. v. BTB Refining, LLC*, Case No. 2014 DCV- 2966-H (District Court of Nueces County, Texas);

- *Odfjell Tankers AS v. Harry Sargeant III, et al.*, Case No. 2011-33239 (District Court, 113th Judicial District, Harris County, Texas); and

- *BTB Refining LLC v. Trigeant Holdings*, Case No. 378773- V (Circuit Court of Montgomery County, Maryland).

2.12 **Reorganized Trigeant** means Trigeant, as reorganized as of the Effective Date in accordance with the Amended Plan, and its successors.

3. **Effectiveness of Agreement**. This Agreement is effective immediately upon execution by the Parties; underline{provided, however}, that, except with respect to Interim Matters as

4

provided in section 5, it is a condition precedent to the enforceability of the Agreement that the Confirmation Order be entered on or before May 6, 2015, and that both the Effective Date and substantial consummation of the Amended Plan (including, without limitation, the receipt of the Distributions described in section 4.1 of this Agreement by the respective parties identified in paragraphs 4.1(A) – (D) below) occur by June 9, 2015.

4. **Plan Amendments**. The Parties agree that the Debtors will amend the Plan, and file the Amended Plan, as soon as practicable to provide as follows:

    4.1. <u>Distributions on Account of Harry Party Claims</u>. On the Effective Date, or as soon thereafter as practicable, the Harry Parties identified below will receive Distributions in the aggregate amount of $56,000,000.00 (the **"Harry Parties' Settlement Payment"**). The Harry Parties' Settlement Payment is in full settlement, satisfaction, release and discharge of all Harry Party Claims, and is allocated among such Claims, calculated as of June 9, 2015, as follows:

        (A)    BTB will receive a Distribution on its Class 2 Claim in the amount of $29,019,720.93;

        (B)    BTB or Silca, as designated by them at or before the confirmation hearing, will receive a Distribution in respect of their interest in Class 3 Claim in the amount of $20,660,248.90;

        (C)    BTB will receive a Distribution on its Class 5 Claim in the amount of $2,526,513.97; and

        (D)    IOTC will receive a Distribution on its Class 7 Claim in a compromised amount of $56,000,000 *less* the sum of the amounts distributed pursuant to subsections (A), (B) and (C) of this Section 4.1. In further compromise of the Class 7 Claim, without any recourse, representation or warranty, the Sargeant Parties shall assign to IOTC all of its right, title and interest in that certain Cause of Action of the Debtors and Sargeant Petroleum LLC against the Dominican Republic Ministry of Public Works pertaining to premature cancellation of that certain asphalt supply contract financed by Exim Bank, including any delinquent and unpaid invoices, freight differentials and any accrued interest to date..

        (E)    All of the foregoing claims shall be deemed Allowed Claims pursuant to the Amended Plan in the amount of the Distributions stated above.

        (F)    The Harry Party Claims in excess of the amount of the distributions stated above shall be disallowed pursuant to the Amended Plan.

    4.2. <u>Distributions to Class 9</u>. No Distributions will be made to holders of Class 9 Equity Interests on the Effective Date. In accordance with the terms of the Amended Plan, the Reorganized Debtors will have the sole discretion to object to, settle, compromise, or otherwise resolve Disputed Claims, and any reduction, however derived, in amounts reserved in respect of such Disputed Claims, net of

5

the costs of administration of the Reorganized Debtors, will be made as a pro rata Distribution to holders of Class 9 Equity Interests.

4.3.     (a) <u>Odfjell Indemnity</u>. Absent prior settlement with Odfjell, on the Effective Date, the amount of $7,854,953.14 shall be deposited into the Disputed Claims Reserve in respect of Class 5 Claim No. 10 filed by Odfjell against Trigeant, Ltd. (the **"Odfjell Claim"**). Reorganized Trigeant will indemnify Harry III, BTB, and IOSC in respect of the Odfjell Claim up to the amount of the foregoing reserve, and any settlement of the Odfjell Claim will include a release for Harry III, BTB, and IOSC. The Harry Parties shall cooperate with the Debtors and Reorganized Debtors to resolve or adjudicate any objection to the Odjfell Claim.

    (b) <u>Bay/Berry Indemnity</u>. The **"Bay/Berry Claims"** consist of (i) Cure Claims (y) in the amount of $3,294,010.92 as set forth in the *Amended Notice of Cure Claim Under Dock Use, Construction, Maintenance and Option Agreement* (ECF 329), which amends the *Notice of Cure Claim Under Dock Use, Construction, Maintenance and Option Agreement* (ECF 226), and (z) in the amount of $1,328,562.33 as set forth in the *Notice of Cure Claim Under Asphalt and Sale Agreement* (ECF 227); and (ii) unsecured claims (x) in the amount of $1,328,562.33 as set forth Proof of Claim No. 6-1 against Trigeant, (y) in the amount of $1,046,375.86 as set forth in Proof of Claim No. 7-1 against Trigeant, and (z) in the amount of $0, as set forth in Proof of Claim No. 12-1 against Trigeant. The aggregate amount of the Bay/Berry Claims, without duplication and without prejudice to any defenses available to any of the Parties in respect of those Claims, is $4,622,573.25, which amount will be deposited in the Disputed Claims Reserve in respect of the Bay/Berry Claims. Reorganized Trigeant will indemnify Harry III, BTB, and the other Harry Parties in respect of the Bay/Berry Claims up to the amount of $3,300,000, and any settlement of the Bay/Berry Claims will include a release for Harry III, BTB, and the other Harry Parties. The Harry Parties shall cooperate with the Debtors and Reorganized Debtors to resolve or adjudicate any objection to the Bay/Berry Claims.

4.4.     <u>Mutual General Releases</u>. The release and exculpation provisions of the Plan will be amended to provide that the sole releases granted under the Amended Plan as between the Sargeant Parties and Harry Parties shall be the exchange of general mutual releases in the form attached hereto as **Exhibits A** and **B**; <u>provided</u>, <u>however</u>, that all such parties will receive standard exculpations for actions and omissions arising in the course of the Bankruptcy Cases.

4.5.     <u>Other Claims</u>. Other Allowed Claims will receive Distributions as set forth in the Plan, which, for avoidance of doubt, includes the Distribution to PDVSA as provided in Article 4.3(b)(i) of the Plan.

4.6.     <u>Other Plan Terms</u>. The other provisions of the Plan shall remain substantially unchanged.

5. **Standstill and Support of the Plan**.

5.1. <u>Mutual Standstill</u>. Effective upon execution of this Agreement, and subject to Section 5.5 below, the Parties agree to cooperate in seeking consensual abatement of all Pending Litigation, Contested Matters, adversary proceedings and appeals, and as may be reasonably required by any Party, to seek continuances, extensions or similar relief to preserve the status quo through the Effective Date of the Amended Plan. Specifically, Holdings and IOTC have advised the Court at the April 20, 2015 hearing on the pending objection to claim of IOTC that the objection has been resolved in a manner to be described in the Amended Plan, and requested that the hearing be continued to a date to be determined at the May 4, 2015 Confirmation Hearing, if necessary.

5.2. <u>Support of Amended Plan by Harry Parties</u>. Effective upon execution of this Agreement, the Harry Parties agree (i) to withdraw all pending objections to claims, including the Objections to Sargeant Party Claims; (ii) to make no further objections to claims; (iii) to change the vote of Harry III's Class 9 Interest to an acceptance of the Amended Plan, no later than two business days after the filing of the Amended Plan; (iv) to not object to confirmation of the Amended Plan and not appeal the Confirmation Order; and (v) to support confirmation of the Amended Plan, as may be reasonably required by the Debtors. The Harry Parties agree that they have no right, title or interest in any of the assets to be transferred by the Debtors pursuant to the Gravity Transaction other than the Dock Use Agreement.

5.3. <u>Non-Interference</u>. Effective upon execution of this Agreement, the Harry Parties shall not, directly or indirectly, (i) contact or communicate with any Creditor, or counsel for any Creditor, for any purpose relating to the Bankruptcy Cases; (ii) contact or communicate with any Creditor or other person, or counsel for any Creditor or person, in respect of the Gravity Transaction; (iii) acquire or seek to acquire any Claim, or portion thereof; or (iii) seek or accept any compensation in any form from any Creditor in respect of any Claim; <u>provided, however</u>, that (x) BTB and its counsel may communicate with PDVSA and its counsel on matters relating to the Settlement Agreement between PDVSA and BTB/Silca, (y) BTB and its counsel may communicate with Bay, Inc., Bay, Ltd., Berry GP, Inc., Berry Contracting, Inc., and its counsel, on matters solely relating to the Dock Use Agreement, owned by BTB, and (z) BTB and its counsel may communicate with Gravity and its affiliates and counsel only with respect to the following matters as they relate to the Gravity Transaction: (1) the Dock Use Agreement; (2) personal property held by BTB located at the CPU, and (3) the "heels" located in the tanks at the CPU.

5.4. <u>Definition of "Interim Matters"</u>. All of the foregoing actions or standstills in this Section 5 are the **"Interim Matters."**

5.5. <u>Expiration of Mutual Standstill.</u> Except as expressly provided in this Section 5.5, the  agreements and standstills set forth in this Section 5 shall expire and be of no

further force and effect on June 15, 2015 in the event that the Confirmation Order has not been entered and the Effective Date and substantial consummation of the Amended Plan (including, without limitation, the receipt of the Distributions described in Section 4.1 of this Agreement by the respective parties identified therein) have not occurred by June 9, 2015. Notwithstanding Section 5.1 of this Agreement, if, notwithstanding the Harry Parties' support of the Amended Plan as required by this Agreement, the Bankruptcy Court denies confirmation of the Amended Plan at the scheduled Confirmation Hearing on May 4-6, 2015, BTB shall be permitted to prosecute the Stay Relief Motion at, but no earlier than, 9:30 a.m. on May 12, 2015, subject to the Debtors' rights to oppose the Stay Relief Motion and to raise any and all defenses and arguments in opposition to same. If the Bankruptcy Court does confirm the Amended Plan at the scheduled Confirmation Hearing on May 4-6, 2015, then the Stay Relief Motion shall be abated pending occurrence of the Effective Date and consummation of the Plan (including the making of the payments described in Section 4.1 of this Agreement) by the June 9, 2015 deadline provided in this Agreement. In that case, notwithstanding the pendency of the Stay Relief Motion, the automatic stay of Section 362(a) of the Bankruptcy Code shall remain in effect through the date of a hearing on the Stay Relief Motion to be scheduled no earlier than June 16, 2015, and the Harry Parties consent to an extension of the provisions of Section 362(e)(1) of the Bankruptcy Code for this purpose.

6.    **Resolution of All Pending Litigation**. Upon the entry of the Confirmation Order, the occurrence of the Effective Date, and the consummation of the Plan (including, without limitation, the receipt of the Distributions described in Section 4.1 of this Agreement by the respective parties identified therein), in accordance with the exchange of general mutual releases, the Parties will stipulate to dismissal, with prejudice, of all pending litigation in all courts with each Party to bear its own fees and costs, including, without limitation, the Pending Litigation and the Contested Matters.

7.    **Separation of the Sargeants**.

7.1.    <u>Separation of Business Enterprises</u>. (a) Harry III acknowledges that: (i) he presently owns a 25% ownership interest in LAIL; (ii) as to STL, Harry III acknowledges that: (A) he never personally requested any stock certificates, (B) he never received nor took possession of any stock certificates at any point in time, (C) to the best of his knowledge he was never listed as a shareholder of record in STL's stock transfer ledger, and (D) to the best of his knowledge he never attended any STL shareholder meeting; and (iii) he does not have any present ownership interests in the following entities and their subsidiaries:

- Sargeant Marine, Inc.;

- Global Asphalt Logistics and Trading, LLC;

- Global Asphalt Logistics and Trading, SAGL;

- Asphalt Carrier Shipping Company, Limited;

- Asphalt Java Sea Corp.; and

- Java Sea Navigation PTE (all of which entities are collectively referred to as the **"Sargeant Entities"**).

In respect of the promises made and exchanged in this Agreement, and for other good and valuable consideration, Harry III hereby relinquishes all right, title and interest in and to his 25% interest in LAIL, and Harry III shall, upon presentation, execute stock transfer forms relinquishing his interest in LAIL in favor of the present remaining shareholders of LAIL. Harry III further agrees not to make any future claim of direct, indirect or beneficial ownership interest in or to any of the Sargeant Entities.

(b)    Harry III acknowledges that Harry Jr., Daniel Sargent and James Sargeant do not have, and have never had, any (i) direct or indirect interest in, or (ii) managerial or operational control of any of the entities that comprise the Harry Parties, including the following entities:

- IOTC;

- IOSC;

- BTB;

- Silca;

- International Oil Trading Company, LLC;

- IOTC Asphalt LLC;

- Geonet Biofuels; and

- Sargeant Marine, S.A. (all of which entities are collectively referred to as the **"Harry Controlled Entities"**)

7.2.    <u>Use of the "Sargeant Marine" Name</u>. The Harry Parties agree not to use the "Sargeant Marine" name, including any combination of the terms "Sargeant" and "Marine," nor any logo associated with that name; <u>provided, however</u>, that the Harry Parties may continue to use "Sargeant Marine" in the form of "Sargeant Marine, S.A." and "Sargeant Marine, Ltd.," solely in connection with the existing operations of the entities so named.

8.    **Mutual Indemnification**.

8.1.    The Harry Parties shall, jointly and severally, unconditionally, absolutely and irrevocably, indemnify, defend and hold harmless the Sargeant Parties, their successors, assigns and the officers, directors, managers, members, employees and agents of the Sargeant Parties, from, against and in respect of any and all claims, losses, liabilities, cost, fines, penalties, actions, judgments, suits, settlements, damages or expenses (including, without limitation, court costs and attorneys' fees and expenses) of any and every kind whatsoever, which at any time or from time to time may be suffered or incurred in connection with any inquiry, charge, claim, cause of action, investigation, administrative proceeding, demand or lien made or arising out of or in any way relating directly or indirectly to the entities listed in paragraph 7.1(b).

9

8.2.    The Sargeant Parties shall, jointly and severally, unconditionally, absolutely and irrevocably, indemnify, defend and hold harmless the Harry Parties, their successors, assigns and the officers, directors, managers, members, employees and agents of Harry Parties, from, against and in respect of any and all claims, losses, liabilities, cost, fines, penalties, actions, judgments, suits, settlements, damages or expenses (including, without limitation, court costs and attorneys' fees and expenses) of any and every kind whatsoever, which at any time or from time to time may be suffered or incurred in connection with any inquiry, charge, claim, cause of action, investigation, administrative proceeding, demand or lien made or arising out of or in any way relating directly or indirectly to the Debtors or to the entities listed in paragraph 7.1(a).

9.      **Jurisdiction and Enforcement**. The Bankruptcy Court having jurisdiction over the Bankruptcy Cases shall have exclusive jurisdiction to construe, interpret and enforce the terms of this Agreement as provided in the Amended Plan and Confirmation Order, and each non-debtor Party to this Agreement expressly consents to the exclusive jurisdiction of the Bankruptcy Court for that purpose. In the event any adversary proceeding or contested matter may be commenced to construe, interpret or enforce the settlement, the prevailing party shall be entitled to an award of reasonable attorneys' fees and costs.

10.     **Confidentiality**. Subject to sections 5.1 and 5.3, no party shall release nor disseminate the terms of this Agreement until such time as an Amended Plan has been filed with the Bankruptcy Court, provided, however, that the Debtors may share drafts and the terms of this Agreement with Gravity. In furtherance of confirmation of the Amended Plan and implementation of this Agreement the Parties may share certain financial projections and other information, all of which shall remain and be held as confidential and not shared nor distributed to other persons or entities that are not Parties to this Agreement.

11.     **Public Statement**. The Parties agree that none of them shall make any statement, release any document or otherwise take any action, directly or indirectly, publicly or privately, which may or will tend to disparage the other in any manner whatsoever.

12.     **No Oral Modifications**. No amendment or modification of any of the terms set forth in this Agreement shall be effective unless signed in writing by all affected parties.

13.     **Conflict**. In the event of any conflict between this Agreement and the Confirmation Order, the terms of the Confirmation Order shall govern. The Confirmation Order shall be reasonably acceptable in form and substance to the Harry Parties.

14.     **Due Authorization**. Each of the undersigned hereby represents that he, she or it has all necessary authority to execute this Agreement and, as such, that this is a valid, binding and legally enforceable agreement and obligation.

15.     **Right to Counsel**. The Parties acknowledge that they have had the right to an independent attorney not associated with or representing the other Party to assist in the negotiation and preparation of this Agreement. Each Party disclaims any reliance in entering into this Agreement upon any attorneys, appraisers or professionals retained by

or representing the other Party. Each Party has read this Agreement, is aware of its terms, and has executed it acknowledging all parties have acted in good faith in negotiating the terms and provisions contained herein. Further, none of the Parties is under economic or other duress and each Party acknowledges that to the extent it has agreed to make settlement payments or otherwise waived any rights, claims or demands herein, such waiver was made voluntarily and with full knowledge of the ramifications of such waiver.

16. **No Admission**. It is expressly understood and each Party hereto represents and warrants that this Agreement, and any of the other documents executed to effectuate this Agreement, are executed to compromise disputed claims and charges between, by and among the Parties, and such execution shall not be construed or represented to be an admission of liability of any kind on the part of any of the Parties to any of the other Parties, or to any other person or entity in connection with or in any way relating to the issues raised in the Pending Litigation or Contested Matters.

17. **Miscellaneous Provisions**.

    17.1. <u>Notices</u>. All notices, requests and other communications made or given in connection with this Agreement must be in writing and must be made or given (i) by hand, which will be effective upon delivery, (ii) by electronic mail, which will be effective upon delivery, (iii) by facsimile, which will be effective upon receipt of confirmation of good transmission, or (iv) by overnight delivery by a nationally recognized courier service, which will be effective on the business day after being deposited with the courier service, in each case to the address (or facsimile number) as follows:

    If to the Sargeant Parties:

        Trigeant, Ltd.
        3020 North Military Trail, Suite 100
        Boca Raton, FL 33431
        Attention: Stephen Roos
        E-mail: sroos@sargeant.net

    With a copy to (which shall not constitute notice):

        Berger Singerman, LLP
        350 East Las Olas Boulevard, Suite 1000
        Fort Lauderdale, FL 33301
        Attention: Charles H. Lichtman, Esq.
        Email: CLichtman@bergersingerman.com

If to the Harry Parties:

        BTB Refining, LLC
        4232 Beacon Street
Corpus Christi, TX 78409
        Attention: Kevin G. Kirkeide
        Email: kkirkeide@globaloilmgmt.com

With a copy to (which shall not constitute notice):

        Kozyak Tropin & Throckmorton, LLP
        2525 Ponce de Leon Blvd., 9th Floor
        Miami, Florida 33134
        Attention: Charles W. Throckmorton, Esq.
        Email: cwt@kttlaw.com

17.2.  <u>Further Assurances</u>. Upon the request of the Debtors or Reorganized Debtors, the Harry Parties will do such further acts and things and execute and deliver such additional agreements and instruments as may be reasonably necessary to obtain confirmation of the Amended Plan within the time frame provided by this Agreement, facilitate the Closing of the Gravity Transaction upon timely confirmation of the Amended Plan, and give effect to the purposes of this Agreement and the Parties' agreements in this Agreement. Upon the request of the Harry Parties, the Sargeant Parties will do such further acts and things and execute and deliver such additional agreements and instruments as may be reasonably necessary to give effect to the purposes of this Agreement and the Parties' agreements in this Agreement. For the avoidance of doubt, the Harry Parties have no obligation to support, or facilitate the Closing of, the Gravity Transaction unless the Amended Plan is confirmed and consummated within the time frame provided by this Agreement.

17.3.  <u>Time of Essence</u>. Time is of the essence under this Agreement.

17.4.  <u>Law Governing</u>. This Agreement will be construed in accordance with and governed by the laws of the State of Florida, without giving effect to any choice or conflict of law provision or rule that would cause the application of the laws of any other jurisdiction.

17.5.  <u>Headings</u>. Headings are for convenience only and do not affect the interpretation of this Agreement.

17.6.  <u>Counterparts and Electronic Signatures</u>. This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument, and any of the parties hereto may execute this Agreement by signing any such counterpart.  Electronic or facsimile signatures shall be accepted in lieu of original signatures.

17.7. <u>Entire Agreement</u>. The provisions of this Agreement are fully integrated and dependent upon one another. This Agreement constitutes the sole agreement of the Parties with respect to its subject matter, and the sole consideration to be paid or conveyed by, to, from or between the Parties in respect of the subject matter. This Agreement supersedes any prior written or oral agreements or communications between the Parties, including that certain Binding Term Sheet dated April 18, 2015. It may not be modified except in a writing signed by the Parties.

17.8. <u>Binding Agreement</u>. Subject to paragraph 3 of this Agreement, this Agreement is binding on the Sargeant Parties and the Harry Parties, and the obligations hereunder inure to the benefit of their respective heirs, legal representatives, successors, and assigns.

17.9. <u>Fees, Expenses and Costs</u>. Each Party is responsible for its own costs and attorneys' fees incurred in connection with this Agreement, the Pending Litigation, and the Bankruptcy Cases.

17.10. <u>Construction</u>. The Parties and their respective counsel have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement will be construed as if drafted jointly by the Parties and no presumption or burden of proof will arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Agreement. The Parties intend that each representation, warranty and covenant contained herein will have independent significance. If any Party has breached or violated, or if there is an inaccuracy in, any representation, warranty or covenant contained herein, the fact that there exists another representation, warranty or covenant relating to the same subject matter (regardless of the relative levels of specificity) which the Party has not breached or violated, or in respect of which there is not an inaccuracy, will not detract from or mitigate the fact that the Party has breached or violated, or there is an inaccuracy in, the first representation, warranty or covenant.

17.11. <u>**Waiver of Right to Jury Trial**</u>. **THE PARTIES WAIVE ANY RIGHT TO TRIAL BY JURY ON ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING UNDER THIS AGREEMENT OR ANY OTHER DOCUMENT OR INSTRUMENT REFERRED TO HEREIN OR DELIVERED IN CONNECTION HEREWITH, OR (B) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES WITH RESPECT TO THIS AGREEMENT OR ANY OTHER DOCUMENT OR INSTRUMENT REFERRED TO HEREIN OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE. EACH OF THE PARTIES AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT ANY**

**PARTY TO THIS AGREEMENT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF EACH OF THE PARTIES TO WAIVER OF ITS RIGHT TO TRIAL BY JURY. EACH OF THE PARTIES ACKNOWLEDGES THAT IT HAS HAD AN OPPORTUNITY TO CONSULT WITH COUNSEL REGARDING THIS SECTION, THAT IT FULLY UNDERSTANDS ITS TERMS, CONTENT AND EFFECT, AND THAT IT VOLUNTARILY AND KNOWINGLY AGREES TO THE TERMS OF THIS SECTION.**

[*SIGNATURE PAGES TO FOLLOW.*]

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement as of April 18, 2015.

**THE SARGEANT PARTIES:**

Trigeant Holdings, Ltd.

By: _____

Its: _____

Trigeant, LLC

By: _____

Its: _____

Trigeant, Ltd.

By: _____

Its: _____

Trigeant Holdings, LLC

By: _____

Its: _____

Claims Purchase Systems, Inc.

By: _____

Its: _____

Sargeant Marine, Inc.

By: _____

Its: _____

Sargeant Trading Ltd.

By: _____

Its: _____

Sargeant Bulktainers, Inc.

By: _____

Its: _____

Global Asphalt Logistics and Trading, LLC

By: _____

Its: _____

Global Asphalt Logistics and Trading SAGL Asphalt Carrier Shipping Company Limited

By: _____

Its: _____

Asphalt Java Sea Corp.

By: _____

Its: _____

Java Sea Navigation PTE Ltd.

By: _____

Its: _____

Latin American Investments Limited

By: _____

Its: _____

_____
Daniel Sargeant

_____
Harry Sargeant, Jr.

_____
Stephen L. Roos

_____
James Sargeant

[Signature Page to Settlement Agreement]

**IN WITNESS WHEREOF,** the undersigned have executed this Agreement as of April 18, 2015.

**THE SARGEANT PARTIES:**

Trigeant Holdings, Ltd.

By: _____
Its: _____

Trigeant, Ltd.

By: _____
Its: _____

Claims Purchase Systems, Inc.

By: _____
Its: _____

Sargeant Trading Ltd.

By: _____
Its: _____

Global Asphalt Logistics and Trading, LLC

By: _____
Its: _____

Asphalt Java Sea Corp.

By: _____
Its: _____

Latin American Investments Limited

By: _____
Its: _____


_____
Harry Sargeant, Jr.


_____
James Sargeant

Trigeant, LLC

By: _____
Its: _____

Trigeant Holdings, LLC

By: _____
Its: _____

Sargeant Marine, Inc.

By: _____
Its: _____

Sargeant Bulktainers, Inc.

By: _____
Its: _____

Global Asphalt Logistics and Trading SAGL
Asphalt Carrier Shipping Company Limited

By: _____
Its: _____

Java Sea Navigation PTE Ltd.

By: _____
Its: _____


_____
Daniel Sargeant


_____
Stephen L. Roos

[Signature Page to Settlement Agreement]

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement as of April 18, 2015.

**THE SARGEANT PARTIES:**

Trigeant Holdings, Ltd.

By: _____
Its: _____

Trigeant, Ltd.

By: _____
Its: _____

Claims Purchase Systems, Inc.

By: _____
Its: _____

Sargeant Trading Ltd.

By: _____
Its: _____

Global Asphalt Logistics and Trading, LLC

By: _____
Its: _____

Asphalt Java Sea Corp.

By: _____
Its: _____

Latin American Investments Limited

By: _____
Its: _____

_____
Harry Sargeant, Jr.

_____
James Sargeant

Trigeant, LLC

By: _____
Its: _____

Trigeant Holdings, LLC

By: _____
Its: _____

Sargeant Marine, Inc.

By: _____
Its: _____

Sargeant Bulktainers, Inc.

By: _____
Its: _____

Global Asphalt Logistics and Trading SAGL Asphalt Carrier Shipping Company Limited

By: _____
Its: _____

Java Sea Navigation PTE Ltd.

By: _____
Its: _____
Daniel Sargeant

_____
Stephen L. Roos

[Signature Page to Settlement Agreement]

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement as of April 18, 2015.

**THE SARGEANT PARTIES:**

Trigeant Holdings, Ltd.                              Trigeant, LLC

By: _____                   By: _____
Its: _____                   Its: _____

Trigeant, Ltd.                                       Trigeant Holdings, LLC

By: _____                   By: _____
Its: _____                   Its: _____

Claims Purchase Systems, Inc.                 Sargeant Marine, Inc.

By: _Jeff Balk_____                 By: _____
Its: _President_____                 Its: _____

Sargeant Trading Ltd.                             Sargeant Bulktainers, Inc.

By: _____                   By: _____
Its: _____                   Its: _____

Global Asphalt Logistics and Trading, LLC    Global Asphalt Logistics and Trading SAGL Asphalt Carrier Shipping Company Limited

By: _____
Its: _____                   By: _____
                                                Its: _____

Asphalt Java Sea Corp.                          Java Sea Navigation PTE Ltd.

By: _____                   By: _____
Its: _____                   Its: _____

Latin American Investments Limited

By: _____                   _____
Its: _____                   Daniel Sargeant


_____                        _____
Harry Sargeant, Jr.                             Stephen L. Roos


_____
James Sargeant

[Signature Page to Settlement Agreement]

By:_____
      Harry Sargeant, III

Sargeant Marine, SA
By:_____
Its:_____


By:_____
      Kevin Kirkeide

International Oil Shipping Company [Ltd.]
By:_____
Its:_____


By:_____
      Mustafa Abu-Naba'a

BTB Refining, LLC
By:_____
Its:_____

IOTC Asphalt LLC
By:_____
Its:_____


Silca Investments, Ltd.
By:_____
Its:_____

International Oil Trading Company Limited
By:_____
Its:_____


International Oil Trading Company, LLC
By:_____
Its:_____

Genet Biofuels
By:_____
Its:_____


6344600-1

3

By:_____     Sargeant Marine, SA
   Harry Sargeant, III
                                 By:_____

                                 Its:_____

By:_____     International Oil Shipping Company [Ltd.]
   Kevin Kirkeide
                                 By:_____

                                 Its:_____

By:_____
   Mustafa Abu-Naba'a

BTB Refining, LLC               IOTC Asphalt LLC

By:_____     By:_____

Its:_____     Its:_____

Silca Investments, Ltd.          International Oil Trading Company Limited

By:_____     By:_____

Its:_____     Its:_____

International Oil Trading Company, LLC     Genet Biofuels

By:_____     By:_____

Its:_____     Its:_____

6344600-1

By:_____
     Harry Sargeant, III

Sargeant Marine, SA

By:_____

Its:_____

By:_____
     Kevin Kirkeide

International Oil Shipping Company [Ltd.]

By:_____

Its:_____

By:_____
     Mustafa Abu-Naba'a

BTB Refining, LLC

By:_____

Its:_____

IOTC Asphalt LLC

By:_____

Its:_____

Silca Investments, Ltd.

By:_____

Its:_____

International Oil Trading Company Limited

By:_____

Its:_____

International Oil Trading Company, LLC

By:_____

Its:_____

Genet Biofuels

By:_____

Its:_____

6344600-1

3

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

_____ District of _____

|  |  |  |
|---|---|---|
|  | ) |  |
|  | ) |  |
|  | ) |  |
| _____ | ) |  |
| *Plaintiff(s)* | ) |  |
| v. | ) | Civil Action No. |
|  | ) |  |
|  | ) |  |
|  | ) |  |
| _____ | ) |  |
| *Defendant(s)* | ) |  |

### SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                                            *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |
|---|---|
| <br><br><br>_____<br>*Plaintiff(s)*<br>v.<br><br><br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                                        *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

|  |  |  |
|---|---|---|
|  | ) |  |
|  | ) |  |
|  | ) |  |
| _____ | ) |  |
| *Plaintiff(s)* | ) |  |
| v. | ) | Civil Action No. |
|  | ) |  |
|  | ) |  |
|  | ) |  |
| _____ | ) |  |
| *Defendant(s)* | ) |  |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*

_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: