# Exhibit 1

## IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT,
## IN AND FOR PALM BEACH COUNTY, FLORIDA

Harry Sargeant, III,
    Plaintiff,

      vs.                          CASE NO. 502018CA007932XXXXMB

Daniel Sargeant,
Latin American Investments, Ltd.,
Andrew Preston, and
Daniel Hall,
    Defendants.
_____/

### DEFENDANT DANIEL HALL'S MOTION TO STAY
### AND SUPPORTING MEMORANDUM OF LAW

Defendant Daniel Hall, by and through his undersigned counsel, respectfully moves this Court for an order staying proceedings in this action based on the pendency of an earlier-filed federal action that encompasses substantially the same parties, facts, and issues.

### INTRODUCTION

This is a textbook case for application of the principle of priority. That doctrine instructs Florida courts to stay proceedings in favor of a pending, earlier-filed federal action that involves substantially the same parties and issues, so as to avoid a risk of inconsistent rulings and to conserve state judicial resources. Here, Hall filed a lawsuit in the U.S. District Court for the Southern District of Florida against Plaintiff Harry Sargeant, III ("HS3"), alleging (among other things) that HS3 breached his obligations under a settlement agreement by filing a meritless federal-court lawsuit against Hall and others. Hall's lawsuit is currently pending in front of the Honorable Beth Bloom, and it involves substantially the same parties and issues as HS3's lawsuit in this Court. The principle of priority thus straightforwardly requires a stay in this case.

To allow this case to continue would reward HS3 for forum shopping and ensure the parties and courts are mired in duplicative litigation – the exact result the principle of priority is intended to avoid.  This is not the first litigation involving these parties.  In 2011, a Florida jury found HS3 liable for defrauding Mohammed Al-Saleh and awarded Al-Saleh $28.8 million in damages.  For half a decade, however, HS3 – a billionaire who lives a lavish, jet-setting lifestyle – simply refused to honor the judgment.  Instead, he engaged in a years-long game of cat-and-mouse in which he evaded enforcement of the judgment in jurisdictions around the globe.  Finally, in October 2016, HS3 settled with Al-Saleh.  In that settlement, HS3 agreed to a complete release of not only Al-Saleh, but also Hall and Burford Capital LLC ("Burford Capital"), which Al-Saleh had retained to assist in his judgment-enforcement efforts.

In violation of that release, in February 2018, HS3 filed a federal-court lawsuit against Hall (and others).  Like the lawsuit in this Court, HS3's federal-court lawsuit appears to have stemmed from a long-running dispute with his brother, Daniel Sargeant, with whom HS3 has been in no fewer than 15 separate lawsuits.  In May 2018, Magistrate Judge Bruce Reinhart issued a report and recommendation ("R&R") to Judge Bloom recommending dismissal of all the claims against Hall for failure to state a claim.  But rather than object to the R&R, HS3 voluntarily dismissed his case without prejudice and refiled it here – simply omitting his federal statutory claims.  In short, not only does HS3's lawsuit concern substantially the same parties and issues as presented in Hall's earlier-filed and pending federal action, but it is part of an improper gambit to avoid unfavorable rulings in yet another federal action that HS3 himself commenced.  This Court should grant the motion to stay and allow the federal proceedings to run their course.

## BACKGROUND

HS3 and Al-Saleh were partners in a Florida-registered oil-trading business, International Oil Trading Company ("IOTC").  During the Iraq War, IOTC provided fuel to the U.S. Department of Defense ("DOD").  In 2008, Al-Saleh sued HS3 in this Court, asserting that HS3 had fraudulently diverted profits from IOTC's contract with DOD away from Al-Saleh.  *Al-Saleh v. Sargeant*, Case No. 50 2008 CA 010187 XXXX MB AJ.  In 2011, a jury found that HS3 had in fact defrauded Al-Saleh and awarded Al-Saleh $28.8 million in damages, plus costs and post-judgment interest (the "Florida Judgment").  *See Al-Saleh v. Sargeant*, 2011 WL 6838057, at *1 (Fla. Cir. Ct. Sept. 19, 2011).  In 2013, the Fourth District Court of Appeal affirmed the judgment and held that Al-Saleh was further entitled to pre-judgment interest.  *See Sargeant v. Al-Saleh*, 120 So. 3d 86, 88 (Fla. 4th DCA 2013)  In 2014, the Florida Supreme Court denied HS3's petition for review.  *Sargeant v. Al-Saleh*, 2014 WL 1823852, at *1 (Fla. May 6, 2014).

Rather than respecting the jury's verdict and the Fourth District's affirmance, HS3 refused to satisfy the Florida Judgment.  HS3's evasion eventually drove Al-Saleh to pursue asset recovery and enforcement efforts against HS3 across the United States and around the world.  *See, e.g., In re International Oil Trading Co.*, Case No. 15-21596-EPK (S.D. Fla. Bankr.).  In 2014, Al-Saleh retained Hall, a U.K. solicitor who owned an asset-tracing and investigations firm, to assist in efforts to execute upon HS3's assets.  Hall's firm was later acquired by an affiliate of Burford Capital, and Hall continued his work for Al-Saleh on behalf of Burford Capital.

In October 2016, after protracted litigation in multiple jurisdictions, HS3 entered into a comprehensive settlement agreement with Al-Saleh (the "Settlement Agreement," attached as Exhibit A).  At the time, HS3 owed Al-Saleh more than $39 million.  *See* Ex. A, Recital E.  The

Settlement Agreement called for HS3 to pay Al-Saleh only $33 million.  *See id.* § 4.  In exchange for the reduced obligation, HS3 agreed to give up his campaign of evasion and deliver a release in favor of Al-Saleh, Burford Capital, Dundrod Investments Ltd. (one of Burford Capital's affiliates), and "all persons or entities for whose acts or omissions the foregoing would or could be derivatively or vicariously liable" (the "Release," attached as Exhibit B).

HS3 did not live up to his end of the Settlement Agreement and Release.  In September 2017, HS3 filed a complaint in the U.S. District Court for the Southern District of Florida, seeking relief from Maroil Trading, Inc., Sea Pioneer Shipping Corp., and Wilmer Ruperti Pedromo.  *Sargeant v. Maroil Trading, Inc.*, No. 9:17-cv-81070-Bloom/Reinhart (S.D. Fla.) ("*HS3 v. Maroil*," docket attached as Exhibit C).  HS3's claims sounded in fraud, misrepresentation, and unjust enrichment related to a shipping contract.  *See* Ex. C, *HS3 v. Maroil*, ECF No. 1.  In November 2017, Latin American Investments, Ltd. ("LAIL"), moved to intervene, and the court granted the motion.  *See id.*, ECF Nos. 10, 17.  Then the case took an unusual turn.

In February 2018, after settling his claims with the original defendants, HS3 filed a Second Amended Complaint (the "SAC," attached as Exhibit D), which featured different allegations as well as claims against LAIL and three new defendants:  Daniel Sargeant, Andrew Preston, and Hall.  *See id.*, ECF No. 93.  Hall was thus embroiled in the latest chapter in HS3's "vicious family feud" with his brother, Daniel Sargeant, with whom HS3 has been in no fewer than 15 different lawsuits, including this one.  *See* Jane Musgrave, *Web of 14 Lawsuits Settled Stemming From Sargeant Family Fight*, Palm Beach Post (May 2, 2015), available at: https://www.palmbeachpost.com/news/...sargeant.../Icj36PJnS7hBe6PMr3QrtJ/.

The SAC alleged that Hall, in furtherance of his judgment-collection efforts for Al-Saleh, conspired (1) to violate the federal Computer Fraud and Abuse Act ("CFAA"), (2) to violate Florida's Computer Abuse and Data Recovery Act ("CADRA"), and (3) to invade HS3's privacy. *See* Ex. D, Counts II, VIII. Specifically, the SAC alleged that Hall agreed that LAIL, Daniel Sargeant, and Preston would obtain unauthorized access to a computer maintained by the Sargeant family's businesses (the "Sargeant Server") in order to secure sensitive materials that HS3 had left behind on the Sargeant Server when he separated from the family's businesses years earlier (the "HS3 Material"). *HS3 v. Maroil* thus involved the same parties and essentially the same allegations and claims as feature in this case.

All of the defendants in *HS3 v. Maroil* moved to dismiss. On May 30, 2018, Magistrate Judge Reinhart issued the R&R (attached as Exhibit E). The R&R called for dismissal of all claims against Hall for three reasons: (1) the SAC failed to plausibly allege that Hall's co-defendants accessed the Sargeant Server "without authorization" or in "excess" of authorization; (2) the SAC failed to plausibly allege that Hall knew in advance about, or agreed to, any unlawful conduct by his co-defendants; and (3) the SAC failed to plausibly allege that the HS3 Material was publicly disclosed. *See id.* at 10-31. HS3 had until June 13 to object to the R&R. *See* Fed. R. Civ. P. 72. Rather than objecting, however, HS3 voluntarily dismissed his claims on June 4. *See* Ex. C, *HS3 v. Maroil*, ECF No. 196. The court then instructed the clerk to close the case. *Id.*, ECF No 198.

Given HS3's litigiousness (especially against his own family), and his history of evasion, Hall suspected that the voluntary dismissal of *HS3 v. Maroil* was no white flag but instead a tactic to elude the R&R and shop for a potentially more favorable forum. Accordingly, to validate the R&R's conclusion that he is not liable to HS3, and to vindicate his rights under the

Settlement Agreement and Release, Hall filed a complaint on June 8, 2018 in the Southern

District of Florida seeking a declaratory judgment of nonliability, injunctive relief, and damages.

*Hall v. Sargeant*, Case No. 9:18-cv-80748 (S.D. Fla.) ("*Hall v. HS3*," docket attached as Exhibit

F, and complaint attached as Exhibit G).  *Hall v. HS3* is now pending before Judge Bloom.  *See*

Ex. F, *Hall v. HS3*, ECF No. 12.  And as Hall expected, on June 21, HS3 commenced this action,

which centers on virtually the same factual allegations, legal theories, and parties as *Hall v. HS3*

and the voluntarily dismissed *HS3 v. Maroil.*

**ARGUMENT**

**I.      This Court Should Stay Proceedings in Favor of *Hall v. HS3*, the Earlier-Filed and
        Pending Federal Action**

"It is well-settled that when a previously filed federal action is pending between

substantially the same parties on substantially the same issues, a subsequently filed state action

should be stayed pending the disposition of the federal action."  *Beckford v. General Motors*

*Corp.*, 919 So. 2d 612, 613 (Fla. 3d DCA 2006) (citing *Wade v. Clower*, 114 So. 548 (Fla.

1927)); *see Robeson v. Melton*, 52 So. 3d 676, 679 (Fla. 4th DCA 2009) ("*until* the federal

district court rules, the trial court should stay the entire subsequently filed and substantially

related state action").  Florida courts refer to this as "the principle of priority" and repeatedly

have held that "failure to observe the principle of priority is an abuse of discretion."  *Inphynet*

*Contracting Servs., Inc. v. Matthews*, 196 So. 3d 449, 465 (Fla. 4th DCA 2016); *accord Florida*

*Crushed Stone Co. v. Travelers Indemnity Co.*, 632 So. 2d 217, 220 (Fla. 5th DCA 1994)

("Although a trial court has broad discretion to order or refuse a stay . . . it is nonetheless an

abuse of discretion to refuse to stay a subsequently filed state court action in favor of a

previously filed federal action.").

The principle of priority is intended to "promote[] comity between courts and prevent[] unnecessary litigation." *Robeson*, 52 So. 3d at 678.  It is also grounded in the fact that "Florida courts . . . regard forum shopping with displeasure." *Pilevsky v. Morgans Hotel Group Mgmt., LLC*, 961 So. 2d 1032, 1035 (Fla. 3d DCA 2007).  Because the purpose of the doctrine is to avoid wasting scarce judicial resources on potentially needless litigation, and to defer to the federal courts on issues already being litigated there, the principle of priority applies even when there is not complete overlap of parties and claims in the earlier- and later-filed actions.  *See Robeson*, 52 So. 3d at 679; *see also Pilevksky*, 961 So. 2d at 1035-36.  Instead, all that is required is substantial similarity of parties and issues – a requirement easily satisfied here.

### A.      This Case and *Hall v. HS3* Involve Substantially the Same Parties

This case and the pending *Hall v. HS3* case involve "'substantially the same parties.'" *Robeson*, 52 So. 3d at 679 (quoting *Beckford*, 919 So. 2d at 613).  An exact identity of parties is not required.  What matters instead is whether the overlap of parties is substantial enough that the later-filed case risks "duplicative proceedings with the possibility of inconsistent results." *Id.*; *see Ricigliano v. Peat, Marwick, Main & Co.*, 585 So. 2d 387, 387-88 (Fla. 4th DCA 1991) (affirming stay of later-filed action notwithstanding "disparity in the parties to the two actions" where "the basis for the two actions" was "the same").  In other words, the "pivotal question" is whether the later-filed action is "so similar in parties and issues" as to be "unnecessarily duplicative." *Pilevsky*, 961 So. 2d at 1035 (internal quotation marks omitted).  If so, the later-filed action must be stayed to avoid needless litigation and to promote comity.[1]

---

[1] When there is an exact identity of parties in the earlier- and later-filed actions, Florida courts have held that the principle of priority counsels in favor of abating (*i.e.*, dismissing) the later-filed action rather than merely staying it.  *See Thomas v. English*, 448 So. 2d 623, 623 (Fla. 4th DCA 1984) ("abatement of an action is appropriate where two actions are pending simultaneously which involve the same parties and the same or substantially the same causes of

Here, that standard is plainly met.  Hall and HS3 are parties in both this case and the *Hall v. HS3* case.  Moreover, Hall seeks from the federal court a declaratory judgment that HS3's claims against him – the claims that HS3 began litigating in federal court but now seeks to pursue in this Court – are meritless.  The fact that HS3 is pursuing those claims against other defendants – Daniel Sargeant, LAIL, and Preston – that are not parties to *Hall v. HS3* does not undermine the "substantial similarity" of the parties.  *See Robeson*, 52 So. 3d at 679; *Ricigliano*, 585 So. 2d at 387-88; *accord Pilevsky*, 961 So. 2d at 1035.  Indeed, Hall's claims against HS3 in federal court are likely to resolve HS3's civil-conspiracy and invasion-of-privacy claims not only against Hall but against all the defendants in this case, because the claims are based on the same course of alleged conduct.

The appellate courts' decisions in *Robeson* and *Pilevsky* are on point and illustrative.  In *Robeson*, McDonald's USA filed a claim for breach of release in federal court against the Melton Group.  52 So. 3d at 676-77.  McDonald's USA sought damages for the breach and a declaratory judgment that it was not liable for the poor performance of the Melton Group's franchises.  *Id.* Shortly thereafter, the Melton Group filed an action in this Court against McDonald's USA and Robeson, the Vice President of McDonald's USA.  *Id.*  The Melton Group alleged that Robeson had assured the Melton Group of success in its franchising agreements and asserted that McDonald's USA was vicariously liable for Robeson's acts and omissions.  *Id.*  McDonald's USA and Robeson asked this Court to stay proceedings in favor of the earlier-filed federal action.  *Id.* at 677-78.  This Court granted the stay as to McDonald's USA but denied it as to Robeson because Robeson was not a party to the federal action.  *Id.* at 678.  The Fourth District affirmed the stay as to McDonald's USA but held that "the trial court abused its discretion in not

---

action"); *see also Banco Bilbao Vizcaya, S.A. v. Naiz, S.A.*, 615 So. 2d 223, 234 (Fla. 3d DCA 1993) ("[a]batement is proper where the two pending actions involve the same parties").

also staying the action as to Robeson." *Id.* at 679.  Citing a number of cases as holding that the principle of priority requires similarity rather than identity of parties, the Fourth District instructed that "the trial court should stay the entire subsequently filed and substantially related state action" to avoid "duplicative proceedings with the possibility of inconsistent results." *Id.*

In *Pilevsky*, Philips South Beach sued Morgans Hotel Group and several other defendants in New York state court.  961 So. 2d at 1034.  A few months later, Morgans Hotel Group sued the fourteen individual owners and officers of Phillips South Beach in Florida state court.  *Id.*  Both lawsuits concerned Morgans Hotel Group's management – or alleged mismanagement – of a hotel and property.  *Id.*  The fourteen individual owners and officers sought to stay the later-filed Florida action under the principle of priority, arguing that it involved substantially similar parties and issues as the earlier-filed New York action despite the fact that none of the fourteen were actually parties to the New York action.  *Id.*[2]  The Third District Court of Appeal held that the trial court abused its direction in not granting a stay.  *Id.* at 1036.  The Third District explained that the important question is whether the two actions are "so similar" as to be "unnecessarily duplicative," and it answered that question affirmatively despite the seeming disparity in parties.  *Id.* at 1035.  Moreover, the Third District reasoned, "Florida courts . . . regard forum shopping with displeasure, and that policy would be meaningless if a party could avoid the dictates of comity by simply naming nominal defendants in a second-filed action."  *Id.*

Following *Robeson* and *Pilevsky*, it is straightforward to conclude that *Hall v. HS3* and this action involve substantially the same parties because Hall and HS3 appear in both.  Indeed, following *Robeson* and *Pilevsky*, it would be an abuse of discretion to deny a stay on the ground that *only* Hall and HS3 appear in both.  To deny a stay would ensure "duplicative proceedings

_____

[2] The principle of priority applies whether the earlier-filed action was filed in state or federal court.  *See Polaris Pub. Income Funds v. Einhorn*, 625 So. 2d 128, 129 (Fla. 3d DCA 1993).

- 9 -

with the possibility of inconsistent results." *Robeson*, 52 So. 3d at 679.  It would reward and

incentivize forum shopping, allowing HS3 and future plaintiffs to "avoid the dictates of comity"

merely by moving into state court and adding or subtracting some defendants. *Pilevsky*, 961

So. 2d at 1035.[3]

        **B.**        **This Case and *Hall v. HS3* Involve Substantially the Same Issues**

This case and *Hall v. HS3* also involve "'substantially the same issues.'" *Robeson*, 52

So. 3d at 679 (quoting *Beckford*, 919 So. 2d at 613).  As with the analysis of parties, this is not a

rigid requirement.  Courts must assess "the kinds of claims asserted in each complaint,"

*Robeson*, 52 So. 3d at 679, but "[t]he causes of action do not have to be identical." *Florida*

*Crushed Stone*, 632 So. 2d at 220.  Instead, "it is sufficient that the two actions involve a single

set of facts and that resolution of the one case will resolve many of the issues involved in the

subsequently filed case." *Id.*

As set forth above, this case and the earlier-filed *Hall v. HS3* (as well as the earlier-filed

and voluntarily dismissed *HS3 v. Maroil*) involve a single set of facts.  The cases center on

Hall's judgment-collection efforts, the Settlement Agreement and Release, and HS3's allegations

concerning access to the Sargeant Server.  Indeed, the gravamen of Hall's federal-court lawsuit is

that HS3's claims against him are barred by the Settlement Agreement and Release, and

meritless in any event.  The earlier-filed case is thus likely to resolve HS3's claims against Hall,

which HS3 originally filed in federal court but now has refiled here to avoid the unfavorable

rulings issued by Magistrate Judge Reinhart.  Given that the two cases are the flip side of the

---

[3] The fact that Burford Capital and one of its affiliates, Dundrod Investments, Ltd., are also
plaintiffs in *Hall v. HS3* also does not change the analysis.  To the contrary, the fact that *Hall v.
HS3* is *broader* than HS3's lawsuit in this Court is a factor *supporting* a stay.  *See infra* p. 12.

same coin, resolution of *Hall v. HS3* will avoid the need for this Court to resolve a substantial portion of this case.

*Robeson* is particularly instructive on this point.  As explained above, in *Robeson*, McDonald's USA filed a claim for breach of release in federal court against the Melton Group – just as Hall has filed a claim for breach of release in federal court against HS3.  McDonald's USA sought damages for the breach as well as a declaratory judgment that it was not liable to the Melton Group – just as Hall seeks damages for the breach as a well as a declaratory judgment that he is not liable to HS3.  The Melton Group subsequently filed an action in this Court against McDonald's USA and Robeson – just as HS3 subsequently filed this action against Hall and his co-defendants.  Neither this Court nor the Fourth District hesitated in *Robeson* in concluding that the two actions involved substantially the same issues.  The same should be true here.  Federal adjudication of Hall's claims – including Hall's claim for a declaration of nonliability to HS3 – will necessarily resolve many of the issues in this case.  A stay is thus appropriate to avoid the waste of judicial resources of this Court, and out of respect for the federal court.

## II.    Other Factors Weigh in Favor of a Stay

The principle of priority is a sufficient basis for this Court to stay proceedings in favor of the earlier-filed *Hall v. HS3*, and Florida courts generally look no further than to whether the earlier- and later-filed actions involve substantially the same parties and issues.  *See*, *e.g.*, *Robeson*, 52 So. 3d at 676-79.  Nonetheless, other factors weigh heavily in favor of a stay here.

*First*, the claims that HS3 presses in this case should have been brought as compulsory counterclaims in *Hall v. HS3*, rather than as a new lawsuit in this Court.  *See* Fed. R. Civ. P. 13(a) (compulsory counterclaims are those that "arise[] out of the transaction or occurrence that is the subject matter of the opposing party's claim."); *see also*, *e.g.*, *Construction Aggregates, Ltd. v. Forest Commodities Corp.*, 147 F.3d 1334, 1337 n.6 (11th Cir. 1998) ("A claim arises out

- 11 -

of the same transaction or occurrence if there is a logical relationship between the claims.")
(internal quotation marks omitted).  As the U.S. Supreme Court has long recognized, the purpose
of Federal Rule 13(a) is "to prevent multiplicity of actions and to achieve resolution in a single
lawsuit of all disputes arising out of common matters."  *Southern Constr. Co. v. Pickard*, 371
U.S. 57, 60 (1962).  Accordingly, Federal Rule 13(a) has been interpreted as prohibiting
defendants from subsequently filing claims in other forums which should rightly be asserted as a
counterclaim.  *See Columbia Plaza Corp. v. Security National Bank*, 525 F.2d 620, 624-26 (D.C.
Cir. 1975).  Given that HS3's claims here are just the flip side of Hall's claims in federal court –
and thus clearly compulsory counterclaims – a stay here is particularly appropriate to give effect
to the Federal Rules, rather than permitting HS3 to avoid them and to shop for a potentially more
favorable forum.[4]

    *Second*, *Hall v. HS3* will likely yield a timely and more complete resolution of the issues.
Judge Bloom and Magistrate Judge Reinhart are already well-acquainted with the extensive
history and convoluted facts underlying the two actions, given that *HS3 v. Maroil* was litigated
nearly to a dismissal on the merits a little over a month ago.  *See* Ex. C.  And Hall's claims in
*Hall v. HS3* are broader than HS3's claims against him here.  Specifically, Hall's claims in the
federal case raise the additional issue whether HS3 owes damages for suing Hall in violation of
the Settlement Agreement and Release.  *See* Ex. G.  It is thus far more efficient for Hall's claims
in federal court to be adjudicated first.

    *Third*, HS3 cannot be heard to complain of prejudice from a stay when he voluntarily
dismissed nearly identical claims in *HS3 v. Maroil* for the purpose of avoiding the adverse R&R

---

[4] Federal courts are empowered to issue injunctions against state-court lawsuits that violate the
compulsory counterclaim rule.  *See, e.g.*, *Bruce v. Martin*, 680 F. Supp. 616, 620-21 (S.D.N.Y.
1988).  Hall reserves the right to seek an injunction against this case, if needed.  But under the
principle of priority, this Court should stay its hand even without a federal-court injunction.

and in the hope of finding a more favorable forum.  Federal courts object to such dilatory

gamesmanship.  *See Davis v. Huskipower Outdoor Equip. Corp.*, 936 F. 2d 193, 199 (5th Cir.

1991) (rejecting plaintiffs' arguments for voluntary dismissal where magistrate judge had already

"issued a comprehensive recommendation that was adverse to their position"); *Edler v. Schwarz*,

2010 WL 3211927, at *1 (N.D. Fla. Aug. 11, 2010) (same); *Weathersby v. General Motors

Corp.*, 2006 WL 2865058, at *1 (N.D. Miss. Oct. 5, 2006) (same; plaintiff's attempt at voluntary

dismissal was "blatant forum shopping").  Likewise, and as explained above, "Florida courts . . .

regard forum shopping with displeasure."  *See Pilevsky*, 961 So. 2d at 1035.

HS3's latest maneuvering has wasted the scarce time and resources of Hall, Hall's

co-defendants, and the courts.  It has produced only "duplicative proceedings with the possibility

of inconsistent results."  *Robeson*, 52 So. 3d at 679.  It should not be rewarded.

## CONCLUSION

Defendant Daniel Hall respectfully requests an order (1) staying proceedings in this

action pending resolution of the earlier-filed federal action and (2) awarding Hall any additional

relief this Court deems just and proper.


DATED: July 6, 2018

Respectfully submitted,

/s/ Armando Cordoves, Jr.
Samuel A. Danon (FBN 892671)
Armando Cordoves, Jr. (FBN 112425)
HUNTON ANDREWS KURTH LLP
1111 Brickell Avenue, Suite 2500
Miami, Florida 33131
Tel.: (305) 810-2500
Fax: (305) 810-2460
Email: sdanon@HuntonAK.com
Email: acordoves@HuntonAK.com

Derek T. Ho (*pro hac vice forthcoming*)
Andrew E. Goldsmith (*pro hac vice forthcoming*)
KELLOGG, HANSEN, TODD
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
Fax: (202) 326-7999
Email:  dho@kellogghansen.com
Email:  agoldsmith@kellogghansen.com

*Counsel for Defendant Daniel Hall*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed and sent via electronic service using the portal system with the Florida Courts e-Filing Portal which sent email notification of such filing in accordance with Rule 2.516 of the Florida Rules of Judicial Administration to all parties on this 6th day of July, 2018.

/s/ Armando Cordoves, Jr.
Armando Cordoves, Jr. (FBN 112425)
HUNTON ANDREWS KURTH LLP
1111 Brickell Avenue, Suite 2500
Miami, Florida 33131
Tel.: (305) 810-2500
Fax: (305) 810-2460
Email: acordoves@HuntonAK.com

# Exhibit A

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "Agreement"), effective as of October 4, 2016 (the "Effective Date"), is made by and among Mohammad Anwar Farid Al-Saleh ("Al-Saleh"), on the one hand, and Harry Sargeant, III ("Sargeant") and Mustafa Abu-Naba'a ("Abu-Naba'a") (collectively "the SA Parties"), on the other hand, who collectively shall be referred to throughout as the "Parties" and each, individually, as "Party." The Parties enter into this Agreement to fully and finally resolve any and all disputes and to settle any litigation between them subject to the terms and conditions of this Agreement.

## Recitals

**THIS AGREEMENT** is made in light of the following:

A.    On or about April 10, 2008, Al-Saleh filed suit against the SA Parties and International Oil Trading Company, LLC ("IOTC USA") in the Circuit Court of the Fifteenth Judicial Circuit, in and for Palm Beach County, Florida ("Florida Court"), in an action styled *Al-Saleh v. Sargeant*, et al., Case No. 50 2008 CA 010187 ("Florida Action").

B.    The SA Parties and IOTC USA appeared through counsel in the Florida Action and presented defenses.

C.    On July 27, 2011, following a trial, the jury in the Florida Action returned a verdict finding the SA Parties and IOTC USA jointly and severally liable to Al-Saleh in the amount of $28,800,000.00.

D.    The Florida Court entered the following judgments in favor of Al-Saleh and jointly and severally against the SA Parties and IOTC USA: (1) on September 19, 2011, a judgment for compensatory damages in the amount of $28,800,000.00, together with post-judgment interest at the statutory rate *nunc pro tunc* to July 27, 2011; (2) on February 9, 2012, a judgment for costs in the amount of $85,489.97, together with post-judgment interest at the statutory rate; (3) on September 16, 2013 (and by later amendment on October 30, 2013), a judgment for pre-judgment interest in the amount of $3,484,753.92, together with interest at the statutory rate *nunc pro tunc* to July 27, 2011 (collectively referred to herein as the "Judgments"). The Judgments are final and no longer appealable. The Judgments were not obtained by default or by confession of judgment.

E.    As of and including the Effective Date, the total amount due on the Judgments is $39,635,590.22, which is comprised of $32,338,843.89 in principal plus $7,296,746.33 in accrued and unpaid post-judgment interest, and reflects a credit of $31,400.00 in relation to certain items of personal property and stock that were levied and sold ("Current Judgment Amount"). Post-judgment interest accrues in the aggregate of the Judgments at a rate of $4,196.97 per day. Hereinafter, the Current Judgment Amount plus the post-judgment interest accruing from time to time shall be referred to as the "Base Judgment Amount."

F.    In addition to the Base Judgment Amount, Al-Saleh claims not less than

Settlement Agreement
Page 2 of 26

$8,000,000.00 in attorney's fees and costs incurred in the execution and collection of the Judgments that should be added to the amount owed in connection with the Judgments.

G.      The SA Parties have not satisfied the Judgments.

H.      To collect on the unpaid Judgments, Al-Saleh commenced by motion in the Florida Court seven proceedings supplementary to execution (collectively referred to herein as "Proceedings Supplementary", and singly as "Proceeding Supplementary"), all of which bear the same case number as the Florida Action.

I.      As of the Effective Date, the following Proceedings Supplementary are not resolved: (1) the "First" Proceeding Supplementary in which Al-Saleh seeks relief against Sargeant and his wife, Deborah Sargeant, as tenants by the entirety, and International Oil Trading Company, Ltd. ("IOTC Bahamas"); (2) the "Fifth" Proceeding Supplementary in which Al-Saleh seeks relief against BTB Refining, LLC ("BTB"); (3) the "Sixth" Proceeding Supplementary in which Al-Saleh seeks to foreclose on certain stock certificates issued by Floridian Community Holdings, Inc.; and (4) the "Seventh" Proceeding Supplementary in which Al-Saleh seeks relief against Abu-Naba'a and Tennyson Villa, LLC ("Tennyson").

J.      In the First Proceeding Supplementary, by its *Amended Answer to First Amended Motion for Proceedings Supplementary to Execution and for Related Relief, Affirmative Defenses, and Counterclaim*, filed on October 20, 2014, IOTC Bahamas answered Al-Saleh's operative *First Amended Motion for Proceedings Supplementary to Execution and for Related Relief*, filed on September 20, 2013, asserted affirmative defenses, and lodged a counterclaim ("IOTC Bahamas Counterclaim").

K.      On or about June 19, 2014, Al-Saleh filed a Notice of Civil Claim in the Supreme Court of British Columbia, through which Al-Saleh seeks to recognize the Judgments and a certain Order of the Florida Court, dated June 10, 2013, assigning all of Sargeant's right, title, and interest in a certain 144-foot yacht bearing vessel number QE014225C010 to Al-Saleh, as enforceable orders of the British Columbia Supreme Court ("Canada Action").

L.      On November 20, 2014, Al-Saleh domesticated the Judgments in the 319th Judicial District Court of Nueces County, Texas ("Texas Court"), in an action styled, *Al-Saleh v. Sargeant III*, et al., Cause No. 2014 DCV-5860-G ("Texas Action").

M.      By amended petition filed with the Texas Court on June 2, 2015, Al-Saleh asserted, *inter alia*, a claim alleging that BTB effected fraudulent transfers to Al-Saleh's detriment, a claim alleging that BTB is the alter ego of Sargeant and liable for the Judgments, and requested the entry of a temporary injunction.

Settlement Agreement
Page 3 of 26

N.      On July 2, 2015, after an evidentiary hearing, the Texas Court entered an Order on Temporary Injunction, which commanded, among other things, that BTB "desist and refrain from using or transferring to any person or entity $21,828,446.65 or transferring such amount of the jurisdiction of this Court, from the date of this Order until further Order of this Court."

O.      In the Texas Action, Defendants Harry Sargeant, IV, Abu-Naba'a, Sargeant Marine Limited ("SML"), and SA Acquisitions, LLC ("SAA") have appeared by Special Appearance to contest the exercise of jurisdiction over them by the Texas Court ("Texas Special Appearances").

P.      Al-Saleh commenced, by writ of summons filed on June 9, 2015, proceedings in the Supreme Court of the Commonwealth of the Bahamas against SML in action CLE/gen/00770/2015 ("First Bahamian Proceeding").

Q.      In the First Bahamian Proceeding, Al-Saleh applied by ex parte summons for a freezing injunction against SML, which was granted by Acting Justice Brian Moree Q.C. on June 9, 2015 ("First Ex Parte Order").  The First Ex Parte Order was continued by consent and reflected in an interlocutory Order filed on June 23, 2015.

R.      On July 23, 2015, Al-Saleh filed a Statement of Claim alleging that SML was liable to account to Al-Saleh for funds it received from the underlying fraud that was the subject of the Florida Action, to pay Al-Saleh equitable compensation on account of such receipt of funds, and/or to pay damages for its role in the underlying fraud to injure Plaintiff by unlawful means.  The Statement of Claim sought damages against SML in the amount of US$58,250,778.49.

S.      By writ of summons filed on May 24, 2016, Al-Saleh commenced a fresh proceeding in the Supreme Court of the Commonwealth of the Bahamas against SML, IOTC Bahamas, and Global Oil Management Group Ltd. ("Global Oil Bahamas") in action CLE/gen/00762/2015 ("Second Bahamian Proceeding").

T.      By ex parte summonses filed on May 24, 2016 in both the First Bahamian Proceeding and the Second Bahamian Proceeding, Al-Saleh applied for the appointment of Receivers and Managers over SML, IOTC Bahamas and Global Oil Bahamas.

U.      By ex parte Orders dated May 25, 2016 and filed on May 26, 2016 in the First Bahamian Proceeding and the Second Bahamian Proceeding ("the Ex Parte Receivership Orders"), Justice Ian Winder appointed Roy Bailey and Keiran Hutchison Receivers and Managers (the "Receivers") of SML, IOTC Bahamas and Global Oil Bahamas ("the Bahamas Receivership Companies").

V.      By summonses filed in the First Bahamian Proceeding and the Second Bahamian Proceeding on June 13, 2016, June 21, 2016 and June 27, 2016, the Bahamas Receivership

Settlement Agreement
Page 4 of 26

Companies applied, *inter alia*, for the Ex Parte Receivership Orders to be set aside ("the Setting Aside Application").

W.    By summons filed on June 16, 2016, Al-Saleh applied for the First Bahamian Proceeding and the Second Bahamian Proceeding to be consolidated, which summons has not been heard.

X.    By Orders made on June 16, 2016 in the First Bahamian Proceedings and the Second Bahamian Proceeding, the Ex Parte Receivership Orders were varied to limit the powers of the Receivers in certain respects.

Y.    By summons dated June 24, 2016, the Receivers applied for the reinstatement of the powers curtailed by the Court on June 16, 2016 ("Reinstatement Application"), which was heard on July 7, 2016 and the ruling is pending.

Z.    The Setting Aside Application has been heard by the Bahamian Court at hearings dated June 16, 2016, July 20, 2016, July 25, 2016 and August 17, 2016 and the ruling is pending.

AA.    On or about June 28, 2016, Al-Saleh filed suit in the Court of Chancery of the State of Delaware, styled as *Al-Saleh v. Global Oil 604, LLC*, C.A. No. 12510-VCG ("Delaware Chancery Action"), in which Al-Saleh sought the entry of a temporary restraining order and claims, *inter alia*, that Global Oil 604, LLC ("GO604") was a fraudulent transferee as the recipient and owner of that certain Bombardier Inc. CL-600-2B16 aircraft bearing U.S. Federal Aviation Administration ("FAA") Registration number N604SA and manufacturer's serial number 5408, together with its engines, avionics and equipment, and associated books and records ("Aircraft").

BB.    In defense to the Delaware Chancery Action, GO604 alleged that, prior to Al-Saleh filing suit, GO604 sold the Aircraft to CMG 604 5408 LLC ("CMG") for $2,250,000.00 ("Aircraft Purchase Price") and obtained from CMG a lease on the Aircraft under that certain Lease Agreement dated June 13, 2016 and recorded with the FAA as document JP017101 ("Aircraft Lease"), together with an Early Purchase Option, dated June 13, 2016, under the Aircraft Lease ("Aircraft Purchase Option").

CC.    On June 26, 2015, Al-Saleh filed an involuntary petition under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") against IOTC USA in the United States Bankruptcy Court for the Southern District of Florida, Case No.: 15-21596-BKC-EPK (the "Bankruptcy Case").

DD.    On June 27, 2016, the Bankruptcy Court in the Bankruptcy Case entered an Order for Relief pursuant to 11 U.S.C. Section 303(h).

EE.     Trustee Nicole Testa Mehdipour, Esq. ("Trustee") is the duly appointed and acting Bankruptcy Trustee for the Bankruptcy Estate of IOTC USA.

FF.     IOTC USA has filed a motion to convert its Chapter 7 case to a Chapter 11 case (the "Motion to Convert"), for which the Bankruptcy Court has scheduled a trial on October 7, 2016.

GG.     On August 10, 2016, the Trustee filed her Notice of Removal, removing some of Al-Saleh's proceedings supplementary to execution pending in the Florida Action.

HH.     On August 18, 2016, the Trustee filed an adversary action against Sargeant, Deborah Sargeant and Abu-Naba'a seeking declaratory relief that Sargeant and Abu-Naba'a are alter-egos of IOTC USA and the avoidance of alleged fraudulent transfers to Sargeant, Deborah Sargeant and Abu-Naba'a. Adv. No. 16-1430.

II.     On August 19, 2016, the Trustee filed an adversary action against International Oil Trading Company, B.V., a Netherlands corporation ("IOTC B.V."), seeking declaratory relief that IOTC B.V. is an alter-ego of IOTC USA and other damage claims against IOTC B.V., in Adv. No. 16-1435.

JJ.     On or about October 27, 2015, Al-Saleh filed an action to recognize the Judgments in England and Wales, in an action styled *Al-Saleh v. Sargeant III*, Claim No. CL-2015-000777, in The High Court of Justice of England and Wales, Queen's Bench Division, Commercial Court ("UK Action").

KK.     On or about June 14, 2016, the following three suits were filed, before the Court of First Instance of Amman North, in the Hashemite Kingdom of Jordan, asserting various claims against Al-Saleh: (1) International Oil Trading Company, LLC (a/k/a IOTC USA) and Harry Sargeant, III v. Mohammad Al-Saleh, Case No. 654/2016 ("IOTC USA Jordan Lawsuit"); (2) International Oil Trade Centre (a/k/a IOTC Jordan) v. Mohammad Al-Saleh, Case No. 655/2016; and (3) International Oil Trade Centre (a/k/a IOTC Jordan) and Harry Sargeant III v. Mohammad Al-Saleh, Case No. 656/2016, Before the Court of First Instance of Amman North, in the Hashemite Kingdom of Jordan (Nos. 2 and 3 collectively referred to as "Jordan Lawsuits").  (FINE)

LL.     The following proceedings have been filed, since the entry of the Judgments, in the Dominican Republic seeking relief directly or indirectly against Al-Saleh (collectively, "Amparo Actions"):  (1) the application of Karim N. Abu-Naba'a for *amparo* relief, brought in the Second Division, Criminal Chamber, of the Court of First Instance of the National District; and (2) the application of Abu-Naba'a for *amparo* relief, brought in the Ninth Division, Criminal Chamber, of the Court of First Instance of the National District.

Settlement Agreement
Page 6 of 26

MM.    On September 13 and 29, 2016, the Parties participated in mediation before Mediator Scott Silverman.  As a result of the mediation and subsequent negotiations, the Parties have agreed to settle on the terms and conditions set forth herein.

**NOW THEREFORE**, in light of the foregoing, and in exchange for ten dollars ($10.00) and the promises set forth herein, the receipt and sufficiency of which are hereby acknowledged, each of the parties hereto hereby agrees as follows:

**Section 1.**    **Representations and Warranties.**

**§1.1**    **Representations and Warranties by the SA Parties**.  The SA Parties, individually and jointly, represent and warrant to Al-Saleh as follows (which representations and warranties shall survive the signing of this Agreement):

(a)    Each of the Recitals set forth above is true and correct in all respects and each of the Recitals set forth above is incorporated herein by reference and shall be deemed to be contractual in nature.

(b)    The making and performance of this Agreement and any documents to be delivered by any of them in connection with this Agreement (collectively "Settlement Documents") by each or any of them do not and will not violate any provision of law or regulation, or any writ, order or decree of any court, governmental, regulatory authority or agency and do not and will not, with the passage of time or the giving of notice, result in a breach of, or constitute a default or require any consent under, or result in the creation of any lien, charge or encumbrance (except in favor of Al-Saleh) upon any property or assets of them, under any instrument or agreement to which any of them is a party or by which any of them or any of their property may be bound or affected, provided that, to the extent the consent of the Receivers of the Bahamian Receivership Companies is required to effectuate this Agreement, Al-Saleh shall be responsible for securing such consent.

(c)    Each of them has the power and authority to execute, deliver, and perform this Agreement.

(d)    None of them has assigned, transferred, hypothecated, or in any other way disposed of all or any portion of any of the claims or counterclaims that are being released by operation of this Agreement.

(e)    In deciding to execute this Agreement, the SA Parties did not rely upon any material fact stated by Al-Saleh or his representatives.

**§1.2**    **Representations and Warranties by Al-Saleh**.  Al-Saleh represents and warrants to the SA Parties as follows (which representations and warranties shall survive the signing of this

6

Settlement Agreement
Page 7 of 26

Agreement):

(a)     Each of the Recitals set forth above is true and correct in all respects and each of the Recitals set forth above is incorporated herein by reference and shall be deemed to be contractual in nature.

(b)     The making and performance of this Agreement do not and will not violate any provision of law or regulation, or any writ, order or decree of any court, governmental, regulatory authority or agency.

(c)     Al-Saleh has the power and authority to execute, deliver, and perform this Agreement.

(d)     Other than those rights provided by Al-Saleh to Burford Capital, LLC or its affiliates, Al-Saleh has not assigned, transferred, hypothecated, or in any other way disposed of all or any portion of any of the claims or counterclaims that are being released by operation of this Agreement.

(e)     In deciding to execute this Agreement, Al-Saleh did not rely upon any material fact stated by the SA Parties, the SA Release Parties, IOTC USA, Deborah Sargeant individually, Harry Sargeant, III and Deborah Sargeant as Tenants by the Entireties ("Sargeant TBE"), or their representatives.

**§1.3.   Representations and Warranties are True and Correct**.   Each of the representations and warranties of the   Parties contained herein and in all of the Settlement Documents shall be true and correct in all material respects on and as of the Effective Date.

**Section 2. Releases.**

**§2.1.   Release by SA Parties and SA Release Parties**.  Within ten (10) business days after the Effective Date, the SA Parties and Harry Sargeant, IV, Kevin G. Kirkeide, Karim Abu-Naba'a, BTB Refining, LLC, Global Oil Management Group, Ltd., Global Oil 604, LLC, International Oil Trade Centre ("IOTC Jordan"), International Oil Trading Company, Ltd. (a/k/a IOTC Bahamas), International Oil Trading Company, B.V. (a/k/a IOTC B.V.), S.A. Acquisitions, LLC, Sargeant Marine Limited, and Tennyson Villa, LLC ("SA Release Parties") shall have executed and delivered to Al-Saleh a release in favor of Burford Capital, LLC and Dundrod Investments Ltd. (collectively "the Burford Entities") and Al-Saleh in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement hereto and made a part hereof (the "SA Release").  For avoidance of doubt, such release shall not release (a) any claims related to the performance under this Agreement, (b) any claims of Abu-Naba'a or Al-Saleh with respect to that certain parcel of real property of approximately 2800 square meters at Malecon near the Lebanese, Syrian, Palestian Club in Santo Domingo, Dominican Republic ("DR Property") or that certain company that owns or has

7

Settlement Agreement
Page 8 of 26

rights to the DR Property which property was referenced on pages 197-200 of the deposition transcript of Abu-Naba'a dated December 17, 2013 ("DR Property Claims"), or (c) any claims regarding the imposition, liability, or payment of taxation to the Hashemite Kingdom of Jordan relating to IOTC Jordan ("Jordan Tax Issue Claims").

**§2.2.   Releases by Al-Saleh and Burford Entities**.  Within ten (10) business days after the Effective Date, Al-Saleh shall execute and shall cause the Burford Entities to execute a release (the "Al-Saleh Release") in favor of the SA Parties, the SA Release Parties, Deborah Sargeant individually, Sargeant TBE, and International Oil Trading Company, LLC (a/k/a IOTC USA), in a form and substance mutually agreeable to the Parties, which release shall be annexed to this Agreement hereto and made a part hereof, and deliver such releases to counsel for the SA Parties, where they shall be held in escrow by counsel for the SA Parties until such releases become effective pursuant to this Agreement.  For avoidance of doubt, such releases shall not release (a) any claims related to the performance under this Agreement, (b) any DR Property Claims, or (c) any Jordan Tax Issue Claims.

**§2.3.   Release by Deborah Sargeant Individually and Sargeant TBE.**  Within ten (10) business days after the Effective Date, Deborah Sargeant individually and Sargeant TBE shall have executed and delivered to Al-Saleh a release (the "Deborah Sargeant Release") in favor of Al-Saleh and the Burford Entities in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement hereto and made a part hereof, and deliver such release to counsel for Al-Saleh, where it shall be held in escrow by counsel for Al-Saleh until such release becomes effective pursuant to this Agreement.

**Section 3.   Acknowledgement of Judgment Amount.**  The SA Parties acknowledge and agree that as of and including the Effective Date, the Judgments total the Current Judgment Amount and that post-judgment interest continues to accrue on the Judgments.  The SA Parties acknowledge and agree that Al-Saleh is entitled to $7,000,000.00 in attorney's fees and costs incurred in the execution and collection of the Judgments ("Judgment Enforcement Amount").  The Base Judgment Amount plus the Judgment Enforcement Amount shall hereinafter be referred to as the "Judgment Amount."

**Section 4.   Payment of the Settlement Amount.**  In consideration for the terms set forth in this Agreement, and in full and final settlement of any and all disputes between the Parties and the Burford Entities, the SA Parties shall cause Al-Saleh to receive the payment of $33,000,000.00 (thirty-three million U.S. Dollars) ("Settlement Amount") according to the following sub-sections:

**§4.1.   Initial Payment**.  The Parties shall cooperate to cause the sum of $20,000,000.00 (twenty million U.S. dollars) ("Initial Payment"), from the funds currently held under the injunction issued in the Texas Action, to be received by Al-Saleh.  To that end, the Parties shall cause, within ten (10) business days after the Effective Date, a stipulation, agreed motion, or other paper, in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement, to be

Settlement Agreement
Page 9 of 26

filed and prosecuted in the Texas Action to release all of the funds currently held under the injunction in the Texas Action, to cause the Initial Payment to be received into the trust account of counsel for Al-Saleh, to permit BTB to retain or transfer any funds held under the injunction in the Texas Action in excess of the Initial Payment, and to cause the injunction bond posted in the Texas Action to be discharged.  If the Initial Payment is made by wire transfer, the SA Parties shall cause the payment to be made with the following payment details:

Valley National Bank, Passaic, New Jersey

ABA#:                          021201383

or

SWIFT:                        MBNYUS33

For Credit to:               ASTIGARRAGA DAVIS MULLINS & GROSSMAN PA
                             IOTA ACCOUNT 1207016831
Ref#:                         10184.4002

**§4.2.   Periodic Payments of Remaining Settlement Amount**.  The SA Parties shall remit or cause to be remitted to Al-Saleh the Settlement Amount less the Initial Payment periodically (each payment being a "Periodic Payment") on or before the dates set forth below ("Payment Dates") at the account specified above or other account designated by Al-Saleh:

| No. | Amount | Payment Date |
|-----|--------|--------------|
| 1 | $300,000.00 | October 31, 2016 |
| 2 | $300,000.00 | November 30, 2016 |
| 3 | $300,000.00 | December 31, 2016 |
| 4 | $750,000.00 | January 31, 2017 |
| 5 | $400,000.00 | February 28, 2017 |
| 6 | $400,000.00 | March 31, 2017 |
| 7 | $400,000.00 | April 30, 2017 |
| 8 | $800,000.00 | May 31, 2017 |
| 9 | $9,350,000.00 | June 30, 2017 |

**Section 5.    Texas Action.**  Within ten (10) business days after the Effective Date, the Parties shall execute and cause their affiliates or insiders who are parties to the Texas Action to execute a stipulation, agreed motion, or other paper in a form and substance mutually agreeable to the Parties which shall be annexed to this Agreement ("Texas Abatement Pleading"), which provides

for: (a) the abatement of the Texas Action until the earlier of the occurrence of an Actionable Event or full compliance with this Agreement; (b) the release of the monies held under injunction in accordance with this Agreement; and (c) notice to the Court of the Texas Settlement Stipulation (as defined below), which notice shall reference the existence of the Texas Settlement Stipulation but shall not disclose the terms thereof unless required by the Court.  The Parties shall use best efforts to have the Texas Abatement Pleading approved by the Court in the Texas Action as soon as practicable.

Within ten (10) business days after the Effective Date, the SA Parties shall execute and cause their affiliates or insiders who are parties to the Texas Action to execute a stipulation, agreed motion, or other paper in a form and substance mutually agreeable to the Parties which shall be annexed to this Agreement ("Texas Settlement Stipulation"), which provides: (a) an agreement to withdraw with prejudice the Texas Special Appearances; and (b) the entry of a consent judgment ("Texas Consent Judgment") holding BTB, SML, and SAA liable for the Judgment Amount less all payments made prior the entry of such consent judgment.  Unless and until an Actionable Event occurs, Al-Saleh shall hold with his counsel the Texas Settlement Stipulation in escrow.  Upon the occurrence of an Actionable Event, Al-Saleh shall be entitled to file the Texas Settlement Stipulation with the Court in the Texas Action and seek and obtain the Texas Consent Judgment.

**Section 6.     The Bahamas Proceedings.**  Within ten (10) business days after the Effective Date, the Parties shall execute and cause their affiliates or insiders who are parties to the First Bahamas Proceeding and the Second Bahamas Proceeding to execute stipulations, agreed motions, or other papers in a form and substance mutually agreeable to the Parties which shall be annexed to this Agreement ("Bahamas Abatement Pleadings"), which provide for: (a) the abatement of the First Bahamas Proceeding and the Second Bahamas Proceeding until the earlier of the occurrence of an Actionable Event or full compliance with this Agreement; and (b) notice to the Court of the Bahamas Settlement Stipulations (as defined below), which notice shall reference the existence of the Bahamas Settlement Stipulations but shall not disclose the terms thereof unless required by the Court.  The Parties shall use best efforts to have the Bahamas Abatement Pleadings approved by the Court in the First Bahamas Proceeding and the Second Bahamas Proceeding as soon as practicable.

Within ten (10) business days after the Effective Date, the SA Parties shall execute and cause their affiliates or insiders who are parties to the First Bahamas Proceeding and the Second Bahamas Proceeding to execute stipulations, agreed motions, or other papers in a form and substance mutually agreeable to the Parties which shall be annexed to this Agreement ("Bahamas Settlement Stipulations"), which provide: (a) the immediate withdrawal with prejudice of the Setting Aside Application and the withdrawal and waiver of any objection to the Ex Parte Receivership Orders; (b) the consent to the Reinstatement Application; and (c) the entry of  consent judgments (the "Bahamas Consent Judgments") holding SML, IOTC Bahamas, and Global Oil Bahamas liable for the Judgment Amount less all payments made prior to the entry of such order.  Unless and until an Actionable Event occurs, Al-Saleh shall hold with his counsel the Bahamas Settlement Stipulations in escrow.  Upon the occurrence of an Actionable Event, Al-Saleh shall be entitled to file the

Bahamas Settlement Stipulations with the Court in the First Bahamas Proceeding and the Second Bahamas Proceeding and seek and obtain the Bahamas Consent Judgments.

      **Section 7.**    **Delaware Chancery Action.**  Within ten (10) business days after the Effective Date, the Parties shall execute and cause their affiliates or insiders who are parties to the Delaware Chancery Action to execute a stipulation, agreed motion, or other paper in a form and substance mutually agreeable to the Parties which shall be annexed to this Agreement ("Delaware Abatement Pleading"), which provides for: (a) the abatement of the Delaware Chancery Action until the earlier of the occurrence of an Actionable Event or full compliance with this Agreement; and (b) notice to the Court of the Delaware Settlement Stipulation (as defined below), which notice shall reference the existence of the Delaware Settlement Stipulation but shall not disclose the terms thereof unless required by the Court.  The Parties shall use best efforts to have the Delaware Abatement Pleading approved by the Court in the Delaware Chancery Action as soon as practicable.

      Within ten (10) business days after the Effective Date, the SA Parties shall execute and cause their affiliates or insiders who are parties to the Delaware Chancery Action to execute a stipulation, agreed motion, or other paper in a form and substance mutually agreeable to the Parties which shall be annexed to this Agreement ("Delaware Settlement Stipulation"), which provides the entry of a consent judgment (the "Delaware Consent Judgment") holding GO604 liable for $5,206,750.00 in the event an Actionable Event under this Agreement occurs less all payments made prior the entry of such consent judgment.  Unless and until an Actionable Event occurs, Al-Saleh shall hold with his counsel the Delaware Settlement Stipulation in escrow.  Upon the occurrence of an Actionable Event, Al-Saleh shall be entitled to file the Delaware Settlement Stipulation with the Court in the Delaware Chancery Action and seek and obtain the Delaware Consent Judgment.

      **Section 8.**    **UK Action**.  Within ten (10) business days after the Effective Date, the Parties shall execute a stipulation, agreed motion, or other paper in a form and substance mutually agreeable to the Parties which shall be annexed to this Agreement ("UK Abatement Pleading"), which provides for: (a) the abatement of the UK Action until the earlier of the occurrence of an Actionable Event or full compliance with this Agreement; and (b) notice to the Court of the UK Settlement Stipulation, which notice shall reference the existence of the UK Settlement Stipulation but shall not disclose the terms thereof unless required by the Court.  The Parties shall use best efforts to have the UK Abatement Pleading approved by the Court in the UK Action as soon as practicable.

      Within ten (10) business days after the Effective Date, the SA Parties shall execute a stipulation, agreed motion, or other paper in a form and substance mutually agreeable to the Parties which shall be annexed to this Agreement ("UK Settlement Stipulation"), which provides for: (a) the withdrawal of all objections, defenses, or motions opposing Al-Saleh's request for recognition of the Judgments in the UK Action; and (b) the entry of a consent judgment recognizing the Judgments as enforceable final judgments of the Court in the UK Action ("UK Consent Judgment").  Unless and until an Actionable Event occurs, Al-Saleh shall hold with his counsel the UK Settlement Stipulation

in escrow.  Upon the occurrence of an Actionable Event, Al-Saleh shall be entitled to file the UK Settlement Stipulation with the Court in the UK Action and seek and obtain the UK Consent Judgment.

**Section 9.      Dismissal of Jordanian Actions; IOTC Jordan Letter; DR Property Documents and Transfer.**

**§9.1.   Dismissal of Jordan Lawsuits**.  Within ten (10) business days after the Effective Date, the SA Parties shall cause the dismissal with prejudice of the Jordan Lawsuits and the claim of Sargeant in the IOTC USA Jordan Lawsuit by executing drop case agreements in a form and substance mutually agreeable to the Parties and their respective Jordanian counsel, which shall be annexed to this Agreement, and filing such drop case agreements with the Court in the Jordan Lawsuits and the IOTC USA Jordan Lawsuit.  Al-Saleh shall cooperate to effectuate such dismissal by having his counsel attend any necessary hearing.

**§9.2.   DR Property Documents and Transfers**.  Within ten (10) business days after the Effective Date, Abu-Naba'a shall provide documents sufficient to identify the DR Property and the interest that Al-Saleh has regarding the DR Property or companies involved with the DR Property. Abu-Naba'a shall effectuate the transfer to Al-Saleh of whatever interest Al-Saleh owns in the DR Property or companies involved with the DR Property.  To the extent any dispute arises regarding performance under this provision, such dispute shall be submitted to Scott Silverman of JAMS (or in the event he is no longer with JAMS, to another arbitrator of JAMS) within ninety (90) days of the Effective Date to act as arbitrator (the "Arbitrator") of such dispute under the JAMS arbitration rules.  The Parties agree to treat any decision rendered in such arbitration as final and binding.  A failure to perform under this subsection shall not constitute an Actionable Event.  However, notwithstanding anything in this Agreement to the contrary, the mortgage on the Mutiny Condominium, referenced in Section 11 below, shall remain as security for the obligations set forth in this subsection and shall survive the payment of the Settlement Amount and the Forbearance Period.  Once Abu-Naba'a has complied with his obligations under this subsection or, if the dispute is submitted to an Arbitrator, once Abu-Naba'a has complied with any order of the Arbitrator, then the mortgage on the Mutiny Condominium shall be released as security for the obligations set forth in this subsection.

**Section 10.      Forbearance on Judgment or Assertion of Claims.**  From the Effective Date until the earlier of the occurrence of any Actionable Event (as defined below) or 5:00 p.m. E.S.T. on June 30, 2017 ("Forbearance Period"), Al-Saleh agrees to forbear from exercising his rights or remedies to enforce the Judgments or assert any claim that arises from conduct or events that occurred prior to the Effective Date and that would be subject to the release delivered under §2.2 of this Agreement if such release were effective as of the Effective Date, including but not limited to forbearing from asserting any claim against the SA Parties, the SA Release Parties, IOTC USA, Deborah Sargeant individually, and/or Sargeant TBE, other than the DR Property Claims or the Jordan Tax Issue Claims, except as necessary to effectuate the terms of this

Settlement Agreement
Page 13 of 26

Agreement or as provided in this Agreement.  Unless an Actionable Event has occurred, Al-Saleh and the Burford Entities shall not file or solicit the filing of an involuntary bankruptcy or other insolvency proceeding against the SA Parties or SA Release Parties, or acquire any claim against any of them except as permitted by this Agreement.

§10.1.  **Permitted Recordings**.  Notwithstanding anything in this section, Al-Saleh may record any documents in public records reasonable and necessary to perfect any lien, interest, or encumbrance granted to him under this Agreement.  Any documents which, pursuant to this Agreement, are to be held by Al-Saleh's counsel and not filed unless and until an Actionable Event has occurred shall not be recorded in any public records or otherwise disclosed to any person or entity other than Al-Saleh, the Burford Entities, and their respective counsel, unless and until an Actionable Event has occurred unless required by law or a court of competent jurisdiction.

§10.2.  **Bankruptcy Proceedings.**  Notwithstanding anything in this section but subject to all other provisions of this Agreement, Al-Saleh may assert any and all of his rights and remedies in connection with the Bankruptcy Case, or any adversary proceeding related to the Bankruptcy Case, including, without limitation, the filing of his proof of claim.

Section 11.    **Security.**  The SA Parties shall grant or cause to be granted to Al-Saleh or his designee a lien, mortgage, encumbrance, pledge, or assignment as to all real or personal property described more particularly in the following sub-sections (collectively, "Collateral") to secure the Judgment Amount and any payment due under this Agreement, including the Settlement Amount, the Initial Payment, and each Periodic Payment.

§11.1  **The SA Real Property**.  No later than ten (10) business days after the Effective Date, the SA Parties shall grant or cause to be granted to Al-Saleh or his designee a mortgage, security interest, lien and/or assignment ("SA Mortgages") on the following described real or personal property (collectively, "SA Real Property"):

(a)  a mortgage on the Excelsior Condominium, Residence No. 9, in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement, which for avoidance of doubt will acknowledge that such mortgage is subject to the first mortgage of Floridian Community Bank;

(b)  a mortgage on the Excelsior Condominium, Cabana No. 7 in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement;

(c)  an assignment of all of 400 S. Ocean #9, LLC's right title and interest in a certain Boat Slip License Agreement, dated May 14, 2002, in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement, which for avoidance of doubt will acknowledge that such mortgage is subject to the first mortgage of Floridian Community Bank;

Settlement Agreement
Page 14 of 26

(d)      a mortgage on the Tennyson Villa Condominium, Unit No. 5001, in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement; and

(e)      a mortgage on The Mutiny Condominium, Unit Nos. 1014-1016, in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement.

**§11.2   Stock Pledges**.  No later than ten (10) business days after the Effective Date, the SA Parties shall grant or cause to be granted to Al-Saleh or his designee a security interest, lien, and/or assignment (collectively, "Stock Pledges"), as described below on the ownership interests of the following entities (collectively referred to as "Pledged Companies" and singly as "Pledged Company"):

(a)      a pledge of all the ownership interest in S.A. Acquisitions, LLC, in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement;

(b)      subject, if necessary, to the consent of the Receivers, a pledge of all the ownership interest in IOTC USA in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement;

(c)      subject, if necessary, to the consent of the Receivers, a pledge of all the ownership interest in IOTC Bahamas in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement;

(d)      subject, if necessary, to the consent of the Receivers, a pledge of all the ownership interest in SML in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement;

(e)      subject, if necessary, to the consent of the Receivers, a pledge of all the ownership interest in Global Oil Bahamas in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement;

(f)      a pledge of all the ownership interest in GO604 in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement;

(g)      a pledge of all the ownership interest in BTB in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement;

(h)      a pledge of all the ownership interest in Global Oil Financial Services, LLC ("GOFS") in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement;

14

Settlement Agreement
Page 15 of 26

(i)      a pledge of all the ownership interest in 400 S. Ocean #9, LLC ("Excelsior #9") in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement;

(j)      a pledge of all the ownership interest in 400 S. Ocean Cabana #7, LLC ("Cabana #7") in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement;

(k)      a pledge of all the ownership interest in Tennyson in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement.

§11.3   **Additional Pledges**.  No later than ten (10) business days after the Effective Date, the SA Parties shall grant or cause to be granted to Al-Saleh or his designee a security interest, lien, pledge or assignment on the following property ("Additional Pledges"):

(a)      A pledge of the stock held in Floridian Community Holdings, Inc. in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement.

(b)      An assignment of any rights and claims the SA Parties have to any monies held in connection with the Canada Action in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement.

§11.4   **Additional Obligations Regarding Stock Pledges**.  The SA Parties shall execute and deliver, or cause to be executed and delivered, in a form satisfactory to Al-Saleh, any resolution, agreement, amendment to an operating agreement or shareholder's agreement, or any other document necessary to allow any person or entity to become the plenary owner with all rights and powers of an owner (including without limitation the right to vote and receive distributions) after the enforcement of a Stock Pledge in or over any of the Pledged Companies ("Pledged Company Documents").  Al-Saleh's counsel shall retain possession of the Pledged Company Documents other than to the extent necessary to perfect Al-Saleh's interest in the Collateral.

§11.5   **Aircraft Mortgage**.  If, during the pendency of this Agreement and prior to the SA Parties' completion of the payment of the Settlement Amount, GO604 exercises, or causes its successor, assign, insider, or affiliate to exercise, the Aircraft Purchase Option, then no later than five (5) days after such exercise of the Aircraft Purchase Option, the SA Parties shall cause a mortgage, lien, or encumbrance on the Aircraft to be granted to Al-Saleh in a form and substance mutually agreeable to the Parties, which mortgage, lien, or encumbrance document shall be annexed to this Agreement.  Notwithstanding the foregoing, in the event GO604 exercises the Aircraft Purchase Option in connection with a loan to be secured by the Aircraft ("Refinance Mortgage"), then the SA Parties shall remit to Al-Saleh the difference, if any, between the amount loaned under the Refinance Mortgage and the amount necessary to exercise the Aircraft Purchase Option which amount shall be

15

applied to the last Periodic Payment and the mortgage granted to Al-Saleh under this provision shall be subordinate to such Refinance Mortgage.

**§11.6** **Notice of Intent to Purchase Aircraft**.  During the pendency of this Agreement and prior to the SA Parties' completion of the payment of the Settlement Amount, no later than ten (10) days before GO604, or its successor, assign, insider, or affiliate intends to exercise the Aircraft Purchase Option, the SA Parties shall provide notice to Al-Saleh in a manner compliant with the section titled "Notices" below.

**§11.7.** **Withdrawal of IOTC Bahamas Counterclaim**. No later than ten (10) business days after the Effective Date, the SA Parties shall execute and deliver, to be held in escrow by Al-Saleh's counsel unless and until an Actionable Event occurs, a dismissal with prejudice of the IOTC Bahamas Counterclaim ("Counterclaim Withdrawal") in a form and substance mutually agreeable to the Parties, which shall be annexed to this Agreement.

**Section 12.** **Dismissal of the Bankruptcy Case**.

**§12.1** **Support of Dismissal**.  Provided no Actionable Event has occurred, Al-Saleh agrees to support a motion for dismissal or abstention in the Bankruptcy Case which motion would assert the position that the amount of allowed Chapter 7 administrative expenses (including all professional fees) in the Bankruptcy Case should not exceed $500,000.00.  Provided no Actionable Event has occurred, in the event the motion for dismissal or abstention in the Bankruptcy Case is denied, Al-Saleh agrees to support conversion of the Bankruptcy Case to one under Chapter 11 and will support, during the Forbearance Period, a Chapter 11 plan that implements the terms of this Agreement.

**§12.2** **Pledge of Solvochem Ownership Interest**.  As soon as practicable, but no later than thirty (30) days after the dismissal or abstention of the Bankruptcy Case, the SA Parties shall cause IOTC USA to execute and deliver, to the extent permissible at law or pursuant to the relevant governing documents, to Al-Saleh a pledge of all of IOTC USA's ownership interest  in Solvochem Logistics, Ltd. ("Solvochem") in a form and substance mutually agreeable to the Parties which shall be annexed to this Agreement ("Solvochem Pledge").  In the event the relevant governing documents do not permit the Solvochem Pledge, then the SA Parties shall use their best efforts, including instructing IOTC USA and any director appointed by IOTC USA to the board of Solvochem, to take the steps necessary to obtain consent for the Solvochem Pledge and to effectuate such pledge once consent is obtained.

**§12.3** **Release by IOTC USA**.  No later than ten (10) business days after the dismissal of the Bankruptcy Case, the SA Parties shall cause IOTC USA to execute and deliver to Al-Saleh a release of Al-Saleh in a form and substance mutually agreeable to the Parties which shall be annexed to this Agreement.

**§12.4** **Dismissal of the IOTC USA Jordan Lawsuit**.  As soon as practicable but no later

than twenty (20) business days after dismissal of the Bankruptcy Case, the SA Parties shall cause IOTC USA to dismiss the IOTC USA Jordan Lawsuit with prejudice and Al-Saleh shall cooperate to effectuate such dismissal by having his counsel attend any necessary hearing.

**§12.5. Dismissal of Jordanian Recognition Action**.  As soon as practicable but no later than ten (10) business days after the dismissal of the IOTC USA Jordan Lawsuit pursuant to this section, Al-Saleh shall dismiss without prejudice that certain proceeding to recognize the Judgments filed in the Hashemite Kingdom of Jordan and the SA Parties shall cooperate to effectuate such dismissal by having their counsel attend any necessary hearing.

**Section 13.     Actionable Event.**  As used in this Agreement, "Actionable Event" means the occurrence of any one or more of the following:

(a)     Any representation or warranty made by the SA Parties or any of the SA Release Parties in this Agreement or any of the Settlement Documents, other than in connection with Section 9.2, proves to be incorrect in any material respect; or

(b)     Any of the SA Parties or any of the SA Release Parties defaults in the performance of this Agreement, other than Section 9.2, or the provision of any of the Settlement Documents; or

(c)     Any payment due under this Agreement or any of the Settlement Documents, whether the Initial Payment or any Periodic Payment, is not paid when due;

(d)     Other than IOTC USA, any of the SA Parties or any non-natural entities who are SA Release Parties commences a voluntary case under the United States Bankruptcy Code, or petitions or files for relief under any other law relating to bankruptcy, insolvency, reorganization, winding-up, or composition or adjustment of debts including an assignment for the benefit of creditors;

(e)     Notwithstanding the above, the SA Parties may cure any late payment by adding to the amount of the payment 10% per annum simple interest for each day the payment is late, provided the SA Parties make the payment no later than the tenth (10th) day after the due date.  If any late payment is made in accordance with this cure provision, then no Actionable Event has occurred.

**Section 14.     Occurrence of Actionable Event**.  If an Actionable Event occurs:

(a)     The SA Parties shall remain, jointly and severally, liable for the Judgment Amount less any payments received by Al-Saleh after the Effective Date as applied under this Agreement.  For avoidance of doubt, the Parties agree the Initial Payment and any Periodic Payments shall be applied first to the Judgment Enforcement Costs then to

the Base Judgment Amount;

(b)      The Forbearance Period shall terminate;

(c)      Al-Saleh may exercise all of his rights and remedies under the SA Mortgages, Stock Pledges, Pledged Company Documents, the Additional Pledges; the Aircraft Mortgage, the Counterclaim Withdrawal, and the Solvochem Pledge;

(d)      Al-Saleh may exercise all of his rights under the Texas Abatement Pleading, Texas Settlement Stipulation, Texas Consent Judgment, Bahamas Abatement Pleadings, Bahamas Settlement Stipulations, Bahamas Consent Judgments, Delaware Abatement Pleading, Delaware Settlement Stipulation, Delaware Consent Judgment, UK Abatement Pleading, UK Settlement Stipulation, and UK Consent Judgment.

**Section 15.    Dismissal of Litigation.**  Provided no Actionable Event has occurred, no later than the tenth (10th) day after the earlier of the final day of the Forbearance Period or the receipt by Al-Saleh of the Settlement Amount, the Parties shall mutually and simultaneously cause the dismissal of their respective lawsuits as follows:

**§15.1  Dismissal of Al-Saleh's Actions.**  The SA Parties may cause the dismissal with prejudice of the Canada Action, the First Bahamian Proceeding, the Second Bahamian Proceeding, the Texas Action, the Delaware Chancery Action, the UK Action, and each of the Proceedings Supplementary that remains pending, and any other action Al-Saleh commenced, under 28 U.S.C. § 1782 or otherwise, pertaining to the Judgments, enforcement of the Judgments, or the SA Parties that remains pending, with each respective party to bear his/their own attorney's fees and costs by filing the stipulations held by their counsel in escrow.

**§15.2   SA Parties' Dismissal of Amparo Actions.**  The SA Parties shall cause the dismissal with prejudice of the Amparo Actions, to the extent any matters in the Amparo Actions remain pending.

**§15.3   Escrow of Stipulations for Dismissal.**  No later than ten (10) business days after the Effective Date, the Parties shall execute, or cause their affiliates to execute, stipulations for dismissal, as provided in and to effectuate the dismissals referenced in this section, in a form and substance mutually agreeable to the Parties, which stipulations for dismissal shall be annexed to this Agreement.  Such stipulations for dismissal shall be delivered to counsel for the respective parties and held in escrow.

**Section 16.   Satisfaction or Assignment of Judgments for Full Performance.**  Provided no Actionable Event has occurred, no later than the tenth (10th) day after the earlier of the final day of the Forbearance Period or the receipt by Al-Saleh of the Settlement Amount, or as soon as practicable thereafter, the SA Parties may: (a) record satisfactions of the Judgments in each state or

Settlement Agreement
Page 19 of 26

country in which Al-Saleh domesticated any of the Judgments; and (b) release all Collateral, including property subject to the SA Mortgages, Stock Pledges, Pledge Company Documents, and Additional Pledges, by filing the satisfactions and release of Collateral documents held by the SA Parties in escrow.

Within ten (10) business days after the Effective Date, Al-Saleh shall execute satisfactions of the Judgments and releases of Collateral in a form and substance mutually agreeable to the Parties, which satisfactions of the Judgments and releases of Collateral shall be annexed to this Agreement. Such satisfactions of the Judgments and releases of Collateral shall be delivered to counsel for the SA Parties and held in escrow.

**Section 17.**   **Effectiveness of Certain Releases.**   If an Actionable Event has not occurred, upon the earlier of the final day of the Forbearance Period or the receipt by Al-Saleh of the Settlement Amount, the releases from Al-Saleh, the Burford Entities, Deborah Sargeant individually, and Sargeant TBE shall automatically become effective.

**Section 18.**   **Additional Documents; Further Assurances.**   The Parties shall deliver any and all other instruments and documents, and shall do, and cause to be done, all such additional acts and things, required to be delivered or done pursuant to, or necessary or proper in order to give effect to, all of the terms and provisions of this Agreement.

**Section 19.**   **Annexes to Agreement**.   In any instance where this Agreement refers to an attached or annexed exhibit, the exhibit shall be in a form mutually agreed to by the Parties, and the Parties agree to cooperate in the timely preparation and delivery of all documents or instruments.  If the Parties are unable to agree to the form and/or substance of such document or instrument, the Parties shall submit competing forms to Mediator Scott Silverman who shall resolve any disputes as to the form, and the resulting form shall be annexed to this Agreement.  For avoidance of doubt, during the time in which the Parties await the resolution of any dispute by Mediator Scott Silverman under this section, the period of time set forth in this Agreement for attaching or annexing such exhibit shall be suspended.  The Parties agree to treat any decision rendered by Mediator Scott Silverman under this section as final and binding.  In addition, the SA Parties may seek Al-Saleh's consent and Al-Saleh may seek the SA Parties' consent for a reasonable extension of time to meet any of the deadlines under this Agreement to complete an attached or annexed exhibit, which consent shall not be unreasonably withheld.

**Section 20.**   **No Fiduciary, Agency, Partnership or Joint Venture Relationship.** Nothing in this Agreement, nor the acts of the Parties, shall be deemed or construed as in any way creating a relationship, including, without limitation, those of fiduciary, agency, partnership, joint venture or any other similar relationship, other than lender and borrower or lender and guarantor.

**Section 21.**   **No Waiver/Estoppel; Cumulative Remedies.**   No failure on the part of the Parties to exercise and no delay in exercising any right granted under this Agreement or any

Settlement Agreement
Page 20 of 26

agreements or documents contemplated to be executed in connection with this Agreement, including any of the Settlement Documents, shall be a waiver thereof or create an estoppel against the other Parties regarding the exercising of any right under this Agreement, nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.  No Party shall be deemed to have waived or to be estopped to assert any right granted it under this Agreement except in a writing signed by all Parties to this Agreement.  The remedies provided herein are cumulative and may be exercised alternatively, concurrently, successively or in any other manner and are not exclusive of any remedies provided by law.

**Section 22.    No Third Party Beneficiaries.**    Nothing expressed or implied in this Agreement is intended, or shall be construed, to confer upon or give any person other than the Parties to this Agreement, the SA Release Parties, Deborah Sargeant individually, Sargeant TBE, IOTC USA, the Burford Entities, and their respective heirs, personal representatives, legal representatives, successors and assigns, any rights or remedies under or by reason of this Agreement.

**Section 23.    Severability.**    Each of the words, phrases, sentences, clauses, sections or subsections contained in this Agreement or any part hereof, is inserted conditionally on its being valid in law and, in the event that any one or more of the words, phrases, sentences, clauses, sections or subsections contained in this Agreement shall be declared invalid, this Agreement shall be construed as if such word or words, phrase or phrases, sentence or sentences, section or sections, or subsection or subsections, had not been inserted.

**Section 24.    Limitations and Laches.** The Parties waive, and hereby agree not to assert, to the fullest extent possible, any claim or defense based on the statute of limitations, laches, or the passage of time arising in, under or in connection with this Agreement.

**Section 25.    Section Headings.**    The section and other headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

**Section 26.    Counterparts.**    This Agreement may be executed in any number of counterparts, each of which shall constitute an original but all together shall constitute but one and the same instrument.

**Section 27.    Entire Agreement.** This Agreement and the Settlement Documents constitute the entire agreement among the Parties hereto with respect to the subject matter of this Agreement and supersedes all prior agreements, understandings, negotiations and discussions, both written and oral, among the Parties hereto with respect to the subject matter of this Agreement.

**Section 28.    No Reliance; No Rescission.**    The SA Parties, the SA Release Parties, Deborah Sargeant individually, Sargeant TBE, and IOTC USA acknowledge and agree that they have relied upon no statements of fact made by or promises of future conduct by Al-Saleh other than as

20

Settlement Agreement
Page 21 of 26

expressly and specifically set forth in this Agreement.  Accordingly, the SA Parties acknowledge and
agree that this Agreement cannot be rescinded on the basis of fraud or on the basis of mistake,
whether unilateral or mutual.  Al-Saleh acknowledges and agrees that he has relied upon no
statements of fact made by or promises of future conduct by the SA Parties, the SA Release Parties,
Deborah Sargeant individually, Sargeant TBE, or IOTC USA other than as expressly and specifically
set forth in this Agreement.  Accordingly, Al-Saleh acknowledges and agrees that this Agreement
cannot be rescinded on the basis of fraud or on the basis of mistake, whether unilateral or mutual.

Section 29.    **Counsel**.  The Parties acknowledge that they have had independent counsel to
assist in the negotiation and preparation of this Agreement.  Each Party has read this Agreement, is
aware of its terms, and has executed it acknowledging all Parties have acted in good faith in
negotiating the terms and provisions contained herein.

Section 30.    **Time of Essence.**  Time is of the essence under this Agreement, and each of
the Settlement Documents. Without limiting the generality of the foregoing, the time periods
referenced for the performance of an act or satisfaction of an obligation as specified in this
Agreement were a material inducement to the execution by the Parties to this Agreement.

Section 31.    **Modifications.**  This Agreement may not be amended or modified in any way
except by a written instrument executed by all of the Parties hereto.  Without limiting the generality
of the foregoing, each Party acknowledges (a) that modifications of this Agreement that would be
binding upon a Party that is not a natural person require affirmative written consent of a Senior
Official of such Party and the execution of a formal written document executed by all of the Parties
hereto and (b) because the occurrence of a breach of this Agreement is likely to lead to the filing of
litigation to enforce this Agreement unless a subsequent agreement is reached, any requests by a
Party for modifications of this Agreement shall constitute settlement discussions within the ambit of
the applicable evidentiary rules governing settlement discussion, including as applicable Rule 408 of
the Federal Rules of Evidence or the state law equivalent thereof.

Section 32.    **Notices.**  All notices, requests, demands or other communications required or
contemplated by the provisions hereof shall be in writing, and shall be deemed to have been given or
made on the third business day after the deposit in the United States Mail by First Class Mail postage
prepaid, or when received if sent by telefax or delivered by hand, addressed to the respective Parties
as follows (which may be changed by a writing sent to the other Parties to this Agreement):

Settlement Agreement
Page 22 of 26

If to Al-Saleh:

_____

with a copy to:

Edward H. Davis, Jr.
Gregory S. Grossman
Andres H. Sandoval
Astigarraga Davis Mullins & Grossman, P.A.
1001 Brickell Bay Drive, 9th Floor
Miami, Florida 33131
Tel: (305) 372-8282
Fax: (305) 372-8202
edavis@astidavis.com
ggrossman@astidavis.com
asandoval@astidavis.com

If to Harry Sargeant, III:

_____

with copy to:

Christopher M. Kise
Melissa B. Coffey
Joshua M. Hawkes
FOLEY & LARDNER LLP
106 East College Avenue
Tallahassee, FL 32301-7732
Telephone: (850) 222-6100
Facsimile:  (850) 561-6475
ckise@foley.com
mcoffey@foley.com
jhawkes@foley.com

Settlement Agreement
Page 23 of 26

If Mustafa Abu-Naba'a:

_____

with copy to:

Christopher M. Kise
Melissa B. Coffey
Joshua M. Hawkes
FOLEY & LARDNER LLP
106 East College Avenue
Tallahassee, FL 32301-7732
Telephone: (850) 222-6100
Facsimile:  (850) 561-6475
ckise@foley.com
mcoffey@foley.com
jhawkes@foley.com

**Section 33.     Effectiveness of Agreement.**  Upon the execution of this Agreement by each of the Parties hereto, this Agreement shall be effective.

**Section 34.     Governing Law; Consent to Jurisdiction and Venue.**  This Agreement and any and all claims, defenses, disputes, or controversies arising out of or related to (a) this Agreement, (b) the drafting and negotiation of this Agreement, or (c) the relationship of the Parties, whether in contract, quasi-contract, tort, at law, in equity, or otherwise, shall be governed by and construed in accordance with the internal laws of the State of Florida without regard to any conflict of law rule that would call for the application of the laws of another jurisdiction other than the State of Florida. With respect to disputes that arise in, under, or in connection with this Agreement, each Party consents to the personal jurisdiction and venue of the courts of the State of Florida or the Courts of the United States located within the State of Florida and waives any claims that such courts are an inconvenient venue.

**Section 35.     Service of Process.**  Each of the Parties agrees that service of process for any lawsuits arising in, under, related to, or in connection with this Agreement may be effected by delivery of such process by First Class U.S. Mail with return receipt or delivery confirmation or hand-delivery to the person listed in the section of this Agreement entitled "Notices" and each of the Parties hereby appoints the respective person(s) listed therein as agent(s) for service of such process.

**Section 36.     Attorneys Fees and Costs.**  In addition to all other remedies, if a breach of this Agreement occurs, the breaching Party agrees that in the event of legal action or other proceeding arising in, under, or in connection with (including but not limited to any alleged breach, default, claim, misrepresentation, or declaratory relief regarding) this Agreement, the non-breaching

Settlement Agreement
Page 24 of 26

Party shall be entitled to recover its reasonable  Attorneys' Fees and Costs.  "Attorneys' Fees and Costs" means all amounts incurred by the non-breaching Party before or during a legal action or proceeding (including actions or proceedings on appeal, in bankruptcy cases, contested matters, or adversary proceedings, or in administrative or regulatory proceedings and regardless of whether same are commenced by or against a Party) for the fees and costs charged for the non-breaching Party's legal representation relating to the alleged breach of this Agreement including but not limited to the fees and costs incurred in litigating the entitlement, reasonableness, and quantification of such amounts due to the non-breaching Party, relating to the alleged breach of this Agreement.  For avoidance of doubt, the non-breaching Party shall be entitled to all costs incurred for its legal representation relating to the alleged breach of this Agreement whether or not such costs are specifically enumerated in any applicable statute, rule or guideline including (a) costs of investigation, (b) costs of copying of documents or other materials, whether for discovery, filing with the court, or internal review, (c) costs for electronic discovery including outside vendor costs, (d) electronic research charges, (e) telephone charges, (f) mailing, commercial delivery service, and courier charges, (g) travel expenses, (h) expert witness fees regardless of whether such expert was a consulting expert or testimonial expert and regardless of whether such expert testified at a deposition, hearing, or trial, (i) stenographer and videographer expenses including costs of transcription or preparation regardless of whether incurred for deposition, hearing, or trial, (j) costs of interpretation and translation to or from the English language, (k) mediator and mediation expenses, and (l) expenses associated with special master, referee, receivership, monitor, or other court appointed fiduciaries or officers.

      **Section 37.**   <u>**Sale/Assignment.**</u>  Each of the Parties agree that neither may sell or assign their rights in, under, and to the Judgments and this Agreement to any other person without the written consent of all Parties except that Al-Saleh may sell or assign his rights in, under, and to the Judgments to one or more of the Burford Entities ("Purchaser/Assignee"), and Al-Saleh agrees that in such event, Al-Saleh and the Purchaser/Assignee will become jointly responsible for any duties under this Agreement.  Prior to any such assignment, Al-Saleh shall cause the Burford Entity that is the Purchaser/Assignee to sign an acknowledgement that such Burford Entity will be bound by all terms of this Agreement (the "Acknowledgement"), including but not limited to the terms relating to jurisdiction and enforcement of this Agreement, and Al-Saleh shall provide a copy of the Acknowledgement to counsel for the SA Parties.  Such assignment shall not be valid or effective until the Acknowledgement has been signed by the Burford Entity that is the Purchaser/Assignee and provided to the SA Parties' counsel.

      **Section 38.**   <u>**Weekends and Legal Holidays.**</u>  Any act by or any deadline of any Party under this Agreement that falls on a Saturday, Sunday, or legal holiday shall be performed and such deadline extended to the next day that is not a Saturday, Sunday, or legal holiday in the United States or, for any Settlement Documents to be filed in other countries, to the next day that is not a legal holiday in the country in which the Settlement Document is to be filed.

      **Section 39.**   <u>**Authority to Sign.**</u>  Each of the undersigned signatories represents and

Settlement Agreement
Page 25 of 26

warrants that he or she is authorized to sign this Agreement on behalf of the Party or Parties on whose behalf he or she is signing.

**Section 40.    Revival and Reinstatement.**  If any Party receives a demand, notice of claim, or lawsuit that seeks to require the repayment, restoration, or return, in whole or in part, of any payment or property previously paid or transferred to such Party applied in full or partial satisfaction of any debt under this Agreement, because the payment or transfer, or the incurrence of the obligation so satisfied, is asserted or declared to be void, voidable, or otherwise recoverable under any state or federal law, including without limitation under 11 U.S.C. §§544, 547, 548, 549, or 550 (collectively, a "Voidable Transfer"), such Party shall notify the other Party within fourteen (14) days of receipt.  If such Party, by judgment or by settlement, repays, restores, or returns monies claimed as a Voidable Transfer, then, as to any such Voidable Transfer, or the amount thereof that such Party repays, restores, or returns, by judgment or by settlement and as to all reasonable Attorney's Fees and Costs of Lender related thereto, the liability of the other Party will automatically and immediately be revived, reinstated, and restored and will exist as though the Voidable Transfer had never been made. The SA Parties shall have ninety (90) days to cure any obligation revived or reinstated under this section by making further payment for any amount repaid pursuant to this section.

**Section 41.    Waiver of Jury Trial.**  EACH OF THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES THE RIGHT ANY OF THEM MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OR OMISSIONS OF ANY PARTY; OR ANY OTHER AGREEMENTS EXISTING BETWEEN ANY ONE OR MORE OF THE PARTIES TO THIS AGREEMENT.   THIS PROVISION IS A MATERIAL INDUCEMENT TO EACH PARTY ENTERING INTO THIS AGREEMENT.    FURTHER,   EACH   PARTY   HEREBY   CERTIFIES   THAT   NO REPRESENTATIVE OR AGENT OF ANOTHER PARTY, NOR COUNSEL FOR SUCH PARTY, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH PARTY WOULD NOT, IN THE EVENT OF SUCH LITIGATION, SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION.

**[SIGNATURES ON FOLLOWING PAGE]**

Settlement Agreement
Page 26 of 26

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement effective as of the Effective Date to be executed and delivered.


Harry Sargeant, III

Sign: _____

Print: _____

Its: _____


Mustafa Abu-Naba'a

Sign: _____

Print: _____

Its: _____


Mohammad Anwar Farid Al-Saleh

Sign: _____

Print: _____

Its: _____

26

# Exhibit B

**FOLEY**

January 9, 2017

**VIA FEDEX AND E-MAIL**

Andres H. Sandoval, Esquire
Astigarraga Davis
1001 Brickell Bay Drive
9th Floor
Miami, FL 33131

        Re:    Al-Saleh/Sargeant Settlement – Executed Releases

Dear Andres,

        Pursuant to the January 6, 2017 Amendment to the Settlement Agreement between Mohammad Al-Saleh ("Al-Saleh"), Mustafa Abu-Naba'a, and Harry Sargeant, III, enclosed are the following fully executed documents:

        (1) Release of Burford Capital, LLC, Dundrod Investments, Ltd. (the "Burford Entities") and Al-Saleh by Deborah Sargeant Individually and Harry Sargeant, III and Deborah Sargeant as Tenants by the Entireties;

        (2) Release of the Burford Entities and Al-Saleh by IOTC USA; and

        (3) Release of the Burford Entities and Al-Saleh by the SA Parties and the SA Release Parties.

        Please let me know if you have any questions.

        Best Regards,

        Melissa B. Coffey

cc:    Edward Davis, Esquire
        Gregory Grossman, Esquire
        Christopher Kise, Esquire
        Joshua Hawkes, Esquire

### RELEASE OF AL-SALEH, BURFORD CAPITAL, LLC, AND DUNDROD INVESTMENTS, LTD. BY DEBORAH SARGEANT INDIVIDUALLY AND HARRY SARGEANT, III AND DEBORAH SARGEANT AS TENANTS BY THE ENTIRETIES

**KNOW ALL PERSONS BY THESE PRESENTS:**

That, with the exception of the obligations and covenants set forth in that certain Settlement Agreement between Mohammad Al-Saleh ("Al-Saleh") on the one hand and Harry Sargeant, III ("Sargeant") and Mustafa Abu-Naba'a on the other hand ("Settlement Agreement"), and in order to induce Al-Saleh to enter into the Settlement Agreement, Deborah Sargeant individually and Sargeant and Deborah Sargeant as tenants by the entireties (hereinafter referred to as "RELEASORS") for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, do hereby remise, release, acquit, satisfy and forever discharge, and by these presents do on behalf of each of the RELEASORS and each of his or her current and former officers, directors, agents, attorneys, shareholders, parent corporations, subsidiaries, affiliates, partners, employees, insurers, predecessors, successors, executors, administrators, beneficiaries, heirs, assigns and all persons acting by or through such RELEASOR, hereby remise, release, acquit, satisfy and forever discharge RELEASEES (as defined below) from any and all manner of actions, causes of action, suits, debts, costs, loss of services, obligations, liabilities, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, disputes, trespasses, damages, judgments, executions, claims and demands whatsoever, regardless of whether known or unknown, fixed or contingent, accrued or un-accrued, liquidated or unliquidated, at law or in equity or under federal, state, local, statutory or common law, foreign, international, or other law, rule, or regulation, which against any one or more of the RELEASEES, any RELEASOR ever had or now has, upon, by reason of, arising out of, or in connection with any matter, cause, or thing whatsoever, including, but not limited to, any matter, cause, or thing whatsoever relating to the relationship between RELEASORS and RELEASEES, from the beginning of the world to the date hereof (collectively, "Claims" and singly, "Claim").

This Release is intended to be contractual in nature, and may not be changed except with the express prior written consent of Al-Saleh.

As used herein, "RELEASEES" means: (a) Al-Saleh, (b) Burford Capital, LLC, and (c) Dundrod Investments Ltd., and all persons or entities for whose acts or omissions

Release of Al-Saleh
Page 2

the foregoing would or could be derivatively or vicariously liable or to whom the foregoing could or would owe indemnification.

RELEASORS further declare and acknowledge RELEASORS are acting upon RELEASORS' own best judgment, belief and knowledge of the nature and validity of any and all Claims or potential Claims in making this Release, and that RELEASORS are acting with the advice of legal counsel chosen by RELEASORS. This Release should be broadly construed in favor of the RELEASEES and shall be governed by the laws of the State of Florida, without regard to any law that would require the application of any other law to this Release.

This Release shall be binding upon the successors and assigns of the RELEASORS, and shall inure to the benefit of the successors and assigns of RELEASEES.

Wherefore to signify RELEASORS' consent and acceptance of the foregoing, each RELEASOR has signed below in counterparts, as of this 28th day of October, 2016.

Deborah Sargeant

Harry Sargeant, III

2

Release of Al-Saleh
Page 2

the foregoing would or could be derivatively or vicariously liable or to whom the foregoing could or would owe indemnification.

RELEASORS further declare and acknowledge RELEASORS are acting upon RELEASORS' own best judgment, belief and knowledge of the nature and validity of any and all Claims or potential Claims in making this Release, and that RELEASORS are acting with the advice of legal counsel chosen by RELEASORS. This Release should be broadly construed in favor of the RELEASEES and shall be governed by the laws of the State of Florida, without regard to any law that would require the application of any other law to this Release.

This Release shall be binding upon the successors and assigns of the RELEASORS, and shall inure to the benefit of the successors and assigns of RELEASEES.

Wherefore to signify RELEASORS' consent and acceptance of the foregoing, each RELEASOR has signed below in counterparts, as of this 28th day of October, 2016.


_____
**Deborah Sargeant**

_____
**Harry Sargeant, III**

2

## RELEASE OF AL-SALEH BY IOTC USA

**KNOW ALL PERSONS BY THESE PRESENTS:**

That, with the exception of the obligations and covenants set forth in that certain Settlement Agreement between Mohammad Al-Saleh ("Al-Saleh") on the one hand and Harry Sargeant, III and Mustafa Abu-Naba'a on the other hand ("Settlement Agreement") and in order to induce Al-Saleh to enter into the Settlement Agreement, International Oil Trading Company, LLC (hereinafter referred to as "RELEASOR") for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, does hereby remise, release, acquit, satisfy and forever discharge, and by these presents does on behalf of itself and each of its current and former officers, directors, agents, attorneys, shareholders, parent corporations, subsidiaries, affiliates, partners, employees, insurers, predecessors, successors, executors, administrators, beneficiaries, heirs, assigns and all persons acting by or through RELEASOR, hereby remise, release, acquit, satisfy and forever discharge RELEASEES (as defined below) from any and all manner of actions, causes of action, suits, debts, costs, loss of services, obligations, liabilities, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, disputes, trespasses, damages, judgments, executions, claims and demands whatsoever, regardless of whether known or unknown, fixed or contingent, accrued or un-accrued, liquidated or unliquidated, at law or in equity or under federal, state, local, statutory or common law, foreign, international, or other law, rule, or regulation, which against any one or more of the RELEASEES, RELEASOR ever had or now has, upon, by reason of, arising out of, or in connection with any matter, cause, or thing whatsoever, including, but not limited to, any matter, cause, or thing whatsoever relating to the relationship between RELEASOR and RELEASEES, from the beginning of the world to the date hereof (collectively, "Claims" and singly, "Claim").

This Release is intended to be contractual in nature, and may not be changed except with the express prior written consent of Al-Saleh.

As used herein, "RELEASEES" means: (a) Al-Saleh, (b) Burford Capital, LLC, and (c) Dundrod Investments Ltd., and all persons or entities for whose acts or omissions the foregoing would or could be derivatively or vicariously liable or to whom the foregoing could or would owe indemnification.

RELEASOR further declares and acknowledges RELEASOR is acting upon RELEASOR'S own best judgment, belief and knowledge of the nature and validity of any and all claims or potential claims in making this Release, and that RELEASOR is

Release of Al-Saleh by IOTC USA
Page 2

acting with the advice of legal counsel chosen by RELEASOR. This Release should be broadly construed in favor of the RELEASEES and shall be governed by the laws of the State of Florida, without regard to any law that would require the application of any other law to this Release.

This Release shall be binding upon the successors and assigns of the RELEASOR, and shall inure to the benefit of the successors and assigns of RELEASEES.

Wherefore to signify RELEASOR'S consent and acceptance of the foregoing, RELEASOR has signed below, effective this 28th day of October, 2016.

**International Oil Trading Company, LLC**

By:
Print Name: Harry Sargeant III
Its: Manager

## <u>RELEASE OF AL-SALEH, BURFORD CAPITAL, LLC, AND DUNDROD INVESTMENTS, LTD.</u>

**KNOW ALL PERSONS BY THESE PRESENTS:**

That, with the exception of the obligations and covenants set forth in that certain Settlement Agreement between Mohammad Al-Saleh ("Al-Saleh") on the one hand and Harry Sargeant, III and Mustafa Abu-Naba'a on the other hand ("Settlement Agreement"), and in order to induce Al-Saleh to enter into the Settlement Agreement, Harry Sargeant, III, Harry Sargeant, IV, Kevin G. Kirkeide, Mustafa Abu-Naba'a, Karim Abu-Naba'a, BTB Refining, LLC, Global Oil Management Group, Ltd., Global Oil 604, LLC, International Oil Trade Centre (a/k/a IOTC Jordan), International Oil Trading Company, Ltd. (a/k/a IOTC Bahamas), International Oil Trading Company, B.V. (a/k/a IOTC BV), S.A. Acquisitions, LLC, Sargeant Marine Limited, and Tennyson Villa, LLC (hereinafter referred to as "RELEASORS") for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, do hereby remise, release, acquit, satisfy and forever discharge, and by these presents do on behalf of each of the RELEASORS and each of his or its current and former officers, directors, agents, attorneys, shareholders, parent corporations, subsidiaries, affiliates, partners, employees, insurers, predecessors, successors, executors, administrators, beneficiaries, heirs, assigns and all persons acting by or through such RELEASOR, hereby remise, release, acquit, satisfy and forever discharge RELEASEES (as defined below) from any and all manner of actions, causes of action, suits, debts, costs, loss of services, obligations, liabilities, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, disputes, trespasses, damages, judgments, executions, claims and demands whatsoever, regardless of whether known or unknown, fixed or contingent, accrued or un-accrued, liquidated or unliquidated, at law or in equity or under federal, state, local, statutory or common law, foreign, international, or other law, rule, or regulation, which against any one or more of the RELEASEES, any RELEASOR ever had or now has, upon, by reason of, arising out of, or in connection with any matter, cause, or thing whatsoever, including, but not limited to, any matter, cause, or thing whatsoever relating to the relationship between RELEASORS and RELEASEES, from the beginning of the world to the date hereof (collectively, "Claims" and singly, "Claim").

Notwithstanding the foregoing, this Release shall not apply to: (a) any Claim possessed by Abu-Naba'a against Al-Saleh arising in, under, against, or in connection with that certain parcel of real property comprised of approximately 2800 square meters at Malecon near the Lebanese, Syrian, Palestinian Club in Santo Domingo, Dominican

Release of Al-Saleh
Page 2

Republic ("DR Property"), or that certain company that owns or has rights to the DR Property, which property was referenced on pages 197-200 of the deposition transcript of Abu-Naba'a dated December 17, 2013; or (b) any Claim possessed by Abu-Naba'a, Sargeant, or International Oil Trade Centre (a/k/a IOTC Jordan) against Al-Saleh regarding the imposition, liability, or payment of taxation to the Hashemite Kingdom of Jordan relating to International Oil Trade Centre (a/k/a IOTC Jordan).

This Release is intended to be contractual in nature, and may not be changed except with the express prior written consent of Al-Saleh.

As used herein, "RELEASEES" means: (a) Al-Saleh, (b) Burford Capital, LLC, and (c) Dundrod Investments Ltd., and all persons or entities for whose acts or omissions the foregoing would or could be derivatively or vicariously liable or to whom the foregoing could or would owe indemnification.

RELEASORS further declare and acknowledge RELEASORS are acting upon RELEASORS' own best judgment, belief and knowledge of the nature and validity of any and all claims or potential claims in making this Release, and that RELEASORS are acting with the advice of legal counsel chosen by RELEASORS. This Release should be broadly construed in favor of the RELEASEES and shall be governed by the laws of the State of Florida, without regard to any law that would require the application of any other law to this Release.

This Release shall be binding upon the successors and assigns of the RELEASOR, and shall inure to the benefit of the successors and assigns of RELEASEES.

Wherefore to signify RELEASORS' consent and acceptance of the foregoing, each RELEASOR has signed below in counterparts, as of this 28th day of October, 2016.


_____
Harry Sargeant, III


_____
Harry Sargeant, IV


_____
Kevin G. Kirkeide

Release of Al-Saleh
Page 2

Republic ("DR Property"), or that certain company that owns or has rights to the DR Property, which property was referenced on pages 197-200 of the deposition transcript of Abu-Naba'a dated December 17, 2013; or (b) any Claim possessed by Abu-Naba'a, Sargeant, or International Oil Trade Centre (a/k/a IOTC Jordan) against Al-Saleh regarding the imposition, liability, or payment of taxation to the Hashemite Kingdom of Jordan relating to International Oil Trade Centre (a/k/a IOTC Jordan).

This Release is intended to be contractual in nature, and may not be changed except with the express prior written consent of Al-Saleh.

As used herein, "RELEASEES" means: (a) Al-Saleh, (b) Burford Capital, LLC, and (c) Dundrod Investments Ltd., and all persons or entities for whose acts or omissions the foregoing would or could be derivatively or vicariously liable or to whom the foregoing could or would owe indemnification.

RELEASORS further declare and acknowledge RELEASORS are acting upon RELEASORS' own best judgment, belief and knowledge of the nature and validity of any and all claims or potential claims in making this Release, and that RELEASORS are acting with the advice of legal counsel chosen by RELEASORS. This Release should be broadly construed in favor of the RELEASEES and shall be governed by the laws of the State of Florida, without regard to any law that would require the application of any other law to this Release.

This Release shall be binding upon the successors and assigns of the RELEASOR, and shall inure to the benefit of the successors and assigns of RELEASEES.

Wherefore to signify RELEASORS' consent and acceptance of the foregoing, each RELEASOR has signed below in counterparts, as of this 28th day of October, 2016.


_____
Harry Sargeant, III

_____
Harry Sargeant, IV

_____
Kevin G. Kirkeide

2

Release of Al-Saleh
Page 2

Republic ("DR Property"), or that certain company that owns or has rights to the DR Property, which property was referenced on pages 197-200 of the deposition transcript of Abu-Naba'a dated December 17, 2013; or (b) any Claim possessed by Abu-Naba'a, Sargeant, or International Oil Trade Centre (a/k/a IOTC Jordan) against Al-Saleh regarding the imposition, liability, or payment of taxation to the Hashemite Kingdom of Jordan relating to International Oil Trade Centre (a/k/a IOTC Jordan).

This Release is intended to be contractual in nature, and may not be changed except with the express prior written consent of Al-Saleh.

As used herein, "RELEASEES" means: (a) Al-Saleh, (b) Burford Capital, LLC, and (c) Dundrod Investments Ltd., and all persons or entities for whose acts or omissions the foregoing would or could be derivatively or vicariously liable or to whom the foregoing could or would owe indemnification.

RELEASORS further declare and acknowledge RELEASORS are acting upon RELEASORS' own best judgment, belief and knowledge of the nature and validity of any and all claims or potential claims in making this Release, and that RELEASORS are acting with the advice of legal counsel chosen by RELEASORS. This Release should be broadly construed in favor of the RELEASEES and shall be governed by the laws of the State of Florida, without regard to any law that would require the application of any other law to this Release.

This Release shall be binding upon the successors and assigns of the RELEASOR, and shall inure to the benefit of the successors and assigns of RELEASEES.

Wherefore to signify RELEASORS' consent and acceptance of the foregoing, each RELEASOR has signed below in counterparts, as of this 28th day of October, 2016.

_____
**Harry Sargeant, III**

_____
**Harry Sargeant, IV**

**Kevin G. Kirkeide**

2

Release of Al-Saleh
Page 3

**Mustafa Abu-Naba'a**

**Karim Abu-Naba'a**

**BTB Refining, LLC**

By: _____
Print Name:
Its: _____


**Global Oil Management Group, Ltd.**

By: _____
Print Name:
Its: _____


**Global Oil 604, LLC**

By: _____
Print Name:
Its: _____

**International Oil Trade Centre (IOTC Jordan)**

By: _____
Print Name:
Its: _____


**International Oil Trading Company, Ltd. (IOTC Bahamas)**

By: _____
Print Name:
Its: _____

**International Oil Trading Company, B.V. (IOTC BV)**

By: _____
Print Name:
Its: _____

3

Release of Al-Saleh
Page 3

_____
**Mustafa Abu-Naba'a**

_____
**Karim Abu-Naba'a**

**BTB Refining, LLC**

By: _____
Print Name: _Keith Winkler_
Its: _Manager_

**Global Oil Management Group, Ltd.**

By: _____
Print Name: _____
Its: _____

**Global Oil 604, LLC**

By: _____
Print Name: _Keith Winkler_
Its: _Manager_

**International Oil Trade Centre (IOTC Jordan)**

By: _____
Print Name: _____
Its: _____

**International Oil Trading Company, Ltd. (IOTC Bahamas)**

By: _____
Print Name: _____
Its: _____

**International Oil Trading Company, B.V. (IOTC BV)**

By: _____
Print Name: _Keith Winkler_
Its: _Managing Director_

Release of Al-Saleh
Page 3


_____
**Mustafa Abu-Naba'a**


_____
**Karim Abu-Naba'a**


**BTB Refining, LLC**

By: _____
Print Name:
Its: _____


**Global Oil Management Group, Ltd.**

By: _____
Print Name: Rashad Zubi
Its: Director


**Global Oil 604, LLC**

By: _____
Print Name:
Its: _____


**International Oil Trade Centre (IOTC Jordan)**

By: _____
Print Name: Rashad Zubi
Its: Managing Director


**International Oil Trading Company, Ltd. (IOTC Bahamas)**

By: _____
Print Name:
Its: _____


**International Oil Trading Company, B.V. (IOTC BV)**

By: _____
Print Name:
Its: _____

Release of Al-Saleh
Page 3

_____

**Mustafa Abu-Naba'a**

_____

**Karim Abu-Naba'a**

**BTB Refining, LLC**

By: _____
Print Name:
Its: _____

**Global Oil Management Group, Ltd.**

By: _____
Print Name:
Its: _____

**Global Oil 604, LLC**

By: _____
Print Name:
Its: _____

**International Oil Trade Centre (IOTC Jordan)**

By: _____
Print Name:
Its: _____

**International Oil Trading Company, Ltd. (IOTC Bahamas)**

By: _____
Print Name: Harry Sargeant III
Its: Director

**International Oil Trading Company, B.V. (IOTC BV)**

By: _____
Print Name:
Its: _____

Release of Al-Saleh
Page 4

**S.A. Acquisitions, LLC**

By: _____
Print Name: Harry Sargeant III
Its: Manager

**Sargeant Marine Limited**

By: _____
Print Name:
Its: _____

**Tennyson Villa, LLC**

By: _____
Print Name:
Its: _____

Release of Al-Saleh
Page 4


**S.A. Acquisitions, LLC**

By: _____
Print Name:
Its: _____

**Sargeant Marine Limited**

By: _____
Print Name: Ramad Zubi
Its: Director

**Tennyson Villa, LLC**

By: _____
Print Name:
Its: _____

Release of Al-Saleh
Page 4


**S.A. Acquisitions, LLC**

By: _____
Print Name:
Its: _____

**Sargeant Marine Limited**

By: _____
Print Name:
Its: _____

**Tennyson Villa, LLC**

By: _____
Print Name: GREGORY LAWRENCE
Its: _____

4

# Exhibit C

**U.S. District Court**
**Southern District of Florida (West Palm Beach)**
**CIVIL DOCKET FOR CASE #: 9:17-cv-81070-BB**

Sargeant, III v. Maroil Trading Inc et al
Assigned to: Judge Beth Bloom
Referred to: Magistrate Judge Bruce E. Reinhart
Cause: 28:1332 Diversity

Date Filed: 09/25/2017
Date Terminated: 06/04/2018
Jury Demand: Plaintiff
Nature of Suit: 370 Other Fraud
Jurisdiction: Diversity

**Plaintiff**

**Harry Sargeant, III**

represented by   **Christopher Michael Kise**
Foley , Lardner LLP
106 east college avenue
suite 900
tallahassee, FL 32301
850-513-3367
Fax: 850-561-6475
Email: ckise@foley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joshua Mahlon Hawkes**
Foley Lardner LLP
106 E College Ave
Ste 900
Tallahassee, FL 32301
850-222-6100
Email: jhawkes@foley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melissa B Coffey**
Foley & Lardner LLP
106 East College Avenue
Suite 900
Tallahassee, FL 32301
(850) 222-6100
Fax: (850) 561-6475
Email: mcoffey@foley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ramon A. Abadin**
Ramon A. Abadin, P.A.
2333 Ponce De Leon Blvd.
BAC Colonnade - Suite 314
Coral Gables, FL 33134-5418
305-768-9839
Fax: 786-217-0133
Email: rabadin@abadinlaw.net
*ATTORNEY TO BE NOTICED*

**Gregory William Coleman**
Critton Luttier & Coleman, LLP
303 Banyan Boulevard
Suite 400
West Palm Beach, FL 33401
561-842-2820
Fax: 844-6929
Email: gcoleman@lawclc.com
*ATTORNEY TO BE NOTICED*

v.

**Defendant**

**Maroil Trading Inc**
*TERMINATED: 02/20/2018*

represented by **Alexander D. Pencu**
Meister Seelig & Fein LLP
125 Park Avenue, 7th Floor
New York, NY 10017
(212) 655-3500
Email: adp@msf-law.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christopher J. Major**
Meister Seelig & Fein LLP
125 Park Avenue, 7th Floor
New York, NY 10017
(212) 655-3500
Email: cjm@msf-law.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Garofola**
Meister Seelig & Fein LLP
125 Park Avenue, 8th Floor
New York, NY 10017
(646) 755-3180
Email: mjg@msf-law.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mitchell Edward Widom**
Bilzin Sumberg Baena Price & Axelrod
1450 Brickell Avenue
Suite 2300
Miami, FL 33131-3456
305-374-7580
Fax: 305-351-2265
Email: mwidom@bilzin.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Yasmin Fernandez-Acuna**
Bilzin Sumberg Baena Price and Axelrod LLP
1450 Brickell Avenue
23rd Floor
Miami, FL 33131-3456
305-350-7282
Email: yfernandez-acuna@bilzin.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Wilmer Ruperti Pedromo**
*TERMINATED: 02/20/2018*

represented by **Alexander D. Pencu**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christopher J. Major**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Garofola**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mitchell Edward Widom**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Yasmin Fernandez-Acuna**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Sea Pioneer Shipping Corporation**            represented by   **Alexander D. Pencu**
*TERMINATED: 02/20/2018*                                       (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *PRO HAC VICE*
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Christopher J. Major**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *PRO HAC VICE*
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Michael J. Garofola**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *PRO HAC VICE*
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Mitchell Edward Widom**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Yasmin Fernandez-Acuna**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

**Defendant**

**Daniel Sargeant**                              represented by   **Jeffrey Scott Wertman**
                                                              Berger Singerman
                                                              Las Olas Centre II
                                                              350 E Las Olas Boulevard
                                                              Suite 1000
                                                              Fort Lauderdale, FL 33301
                                                              954-525-9900
                                                              Fax: 954-523-2872
                                                              Email: jwertman@bergersingerman.com
                                                              *ATTORNEY TO BE NOTICED*

**Defendant**

**Daniel Hall**                                 represented by   **Andrew E. Goldsmith**
                                                              Kellogg Hansen Todd Figel & Frederick PLLC
                                                              202-326-7945
                                                              Email: agoldsmith@kellogghansen.com
                                                              *LEAD ATTORNEY*
                                                              *PRO HAC VICE*
                                                              *ATTORNEY TO BE NOTICED*

**Samuel Alberto Danon**
Hunton Andrews Kurth LLP
1111 Brickell Avenue
Suite 2500
Miami, FL 33131
305-810-2500
Fax: 810-2460
Email: sdanon@huntonak.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Allison Jill Davis**
Silber & Davis
1806 Old Okeechobee Road
West Palm Beach, FL 33409-5207
561-615-6262
Fax: 561-615-6263
Email: adavis@silberdavis.com
*TERMINATED: 05/04/2018*
*ATTORNEY TO BE NOTICED*

**Derek T. Ho**
Kellogg Huber Hansen Todd Evans & Figel PLLC
1615 M Street NW
Suite 400
Washington, DC 20036
202-326-7900
Email: dho@kellogghansen.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Louis M. Silber**
Silber & Davis
1806 Old Okeechobee Road
West Palm Beach, FL 33409-5207
561-615-6262
Fax: 561-615-6263
Email: lsilber@silberdavis.com
*TERMINATED: 05/04/2018*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Andrew Preston**                    represented by    **Jonathan Lentine Williams**
Lash & Goldberg LLP
100 SE 2nd Street, Ste. 1200
Miami, FL 33131
305-347-4040
Fax: 305-347-4050
Email: jwilliams@lashgoldberg.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lorelei Jane Van Wey**
Lash & Goldberg
100 SE 2nd Street
Suite 1200
Miami, FL 33131-2100
305-347-4040
Fax: 347-4050
Email: lvanwey@lashgoldberg.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Martin B. Goldberg**
Lash & Goldberg
100 SE 2nd Street

Suite 1200
Miami, FL 33131-2100
305-347-4040
Fax: 347-4050
Email: mgoldberg@lashgoldberg.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor**

**Latin American Investments, Ltd.**                                represented by   **Charles Howard Lichtman**
Berger Singerman
Las Olas Centre II
350 E Las Olas Boulevard
Suite 1000
Fort Lauderdale, FL 33301
954-525-9900
Fax: 523-2872
Email: clichtman@bergersingerman.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey Scott Wertman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| # | Docket Text | Date Filed |
|---|---|---|
| 1 | COMPLAINT for Damages against All Plaintiffs. Filing fees $ 400.00 receipt number 113C-10057371, filed by Harry Sargeant, III. (Attachments: # 1 Civil Cover Sheet, # 2 Summon(s) to Maroil Trading, # 3 Summon(s) to Ruperti Pedromo, # 4 Summon(s) to Sea Pioneer)(Coleman, Gregory) (Entered: 09/25/2017) | 09/25/2017 |
| 2 | Clerks Notice of Judge Assignment to Judge Beth Bloom and Magistrate Judge James M. Hopkins. Pursuant to 28 USC 636(c), the parties are hereby notified that the U.S. Magistrate Judge James M. Hopkins is available to handle any or all proceedings in this case. If agreed, parties should complete and file the Consent form found on our website. It is not necessary to file a document indicating lack of consent. (rms1) (Entered: 09/26/2017) | 09/25/2017 |
| 3 | Summons Issued as to Maroil Trading Inc, Wilmer Ruperti Pedromo, Sea Pioneer Shipping Corporation. (rms1) (Entered: 09/26/2017) | 09/26/2017 |
| 4 | MOTION to Consolidate Cases by Harry Sargeant, III. Responses due by 10/26/2017 (Attachments: # 1 Text of Proposed Order) (Hawkes, Joshua) (Entered: 10/12/2017) | 10/12/2017 |
| 5 | Notice of Related Actions by Harry Sargeant, III. See 4 for image (asl) (Entered: 10/16/2017) | 10/12/2017 |
| 6 | Clerks Notice to Filer re 4 MOTION to Consolidate Cases , 5 Notice of Pending, Refiled, Related or Similar Actions. Two or More Document Events Filed as One; ERROR - Only one event was selected by the Filer but more than one event was applicable to the document filed. The docket entry was corrected by the Clerk. It is not necessary to refile this document but in the future, the Filer must select all applicable events. (asl) (Entered: 10/16/2017) | 10/16/2017 |
| | SYSTEM ENTRY - Docket Entry 7 [order] restricted/sealed until further notice. (ra) (Entered: 10/16/2017) | 10/16/2017 |
| 8 | Agreed MOTION for Extension of Time to Respond to the re 1 Complaint, by Maroil Trading Inc, Wilmer Ruperti Pedromo, Sea Pioneer Shipping Corporation. Attorney Mitchell Edward Widom added to party Maroil Trading Inc(pty:dft), Attorney Mitchell Edward Widom added to party Wilmer Ruperti Pedromo(pty:dft), Attorney Mitchell Edward Widom added to party Sea Pioneer Shipping Corporation(pty:dft). Responses due by 10/30/2017 (Attachments: # 1 Text of Proposed Order)(Widom, Mitchell) (Entered: 10/16/2017) | 10/16/2017 |
| 9 | PAPERLESS ORDER granting 8 Motion for Extension of Time to File Response/Answer to Complaint by November 16, 2017. Signed by Judge Beth Bloom (BB) (Entered: 10/16/2017) | 10/16/2017 |
| | Set/Reset Answer Due Deadline: Maroil Trading Inc response due 11/16/2017; Wilmer Ruperti Pedromo response due 11/16/2017; Sea Pioneer Shipping Corporation response due 11/16/2017. SEE DE 9 ORDER (ail) (Entered: 10/17/2017) | 10/17/2017 |
| 10 | MOTION to Intervene and Supporting Memorandum of Law by Latin American Investments, Ltd.. Attorney Charles Howard Lichtman added to party Latin American Investments, Ltd.(pty:intv). (Attachments: # 1 Exhibit "A" Sargeant Settlement Agreement, | 10/17/2017 |

# 2 Exhibit "B" Order Confirming Debtors' Third Amended Joint Plan(Lichtman, Charles) (Entered: 10/17/2017)

| 11 | ORDER REQUIRING SCHEDULING REPORT AND CERTIFICATES OF INTERESTED PARTIES -Joint Scheduling Report due by 11/6/2017 Signed by Judge Beth Bloom on 10/16/2017. (ail) (Entered: 10/18/2017) | 10/18/2017 |
|---|---|---|
| 12 | NOTICE of Attorney Appearance by Jeffrey Scott Wertman on behalf of Latin American Investments, Ltd.. Attorney Jeffrey Scott Wertman added to party Latin American Investments, Ltd.(pty:intv). (Wertman, Jeffrey) (Entered: 10/20/2017) | 10/20/2017 |
| 13 | Notice of Pending, Refiled, Related or Similar Actions by Latin American Investments, Ltd. (Attachments: # 1 Exhibit "A" Notice of Related Actions and Motion to Consolidate) (Lichtman, Charles) (Entered: 10/24/2017) | 10/24/2017 |
| 14 | NOTICE of Attorney Appearance by Melissa B Coffey on behalf of Harry Sargeant, III (Coffey, Melissa) (Entered: 10/30/2017) | 10/30/2017 |
| 15 | RESPONSE to Motion re 10 MOTION to Intervene and Supporting Memorandum of Law filed by Harry Sargeant, III. Replies due by 11/7/2017. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Coffey, Melissa) (Entered: 10/31/2017) | 10/31/2017 |
| 16 | Joint SCHEDULING REPORT - Rule 16.1 by Harry Sargeant, III (Hawkes, Joshua) (Entered: 11/06/2017) | 11/06/2017 |
| 17 | ORDER granting 10 Motion to Intervene. Signed by Judge Beth Bloom on 11/3/2017. (lk) (Entered: 11/07/2017) | 11/06/2017 |
| 18 | Unopposed MOTION for Extension of Time to File Response/Reply/Answer as to 15 Response to Motion by Latin American Investments, Ltd.. (Attachments: # 1 Text of Proposed Order)(Lichtman, Charles) (Entered: 11/07/2017) | 11/07/2017 |
| 19 | PAPERLESS ORDER denying as moot 18 Motion for Extension of Time to File Reply. Signed by Judge Beth Bloom (BB) (Entered: 11/07/2017) | 11/07/2017 |
| 20 | SCHEDULING ORDER: (Trial set for 9/3/2018 at 9:00 AM in Miami Division before Judge Beth Bloom., Calendar Call set for 8/28/2018 at 1:45 PM in Miami Division before Judge Beth Bloom., Amended Pleadings due by 1/8/2018., Discovery due by 5/7/2018., Expert Discovery due by 5/7/2018., Joinder of Parties due by 1/8/2018., Mediation Deadline 5/21/2018., In Limine Motions due by 7/30/2018., Dispositive Motions due by 5/29/2018., Motions due by 5/29/2018., Pretrial Stipulation due by 7/30/2018.), ORDER REFERRING CASE to Mediation. ( Mediation Deadline 5/21/2018.), ORDER REFERRING CASE to Magistrate Judge James M. Hopkins for Discovery Matters. Signed by Judge Beth Bloom on 11/7/2017. (pes) Pattern Jury Instruction Builder - To access the latest, up to date changes to the 11th Circuit Pattern Jury Instructions go to https://pji.ca11.uscourts.gov or click here. (Entered: 11/08/2017) | 11/07/2017 |
| 21 | STANDING DISCOVERY ORDER for Magistrate Judge James M. Hopkins. Signed by Magistrate Judge James M. Hopkins on 11/9/2017. (lk) (Entered: 11/09/2017) | 11/09/2017 |
| 22 | Agreed MOTION for Extension of Time to Respond to the re 1 Complaint, by Maroil Trading Inc, Wilmer Ruperti Pedromo, Sea Pioneer Shipping Corporation. Responses due by 11/24/2017 (Attachments: # 1 Text of Proposed Order)(Widom, Mitchell) (Entered: 11/10/2017) | 11/10/2017 |
| 23 | PAPERLESS ORDER denying 22 Motion for Extension of Time to Respond to the Complaint by Maroil Trading Inc, Wilmer Ruperti Pedromo, and Sea Pioneer Shipping Corporation. Signed by Judge Beth Bloom (BB) (Entered: 11/11/2017) | 11/11/2017 |
| 24 | Renewed MOTION for Extension of Time to Respond to the re 1 Complaint, by Maroil Trading Inc, Wilmer Ruperti Pedromo, Sea Pioneer Shipping Corporation. Responses due by 11/27/2017 (Attachments: # 1 Text of Proposed Order)(Widom, Mitchell) (Entered: 11/11/2017) | 11/11/2017 |
| 25 | PAPERLESS ORDER granting 24 Motion for Extension of Time to Respond to the Complaint by November 22, 2017, by Maroil Trading Inc, Wilmer Ruperti Pedromo, Sea Pioneer Shipping Corporation. Signed by Judge Beth Bloom (BB) (Entered: 11/13/2017) | 11/13/2017 |
|  | Set/Reset Answer Due Deadline as per DE 25 : Maroil Trading Inc response due 11/22/2017; Wilmer Ruperti Pedromo response due 11/22/2017; Sea Pioneer Shipping Corporation response due 11/22/2017. (lk) (Entered: 11/14/2017) | 11/13/2017 |
| 26 | MOTION Requesting Court to Accept Transfer of Related Actions, Request for Oral Argument, and Incorporated Memorandum of Law by Latin American Investments, Ltd.. (Attachments: # 1 Exhibit A)(Wertman, Jeffrey) (Entered: 11/21/2017) | 11/21/2017 |
| 27 | MOTION to Dismiss with Prejudice 1 Complaint, and Incorporated Memorandum of Law by Latin American Investments, Ltd.. Responses due by 12/5/2017 (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Wertman, Jeffrey) (Entered: 11/21/2017) | 11/21/2017 |
| 28 | STRICKEN Initial Disclosure(s) by Maroil Trading Inc (Widom, Mitchell) Modified text per 32 Order on 11/22/2017 (yha). (Entered: 11/21/2017) | 11/21/2017 |
| 29 | STRICKEN Initial Disclosure(s) by Wilmer Ruperti Pedromo (Widom, Mitchell) Modified text per 32 Order on 11/22/2017 (yha). (Entered: 11/21/2017) | 11/21/2017 |
| 30 | STRICKEN Initial Disclosure(s) by Sea Pioneer Shipping Corporation (Widom, Mitchell) Modified text per 32 Order on 11/22/2017 (yha). (Entered: 11/21/2017) | 11/21/2017 |

| | | |
|---|---|---|
| 31 | Defendant's MOTION to Dismiss for Lack of Jurisdiction 1 Complaint, Lack of Standing, and For Failure to State a Cause of Action by Maroil Trading Inc, Wilmer Ruperti Pedromo, Sea Pioneer Shipping Corporation. Responses due by 12/6/2017 (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Widom, Mitchell) (Entered: 11/22/2017) | 11/22/2017 |
| 32 | ORDER STRIKING 28 Initial Disclosure(s) filed by Maroil Trading Inc, 30 Initial Disclosure(s) filed by Sea Pioneer Shipping Corporation, 29 Initial Disclosure(s) filed by Wilmer Ruperti Pedromo Signed by Judge Beth Bloom on 11/22/2017. (yha) (Entered: 11/22/2017) | 11/22/2017 |
| 33 | First AMENDED COMPLAINT against Latin American Investments, Ltd., Maroil Trading Inc, Wilmer Ruperti Pedromo, Sea Pioneer Shipping Corporation, filed by Harry Sargeant, III. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Hawkes, Joshua) (Entered: 11/22/2017) | 11/22/2017 |
| 34 | PAPERLESS ORDER denying as moot 27 Motion to Dismiss due to the filing of an Amended Complaint, ECF No. 33 . Signed by Judge Beth Bloom (BB) (Entered: 11/22/2017) | 11/22/2017 |
| 35 | PAPERLESS ORDER denying as moot 31 Motion to Dismiss for Lack of Jurisdiction due to the filing of an Amended Complaint, ECF No. 33 . Signed by Judge Beth Bloom (BB) (Entered: 11/22/2017) | 11/22/2017 |
| 36 | ORDER granting in part 26 Motion Requesting Court to Accept Transfer of Related Actions, Request for Oral Argument, and Incorporated Memorandum of Law. Signed by Judge Beth Bloom on 11/27/2017. (yha) (Entered: 11/28/2017) | 11/27/2017 |
| 37 | ORDER Requiring Parties to Comply re 20 Scheduling Order, Order Referring Case to Mediation, Order Referring Case to Magistrate Judge. Accordingly, it is ORDERED AND ADJUDGED that on or before 12/7/2017, the parties shall comply with the requirements of the Scheduling Order. Signed by Judge Beth Bloom on 11/30/2017. (jas) (Entered: 12/01/2017) | 11/30/2017 |
| 38 | NOTICE by Harry Sargeant, III of Scheduled Mediation (Attachments: # 1 Text of Proposed Order) (Hawkes, Joshua) (Entered: 12/05/2017) | 12/05/2017 |
| 39 | Defendant's MOTION to Dismiss 33 Amended Complaint by Maroil Trading Inc, Wilmer Ruperti Pedromo, Sea Pioneer Shipping Corporation. Responses due by 12/20/2017 (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Widom, Mitchell) Modified on 12/14/2017 (ch1). (Entered: 12/06/2017) | 12/06/2017 |
| 40 | MOTION to Expedite Briefing Schedule on Motion to Dismiss, MOTION for Hearing re 33 Amended Complaint , MOTION to Stay All Discovery ( Responses due by 12/20/2017), MOTION TO DISMISS 33 Amended Complaint FOR FAILURE TO STATE A CLAIM by Latin American Investments, Ltd.. (Attachments: # 1 Exhibit "A" Order Confirming Debtors' Third Amended Joint Plan of Reorganization)(Lichtman, Charles) Modified on 12/14/2017 (ch1). (Entered: 12/06/2017) | 12/06/2017 |
| 41 | ORDER Granting 39 Motion to Dismiss; granting 40 Motion to Expedite; granting 40 Motion for Hearing; denying 40 Motion to Stay( Responses due by 12/18/2017, Replies due by 12/22/2017., Motion Hearing set for 1/4/2018 03:00 PM in Miami Division before Judge Beth Bloom.); granting in part and denying in part 40 Motion to Dismiss for Failure to State a Claim. Re: 39 Defendant's MOTION to Dismiss 33 Amended Complaint filed by Sea Pioneer Shipping Corporation, Wilmer Ruperti Pedromo, Maroil Trading Inc, Granting in part and Denied in part 40 MOTION to Expedite Briefing Schedule on Motion to Dismiss MOTION for Hearing re 33 Amended Complaint MOTION to Stay All Discovery MOTION TO DISMISS 33 Amended Complaint FOR FAILURE TO STATE A CLAIM filed by Latin American Investments, Ltd.. Signed by Judge Beth Bloom on 12/8/2017. (lk) (Entered: 12/11/2017) | 12/08/2017 |
| 42 | Certificate of Interested Parties/Corporate Disclosure Statement - NONE disclosed by Latin American Investments, Ltd. (Wertman, Jeffrey) (Entered: 12/11/2017) | 12/11/2017 |
| 43 | Plaintiff's MOTION to Continue January 4th Hearing re 41 Order on Motion to Dismiss,,,, Order on Motion to Expedite,,,, Order on Motion for Hearing,,,, Order on Motion to Stay,,,, Order on Motion to Dismiss for Failure to State a Claim,,, by Harry Sargeant, III. Responses due by 12/27/2017 (Attachments: # 1 Affidavit)(Hawkes, Joshua) (Entered: 12/12/2017) | 12/12/2017 |
| 44 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Alexander D. Pencu and Christopher J. Major. Filing Fee $ 150.00 Receipt # 113C-10252239 by Maroil Trading Inc, Wilmer Ruperti Pedromo, Sea Pioneer Shipping Corporation. Responses due by 12/27/2017 (Attachments: # 1 Exhibit A)(Widom, Mitchell) (Entered: 12/12/2017) | 12/12/2017 |
| 45 | PAPERLESS ORDER granting 43 Motion to Continue January 4th Hearing. Signed by Judge Beth Bloom on 12/12/2017. (tas) (Entered: 12/12/2017) | 12/12/2017 |
| 46 | PAPERLESS NOTICE RESETTING Hearing on Motion ECF Nos. 39 and 40 Motions to Dismiss. Motion Hearing reset for Friday, 1/12/2018 09:00 AM in Miami Division before Judge Beth Bloom, 400 North Miami Avenue, Courtroom 10-2. (tas) (Entered: 12/12/2017) | 12/12/2017 |
| 47 | Unopposed MOTION to Continue /Reset January 12, 2018 Hearing on Motion to Dismiss re 46 Notice of Hearing on Motion by Latin American Investments, Ltd.. Responses due by 12/27/2017 (Attachments: # 1 Exhibit "A" The 12th Annual National Institute on Securities Fraud)(Lichtman, Charles) (Entered: 12/12/2017) | 12/12/2017 |
| 48 | RESPONSE to Motion re 47 Unopposed MOTION to Continue /Reset January 12, 2018 Hearing on Motion to Dismiss re 46 Notice of Hearing on Motion filed by Harry Sargeant, III. Replies due by 12/19/2017. (Hawkes, Joshua) (Entered: 12/12/2017) | 12/12/2017 |

| 49 | PAPERLESS ORDER granting 44 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Attorneys Alexander D. Pencu and Christopher J. Major. Signed by Judge Beth Bloom (BB) (Entered: 12/13/2017) | 12/13/2017 |
|----|----|----|
| 50 | ORDER granting 47 Motion to Continue. Re: 39 Defendant's MOTION to Dismiss 33 Amended Complaint filed by Sea Pioneer Shipping Corporation, Wilmer Ruperti Pedromo, Maroil Trading Inc, 40 MOTION to Expedite Briefing Schedule on Motion to Dismiss MOTION for Hearing re 33 Amended Complaint MOTION to Stay All Discovery MOTION TO DISMISS 33 Amended Complaint FOR FAILURE TO STATE A CLAIM filed by Latin American Investments, Ltd.. Motion Hearing set for 1/17/2018 03:00 PM in Miami Division before Judge Beth Bloom, 400 North Miami Avenue, Courtroom 10-2. Signed by Judge Beth Bloom on 12/14/2017. (ch1) (Entered: 12/14/2017) | 12/14/2017 |
| 51 | RESPONSE in Opposition re 39 Defendant's MOTION to Dismiss 33 Amended Complaint filed by Harry Sargeant, III. Replies due by 12/27/2017. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Hawkes, Joshua) (Entered: 12/18/2017) | 12/18/2017 |
| 52 | RESPONSE in Opposition re 40 MOTION to Expedite Briefing Schedule on Motion to Dismiss MOTION for Hearing re 33 Amended Complaint MOTION to Stay All Discovery MOTION TO DISMISS 33 Amended Complaint FOR FAILURE TO STATE A CLAIM filed by Harry Sargeant, III. Replies due by 12/27/2017. (Hawkes, Joshua) (Entered: 12/18/2017) | 12/18/2017 |
| 53 | ORDER TO SHOW CAUSE. Show Cause Response due by 12/27/2017. Signed by Judge Beth Bloom on 12/18/2017. (kpe) (Entered: 12/20/2017) | 12/19/2017 |
| 54 | NOTICE by Harry Sargeant, III of Scheduled Mediation Involving All Parties (Attachments: # 1 Text of Proposed Order) (Coffey, Melissa) (Entered: 12/20/2017) | 12/20/2017 |
| 55 | NOTICE of Mediator Selection and Hearing. Added Scott Silverman. Mediation Hearing set for 1/18/18 starting at 10:00am. See image at DE 54 (lk) (Entered: 12/21/2017) | 12/20/2017 |
| 56 | Clerks Notice to Filer re 54 Notice (Other). Wrong Event Selected; ERROR - The Filer selected the wrong event. The document was re-docketed by the Clerk, see [de#55]. It is not necessary to refile this document. (lk) (Entered: 12/21/2017) | 12/21/2017 |
| 57 | First MOTION to Compel Documents by Harry Sargeant, III. Responses due by 1/5/2018 (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Hawkes, Joshua) (Entered: 12/22/2017) | 12/22/2017 |
| 58 | REPLY to Response to Motion re 39 Defendant's MOTION to Dismiss 33 Amended Complaint filed by Maroil Trading Inc, Wilmer Ruperti Pedromo, Sea Pioneer Shipping Corporation. Attorney Yasmin Fernandez-Acuna added to party Maroil Trading Inc(pty:dft), Attorney Yasmin Fernandez-Acuna added to party Wilmer Ruperti Pedromo(pty:dft), Attorney Yasmin Fernandez-Acuna added to party Sea Pioneer Shipping Corporation(pty:dft). (Fernandez-Acuna, Yasmin) (Entered: 12/22/2017) | 12/22/2017 |
| 59 | REPLY to Response to Motion re 39 Defendant's MOTION to dismiss re 33 Amended Complaint MOTION to Stay All Discovery MOTION TO DISMISS 33 Amended Complaint FOR FAILURE TO STATE A CLAIM filed by Latin American Investments, Ltd.. (Wertman, Jeffrey) Modified link to DE 39 and text on 12/28/2017 (lk). (Entered: 12/27/2017) | 12/27/2017 |
| 60 | ORDER taking under advisement 57 Plaintiff's Motion to Compel and scheduling a Discovery Hearing for 1/9/2018 at 2:30 PM in West Palm Beach Division before Magistrate Judge James M. Hopkins. The Intervening Defendant's response to the motion is due by 1/4/2018. Signed by Magistrate Judge James M. Hopkins on 12/28/2017. (hky) (Entered: 12/28/2017) | 12/28/2017 |
| 61 | Clerks Notice to Filer re 59 Reply to Response to Motion,. Incorrect Document Link; ERROR - The filed document was not correctly linked to the related docket entry. The correction was made by the Clerk. It is not necessary to refile this document but future filings must comply with the instructions in the CM/ECF Attorney User's Manual. (lk) (Entered: 12/28/2017) | 12/28/2017 |
| 62 | ORDER Scheduling Mediation before Judge Scott Silverman Mediation Hearing set for 1/18/2018 10:00 AM Signed by Judge Beth Bloom on 12/29/2017. (lk) (Entered: 01/02/2018) | 12/29/2017 |
| 63 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Michael J. Garofola. Filing Fee $ 75.00 Receipt # 113C-10299108 by Maroil Trading Inc, Wilmer Ruperti Pedromo, Sea Pioneer Shipping Corporation. Responses due by 1/17/2018 (Attachments: # 1 Exhibit A)(Widom, Mitchell) (Entered: 01/03/2018) | 01/03/2018 |
| 64 | PAPERLESS ORDER granting 63 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Attorney Michael J. Garofola. Signed by Judge Beth Bloom (BB) (Entered: 01/03/2018) | 01/03/2018 |
| 65 | MOTION to Reset January 8, 2018 Discovery Hearing by Latin American Investments, Ltd.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Lichtman, Charles) (Entered: 01/05/2018) | 01/05/2018 |
| 66 | RESPONSE to Motion re 65 MOTION to Reset January 8, 2018 Discovery Hearing filed by Harry Sargeant, III. Replies due by 1/12/2018. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Hawkes, Joshua) (Entered: 01/05/2018) | 01/05/2018 |
| 67 | NOTICE of WITHDRAWAL OF MOTION by Latin American Investments, Ltd. re 65 MOTION to Reset January 8, 2018 Discovery Hearing filed by Latin American Investments, Ltd. (Lichtman, Charles) (Entered: 01/05/2018) | 01/05/2018 |
| 68 | RESPONSE in Opposition re 57 First MOTION to Compel Documents filed by Latin American Investments, Ltd.. Replies due by 1/12/2018. (Attachments: # 1 Exhibit "A" Motion to Dismiss, # 2 Exhibit "B" Reply to Motion to Dismiss, # 3 Exhibit "C" Discovery | 01/05/2018 |

Order, # 4 Exhibit "D" Emails)(Lichtman, Charles) (Entered: 01/05/2018)

| 69 | ORDER Directing Intervening Defendant Latin American Investments, LTD. TO SHOW CAUSE Why Plaintiff's Motion to Compel DE 57 Should Not Be Granted ( Show Cause Response due by 1/12/2018.) Signed by Magistrate Judge James M. Hopkins on 1/5/2018. (tmn) (Entered: 01/05/2018) | 01/05/2018 |
|----|----|----|
| 70 | Document Filed in Wrong Case; Document restricted and docket text modified. (Entered: 01/10/2018) | 01/09/2018 |
| 71 | Clerks Notice of Docket Correction re 70 Court's Jury Instructions. Document Filed in Wrong Case; Document restricted and docket text modified. Document refiled in correct case # 17-60082-CV-BB. (ra) (Entered: 01/10/2018) | 01/09/2018 |
| 72 | PAPERLESS ORDER Resetting Hearing on Motion 39 Defendant's MOTION to Dismiss 33 Amended Complaint , 40 MOTION to Expedite Briefing Schedule on Motion to Dismiss MOTION for Hearing re 33 Amended Complaint MOTION to Stay All Discovery MOTION TO DISMISS 33 Amended Complaint FOR FAILURE TO STATE A CLAIM : Motion Hearing reset due to the Court's trial schedule for Friday, 1/19/2018 04:30 PM in Miami Division before Judge Beth Bloom, 400 North Miami Avenue, Courtroom 10-2. Signed by Judge Beth Bloom on 1/10/18. (tas) (Entered: 01/10/2018) | 01/10/2018 |
| 73 | NOTICE of Attorney Appearance by Ramon A. Abadin on behalf of Harry Sargeant, III. Attorney Ramon A. Abadin added to party Harry Sargeant, III(pty:pla). (Abadin, Ramon) (Entered: 01/10/2018) | 01/10/2018 |
| 74 | Agreed MOTION for Protective Order between Plaintiff and Defendants Maroil Trading, Inc., Sea Pioneer Shipping Corporation, and Wilmer Ruperti Pedromo by Harry Sargeant, III. (Attachments: # 1 Text of Proposed Order Exhibit 1)(Hawkes, Joshua) (Entered: 01/12/2018) | 01/12/2018 |
| 75 | RESPONSE TO ORDER TO SHOW CAUSE re 69 Order to Show Cause,, Terminate Hearings, by Latin American Investments, Ltd.. (Attachments: # 1 Exhibit "A" Charles H. Lichtman Declaration, # 2 Exhibit "B" LAIL Privilege Log, # 3 Exhibit "C" Notice of Serving Production, # 4 Exhibit "D" Andrew Preston Declaration, # 5 Exhibit "E" Hearing Transcript, # 6 Exhibit "F" Opinion and Order)(Lichtman, Charles) (Entered: 01/12/2018) | 01/12/2018 |
| 76 | STIPULATED PROTECTIVE ORDER. ORDER granting 74 Motion for Protective Order. Signed by Judge Beth Bloom on 1/12/18. (kpe) (Entered: 01/16/2018) | 01/16/2018 |
| 77 | NOTICE of Settlement between Plaintiff and Defendants by Maroil Trading Inc, Wilmer Ruperti Pedromo, Sea Pioneer Shipping Corporation (Widom, Mitchell) (Entered: 01/18/2018) | 01/18/2018 |
| 78 | MEDIATION REPORT by Scott J. Silverman. Disposition: Settled in part.(Widom, Mitchell) (Entered: 01/19/2018) | 01/19/2018 |
| 79 | PAPERLESS ORDER denying as moot 39 Motion to Dismiss. See ECF No. 77 . Signed by Judge Beth Bloom (BB) (Entered: 01/19/2018) | 01/19/2018 |
| 80 | PAPERLESS Minute Order for proceedings held before Judge Beth Bloom: granting 40 Motion to Dismiss for Failure to State a Claim; Motion Hearing held on 1/19/2018 re 40 MOTION to Expedite Briefing Schedule on Motion to Dismiss MOTION for Hearing re 33 Amended Complaint MOTION to Stay All Discovery MOTION TO DISMISS 33 Amended Complaint FOR FAILURE TO STATE A CLAIM filed by Latin American Investments, Ltd. For the reasons stated on the record, Intervenor's Motion to Dismiss is GRANTED. Plaintiff shall file his Amended Complaint by 2/8/2018. Total time in court : 1 hour(s) : 0 minutes. Attorney Appearance(s): Charles Howard Lichtman, Ramon A. Abadin, Christopher Michael Kise, Court Reporter: Yvette Hernandez, 954-769-5686 / Yvette_Hernandez@flsd.uscourts.gov. (men) (Entered: 01/19/2018) | 01/19/2018 |
| 81 | ORDER denying as moot 57 Plaintiff's Motion to Compel documents from Intervening Defendant Latin American Investments Ltd. (LAIL) based on the District Court's Order granting LAIL's motion to dismiss (DE 80). Signed by Magistrate Judge James M. Hopkins on 1/23/2018. (hky) (Entered: 01/23/2018) | 01/23/2018 |
| 82 | *Endorsed Order vacating the Court's prior order denying as moot Plaintiff's Motion to Compel (DE 57) based on counsel's representation at the Motion to Dismiss hearing that discovery is needed before Plaintiff can amend the complaint. The Court will contact counsel to arrange a telephonic discovery hearing as soon as possible. Signed by Magistrate Judge James M. Hopkins on 1/23/2018. (hky) (Entered: 01/23/2018) | 01/23/2018 |
| 83 | *Endorsed Order setting a Telephonic Motion Hearing on Plaintiff's Motion to Compel (DE 57) for 1/24/2018 at 12:30 PM before Magistrate Judge James M. Hopkins. Signed by Magistrate Judge James M. Hopkins on 1/23/2018. (hky) (Entered: 01/23/2018) | 01/23/2018 |
| 84 | PAPERLESS Minute Entry for proceedings held before Magistrate Judge James M. Hopkins: Telephonic Discovery Hearing on Plaintiff's Motion to Compel (DE 57) held on 1/24/2018. Counsel will meet and confer in person regarding disclosure of the documents contained on Intervening Defendant LAIL's flash drive. Counsel will report the results of the meet and confer session to the Court on Monday, January 29, 2018. Total time in court: 48 minutes. (Digital 12:29:25) (hky) (Entered: 01/24/2018) | 01/24/2018 |
| 85 | *Endorsed Order setting a Telephonic Discovery Hearing for 1/29/2018 at 11:00 AM in West Palm Beach Division before Magistrate Judge James M. Hopkins. Counsel shall follow the same conference call instructions previously provided. Signed by Magistrate Judge James M. Hopkins on 1/24/2018. (hky) (Entered: 01/24/2018) | 01/24/2018 |
| 86 | PAPERLESS Minute Entry for proceedings held before Magistrate Judge James M. Hopkins: Continued Telephonic Discovery Hearing held on 1/29/2018. Total time in court: 6 minutes. (Digital 11:03:20) (hky) (Entered: 01/29/2018) | 01/29/2018 |

| 87 | TRANSCRIPT of Motion Hearing held on 01/19/2018 before Judge Beth Bloom, 1 - 36 pages, Court Reporter: Yvette Hernandez, 305-523-5698/ Yvette_Hernandez@flsd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased by contacting the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 2/20/2018. Redacted Transcript Deadline set for 3/1/2018. Release of Transcript Restriction set for 4/30/2018. (yhz) (Entered: 01/29/2018) | 01/29/2018 |
|---|---|---|
| 88 | STIPULATION AND JOINT MOTION FOR THE COURT TO RETAIN JURISDICTION by Harry Sargeant, III (Attachments: # 1 Text of Proposed Order)(Hawkes, Joshua) (Entered: 01/31/2018) | 01/31/2018 |
| 89 | Unopposed MOTION for Extension of Time to Amend Complaint by Harry Sargeant, III. Responses due by 2/20/2018 (Attachments: # 1 Text of Proposed Order)(Hawkes, Joshua) (Entered: 02/05/2018) | 02/05/2018 |
| 90 | PAPERLESS ORDER granting 89 Motion for Extension of Time to File Second Amended Complaint by February 20, 2018. Signed by Judge Beth Bloom (BB) (Entered: 02/05/2018) | 02/05/2018 |
|  | Set/Reset Deadlines/Hearings as per DE 90 : Second Amended Complaint due by 2/20/2018. (lk) (Entered: 02/06/2018) | 02/06/2018 |
| 91 | Administrative Order closing case at to Ruperti Defendants only Sea Pioneer Shipping Corporation, Maroil Trading Inc and Wilmer Ruperti Pedromo terminated. Signed by Judge Beth Bloom on 2/16/2018. (lk) (Entered: 02/20/2018) | 02/20/2018 |
| 92 | Second AMENDED COMPLAINT against Latin American Investments, Ltd., Maroil Trading Inc, Wilmer Ruperti Pedromo, Sea Pioneer Shipping Corporation, Daniel Sargeant, Daniel Hall, Andrew Preston, filed by Harry Sargeant, III. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Summon(s) Daniel Sargeant, # 4 Summon(s) Daniel Hall, # 5 Summon(s) Andrew Preston)(Hawkes, Joshua) (Entered: 02/20/2018) | 02/20/2018 |
| 93 | Second AMENDED COMPLAINT (corrected) against Daniel Hall, Latin American Investments, Ltd., Maroil Trading Inc, Wilmer Ruperti Pedromo, Andrew Preston, Daniel Sargeant, Sea Pioneer Shipping Corporation, filed by Harry Sargeant, III. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Summon(s) Daniel Sargeant, # 4 Summon(s) Daniel Hall, # 5 Summon(s) Andrew Preston) (Hawkes, Joshua) (Entered: 02/20/2018) | 02/20/2018 |
| 94 | NOTICE of Filing Proposed Summons(es) by Harry Sargeant, III re 93 Amended Complaint, filed by Harry Sargeant, III (Attachments: # 1 Summon(s) for Daniel Sargeant, # 2 Summon(s) for Daniel Hall, # 3 Summon(s) for Andrew Preston) (Hawkes, Joshua) (Entered: 02/21/2018) | 02/21/2018 |
| 95 | Summons Issued as to Daniel Hall, Andrew Preston, Daniel Sargeant. (Attachments: # 1 Summon(s), # 2 Summon(s))(lk) (Entered: 02/22/2018) | 02/22/2018 |
| 96 | Unopposed MOTION for Extension of Time to File Response/Reply/Answer as to 93 Amended Complaint, by Latin American Investments, Ltd., Daniel Sargeant. Attorney Jeffrey Scott Wertman added to party Daniel Sargeant(pty:dft). (Attachments: # 1 Exhibit "A" Proposed Order)(Wertman, Jeffrey) (Entered: 03/05/2018) | 03/05/2018 |
| 97 | SUMMONS (Affidavit) Returned Executed for Service Abroad by Harry Sargeant, III. Andrew Preston served on 2/26/2018, answer due 3/19/2018. (Hawkes, Joshua) (Entered: 03/05/2018) | 03/05/2018 |
| 98 | PAPERLESS ORDER granting 96 Motion for Extension of Time to File Response/Answer to Second Amended Complaint by Latin American Investments, Ltd. and Daniel Sargeant by 4/5/2018. Re: 93 Second Amended Complaint, filed by Harry Sargeant, III. Signed by Judge Beth Bloom (BB) (Entered: 03/05/2018) | 03/05/2018 |
| 99 | Unopposed MOTION for Extension of Time to File Response/Reply/Answer as to 93 Amended Complaint, by Andrew Preston. Attorney Martin B. Goldberg added to party Andrew Preston(pty:dft). (Attachments: # 1 Text of Proposed Order Exhibit A) (Goldberg, Martin) (Entered: 03/08/2018) | 03/08/2018 |
| 100 | SUMMONS (Affidavit) Returned Executed for Service Abroad by Harry Sargeant, III. Daniel Hall served on 2/23/2018, answer due 3/16/2018. (Hawkes, Joshua) (Entered: 03/08/2018) | 03/08/2018 |
| 101 | PAPERLESS ORDER granting 99 Motion for Extension of Time to File Response/Answer to Second Amended Complaint by April 5, 2018. Signed by Judge Beth Bloom (BB) (Entered: 03/09/2018) | 03/09/2018 |
| 102 | NOTICE of Attorney Appearance by Louis M. Silber on behalf of Daniel Hall. Attorney Louis M. Silber added to party Daniel Hall(pty:dft). (Silber, Louis) (Entered: 03/13/2018) | 03/13/2018 |
| 103 | Defendant's MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Derek T. Ho. Filing Fee $ 75.00 Receipt # 113C-10480675 by Daniel Hall. Responses due by 3/27/2018 (Silber, Louis) (Entered: 03/13/2018) | 03/13/2018 |
| 104 | PAPERLESS ORDER granting 103 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Attorney Derek T. Ho. Signed by Judge Beth Bloom (BB) (Entered: 03/13/2018) | 03/13/2018 |
| 105 | NOTICE of Attorney Appearance by Allison Jill Davis on behalf of Daniel Hall. Attorney Allison Jill Davis added to party Daniel Hall(pty:dft). (Davis, Allison) (Entered: 03/13/2018) | 03/13/2018 |

| 106 | Unopposed MOTION for Extension of Time to File Response/Reply/Answer as to 93 Amended Complaint, filed by Daniel Hall. (Silber, Louis) (Entered: 03/15/2018) | 03/15/2018 |
|---|---|---|
| 107 | PAPERLESS CORDER granting in part and denying in part 106 Motion for Extension of Time to File Response/Answer to Second Amended Complaint by Daniel Hall. Response/Answer due by 4/5/2018. Re: 93 Amended Complaint, filed by Harry Sargeant, III. Signed by Judge Beth Bloom (BB) (Entered: 03/16/2018) | 03/16/2018 |
| 108 | Case Reassignment of Paired Magistrate Judge pursuant to Administrative Order(s) 2018-15 to Magistrate Judge Bruce E. Reinhart. Magistrate Judge James M. Hopkins no longer assigned to case. (jmd) (Entered: 03/19/2018) | 03/19/2018 |
| 109 | NOTICE of Attorney Appearance by Jonathan Lentine Williams on behalf of Andrew Preston. Attorney Jonathan Lentine Williams added to party Andrew Preston(pty:dft). (Williams, Jonathan) (Entered: 03/20/2018) | 03/20/2018 |
| 110 | NOTICE of Attorney Appearance by Lorelei Jane Van Wey on behalf of Andrew Preston. Attorney Lorelei Jane Van Wey added to party Andrew Preston(pty:dft). (Van Wey, Lorelei) (Entered: 03/22/2018) | 03/22/2018 |
| 111 | MOTION for Protective Order to Prohibit Discovery of a Confidential Settlement Agreement in a Foreign Proceeding and Incorporated Memorandum of Law by Latin American Investments, Ltd.. (Wertman, Jeffrey) (Entered: 03/28/2018) | 03/28/2018 |
| 112 | ORDER taking under advisement 111 Intervening Defendant LAIL's Motion for Protective Order and setting a Discovery Hearing for 4/6/2018 at 2:00 PM in West Palm Beach Division before Magistrate Judge Bruce E. Reinhart. Plaintiff's response to the motion is due by 4/4/2018. Counsel shall be prepared to advise the Court regarding the status of discovery, which is set to close on May 7, 2018. Signed by Magistrate Judge Bruce E. Reinhart on 3/29/2018. (hk02) (Entered: 03/29/2018) | 03/29/2018 |
| 113 | Unopposed MOTION Motion to Reset April 6, 2018 Hearing on LAIL's Motion for Protective Order to Prohibit Discovery of a Confidential Settlement Agreement in a Foreign Proceeding re 111 MOTION for Protective Order to Prohibit Discovery of a Confidential Settlement Agreement in a Foreign Proceeding and Incorporated Memorandum of Law, 112 Order on Motion for Protective Order, by Latin American Investments, Ltd.. (Wertman, Jeffrey) (Entered: 03/30/2018) | 03/30/2018 |
| 114 | Unopposed MOTION for Extension of Time to Respond or Otherwise Move as to Second Amended Complaint re 93 Amended Complaint, by Latin American Investments, Ltd., Daniel Sargeant. Responses due by 4/13/2018 (Attachments: # 1 Text of Proposed Order)(Wertman, Jeffrey) (Entered: 03/30/2018) | 03/30/2018 |
| 115 | ORDER granting 113 Intervening Defendant LAIL's Unopposed Motion to reset the discovery hearing on its Motion for a Protective Order (DE 111) and RESETTING the Discovery Hearing for 4/3/2018 at 1:00 PM in West Palm Beach Division before Magistrate Judge Bruce E. Reinhart. Plaintiff's Response is due by 3:00 p.m. on 4/2/2018. Signed by Magistrate Judge Bruce E. Reinhart on 3/30/2018. (hk02) (Entered: 03/30/2018) | 03/30/2018 |
| 116 | PAPERLESS ORDER granting 114 Motion for Extension of Time to File Response/Answer to Second Amended Complaint by April 12, 2018. Signed by Judge Beth Bloom (BB) (Entered: 03/30/2018) | 03/30/2018 |
| | Set/Reset Deadlines/Hearings as per DE 112 : Discovery Hearing set for 4/6/2018 02:00 PM in Miami Division before Magistrate Judge Bruce E. Reinhart. (lk) (Entered: 03/30/2018) | 03/30/2018 |
| 117 | Unopposed MOTION for Extension of Time to File Response/Reply/Answer to Second Amended Complaint by Daniel Hall. (Silber, Louis) (Entered: 03/30/2018) | 03/30/2018 |
| 118 | PAPERLESS ORDER denying 117 Motion for Extension of Time to File Response/Answer to Second Amended Complaint. Signed by Judge Beth Bloom (BB) (Entered: 03/30/2018) | 03/30/2018 |
| 119 | RESPONSE to Motion re 111 MOTION for Protective Order to Prohibit Discovery of a Confidential Settlement Agreement in a Foreign Proceeding and Incorporated Memorandum of Law filed by Maroil Trading Inc, Wilmer Ruperti Pedromo, Sea Pioneer Shipping Corporation. Replies due by 4/6/2018. (Widom, Mitchell) (Entered: 03/30/2018) | 03/30/2018 |
| 120 | RESPONSE in Opposition re 111 MOTION for Protective Order to Prohibit Discovery of a Confidential Settlement Agreement in a Foreign Proceeding and Incorporated Memorandum of Law filed by Harry Sargeant, III. Replies due by 4/6/2018. (Hawkes, Joshua) (Entered: 03/30/2018) | 03/30/2018 |
| | Set/Reset Hearings Discovery Hearing set for 4/3/2018 at 1:00 PM in West Palm Beach Division before Magistrate Judge Bruce E. Reinhart. (hk02) (Entered: 04/02/2018) | 04/02/2018 |
| | Set/Reset Answer Due Deadline as per DE 116 : Latin American Investments, Ltd. response due 4/12/2018; Daniel Sargeant response due 4/12/2018. (lk) (Entered: 04/02/2018) | 04/02/2018 |
| 121 | *Endorsed Order allowing the Ruperti Defendants and newly added Defendants to listen to tomorrow's discovery hearing telephonically by following these conference call instructions: Dial 1-888-684-8852; Enter access code 9189456#; and Enter security code 1234#. Signed by Magistrate Judge Bruce E. Reinhart on 4/2/2018. (hk02) (Entered: 04/02/2018) | 04/02/2018 |
| 122 | Defendant's MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Andrew Goldsmith. Filing Fee $ 75.00 Receipt # 113C-10533072 by Daniel Hall. Responses due by 4/16/2018 | 04/02/2018 |

(Silber, Louis) (Entered: 04/02/2018)

| | | |
|---|---|---|
| 123 | PAPERLESS ORDER granting 122 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Attorney Andrew Goldsmith. Signed by Judge Beth Bloom (BB) (Entered: 04/03/2018) | 04/03/2018 |
| 124 | PAPERLESS Minute Entry for proceedings held before Magistrate Judge Bruce E. Reinhart: Discovery Hearing on LAIL's Motion for a Protective Order (DE 111) held on 4/3/2018. Written order to follow. Total time in court: 1 hour(s) : 13 minutes. (Digital 13:01:19) (hk02) (Entered: 04/03/2018) | 04/03/2018 |
| 125 | Standing Discovery ORDER for Magistrate Judge Bruce Reinhart. Signed by Magistrate Judge Bruce E. Reinhart. on 4/3/2018. (lk) (Entered: 04/03/2018) | 04/03/2018 |
| 126 | ORDER MEMORIALIZING COURT RULINGS AT DISCOVERY HEARING AND SETTING DEADLINES;Granting in part 111 Motion for Protective Order. Status Conference set for 4/16/2018 01:00 PM before Magistrate Judge Bruce E. Reinhart. Signed by Magistrate Judge Bruce E. Reinhart on 4/3/2018. (lk) Modified hearing location text on 4/4/2018 (asl). (Entered: 04/04/2018) | 04/03/2018 |
| | Reset Hearings per 126 Order. Status Conference re-set for 4/16/2018 01:00 PM before Magistrate Judge Bruce E. Reinhart to remove from the Miami Division. (asl) (Entered: 04/04/2018) | 04/04/2018 |
| 127 | MOTION for Protective Order OR, ALTERNATIVELY, MOTION to Quash OR MODIFY THE SUBPOENA, WITH INCORPORATED RESPONSES AND OBJECTIONS TO SUBPOENAS by Edward H. Davis, Jr, Sequor Law, PA. Attorney Gregory Stewart Grossman added to party Edward H. Davis, Jr(pty:mov), Attorney Gregory Stewart Grossman added to party Sequor Law, PA(pty:mov). (Attachments: # 1 Exhibit 1)(Grossman, Gregory) (Entered: 04/05/2018) | 04/05/2018 |
| 128 | ORDER taking under advisement 127 Non-Party's Motion for Protective Order/ to Quash Subpoena. The non-parties shall produce responsive documents that are not in dispute, but the remainder of the subpoena shall be held in abeyance pending further order by the Court. Signed by Magistrate Judge Bruce E. Reinhart on 4/5/2018. (hk02) (Entered: 04/05/2018) | 04/05/2018 |
| 129 | MOTION to Dismiss 93 Amended Complaint, [Plaintiff's Second Amended Complaint Under Rules 12(b)(2) and (6) and to Dismiss and Award Attorney Fees Under Rule 16(f)] by Andrew Preston. Responses due by 4/19/2018 (Attachments: # 1 Exhibit A - Declaration of Andrew Preston)(Goldberg, Martin) (Entered: 04/05/2018) | 04/05/2018 |
| 130 | Unopposed MOTION to Seal the London Settlement Agreement re ECF No. 126 per Order authorizing the submission of this document under seal by Latin American Investments, Ltd.. (Attachments: # 1 Text of Proposed Order Proposed Order) (Wertman, Jeffrey) (Entered: 04/05/2018) | 04/05/2018 |
| 131 | Defendant's MOTION to Dismiss with Prejudice 20 Scheduling Order,,,, Order Referring Case to Mediation,,,, Order Referring Case to Magistrate Judge,,, 92 Amended Complaint, and incorporated memorandum of law by Daniel Hall. Attorney Samuel Alberto Danon added to party Daniel Hall(pty:dft). Responses due by 4/19/2018 (Attachments: # 1 Exhibit)(Danon, Samuel) (Entered: 04/05/2018) | 04/05/2018 |
| 132 | ORDER granting 130 Motion to Seal. Intervening Defendant LAIL shall file the London Settlement Agreement under seal for the Court's in camera review and it shall remain sealed until further order of the Court. Signed by Magistrate Judge Bruce E. Reinhart on 4/6/2018. (hk02) (Entered: 04/06/2018) | 04/06/2018 |
| | SYSTEM ENTRY - Docket Entry 133 [misc] restricted/sealed until further notice. (687414) (Entered: 04/09/2018) | 04/09/2018 |
| 134 | TRANSCRIPT of Motion to Compel held on 1/24/18 before Magistrate Judge James M. Hopkins, 1-36 pages, Court Reporter: Diane Miller, 561-514-3728 / Diane_Miller@flsd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased by contacting the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/1/2018. Redacted Transcript Deadline set for 5/11/2018. Release of Transcript Restriction set for 7/9/2018. (dmr) (Entered: 04/10/2018) | 04/10/2018 |
| 135 | TRANSCRIPT of Status Conference Hearing held on 1/29/18 before Magistrate Judge James M. Hopkins, 1-6 pages, Court Reporter: Diane Miller, 561-514-3728 / Diane_Miller@flsd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased by contacting the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/1/2018. Redacted Transcript Deadline set for 5/11/2018. Release of Transcript Restriction set for 7/9/2018. (dmr) (Entered: 04/10/2018) | 04/10/2018 |
| 136 | ORDER taking under advisement 127 Non-Party's Motion for Protective Order and setting it for a Discovery Hearing on 4/16/2018 at 1:00 PM in West Palm Beach Division before Magistrate Judge Bruce E. Reinhart. Plaintiff's response to the motion is due by 12:00 p.m. (noon) on 4/13/2018. Signed by Magistrate Judge Bruce E. Reinhart on 4/10/2018. (hk02) (Entered: 04/10/2018) | 04/10/2018 |
| 137 | NOTICE of Compliance with Order Memorializing Court Rulings at Discovery Hearing and Setting Deadlines by Latin American Investments, Ltd. re 126 Order on Motion for Protective Order, (Wertman, Jeffrey) (Entered: 04/10/2018) | 04/10/2018 |
| 138 | Unopposed Motion for Extension of Time to File Response/Reply/Answer as to 127 MOTION for Protective Order OR, ALTERNATIVELY, MOTION to Quash OR MODIFY THE SUBPOENA, WITH INCORPORATED RESPONSES AND OBJECTIONS TO SUBPOENAS by Harry Sargeant, III. Responses due by 4/25/2018 (Hawkes, Joshua) Modified Relief on 4/12/2018 (ls). Added MOTION to Continue/for Postponement of the Hearing on the Motion on 4/12/2018 (ls). (Entered: | 04/11/2018 |

04/11/2018)

| | | |
|---|---|---|
| 139 | Clerks Notice to Filer re 138 Unopposed MOTION for Extension of Time to Respond to Edward H. Davis, Jr. and Sequor Law, P.A.s Motion for Protective Order 127 and for Postponement of the Hearing on the Motion re 136 Order on Motion for Protective Order,. Motion with Multiple Reliefs Filed as One Relief; ERROR - The Filer selected only one relief event and failed to select the additional corresponding events for each relief requested in the motion. The docket entry was corrected by the Clerk. It is not necessary to refile this document but future filings must comply with the instructions in the CM/ECF Attorney User's Manual. AND Wrong Motion Relief(s) Selected; ERROR - The Filer selected the wrong motion relief(s) when docketing the motion. The correction was made by the Clerk. It is not necessary to refile this document but future motions filed must include applicable reliefs (ls) (Entered: 04/12/2018) | 04/12/2018 |
| 140 | ORDER granting 138 Plaintiff's Unopposed Motion for Extension of Time to File Response to 127 MOTION for Protective Order OR, ALTERNATIVELY MOTION to Quash OR MODIFY THE SUBPOENA filed by Non-parties Sequor Law, PA, Edward H. Davis, Jr., and RESETTING the Discovery Hearing and Status Conference (previously set for 4/16/18) for 4/23/2018 at 4:00 PM in West Palm Beach Division before Magistrate Judge Bruce E. Reinhart. Plaintiff's response to the motion is due by 4/20/2018 at 12:00 p.m. (noon). Signed by Magistrate Judge Bruce E. Reinhart on 4/12/2018. (hk02) (Entered: 04/12/2018) | 04/12/2018 |
| 141 | *Endorsed Order regarding Intervening Defendant LAIL's Motion for a Protective Order (DE 111) to prevent disclosure of the London Settlement Agreement. The Court has conducted a thorough in camera review of the London Settlement Agreement (filed under seal) and concludes that it is not relevant to this lawsuit. Therefore, LAIL's Motion for a Protective Order (DE 111) is GRANTED. Signed by Magistrate Judge Bruce E. Reinhart on 4/12/2018. (hk02) (Entered: 04/12/2018) | 04/12/2018 |
| 142 | MOTION TO DISMISS 93 Amended Complaint, FOR FAILURE TO STATE A CLAIM and Incorporated Memorandum of Law by Latin American Investments, Ltd., Daniel Sargeant. Responses due by 4/26/2018 (Wertman, Jeffrey) (Entered: 04/12/2018) | 04/12/2018 |
| 143 | Unopposed MOTION for Extension of Time to File Response/Reply/Answer as to 142 MOTION TO DISMISS 93 Amended Complaint, FOR FAILURE TO STATE A CLAIM and Incorporated Memorandum of Law, 131 Defendant's MOTION to Dismiss with Prejudice 20 Scheduling Order,,,, Order Referring Case to Mediation,,,, Order Referring Case to Magistrate Judge,,, 92 Amended Complaint, and incorporated memorandum of law, 129 MOTION to Dismiss 93 Amended Complaint, [Plaintiff's Second Amended Complaint Under Rules 12(b)(2) and (6) and to Dismiss and Award Attorney Fees Under Rule 16(f)] by Harry Sargeant, III. (Attachments: # 1 Text of Proposed Order)(Hawkes, Joshua) (Entered: 04/16/2018) | 04/16/2018 |
| 144 | PAPERLESS ORDER granting 143 Motion for Extension of Time to File Responses to each of the Defendant's Motions to Dismiss by May 1, 2018. Signed by Judge Beth Bloom (BB) (Entered: 04/16/2018) | 04/16/2018 |
| 146 | ORDER REFERRING 142 MOTION TO DISMISS 93 Amended Complaint, FOR FAILURE TO STATE A CLAIM and Incorporated Memorandum of Law filed by Daniel Sargeant, Latin American Investments, Ltd., 131 Defendant's MOTION to Dismiss with Prejudice 20 Scheduling Order. Order Referring Case to Mediation,,,, Order Referring Case to Magistrate Judge,,,, 92 Amended Complaint, and incorporated memorandum of law filed by Daniel Hall, 129 MOTION to Dismiss 93 Amended Complaint, [Plaintiff's Second Amended Complaint Under Rules 12(b)(2) and (6) and to Dismiss and Award Attorney Fees Under Rule 16(f)] filed by Andrew Preston. Motions referred to Judge Bruce E. Reinhart Signed by Judge Beth Bloom on 4/16/2018. (lk) (Entered: 04/17/2018) | 04/16/2018 |
| 145 | MOTION to Amend/Correct 141 Endorsed Order, by Harry Sargeant, III. Responses due by 5/1/2018 (Attachments: # 1 Exhibit 1 - Hrg. Transcript from Apr. 3, 2018)(Hawkes, Joshua) (Entered: 04/17/2018) | 04/17/2018 |
| | Set/Reset Deadlines/Hearings as per DE 144 re 142 MOTION TO DISMISS 93 Amended Complaint, FOR FAILURE TO STATE A CLAIM and Incorporated Memorandum of Law, 131 Defendant's MOTION to Dismiss with Prejudice 20 Scheduling Order,,,, Order Referring Case to Mediation,,,, Order Referring Case to Magistrate Judge,,, 92 Amended Complaint, and incorporated memorandum of law, 129 MOTION to Dismiss 93 Amended Complaint, [Plaintiff's Second Amended Complaint Under Rules 12(b)(2) and (6) and to Dismiss and Award Attorney Fees Under Rule 16(f)]. Responses due by 5/1/2018 (lk) (Entered: 04/17/2018) | 04/16/2018 |
| 145 | MOTION to Amend/Correct 141 Endorsed Order, by Harry Sargeant, III. Responses due by 5/1/2018 (Attachments: # 1 Exhibit 1 - Hrg. Transcript from Apr. 3, 2018)(Hawkes, Joshua) (Entered: 04/17/2018) | 04/17/2018 |
| 147 | ORDER taking under advisement 145 Plaintiff's Motion for Modification of the Protective Order and setting a Miscellaneous Hearing for 4/23/2018 at 4:00 PM in West Palm Beach Division before Magistrate Judge Bruce E. Reinhart. Intervening Defendant LAIL's response to the motion is due by 4/20/2018 at 5:00 p.m. Signed by Magistrate Judge Bruce E. Reinhart on 4/17/2018. (hk02) (Entered: 04/17/2018) | 04/17/2018 |
| 147 | ORDER taking under advisement 145 Plaintiff's Motion for Modification of the Protective Order and setting a Miscellaneous Hearing for 4/23/2018 at 4:00 PM in West Palm Beach Division before Magistrate Judge Bruce E. Reinhart. Intervening Defendant LAIL's response to the motion is due by 4/20/2018 at 5:00 p.m. Signed by Magistrate Judge Bruce E. Reinhart on 4/17/2018. (hk02) (Entered: 04/17/2018) | 04/17/2018 |
| 148 | Joint MOTION for Extension of Time to File Response/Reply/Answer as to 127 MOTION for Protective Order OR, ALTERNATIVELY MOTION to Quash OR MODIFY THE SUBPOENA, WITH INCORPORATED RESPONSES AND OBJECTIONS TO SUBPOENAS by Harry Sargeant, III. (Attachments: # 1 Text of Proposed Order)(Hawkes, Joshua) (Entered: 04/19/2018) | 04/19/2018 |
| 149 | MOTION to Adopt/Join 127 MOTION for Protective Order OR, ALTERNATIVELY MOTION to Quash OR MODIFY THE | 04/19/2018 |

| | SUBPOENA, WITH INCORPORATED RESPONSES AND OBJECTIONS TO SUBPOENAS by Daniel Hall. (Attachments: # 1 Exhibit A)(Danon, Samuel) (Entered: 04/19/2018) | |
|---|---|---|
| 150 | ORDER granting 148 Motion for Extension of Time to File and to Abate. By separate order, the Court will deny the Motion for Protective Order 127 without prejudice. If the parties are unable to resolve the disputed issues, they shall request a discovery hearing using the procedures contained in the Court's Standing Discovery Order 125 . Signed by Magistrate Judge Bruce E. Reinhart on 4/19/2018. (BER) (Entered: 04/19/2018) | 04/19/2018 |
| 151 | ORDER denying 127 Motion for Protective Order without prejudice; denying 127 Motion to Quash without prejudice. Signed by Magistrate Judge Bruce E. Reinhart on 4/19/2018. (BER) (Entered: 04/19/2018) | 04/19/2018 |
| 152 | ORDER denying as moot 149 Motion to Adopt/Join. The Court has denied the underlying Motion for Protective Order and/or to Quash without prejudice based on the parties' request to abate the response and cancel the hearing on the motion. See Docket Entries 150 and 151 . Therefore, the request to adopt that motion is now moot. Signed by Magistrate Judge Bruce E. Reinhart on 4/19/2018. (BER) (Entered: 04/19/2018) | 04/19/2018 |
| 153 | RESPONSE to Motion re 145 MOTION to Amend/Correct 141 Endorsed Order, [Plaintiff's Motion for Modification of Protective Order Regarding the London Settlement Agreement] filed by Andrew Preston. Replies due by 4/27/2018. (Goldberg, Martin) (Entered: 04/20/2018) | 04/20/2018 |
| 154 | RESPONSE to 145 MOTION to Amend/Correct 141 Endorsed Order, by Latin American Investments, Ltd.. (Wertman, Jeffrey) (Entered: 04/20/2018) | 04/20/2018 |
| 155 | Plaintiff's MOTION to Continue to Revise Trial and Pre-Trial Schedule re 20 Scheduling Order,,,, Order Referring Case to Mediation,,,, Order Referring Case to Magistrate Judge,,, by Harry Sargeant, III. Responses due by 5/7/2018 (Hawkes, Joshua) Modified on 5/8/2018 (tas). (Entered: 04/23/2018) | 04/23/2018 |
| 156 | *Endorsed Order advising counsel of the new conference call instructions to be used at the 4:00 p.m. court appearance:Dial 1-888-557-8511; Enter access code 4098267#; and Enter Security Code 1234#. Signed by Magistrate Judge Bruce E. Reinhart on 4/23/2018. (hk02) (Entered: 04/23/2018) | 04/23/2018 |
| 157 | ORDER denying without prejudice to renew 145 Plaintiff's Motion to Amend/Correct/for Reconsideration of the Court's prior order regarding the London Settlement Agreement at DE 141. Signed by Magistrate Judge Bruce E. Reinhart on 4/23/2018. (hk02) (Entered: 04/23/2018) | 04/23/2018 |
| 158 | PAPERLESS Minute Entry for proceedings held before Magistrate Judge Bruce E. Reinhart: Discovery Hearing on Plaintiff's Motion for Reconsideration (DE 145) held on 4/23/2018. Total time in court: 49 minutes. (Digital 16:08:13) (hk02) (Entered: 04/23/2018) | 04/23/2018 |
| 159 | ORDER taking under advisement 129 Motion to Dismiss; 131 Motion to Dismiss; and 142 Motion to Dismiss and ORDERING Plaintiff to file his Responses by 5/4/2018. Defendants' Replies are due by 5/18/2018. Counsel shall confer and advise the Court by 4/27/2018 of a mutually agreeable date and time for oral argument on the motions to dismiss. Signed by Magistrate Judge Bruce E. Reinhart on 4/23/2018. (hk02) (Entered: 04/23/2018) | 04/23/2018 |
| 160 | Joint MOTION to Continue and Revise Trial and Pretrial Schedule by Daniel Hall, Latin American Investments, Ltd., Andrew Preston, Daniel Sargeant. Responses due by 5/9/2018 (Attachments: # 1 Text of Proposed Order Proposed Order Setting Trial and Pretrial Schedule)(Danon, Samuel) Modified on 5/8/2018 (tas). (Entered: 04/25/2018) | 04/25/2018 |
| 161 | NOTICE by Harry Sargeant, III re 159 Order on Motion to Dismiss,,,, Order on Motion to Dismiss for Failure to State a Claim, of a mutually agreeable date and time for oral argument on the motions to dismiss (Hawkes, Joshua) (Entered: 04/26/2018) | 04/26/2018 |
| 162 | ORDER taking under advisement 129 (131, 142) Motions to Dismiss and setting a Miscellaneous Hearing for 5/21/2018 at 2:00 PM in West Palm Beach Division before Magistrate Judge Bruce E. Reinhart. The Court has reserved 90 minutes for this hearing. Signed by Magistrate Judge Bruce E. Reinhart on 4/26/2018. (hk02) (Entered: 04/26/2018) | 04/26/2018 |
| 164 | TRANSCRIPT of Hearing held on 4/23/2018 before Magistrate Judge Bruce E. Reinhart, 1-40 pages, Court Reporter: Other, 305-523-5635. Transcript may be viewed at the court public terminal or purchased by contacting the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/21/2018. Redacted Transcript Deadline set for 5/31/2018. Release of Transcript Restriction set for 7/30/2018. (Attachments: # 1 Designation Access Form)(apz) (Entered: 05/01/2018) | 04/30/2018 |
| 163 | RESPONSE to Motion re 160 Joint MOTION to Continue and Revise Trial and Pretrial Schedule filed by Harry Sargeant, III. Replies due by 5/8/2018. (Hawkes, Joshua) (Entered: 05/01/2018) | 05/01/2018 |
| 165 | AMENDED ORDER Setting certain trial and pre-trial deadlines: (All Discovery due by 8/14/2018., Expert Discovery due by 8/14/2018., Mediation Deadline 8/28/2018., Dispositive Motions due by 9/5/2018., Motions due by 9/5/2018., Joint Pretrial Stipulation due by 11/26/2018., Calendar Call set for 12/4/2018 01:45 PM in Miami Division before Judge Beth Bloom., Jury Trial set for 12/10/2018 09:00 AM in Miami Division before Judge Beth Bloom.) Signed by Judge Beth Bloom on 4/30/2018. (lk) (Entered: 05/02/2018) | 05/02/2018 |

| 166 | MOTION to Withdraw as Attorney by Louis M. Silber and Allison Jill Davis for / by Daniel Hall. Responses due by 5/17/2018 (Attachments: # 1 Text of Proposed Order)(Danon, Samuel) (Entered: 05/03/2018) | 05/03/2018 |
|---|---|---|
| 167 | Joint MOTION for Extension of Time To Present Discovery Dispute Relating to Subpoena to Berger Singerman LLP by Harry Sargeant, III. Responses due by 5/17/2018 (Coffey, Melissa) (Entered: 05/03/2018) | 05/03/2018 |
| 168 | ORDER granting 167 the parties' joint Motion for an Extension of Time to present to the Court any discovery dispute relating to the subpoena at issue until 5/29/18. Signed by Magistrate Judge Bruce E. Reinhart on 5/4/2018. (hk02) (Entered: 05/04/2018) | 05/04/2018 |
| 169 | ORDER granting 166 Motion to Withdraw as Attorney. Allison Jill Davis and Louis M. Silber withdrawn from case. Signed by Judge Beth Bloom on 5/3/2018. (lk) (Entered: 05/04/2018) | 05/04/2018 |
| 170 | RESPONSE in Opposition re 131 Defendant's MOTION to Dismiss with Prejudice 20 Scheduling Order,,,, Order Referring Case to Mediation,,,, Order Referring Case to Magistrate Judge,,,, 92 Amended Complaint, and incorporated memorandum of law filed by Harry Sargeant, III. Replies due by 5/11/2018. (Hawkes, Joshua) (Entered: 05/04/2018) | 05/04/2018 |
| 171 | RESPONSE in Opposition re 142 MOTION TO DISMISS 93 Amended Complaint, FOR FAILURE TO STATE A CLAIM and Incorporated Memorandum of Law filed by Harry Sargeant, III. Replies due by 5/11/2018. (Hawkes, Joshua) (Entered: 05/04/2018) | 05/04/2018 |
| 172 | RESPONSE in Opposition re 129 MOTION to Dismiss 93 Amended Complaint, [Plaintiff's Second Amended Complaint Under Rules 12(b)(2) and (6) and to Dismiss and Award Attorney Fees Under Rule 16(f)] filed by Harry Sargeant, III. Replies due by 5/11/2018. (Attachments: # 1 Exhibit 4/20/15 Mooney email to DSargeant/Preston, # 2 Exhibit Defence of the First and Second Defendants, # 3 Exhibit 3/23/17 High Court Order, # 4 Exhibit 3/24/17 Swiss criminal complaint, # 5 Exhibit 11/10/17 Swiss disclosure request, # 6 Exhibit 11/23/17 Letter from Swiss authorities, # 7 Exhibit 5/11/17 Preston email to Hall/DSargeant, # 8 Exhibit 5/26/17 Preston email to Hall/DSargeant, # 9 Exhibit 7/19/17 Hall email to Preston/DSargeant, # 10 Exhibit 7/2/13 Kirkeide letter, # 11 Exhibit 7/10/13 Preston letter, # 12 Exhibit 7/14/13 Preston email to DSargeant, # 13 Exhibit 7/15/13 Preston email to DSargeant, # 14 Exhibit 7/18/13 Roos email to Preston, # 15 Exhibit 7/20/15 Preston email to DSargeant, # 16 Exhibit 2/7/14 Roberts/Preston email to Balk, # 17 Exhibit 3/11/14 Mooney email to Preston, # 18 Exhibit 4/11/18 Sequor email to Foley, # 19 Exhibit Litigation hold letters, # 20 Exhibit 2/23/18 Freshfields letter to Covington)(Hawkes, Joshua) (Entered: 05/04/2018) | 05/04/2018 |
| 173 | MOTION to Stay Discovery by Andrew Preston. Responses due by 5/21/2018 (Goldberg, Martin) (Entered: 05/07/2018) | 05/07/2018 |
| 174 | RESPONSE in Opposition re 173 MOTION to Stay Discovery filed by Harry Sargeant, III. Replies due by 5/14/2018. (Hawkes, Joshua) (Entered: 05/07/2018) | 05/07/2018 |
| 175 | *Endorsed Order setting a Discovery Hearing on Clyde & Co. US, LLP's objections to Plaintiff's subpoena for 5/21/2018 at 2:00 PM in West Palm Beach Division before Magistrate Judge Bruce E. Reinhart. By May 11, 2018, Plaintiff shall file a discovery memorandum of three pages or less specifying the substance of the discovery dispute and attaching any relevant materials. If Clyde & Co. wishes to file a responsive memorandum, it shall do so by May 16, 2018. Signed by Magistrate Judge Bruce E. Reinhart on 5/8/2018. (hk02) (Entered: 05/08/2018) | 05/08/2018 |
| 176 | ORDER taking under advisement 173 Defendant Andrew Preston's Motion to Stay and setting it for a hearing on 5/21/2018 at 2:00 PM in West Palm Beach Division before Magistrate Judge Bruce E. Reinhart. Signed by Magistrate Judge Bruce E. Reinhart on 5/8/2018. (hk02) (Entered: 05/08/2018) | 05/08/2018 |
| 177 | Plaintiff's MOTION to Seal per Local Rule 5.4 by Harry Sargeant, III. (Hawkes, Joshua) (Entered: 05/10/2018) | 05/10/2018 |
| 178 | ORDER temporarily granting 177 Motion to Seal. By 5/16/18, Defendant LAIL shall notify the Court regarding the outcome of counsel's meet and confer session as to whether the parties agree that the three exhibits (DE 172-7, DE 172-8, DE 172-9) are entitled to a "Confidential" designation. If Defendant LAIL maintains its position that the documents should be kept under seal, Defendant LAIL shall file a memorandum by 5/16/18 that complies with Local Rule 5.4 and "set[s] forth the factual and legal basis" for the sealing. If the dispute over the designation is not resolved, the Court will hear oral argument on the issue on 5/21/18. In the meantime, these three exhibits to 172 will remain temporarily under seal until 5/22/18. Signed by Magistrate Judge Bruce E. Reinhart on 5/11/2018. (hk02) (Entered: 05/11/2018) | 05/11/2018 |
| 179 | MEMORANDUM in Support re 175 Endorsed Order,,, Set/Reset Deadlines/Hearings,, DISCOVERY MEMORANDUM by Harry Sargeant, III. (Attachments: # 1 Exhibit A - Subpoena, # 2 Exhibit B - Apr. 6, 2018 ltr, # 3 Exhibit C - Clyde public information, # 4 Exhibit D - Clyde CIO interview)(Hawkes, Joshua) (Entered: 05/11/2018) | 05/11/2018 |
| 180 | REPLY to Response to Motion re 173 MOTION to Stay Discovery filed by Andrew Preston. (Van Wey, Lorelei) (Entered: 05/14/2018) | 05/14/2018 |
| 181 | RESPONSE to 178 Order on Motion to Seal,,, by Latin American Investments, Ltd.. (Attachments: # 1 Exhibit "A" Letter To The Honorable Sarah Netburn)(Wertman, Jeffrey) (Entered: 05/15/2018) | 05/15/2018 |
| 182 | RESPONSE to 179 Memorandum, by Nonparty by Clyde & Co US LLP. (Attachments: # 1 Exhibit 1)(Goldberg, Martin) (Entered: 05/16/2018) | 05/16/2018 |
| 183 | REPLY to Response to Motion re 131 Defendant's MOTION to Dismiss with Prejudice 20 Scheduling Order,,,, Order Referring Case to Mediation,,,, Order Referring Case to Magistrate Judge,,, 92 Amended Complaint, and incorporated memorandum of law | 05/18/2018 |

| | filed by Daniel Hall. (Attachments: # 1 Exhibit)(Danon, Samuel) (Entered: 05/18/2018) | |
|---|---|---|
| 184 | REPLY to Response to Motion re 129 MOTION to Dismiss 93 Amended Complaint, [Plaintiff's Second Amended Complaint Under Rules 12(b)(2) and (6) and to Dismiss and Award Attorney Fees Under Rule 16(f)] filed by Andrew Preston. (Attachments: # 1 Exhibit A - Preston's Second Declaration)(Goldberg, Martin) (Entered: 05/18/2018) | 05/18/2018 |
| 185 | Notice of Adoption by Latin American Investments, Ltd., Daniel Sargeant Related document: 183 Reply to Response to Motion, filed by Daniel Hall (Wertman, Jeffrey) (Entered: 05/18/2018) | 05/18/2018 |
| 186 | REPLY to 178 Order on Motion to Seal,,, by Harry Sargeant, III. (Hawkes, Joshua) (Entered: 05/18/2018) | 05/18/2018 |
| 187 | PAPERLESS Minute Entry for proceedings held before Magistrate Judge Bruce E. Reinhart: Miscellaneous Hearing on Defendants' Motions to Dismiss (DE 129, 131, 142), as well as Defendant Preston's Motion to Stay Discovery (DE 173) and Defendant LAIL's Motion to Seal (DE 181) held on 5/21/2018. Total time in court: 3 hour(s) : 40 minutes. Court Reporter: Jill Felicetti, 305-523-5024 / Jill_Felicetti@flsd.uscourts.gov. (hk02) (Entered: 05/22/2018) | 05/22/2018 |
| 188 | *Endorsed Order Setting a Discovery Hearing on Clyde & Company US LLP's discovery dispute with Plaintiff. The discovery hearing is set for 5/31/2018 at 11:00 AM in West Palm Beach Division before Magistrate Judge Bruce E. Reinhart.) **NOTE TIME CHANGE**. Counsel shall also be prepared to discuss a discovery plan for the entire case. The Court will enter a written order with additional instructions regarding the discovery plan. Counsel may appear by telephone by using the following conference call instructions: Dial 1-888-557-8511; Enter access code 4098267#; and Enter security code 1234#. Signed by Magistrate Judge Bruce E. Reinhart on 5/22/2018. (hk02) (Entered: 05/22/2018) | 05/22/2018 |
| 189 | ORDER denying 173 Motion to Stay. Signed by Magistrate Judge Bruce E. Reinhart on 5/23/2018. (lk) (Entered: 05/23/2018) | 05/23/2018 |
| 190 | TRANSCRIPT of Motion Hearing held on 5/21/18 before Magistrate Judge Bruce E. Reinhart, 1-171 pages, Court Reporter: Jill Felicetti, 305-523-5024 / Jill_Felicetti@flsd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased by contacting the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/14/2018. Redacted Transcript Deadline set for 6/25/2018. Release of Transcript Restriction set for 8/22/2018. (jfi) (Entered: 05/24/2018) | 05/24/2018 |
| 191 | REPORT AND RECOMMENDATIONS re 142 MOTION TO DISMISS 93 Amended Complaint, FOR FAILURE TO STATE A CLAIM and Incorporated Memorandum of Law filed by Daniel Sargeant, Latin American Investments, Ltd., 131 Defendant's MOTION to Dismiss with Prejudice 20 Scheduling Order,,,, Order Referring Case to Mediation,,,, Order Referring Case to Magistrate Judge,,, 92 Amended Complaint, and incorporated memorandum of law filed by Daniel Hall, 129 MOTION to Dismiss 93 Amended Complaint, [Plaintiff's Second Amended Complaint Under Rules 12(b)(2) and (6) and to Dismiss and Award Attorney Fees Under Rule 16(f)] filed by Andrew Preston Recommending Granted in Part without Prejudice and Denied in Part. Objections to R&R due by 6/13/2018 Signed by Magistrate Judge Bruce E. Reinhart on 5/30/2018. (tmn) (Entered: 05/30/2018) | 05/30/2018 |
| 192 | STATUS REPORT JOINT (DISCOVERY REPORT) by Harry Sargeant, III (Attachments: # 1 Exhibit, # 2 Exhibit)(Coffey, Melissa) (Entered: 05/30/2018) | 05/30/2018 |
| 193 | PAPERLESS Minute Entry for proceedings held before Magistrate Judge Bruce E. Reinhart: Discovery Hearing held on 5/31/2018. Total time in court: 2 hours : 10 minutes. Court Reporter: Stephen Franklin, 561-514-3768 / Stephen_Franklin@flsd.uscourts.gov. (Digital 11:01:40) (hk02) (Entered: 05/31/2018) | 05/31/2018 |
| 194 | ORDER Memorializing Court Rulings at Discovery Hearing and Setting Deadlines, ( Telephone Hearing set for 6/5/2018 10:00 AM in West Palm Beach Division before Magistrate Judge Bruce E. Reinhart.) Signed by Magistrate Judge Bruce E. Reinhart on 6/1/2018. (tmn) (Entered: 06/01/2018) | 06/01/2018 |
| 195 | TRANSCRIPT of Discovery Hearing held on 05/31/2018 before Magistrate Judge Bruce E. Reinhart, 1-123 pages, Court Reporter: Stephen Franklin, 561-514-3768 / Stephen_Franklin@flsd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased by contacting the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/25/2018. Redacted Transcript Deadline set for 7/3/2018. Release of Transcript Restriction set for 8/31/2018. (sf) (Entered: 06/02/2018) | 06/02/2018 |
| 196 | NOTICE of Voluntary Dismissal by Harry Sargeant, III (Hawkes, Joshua) (Entered: 06/04/2018) | 06/04/2018 |
| 197 | *Endorsed Order Cancelling tomorrow's telephonic hearing previously scheduled for 6/5/18 at 10:00 a.m. Signed by Magistrate Judge Bruce E. Reinhart on 6/4/2018. (hk02) (Entered: 06/04/2018) | 06/04/2018 |
| 198 | ORDER OF DISMISSAL WITHOUT PREJUDICE. The Notice of Voluntary Dismissal Without Prejudice, ECF No. 196 is APPROVED. The above-styled case is DISMISSED WITHOUT PREJUDICE. All pending motions are denied as MOOT and all deadlines are TERMINATED. The Clerk of Court is directed to CLOSE this case. Signed by Judge Beth Bloom on 6/4/2018. (mc) NOTICE: If there are sealed documents in this case, they may be unsealed after 1 year or as directed by Court Order, unless they have been designated to be permanently sealed. See Local Rule 5.4 and Administrative Order 2014-69. (Entered: 06/04/2018) | 06/04/2018 |

# Exhibit D

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No: 9:17-cv-81070-BLOOM/Hopkins

HARRY SARGEANT, III,

      Plaintiff,

      vs.

MAROIL TRADING, INC., SEA PIONEER
SHIPPING CORPORATION, WILMER
RUPERTI PEDROMO, DANIEL SARGEANT,
DANIEL HALL, and ANDREW PRESTON,

      Defendants,

      and

LATIN AMERICAN INVESTMENTS, LTD.,

      Intervenor.

_____/       **JURY TRIAL DEMANDED**


**SECOND AMENDED COMPLAINT**

Plaintiff, Harry Sargeant, III ("HS3") hereby files this Second Amended Complaint against intervenor, Latin American Investments, Ltd. ("LAIL"), and the defendants, Daniel Sargeant ("DSargeant"), Daniel Hall ("Hall"), and Andrew Preston ("Preston") (collectively the "Defendants"), and states as follows:


**SUMMARY OF THE ACTION**

1.     This is an action seeking injunctive and other equitable relief, compensatory and punitive damages, and asserting violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 *et seq.*; Florida's Computer Abuse and Data Recovery Act ("CADRA"), Fla. Stat. § 668.801 *et seq.*; and claims under Florida law for breach of contract, invasion of privacy, and civil conspiracy.

1

## PARTIES

2.      HS3 is a citizen and resident of Palm Beach County, Florida, United States of America.

3.      LAIL is a company incorporated in the Isle of Man, owned currently by DSargeant, James Sargeant, and Harry Sargeant, Jr. (collectively, the "Sargeant Family") in equal shares. HS3 previously served as a director and 25% shareholder in LAIL. The other shareholders of LAIL at that time were DSargeant, James Sargeant, and Harry Sargeant, Jr.

4.      DSargeant is a citizen and resident of Boca Raton, Florida. At all times herein material, DSargeant owned, controlled, and/or managed numerous Sargeant Family owned businesses, including LAIL.

5.      Hall is a citizen and resident of the United Kingdom ("UK"), and is a UK trained solicitor and employee of Burford Capital, LLC. Hall is formally a director of Focus Intelligence, Ltd., an investigations firm acquired by Burford Capital, LLC in or about 2015. As used herein, "Burford" shall refer collectively to both Burford Capital, LLC and Focus Intelligence, Ltd., and other affiliates and subsidiaries of Burford Capital, LLC.

6.      Preston is a citizen and resident of the UK. Preston is a UK trained solicitor currently employed at Clyde & Co., and has served as legal counsel for LAIL and other Sargeant Family businesses.

7.      Nominal defendants Maroil Trading, Inc. ("Maroil") and Sea Pioneer Shipping Corp. ("SPSC") (collectively the "Panamanian Companies") are owned and controlled by Nominal Defendant Wilmer Ruperti Pedromo ("Ruperti"), a Venezuelan businessman (the Panamanian Companies and Ruperti are collectively referred to herein as the "Ruperti Parties").

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over HS3's CFAA claim under 18 U.S.C. § 1030, and 28 U.S.C. § 1331, as such claim arises under the laws of the United States.

9.     This Court has subject matter jurisdiction over HS3's SCA claim under 18 U.S.C. § 2701 *et seq.*, and 28 U.S.C. § 1331, as such claim arises under the laws of the United States.

10.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over HS3's state-law claims under CADRA, his invasion of privacy and civil conspiracy tort claims, and the breach of contract claim, all asserted under Florida law, as these claims comprise the same case and controversy as the federal claims under CFAA and SCA.

11.     This Court has personal jurisdiction over LAIL because it submitted itself to the jurisdiction of this Court by voluntary intervention in this action.

12.     This Court has personal jurisdiction over DSargeant as he resides and is domiciled in Palm Beach County, Florida.

13.     This Court has personal jurisdiction over Hall under Florida's long arm statute, Florida Statutes Section 48.193, because *inter alia*, as set forth herein, Hall conspired with the other Defendants to commit a tort and violate federal and Florida law in Florida (*i.e.*, the violation of CFAA and CADRA and invasion of HS3's privacy), resulting in harm in Florida, and one or more overt acts in furtherance of the conspiracy were committed within this judicial district in Florida.

14.     This Court has personal jurisdiction over Preston under Florida's long arm statute, Florida Statutes Section 48.193, because *inter alia*, as set forth herein, Preston conspired with the other Defendants to commit a tort and violate federal and Florida law in Florida (*i.e.*, the violation of CFAA and CADRA and invasion of HS3's privacy), resulting in harm in Florida,

3

and one or more overt acts in furtherance of the conspiracy were committed within this judicial district in Florida.

15.     The Court has continuing jurisdiction over the Ruperti Parties pursuant to the order administratively closing the case as to the Ruperti Parties [ECF No. 91].

16.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims set forth in this Second Amended Complaint occurred in this judicial district.

## HS3 AND THE SARGEANT FAMILY BUSINESSES

17.     From in or about 1990 through 2012, HS3, DSargeant (brother), Harry Sargeant, Jr. (father), and James Sargeant (brother) owned, operated, and were employed by a number of for-profit Sargeant Family business entities engaged in the sale, transport, and distribution of asphalt and related petroleum products and materials (the "Sargeant Family Businesses"). Defendant LAIL was one such business entity.

18.     At all times herein material, the Sargeant Family Businesses were engaged in interstate and foreign commerce.

19.     At all times herein material, the Sargeant Family Businesses maintained a computer server (the "Sargeant Server") located in Florida within this judicial district at 3020 North Military Trail, Boca Raton, in Palm Beach County, Florida.

20.     The Sargeant Server was utilized, *inter alia*, in connection with the operation of a business in Florida within this judicial district and in connection with the conduct of interstate and foreign commerce from within this judicial district.

21.     At all times herein material, HS3 maintained and utilized his own email account on the Sargeant Server, denominated as hsargeantjr@sargeant.net (the "HS3 Email Account").

4

The HS3 Email Account was password protected, and HS3 did not provide the password associated with the HS3 Email Account to any of the Defendants or their representatives or agents.  Access to the Sargeant Server was also password protected.

22.     The HS3 Email Account and the Sargeant Server contained, *inter alia*, 478 separate business, personal, and confidential items belonging to and relating to HS3, including business information, business and personal communications, documents, Microsoft outlook email files, and personal, sensitive photographs and videos ("HS3 Material").  A summary and index of the HS3 Material was produced by counsel for LAIL on January 24, 2018, and a redacted copy of same is attached as **Exhibit A**.

23.     The business information contained within the HS3 Material included certain details and communications regarding HS3's private business ventures, which were unrelated to the Sargeant Family Businesses.  This business information included links to prototype operations of a new steam generator system being developed by one of HS3's businesses, trade articles, and updates on global business operations from employees of HS3's businesses.

24.     The personal information contained within the HS3 Material included extremely sensitive videos and photographs of intimate activity and private consensual relations involving HS3.

25.     HS3 never explicitly or implicitly authorized any of the Defendants to access the HS3 Email Account or to access or obtain the HS3 Material contained in the HS3 Email Account or on the Sargeant Server.

26.     The Sargeant Family Businesses had no official or unofficial policies or procedures authorizing the Defendants, or anyone else, to access the HS3 Email Account or to

access or obtain the HS3 Material contained in the HS3 Email Account or on the Sargeant Server.

## THE DEFENDANTS' UNLAWFUL AGREEMENT

27.     In or about August 2016, the Defendants devised a scheme whereby they agreed together to, unlawfully and without authorization, access the HS3 Email Account, and to, unlawfully and without authorization and/or in excess of any authorization, access the Sargeant Server, obtain the HS3 Material, and exchange the HS3 Material for certain other illicit and confidential materials to advance their own individual and mutual interests.  The profit-minded Defendants intentionally agreed to exploit this unauthorized and unlawful access to such materials to reap financial gain.

28.     The Defendants intended for their scheme to result in harm inside Florida, where HS3 is a citizen and resident, and where the Sargeant Server, which stored/contained the HS3 Email Account, was located and utilized in connection with the operation of a business in Florida.

29.     In or about August 2016, Hall advised DSargeant, LAIL, and Preston that he had access to certain material regarding the Ruperti Parties ("Ruperti Material"), which was of great value to DSargeant, LAIL, and Preston.  Hall knew DSargeant, LAIL, and Preston had been seeking such information as part of efforts to recover tens of millions of dollars they believed the Ruperti Parties had misappropriated.

30.     Hall had access to the Ruperti Material through Burford's relationship with a separate Burford client, Sovcomflot, as the Ruperti Material was disclosed as part of litigation between Ruperti and Sovcomflot.  The Ruperti Material was subject to a confidential settlement between Sovcomflot and Ruperti, and a non-disclosure agreement ("NDA") as part of that

6

settlement.  Hall nonetheless ignored any obligations to Burford client Sovcomflot and/or under the settlement between Sovcomflot and Ruperti and the NDA, and plotted to abuse his access to the Ruperti Material to advance the Defendants' conspiratorial agreement.

31.    At that same time, Hall was engaged as an investigator in a bitter, global feud with HS3 seeking recovery of millions of dollars from HS3 on behalf of a separate Burford client, Mohammed Al-Saleh.  As part of those efforts, Hall sought information regarding HS3 that Burford could use to leverage and/or extort HS3 into a payment or settlement.  Hall knew he could do so by taking advantage of a known rift between HS3 on the one hand and DSargeant, LAIL, and Preston on the other.

32.    Hall also knew DSargeant, LAIL, and Preston could unlawfully access the HS3 Material, and therefore proposed to provide to them the Ruperti Material in exchange for the HS3 Material.

33.    In or about August 2016, the Defendants agreed together that DSargeant and LAIL would unlawfully access the HS3 Email Account, obtain the HS3 Material, and provide the HS3 Material to Hall.  In exchange, the Defendants agreed together that Hall would access the Ruperti Material, disregard the settlement and the NDA between Sovcomflot and Ruperti applicable to the Ruperti Material, and provide the Ruperti Material to DSargeant, LAIL, and Preston, for Preston to use in litigation between LAIL and the Ruperti Parties.

34.    DSargeant, LAIL, and Preston knew they had no authorization to access the HS3 Email Account and lacked authorization or exceeded any authorization they had to access the Sargeant Server, and no authorization to obtain the HS3 Material and/or to provide same to Hall. DSargeant, LAIL, and Preston also knew, or later became aware, that Hall would violate the

Sovcomflot settlement and NDA in order to access and provide to them the Ruperti Material in exchange for the HS3 Material.

35.     On or about October 6, 2016, in furtherance of their agreement, Hall provided to DSargeant, LAIL, and Preston, a portion of the Ruperti Material.

36.     On or about October 6, 2016, and again on or about October 28, 2016, DSargeant and LAIL unlawfully accessed the Sargeant Server and the HS3 Email Account in Florida, and obtained the HS3 Material from the HS3 Email Account.

37.     On or about October 28, 2016, DSargeant and LAIL provided the HS3 Material to Hall in exchange for the remainder of the Ruperti Material.

38.     On or about March 1, 2017, DSargeant, LAIL, and Preston utilized the Ruperti Material to prepare and file an action against Maroil and SPSC on behalf of LAIL in the High Court of Justice, London (the "London Litigation").

39.     On or about May 5, 2017, the Defendants met in London to discuss, *inter alia*, Hall's request to share in any proceeds from the London Litigation.  Hall advised DSargeant, LAIL, and Preston that, because he and/or Burford may be exposed to liability for the violation of the Sovcomflot settlement and the NDA, and the provision of the Ruperti Material in exchange for the HS3 Material, that he (Hall) should receive compensation from them (DSargeant, LAIL, and Preston).

40.     On or about May 11, 2017, Preston, on behalf of himself, DSargeant, and LAIL, communicated with Hall regarding Hall's request for compensation, and indicated a willingness to consider providing Hall a portion of any recovery from the Ruperti Parties in the London Litigation on the basis that the information Hall provided was of great value to DSargeant/LAIL in advancing that litigation.

41.     On or about July 26, 2017, Preston, on behalf of himself, DSargeant, and LAIL, again communicated with Hall to advise that if a substantial recovery were made in the London Litigation then DSargeant would be happy to sit down with Hall to discuss some form of a success fee.

42.     Preston expressly averred under oath that the Ruperti Material provided the evidence essential to the successful assertion of the claims advanced in the London Litigation. LAIL has now recovered in excess of $30 million from the Ruperti Parties in the London Litigation as a result of the Defendants' unlawful scheme.

## COUNT I
## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT
### *Against LAIL and DSargeant*

43.     Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 42 above as if herein fully set forth.

44.     At all times herein material, the Sargeant Server and the computers used in the Sargeant Family Businesses constituted "protected computers" as defined in 18 U.S.C. § 1030(e)(2)(B), as they were used by the Sargeant Family Businesses to engage in interstate and foreign commerce and communications, including e-mail communications with individuals located out of state and in foreign countries, and to otherwise conduct the Sargeant Family Businesses across state lines, via the internet.

45.     On or about October 6, 2016, and again on or about October 28, 2016, Defendants LAIL and DSargeant intentionally accessed the Sargeant Server and one or more of the computers used in the Sargeant Family Businesses and thereby obtained information, namely the HS3 Material, from a protected computer without authorization and/or by exceeding any authorized access, in violation of 18 U.S.C. § 1030(a)(2)(C).

9

46.     The HS3 Material accessed by LAIL and DSargeant was maintained on protected computers within the meaning of 18 U.S.C. § 1030(e)(2)(B).

47.     LAIL and DSargeant were not authorized to access and/or exceeded their authorized access to the protected computers and the HS3 Material.

48.     By engaging in the conduct described above, LAIL and DSargeant intentionally accessed at least one protected computer without authorization or exceeded any authorized access, and thereby obtained information from a protected computer in violation of the CFAA, 18 U.S.C. § 1030(a)(2)(C).

49.     As a result of LAIL and DSargeant engaging in the conduct described above, HS3 suffered damage and LAIL and DSargeant received an unjust benefit and enrichment in the form of the profits derived from the recovery in excess of $30 million in the London Litigation.

50.     LAIL and DSargeant's violations of the CFAA and misuse of the HS3 Material in order to benefit from the London Litigation were inequitable, and it would be inequitable for LAIL and DSargeant to retain such benefit.

51.     As a result of LAIL and DSargeant's violations of the CFAA, 18 U.S.C. § 1030(a)(2)(C), HS3 suffered "damage" and/or "loss" under the CFAA, in an amount exceeding $5,000.00, and HS3 is entitled to an award of compensatory damages, injunctive and other equitable relief under 18 U.S.C. § 1030(g).  Such an award includes the cost of reasonably investigating and otherwise responding to the CFAA violations (including the hiring of a forensic computer analyst to conduct investigation and analysis).

52.     WHEREFORE, HS3 asks the Court to enter a judgment against Defendants LAIL and DSargeant awarding him (a) HS3's actual damages, including without limitation, compensatory, incidental, and consequential damages; (b) injunctive and other equitable relief,

including without limitation, an injunction prohibiting LAIL and DSargeant from disclosing the HS3 Material and requiring that they return all such information in their possession to HS3, disgorgement of DSargeant and LAIL's profits and unjust enrichment resulting from their unlawful acts, and a constructive trust over such profits; and (c) such additional relief that this Court deems fair and equitable.

## COUNT II
## CONSPIRACY TO VIOLATE THE CFAA
### *Against LAIL, DSargeant, Hall, and Preston*

53.     Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 42, and 44 through 48, above as if herein fully set forth.

54.     In or about August 2016, the Defendants conspired to commit an offense under the CFAA, 18 U.S.C. § 1030(a)(2)(C), and to thereby unlawfully obtain the HS3 Material, all in violation of the CFAA, 18 U.S.C. § 1030(b).

55.     The overt acts committed in furtherance of the Defendants' unlawful conspiracy include, but are not limited to: On or about October 6, 2016, and again on or about October 28, 2016, Defendants DSargeant and LAIL intentionally accessed the Sargeant Server and the HS3 Email Account and thereby obtained information, namely the HS3 Material, from a protected computer without authorization and/or by exceeding any authorized access, in violation of 18 U.S.C. § 1030(a)(2)(C).

56.     On or about October 28, 2016, DSargeant and LAIL provided the HS3 Material to Hall in exchange for the remainder of the Ruperti Material.

57.     On or about October 28, 2016, Preston received the Ruperti Materials obtained from Hall in exchange for the HS3 Material and utilized the Ruperti Materials to advance LAIL's position in the London Litigation.

11

58.     On or about March 1, 2017, Preston utilized and incorporated the Ruperti Materials received from Hall in exchange for the HS3 Materials into a filing in the London Litigation to advance LAIL's interest in that litigation.

59.     The Defendants also engaged in numerous personal and electronic communications in furtherance of their conspiracy, including without limitation on May 5, May 11, and July 26, 2017.

60.     By engaging in the conduct herein set forth, the Defendants violated the CFAA, 18 U.S.C. § 1030(b).

61.     As a result of the Defendants' violation of the CFAA, 18 U.S.C. § 1030(b), HS3 suffered "damage" and/or "loss" under the CFAA, in an amount exceeding $5,000.00, and HS3 is entitled to an award of compensatory damages, injunctive and other equitable relief under 18 U.S.C. § 1030(g).  Such an award includes the cost of reasonably investigating and otherwise responding to the CFAA violations (including the hiring of a forensic computer analyst to conduct investigation and analysis).

62.     WHEREFORE, HS3 asks the Court to enter a judgment against the Defendants awarding him (a) HS3's actual damages, including without limitation, compensatory, incidental, and consequential damages; (b) injunctive and other equitable relief, including without limitation, an injunction prohibiting DSargeant, Preston, Hall, and LAIL from disclosing the HS3 Material and requiring that the return of all such information in their possession to HS3, disgorgement of DSargeant and LAIL's profits and unjust enrichment resulting from their unlawful acts, and a constructive trust over such profits; and (c) such additional relief that this Court deems fair and equitable.

<u>**COUNT III**</u>
**VIOLATION OF THE STORED COMMUNICATIONS ACT**
***Against LAIL and DSargeant***

63.     Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 42 above as if herein fully set forth.

64.     At all times herein material, the Sargeant Server was a "facility" through which an electronic communication service was provided, as that term is used under the SCA.

65.     At all times herein material, HS3 maintained and operated the HS3 Email Account on the Sargeant Server.  The Sargeant Server holds all emails until downloaded to a local computer for viewing and once downloaded, maintains backup copies of all emails opened on a local computer.

66.     At all times herein material, the HS3 Material was in "electronic storage" in the above-mentioned facility (the Sargeant Server), as defined under the SCA, 18 U.S.C. § 2510(17).

67.     On or about October 6, 2016, and again on or about October 28, 2016, Defendants DSargeant and LAIL intentionally accessed without authorization or in excess of any authorization the Sargeant Server and thereby obtained from a facility electronic communications, namely the HS3 Material, while same was in electronic storage in such system, in violation of the SCA, 18 U.S.C. § 2701.

68.     HS3 has been damaged as a result of DSargeant and LAIL's violations of the SCA, 18 U.S.C. § 2701, and is entitled, under 18 U.S.C. § 2707(b), to an award of actual damages, injunctive relief, and to an award of the profits made by DSargeant and LAIL as a result of the violations of the SCA.

69.     WHEREFORE, HS3 asks the Court to enter a judgment against DSargeant and LAIL awarding him (a) HS3's actual damages; (b) DSargeant and LAIL's profits from

misappropriating and disclosing the HS3 Material in violation of the SCA pursuant to 18 U.S.C. § 2707(b)(2); (c) injunctive and other equitable or declaratory relief as may be appropriate, pursuant to 18 U.S.C. § 2707(b)(1), including without limitation, an order prohibiting DSargeant and LAIL from disclosing the HS3 Material and requiring the return all such information in its possession to HS3; (d) punitive damages, pursuant to 18 U.S.C. § 2707(c), for wilfully and intentionally violating the SCA; (e) HS3's reasonable attorney's fees and other litigation costs, pursuant to 18 U.S.C. § 2707(b)(3); and (f) such additional relief that this Court deems fair and equitable.

## COUNT IV
## VIOLATION OF FLORIDA COMPUTER ABUSE AND DATA RECOVERY ACT
### *Against LAIL and DSargeant*

70.     Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 42 above as if herein fully set forth.

71.     At all times herein material, the Sargeant Server constituted a "protected computer" as defined under CADRA, Florida Statutes Section 668.802(6), because it was used in connection with the operation of the Sargeant Family Businesses and stored information, programs or code in connection with the operation of the Sargeant Family Businesses that could be accessed only by employing a technological access barrier (a password).  At all times herein material, the HS3 Email Account was protected with a password authentication system, which constitutes a "technological access barrier" as defined under CADRA, Florida Statutes Section 668.802(7).

72.     At all times herein material, the HS3 Material was stored on the Sargeant Server and constituted information stored in a protected computer.

73.     HS3 is the owner of the HS3 Material, information stored in a protected computer, and used certain HS3 Material in connection with the operation of a business.

74.      On or about October 6, 2016, and again on or about October 28, 2016, Defendants LAIL and DSargeant knowingly, with intent to cause harm or loss, and without authorization or in excess of any authorization, accessed the Sargeant Server and the HS3 Email Account, and one or more of the computers used in the Sargeant Family Businesses, and thereby obtained information, namely the HS3 Material, from a protected computer without authorization and as a result caused harm or loss, all in violation of CADRA, Florida Statutes Section 668.803(1).

75.     Defendants LAIL and DSargeant committed the acts set forth herein knowingly and with intent to cause "loss" as defined under CADRA, Florida Statutes Section 668.802(5), including intending to profit as a result of their CADRA violations.

76.     Defendants LAIL and DSargeant in fact gained in excess of $30 million in profits as a direct result of their CADRA violations through the recovery in the London Litigation.

77.     HS3 has been damaged by LAIL and DSargeant's violations of CADRA, and is entitled under CADRA, Florida Statutes Section 668.804(1), to recover such damages, to recover LAIL and DSargeant's profits gained as a result of their CADRA violations, to injunctive relief to prevent any future violations of CADRA, and to recovery of the HS3 Material.

78.     WHEREFORE, HS3 asks the Court to enter a judgment against LAIL and DSargeant awarding him (a) HS3's actual damages pursuant to Fla. Stat. § 668.04(1)(a); (b) LAIL and DSargeant's profits from violating CADRA that are not included in HS3's actual damages, pursuant to Fla. Stat. § 668.04(1)(b); (c) injunctive and other equitable relief from the Court to prevent a future violation of § 668.803, including without limitation, an order

prohibiting LAIL and DSargeant from further disclosing the HS3 Material; (d) an order requiring LAIL and DSargeant to return the HS3 Material and all copies thereof, pursuant to Fla. Stat. § 668.04(1)(d); (e) HS3's reasonable attorney's fees and other litigation costs, pursuant to Fla. Stat. § 668.04(2), as the prevailing party; and (e) such additional relief that this Court deems fair and equitable.

**COUNT V**
**BREACH OF CONTRACT**
*Against LAIL and DSargeant*

79.     Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 42, as if herein fully set forth.

80.     On or about April 18, 2015, HS3, LAIL, and DSargeant entered into a written contract for the purposes of resolving certain litigation between them and related Sargeant Family and other business entities (the "Sargeant Settlement").  A true and correct copy of the Sargeant Settlement is attached hereto as **Exhibit B** and incorporated herein by reference.

81.     The Sargeant Settlement included, *inter alia*, a provision prohibiting the parties from "mak[ing] any statement, releas[ing] any document or otherwise tak[ing] any action, directly or indirectly, publicly or privately, which may or will tend to disparage the other in any manner whatsoever." (the "Non-disparagement Provision").

82.     At all times herein material, LAIL and DSargeant therefore were contractually bound under the Sargeant Settlement to not "make any statement, release any document or otherwise take any action, directly or indirectly, publicly or privately, which may or will tend to disparage [Plaintiff] in any manner whatsoever."  Exhibit B at 19.

83.     On or about October 6, 2016, and again on or about October 28, 2016, LAIL and DSargeant unlawfully accessed the Sargeant Server and the HS3 Email Account, and unlawfully obtained the HS3 Material from that account.

84.     On or about October 28, 2016, LAIL and DSargeant provided the HS3 Material to Hall in direct violation of the Sargeant Settlement Non-disparagement Provision.

85.     LAIL and DSargeant's actions in unlawfully obtaining, and then disclosing to HS3's known adversary and others, the HS3 Material, which included extremely sensitive videos and photographs of intimate activity and private consensual relations involving HS3, were actions that "may or will tend to disparage [HS3] in any manner whatsoever" in violation of the Sargeant Settlement Non-disparagement Provision.

86.     LAIL and DSargeant's actions as set forth herein therefore constitute a direct violation of the Non-disparagement Provision.

87.     HS3 has suffered damage as a result of Defendant LAIL and DSargeant's breach of the Sargeant Settlement Non-disparagement Provision, including, *inter alia*, reputational harm, costs of recovery of the HS3 Material, and increased litigation costs and exposure.

88.     WHEREFORE, HS3 asks the Court to enter a judgment against LAIL and DSargeant awarding him (a) HS3's actual damages, including without limitation, compensatory, incidental, and consequential damages; (b) HS3's reasonable attorney's fees and other litigation costs, as the prevailing party under paragraph 9 of the Sargeant Settlement; and (c) such additional relief that this Court deems fair and equitable.

17

## COUNT VI
### INVASION OF PRIVACY (INTRUSION)
### *Against LAIL and DSargeant*

89.     Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 42 above as if herein fully set forth.

90.     The HS3 Email Account contained the HS3 Material, which included extremely sensitive personal information regarding HS3.

91.     HS3 had a reasonable expectation of privacy as to the HS3 Email Account and as to the HS3 Material stored/contained in the HS3 Email Account on the Sargeant Server.  The HS3 Email Account was password protected.  Access to the Sargeant Server was also password protected.  There were no explicit or implicit policies or procedures authorizing the Defendants, or anyone else, to access the HS3 Email Account, the HS3 Material, or the Sargeant Server.

92.     HS3 never explicitly or implicitly authorized the Defendants, the Sargeant Family, the Sargeant Family Businesses, or any of their employees, shareholders, representatives or agents to access the HS3 Email Account or the HS3 Material on the Sargeant Server.

93.     On or about October 6, 2016, and again on or about October 28, 2016, LAIL and DSargeant electronically intruded into the HS3 Email Account on the Sargeant Server and obtained the HS3 Material from the HS3 Email Account.

94.     LAIL and DSargeant's actions in obtaining the HS3 Material, which contained, *inter alia*, extremely sensitive videos and photographs of intimate activity and private consensual relations involving HS3, and then disclosing the HS3 Material to Hall and others for pecuniary gain, is conduct unacceptable in a civilized community and clearly offensive to any reasonable person.

95.     LAIL and DSargeant's actions have caused HS3 significant damage and harm, including, but not limited to, lost profits, economic damages, reputational harm, and LAIL's profits from recovery in the London Litigation.

96.     WHEREFORE, HS3 asks the Court to enter a judgment against LAIL and DSargeant awarding him (a) HS3's actual damages, including without limitation, his lost profits and compensatory, incidental, and consequential damages; (b) punitive damages because LAIL and DSargeant wilfully and intentionally invaded HS3's privacy to access, review and disclose the HS3 Material; and (c) such additional relief that this Court deems fair and equitable.

### COUNT VII
### INVASION OF PRIVACY (PUBLIC DISCLOSURE OF PRIVATE FACTS)
### *Against LAIL and DSargeant*

97.     Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 42 above as if herein fully set forth.

98.     On or about October 6, 2016, and again on or about October 28, 2016, LAIL and DSargeant electronically intruded into the HS3 Email Account on the Sargeant Server and obtained the HS3 Material from the HS3 Email Account.

99.     The HS3 Material contained, *inter alia*, private and extremely sensitive videos and photographs of intimate activity and private consensual relations involving HS3.

100.    On or about October 28, 2016, LAIL and DSargeant then publicized the HS3 Material to Hall and an unknown number of other persons through electronic and/or other means.

101.    Upon information and belief, Hall, on or about October 28, 2016, and thereafter, further publicized the HS3 Material to others within Burford, and to an unknown number of other persons, through electronic and/or other means.

102.     The HS3 Material was and is highly personal, private, and sensitive in nature and not of legitimate public interest.

103.     The publication of the HS3 Material as set forth herein would be considered offensive and objectionable and would cause mental distress and injury to a reasonable person having ordinary dealings and sensibilities.

104.     LAIL and DSargeant's unauthorized actions have caused HS3 significant damage and harm, including, but not limited to, lost profits, economic damages, reputational harm, and LAIL's profits from recovery in the London Litigation.

105.     WHEREFORE, HS3 asks the Court to enter a judgment against LAIL and DSargeant awarding him (a) HS3's actual damages, including without limitation, his lost profits and compensatory, incidental, and consequential damages; (b) punitive damages because LAIL and DSargeant wilfully and intentionally invaded HS3's privacy to access, review, and publicize the HS3 Material; and (c) such additional relief that this Court deems fair and equitable.

### COUNT VIII
### CIVIL CONSPIRACY
#### *Against LAIL, DSargeant, Hall and Preston*

106.     Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 42 above as if set forth herein in full.

107.     In or about August, 2016, the Defendants conspired together and agreed to invade HS3's privacy and violate CADRA by unlawfully obtaining, using and publicizing the HS3 Material.

108.     The following overt acts were committed in furtherance of the Defendants' unlawful conspiracy:  On or about October 6, 2016, and again on or about October 28, 2016, Defendants DSargeant and LAIL intentionally accessed the Sargeant Server and the HS3 Email

20

Account in Florida and thereby obtained information, namely the HS3 Material, from a protected computer without authorization and/or by exceeding any authorized access, in violation of HS3's right to privacy and in violation of CADRA.

109.    On or about October 28, 2016, DSargeant and LAIL provided the HS3 Material to Hall in exchange for the remainder of the Ruperti Material.

110.    On or about October 28, 2016, LAIL and DSargeant then publicized the HS3 Material to Hall and an unknown number of other persons through electronic and/or other means.

111.    Upon information and belief, Hall on or about October 28, 2016, and thereafter further publicized the HS3 Material to others within Burford, and to an unknown number of other persons, through electronic and/or other means.

112.    On or about October 28, 2016, Preston received the Ruperti Materials and utilized such materials to advance LAIL's position in the London Litigation.

113.    On or about March 1, 2017, Preston utilized and incorporated the Ruperti Materials received from Hall in exchange for the HS3 Materials into a filing in the London Litigation to advance LAIL's interest in that litigation.

114.    The Defendants also engaged in numerous personal and electronic communications in furtherance of their conspiracy, including without limitation on May 5, May 11, and July 26, 2017.

115.    As set forth herein, certain overt acts in furtherance of the conspiracy took place within this judicial district in Florida.

116.    The Defendants intended for their tortious and unlawful acts to result in harm inside Florida, where HS3 is a citizen and resident, and where the Sargeant Server was located and utilized in connection with the operation of a business in Florida.

117.    HS3 has suffered damage as a result of the Defendants' unlawful and conspiratorial conduct including, but not limited to, lost profits, economic damages, and reputational harm.

118.    WHEREFORE, HS3 asks the Court to enter a judgment against LAIL and DSargeant awarding him (a) HS3's actual damages, including without limitation, his lost profits and compensatory, incidental, and consequential damages; (b) punitive damages because the Defendants wilfully and intentionally conspired to invade HS3's privacy to further their own pecuniary interest; and (c) such additional relief that this Court deems fair and equitable.

## PRAYER FOR RELIEF

**WHEREFORE**, HS3 respectfully requests judgment against the Defendants as follows:

(a)    That the Court enter judgment for HS3 on all claims for relief asserted in the Second Amended Complaint;

(b)    That the Court award HS3's actual damages, including lost profits and compensatory, incidental, and consequential damages in an amount to be determined at trial with interest at the legal rate;

(c)    That the Court award HS3 damages in the form of LAIL's profits from misappropriating the HS3 Material, beyond his actual damages, pursuant to Florida Statutes, Sections 668.804(1)(b) and 18 U.S.C. § 2707(c), in an amount to be determined at trial with interest at the legal rate;

(d)    That the Court issue an injunction, or other equitable relief, (1) prohibiting Defendants and any of their agents from disclosing or distributing HS3's personal information to any other person; (2) directing the Defendants and any of their agents to return all HS3 Material back to HS3, deleting all copies thereof on their respective computer systems, and certifying completion to this Court and HS3; and (3) directing the Defendants to disgorge all profits obtained as a result of possession or exchange of the HS3 Material to HS3;

(e)    That the Court award HS3 punitive damages pursuant to 18 U.S.C. § 2707(c) and for Defendants' willful invasion of privacy and unlawful conspiracy;

(f)    That the Court award HS3 his reasonable attorney's fees;

(g)    That the Court assess all costs against Defendants;

(h)    That the Court award HS3 pre- and post-judgment interest as applicable; and

(i)    Any other relief this Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial on all issues so triable.

Dated:  February 20, 2018

Respectfully Submitted,

*/s/ Christopher M. Kise*
Christopher M. Kise
Florida Bar No. 855545
ckise@foley.com
Melissa B. Coffey
Florida Bar No. 84090
mcoffey@foley.com
Joshua M. Hawkes
Florida Bar No. 112539
jhawkes@foley.com
**FOLEY & LARDNER LLP**
106 East College Avenue, Suite 900
Tallahassee, FL 32301-7732
Telephone: (850) 222-6100
Facsimile: (850) 561-6475

Gregory W. Coleman
Florida Bar No. 846831
gcoleman@lawclc.com
**CRITTON, LUTTIER & COLEMAN, LLP**
303 Banyan Blvd., Suite 400
West Palm Beach, FL 33401
Telephone: (561) 842-2820
Facsimile: (561) 844-6929

Ramon A. Abadin
Florida Bar No. 707988
rabadin@abadinlaw.com
**RAMON A. ABADIN, P.A.**
2333 Ponce de Leon Blvd, Suite 314
Coral Gables, FL 33134
Telephone:  (305) 768-9839
Facsimile: (786) 217-0133

*Attorneys for Harry Sargeant, III*

24

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by

electronic mail on February 20, 2018 on all parties of record reflected in the Service List below.

## SERVICE LIST

Charles H. Lichtman
Jeffrey S. Wertman
BERGER SINGERMAN LLP
350 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, Florida 33301
Telephone: (954) 525-9900
Fax: (954) 523-2872
clichtman@bergersingerman.com
jwertman@bergersingerman.com

*Attorneys for Intervenor-Defendant Latin
American Investments, Ltd.*

By:   */s/ Joshua M.  Hawkes*
      Joshua M. Hawkes

# Exhibit E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-81070-CIV-BLOOM/REINHART

HARRY SARGEANT, III,

        Plaintiff,

vs.


MAROIL TRADING INC.,
SEA PIONEER SHIPPING CORPORATION,
WILMER RUPERTI PEDROMO,
DANIEL SARGEANT,
DANIEL HALL, and
ANDREW PRESTON

        Defendants.

and

LATIN AMERICAN INVESTMENTS, LTD.,

        Intervenor.
_____/

**REPORT AND RECOMMENDATION ON DEFENDANTS'
MOTIONS TO DISMISS (DE 129, 131, 142)**


      The Second Amended Complaint ("SAC") (DE 93) alleges eight causes of action against

Defendants Daniel Sargeant, Latin American Investments, Ltd. ("LAIL"), Daniel Hall, and

Andrew Preston, as follows:

| Count | Claim | Defendant(s) |
|-------|-------|--------------|
| I | Computer Fraud and Abuse Act (CFAA), 18 U.S.C. §§ 1030(a)(2)(C), (g) | LAIL, Daniel Sargeant |
| II | Conspiracy to Violate the CFAA, 18 U.S.C. §§ 1030(b), (g) | All Defendants |
| III | Stored Communications Act, 18 U.S.C. §§ 2701, 2707 | LAIL, Daniel Sargeant |
| IV | Florida Computer Abuse and Data Recovery Act (CADRA), Florida Statutes 668.801 | LAIL, Daniel Sargeant |
| V | Breach of Contract | LAIL, Daniel Sargeant |
| VI | Invasion of Privacy (Intrusion) | LAIL, Daniel Sargeant |
| VII | Invasion of Privacy (Public Disclosure of Private Facts) | LAIL, Daniel Sargeant |
| VIII | Civil Conspiracy | All Defendants |

Before the undersigned for decision, based on an Order of Referral from the district court (DE 146), are motions by all Defendants to Dismiss the SAC. *See* DE 129 (Defendant Preston); DE 131 (Defendant Hall); DE 142 (Defendants LAIL and Daniel Sargeant). The Court has reviewed the respective motions, the Plaintiff's Response to each motion, and the Movants' replies. The Court heard argument on May 21, 2018, and issued an oral ruling from the bench. This Report and Recommendation formalizes and expands on the Court's oral pronouncement on May 21, 2018. For the reasons stated herein, the undersigned **RECOMMENDS** that:

1.      Defendant Andrew Preston's Motion to Dismiss Counts II and VIII (DE 129) be **GRANTED WITHOUT PREJUDICE** for failure to state a claim upon which relief can be granted and, alternatively, for lack of personal jurisdiction.

2.      Defendant Daniel Hall's Motion to Dismiss Counts II and VIII (DE 131) be **GRANTED WITHOUT PREJUDICE** for failure to state a claim upon which relief can be granted.

2

3.      Defendants LAIL and Daniel Sargeant's Motion to Dismiss (DE 142) be **GRANTED IN PART WITHOUT PREJUDICE** (as to Counts I, II, III, IV, VII and VIII) for failure to state a claim upon which relief can be granted and **DENIED IN PART** (as to Counts V and VI).

## I.      LEGAL STANDARDS

### A.  Motion to Dismiss for Failure to State a Claim - Rule 12(b)(6)

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy the Rule 8 pleading requirements, a complaint must provide the defendant fair notice of plaintiff's claim and the grounds upon which it rests. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly,* 550 U.S. at 570); *see also Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1288-90 (11th Cir. 2010).

In *Iqbal,* the Supreme Court approved a two-part process for evaluating a motion to dismiss under Rule 12(b)(6):

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the

assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal,* 556 U.S. 662, 679 (2009).

### B.  Motion to Dismiss for Lack of Personal Jurisdiction - Rule 12(b)(2)

Where, as here, subject matter jurisdiction is based on a federal question arising under a statute that is silent regarding service of process, the Federal Rules of Civil Procedure require the Court to look to the state long-arm statute in order to determine the existence of personal jurisdiction.  *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 626–27 (11th Cir. 1996).  *See* Fed. R. Civ. P. 4(k)(1) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant: (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.").  Even assuming personal jurisdiction over a non-resident defendant is proper under the state long-arm statute, the Court must make an independent assessment whether exercising this jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  *Keim v. ADF MidAtlantic, LLC*, 199 F. Supp. 3d 1362, 1367 (S.D. Fla. 2016) (J. Marra).  Both prongs must be satisfied for the court to have personal jurisdiction over the defendant.  *Id*.

The plaintiff bears the initial burden of "alleg[ing] sufficient facts to make out a prima facie case of jurisdiction" over the nonresident defendant. *Posner v. Essex Ins. Co*., 178 F.3d 1209, 1214 (11th Cir. 1999).  If the plaintiff sufficiently alleges a prima facie case of jurisdiction, the defendant must raise "through affidavits, documents or testimony, a meritorious challenge to personal jurisdiction."  *Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009) (quoting *Sculptchair,* 94 F.3d at 627).  "If the defendant does so, 'the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents.'"  *Id.* (quoting *Sculptchair,*

4

94 F.3d at 627).  The court must accept the facts alleged in the complaint as true to the extent

they are uncontroverted by the defendant's affidavits.  *Madara v. Hall*, 916 F.2d 1510, 1514

(11th Cir. 1990).  Where the plaintiff's evidence and defendant's evidence conflict, all

reasonable inferences must be construed in favor of the plaintiff.  *Stubbs v. Wyndham Nassau*

*Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006).

## II.  ANALYSIS OF THE SECOND AMENDED COMPLAINT

As instructed by *Twombly* and *Iqbal*, the Court will first separate the SAC's factual

assertions from its conclusory statements.  For purposes of this Motion, the Court accepts all

well-pled factual allegations in the Second Amended Complaint as true and evaluates all

plausible inferences derived from those facts in favor of the Plaintiff. *See Chaparro v. Carnival*

*Corp.,* 693 F.3d 1333, 1337 (11th Cir. 2012); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp.,*

*LLC,* 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is

construed in the light most favorable to the non-moving party, and all facts alleged by the non-

moving party are accepted as true.").  All paragraph citations (noted as "¶" or "¶¶") are

references to the numbered paragraphs in the SAC.

### A.  Facts

The SAC alleges that the Defendants accessed Plaintiff's former corporate email account

without proper authorization, downloaded materials that were then traded for other materials of

value to the Defendants, and thereafter used the newly-obtained materials to negotiate a

$30,000,000 litigation settlement with a third party.  As relevant to the issues before the Court,

the SAC makes the following factual allegations that are entitled to the assumption of truth:

LAIL is a company owned by members of the Sargeant family, including Defendant

Daniel Sargeant.  ¶ 3.  Plaintiff formerly was a 25% owner of LAIL.  *Id.*  At all relevant times,

Daniel Sargeant "owned, controlled, and/or managed numerous Sargeant Family owned businesses, including LAIL." ¶ 4. Defendant Preston is a UK citizen and solicitor who has served as legal counsel to LAIL and other Sargeant Family businesses. ¶ 6.

From in or about 1990 through 2012, Plaintiff, Daniel Sargeant, and other Sargeant family members "owned, operated, and were employed by" a number Sargeant-family-owned business entities engaged in the sale, transport, and distribution of asphalt and related petroleum products and materials, and operating in interstate and foreign commerce ("the Sargeant Family Businesses"). ¶¶ 17, 18. LAIL was one of these business entities. ¶ 17.

The Sargeant Family Businesses "maintained" a computer server ("the Sargeant Server") at an office in Boca Raton, Florida. ¶ 19. Plaintiff "maintained and utilized his own email account on the Sargeant Server, denominated as hsargeant@sargeant.net" (the "HS3 Email Account"). ¶ 21. "The HS3 Email Account was password protected and [Plaintiff] did not provide the password associated with the HS3 Email Account to any of the Defendants or their representatives or agents." *Id.* "Access to the Sargeant Server was also password protected." ¶ 21.[1] Even though Plaintiff ceased to be affiliated with the Sargeant Family Businesses in 2012, *see* ¶ 17, his email account continued to exist on the Sargeant Server. Contained within the email account were 478 items comprising business information, business and personal communications, documents, Microsoft email files, and personal sensitive photographs and

---

[1] Notably, as discussed below, the SAC is silent about who had the password for the Sargeant Server.

videos ("HS3 Materials").  ¶ 22.  The HS3 Materials were all either emails or email attachments.

SAC Exhibit A.[2]  Some were unrelated to the Sargeant Family Businesses.  ¶ 23-24.

Plaintiff "never explicitly or implicitly authorized" any of the Defendants to access the email account or the Sargeant Server.  ¶ 25.  The Sargeant Family Businesses had no official or unofficial policies or procedures authorizing the Defendants, or anyone else, to access the email account or to access or obtain the HS3 Materials.  ¶ 26.

In April 2015, Plaintiff, LAIL, and Daniel Sargeant entered into a written contract for the purposes of resolving certain litigation among them.  ¶ 80.  The settlement agreement contained a non-disparagement clause that prohibited the parties from making statements, releasing documents, or otherwise taking action that would disparage the other.  ¶ 81 and Exhibit B.  The settlement agreement also terminated Plaintiff's ownership interest in LAIL and the other Sargeant Family Businesses.  Ex. B at §7.1

In or about August 2016, Defendant Hall advised the other Defendants that he had certain information ("the Ruperti Material") that would be of great value to the other Defendants in their efforts to collect money from a third party.  ¶ 29.  Hall had obtained the Ruperti Material from a separate litigation between one of his other clients (Sovcomflot) and Ruperti.  The Ruperti Material was subject to a non-disclosure agreement between Sovcomflot and Ruperti.  ¶ 30.

Simultaneously, Hall was working as an investigator for a different client who was trying to collect a multi-million dollar judgment from Plaintiff.  ¶ 31.  As part of those efforts, Hall was seeking information that could be used to "leverage and/or extort [Plaintiff] into a payment or settlement."  ¶ 31.

---

[2] In ruling on a 12(b)(6) motion, the Court may consider attachments that are incorporated into the operative complaint by reference.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).

On or about October 6, 2016, Hall provided a portion of the Ruperti Material to Daniel Sargeant, LAIL, and Preston.  ¶ 35.  On or about October 6, 2016, and again on or about October 28, 2016, Daniel Sargent and LAIL accessed the Sargeant Server and the HS3 Email Account, and obtained the HS3 Material.  ¶ 36.[3]  On or about October 28, 2016, Daniel Sargent and LAIL traded the HS3 Material to Hall for the remainder of the Ruperti Material.  ¶ 37.

On or about March 1, 2017, Daniel Sargeant, LAIL, and Preston filed a lawsuit in the UK on behalf of LAIL against Maroil and SPSC ("the London Litigation").  ¶ 38.  At or about the same time, Preston "utilized and incorporated the Ruperti Materials . . . into a filing in the London Litigation."  ¶ 113.  In May 2017, Hall met with the other Defendants in London.  Hall asked to share in the proceeds of the London Litigation, in part because he and his firm could be exposed to liability for violating the NDA by providing the Ruperti Materials in exchange for the HS3 Materials.  ¶ 39.  Later in May 2017, "Preston, on behalf of himself, [Daniel Sargeant] and LAIL . . . indicated a willingness to consider providing Hall a portion of any recovery" in the London Litigation.  ¶ 40.  "On or about July 26, 2017, Preston, on behalf of himself, [Daniel Sargeant] and LAIL, again communicated with Hall to advise that if a substantial recovery were made in the London Litigation then [Daniel Sargeant] would be happy to sit down with Hall to discuss some form of a success fee."  ¶ 41.  "Preston expressly averred under oath that the Ruperti Material provided the evidence essential to the successful assertion of the claims advanced in the London Litigation."  ¶ 42.  LAIL recovered in excess of $30,000,000 in the London Litigation.  *Id.*

---

[3] Paragraph 36 of the SAC alleges that Daniel Sargeant and LAIL "unlawfully" accessed the server and email account.  As discussed more fully below, that term is a bare legal conclusion that is not entitled to the assumption of truth.  The balance of Paragraph 36 is a proper assertion of fact.

**B.** **Factually Unsupported Conclusions**

Interspersed with these factual averments, the SAC includes conclusory statements that advocate its conspiracy theory, but are not supported by specific facts.  For example, Paragraph 27 of the SAC states:

> In or about August 2016, the Defendants devised a scheme whereby they agreed together to, unlawfully and without authorization, access the HS3 Email Account, and to, unlawfully and without authorization and/or in excess of any authorization, access the Sargeant Server, obtain the HS3 Material, and exchange the HS3 Material for certain other illicit and confidential materials to advance their own individual and mutual interests.  The profit minded Defendants intentionally agreed to exploit this unauthorized and unlawful access to such materials to reap financial gain.

Paragraph 33 of the SAC states:

> In or about August 2016, the Defendants agreed together that [Daniel Sargeant] and LAIL would unlawfully access the HS3 Email Account, obtain the HS3 Material, and provide the HS3 Material to Hall.  In exchange, the Defendants agreed together that Hall would access the Ruperti Material, disregard the settlement and the NDA between Sovcomflot and Ruperti applicable to the Ruperti Material, and provide the Ruperti Material to [Daniel Sargeant], LAIL, and Preston, for Preston to use in litigation between LAIL and the Ruperti Parties.

Paragraph 34 states:

9

[Daniel Sargeant], LAIL, and Preston knew they had no authorization to access the HS3 Email Account and lacked authorization or exceeded any authorization they had to access the Sargeant Server, and no authorization to obtain the HS3 Material and/or provide same to Hall.  [Daniel Sargeant], LAIL, and Preston also knew, or later became aware, that Hall would violate the Sovcomflot settlement and NDA in order to access and provide to them the Ruperti Material in exchange for the HS3 Material.

These portions of the SAC are not entitled to the assumption of truth.  Conclusory allegations that a party "knew of, condoned, and willfully and maliciously agreed to" take certain actions are "nothing more than a 'formulaic recitation of the elements'" of one or more of the causes of action alleged in the SAC.  *See Iqbal,* 556 U.S. at 680-81.   Similarly, a summary assertion that parties entered into an unlawful conspiratorial agreement is a "'legal conclusion' and, as such, [is] not entitled to the assumption of truth."  *Id.* at 680 (citing and quoting *Twombly).*   Other portions of the SAC also are mere legal conclusions and speculation about the Defendants' state of mind, without sufficient factual support.  *See* ¶ 28 ("Defendants intended for their scheme to result in harm inside Florida"); ¶ 32 ("Hall also knew [Daniel Sargeant], LAIL, and Preston could unlawfully access the HS3 Material"); ¶ 111 ("Upon information and belief, Hall on or about October 28, 2016, and thereafter further publicized the HS3 Material to others within Burford, and to an unknown number of other persons, through electronic and/or other means.").

### III.  MOTIONS TO DISMISS UNDER RULE 12(b)(6)

#### A.  Counts I and II (CFAA)

Count I requires proof that a Defendant "intentionally accesse[d] a computer without authorization or exceed[ed] authorized access, and thereby obtain[ed] . . . information from a

protected computer," 18 U.S.C. §§ 1030(a)(2)(C), (g), and that the Plaintiff thereby suffered damage or loss of at least $5,000.00. *Hamilton Grp. Funding, Inc. v. Basel*, No. 16-61145-CIV, 2018 WL 1788161, at *5 (S.D. Fla. Apr. 12, 2018) (J. Zloch) (citing 18 U.S.C. § 1030(g)). Count II requires proof that the Defendants agreed to commit a violation of Section 1030(a)(2)(C) with each defendant knowing of the illegality of the plan and intending to further it, and that an overt act in furtherance of the conspiracy occurred. *See* Eleventh Circuit Pattern Jury Instructions, (Criminal Cases) (2016), Offense Instruction 13.1, "General Conspiracy Charge," 18 U.S.C. § 371.

All Defendants assert that the SAC fails to properly allege that the HS3 Email Account was accessed without proper authorization;[4] they also all allege that the SAC fails to plead a statutorily cognizable loss. Hall and Preston allege that, assuming *arguendo* proper authorization was lacking, there are insufficient factual allegations to establish a plausible claim that they knew of the lack of proper authorization. LAIL and Daniel Sargeant assert that Plaintiff, as a former employee, cannot bring a claim under the CFAA because he abandoned any rights he formerly had in the HS3 Materials. Solely as to Count II, all Defendants assert there are insufficient factual allegations to establish a plausible claim that a conspiratorial agreement existed.

Plaintiff responds that the factual averments, including the allegation of a statutorily-cognizable loss, are sufficient to state a claim against all Defendants on all counts. Plaintiff further asserts that *United States v. Rodriguez*, 628 F.3d 1258 (11th Cir. 2010) and *United States*

---

[4] The Court recognizes that the CFAA prohibits two mutually exclusive actions: (1) accessing a protected computer without authorization or (2) accessing a protected computer with authorization but exceeding the scope of the authorized access. The SAC alleges, in the alternative, that the Defendants did not have authorization and/or exceeded any authorized access. For ease of discussion, the Court will use the phrase "without proper authorization" to capture both concepts.

*v. John*, 597 F.3d 263 (5th Cir. 2010) establish a legal rule that a CFAA defendant cannot be authorized to obtain information from a protected computer if that information is to be used for an illegal purpose.  Extrapolating from *Rodriguez,* Plaintiff argues that this Court must apply an expansive definition of the CFAA and that the cases from outside the Eleventh Circuit cited by Defendants are inconsistent with this Circuit's broad reading of the statute.

### 1. Without Proper Authorization

One element of the CFAA violations alleged in Counts I and II is that the Defendant accessed the protected computer without proper authorization.  *See* 18 U.S.C. § 1030(a)(2)(C); *accord P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC.,* 428 F.3d 504, 508 (3d Cir. 2005) (one element of related CFAA provision is that defendant accessed protected computer "without authorization or by exceeding such authorization as was granted.").  Defendants say that, by definition, the owner of a computer controls access to that computer and can authorize it to any extent the owner deems appropriate.  In short, they argue that the owner of a computer cannot hack himself.

As a preliminary matter, the Court notes that "ownership" *vel non* of the server is not dispositive.  The CFAA speaks of "authorization" to access a protected computer and/or exceeding "authorized" access to that computer.  Numerous situations exist where a non-owner has legal power to grant, deny, or limit access to a location or an item.  *See, e.g., Byrd v. United States*, No. 16-1371, 2018 WL 2186175, at *3 (U.S. May 14, 2018) (person in "lawful possession and control" of a rental car had authority to exclude others); *United States v. Willis*, 759 F.2d 1486, 1498 (11th Cir. 1985) (hotel guest could consent to search of rented room).  As such, the baseline inquiry under the CFAA is not who owns legal title to the protected computer; it is who has the legal power to grant, deny, or limit access to that computer.  Of course, that

person can voluntarily agree to limit their rights over the computer or over the data on the computer. *See* Microsoft Services Agreement (May 1, 2018), ¶ 2, https://www.microsoft.com/en-us/servicesagreement ("2. Your Content.  Many of our Services allow you to store or share Your Content or receive material from others. We don't claim ownership of Your Content. Your Content remains Your Content and you are responsible for it."); Google Terms of Service (October 25, 2017) https://policies.google.com/terms ("Some of our Services allow you to upload, submit, store, send or receive content. You retain ownership of any intellectual property rights that you hold in that content. In short, what belongs to you stays yours."); *accord, e.g., Stoner v. State of California,* 376 U.S. 483, 489 (1964) (hotel management cannot authorize search of guest's room).  Therefore, under the CFAA, the person who can "authorize" access to the protected computer is the person who retains dominion and control over that computer and/or the relevant information contained on that computer.

a. The SAC fails to allege that Defendants acted without proper authorization

Applying those principles to the instant case, Plaintiff must plead sufficient facts to establish a plausible claim that Defendants accessed the Sargeant Server and obtained the HS3 Material without obtaining authorization from someone who retained the legal right to grant that authorization.  Put differently, Plaintiff must plead facts to establish a plausible claim that no person who could have granted proper authorization did, in fact, grant proper authorization.  The SAC fails to do so.

The SAC does not identify how the Defendants allegedly accessed the Sargeant Server or the HS3 Material, including which person(s) facilitated access and the means by which access was accomplished.  Most importantly, the SAC does not allege who had dominion and control over the Sargeant Server, including who had the password.  In the absence of these facts, the

SAC lacks a necessary predicate to establishing a plausible claim that access was not properly authorized.  Additionally, in large part because this necessary predicate is missing, the SAC does not allege sufficient facts to exclude the existence of a third party whose rights in the Sargeant Server and the HS3 Material were superior to the Plaintiff's rights, and who therefore could have authorized the Defendants' actions.

By way of example, the SAC fails to plead sufficient facts to exclude that the Sargeant Family Businesses could have given the Defendants proper authority to access the Sargeant Server and the HS3 Material.  It alleges that the Sargeant Family Businesses "maintained" the password-protected Sargeant Server in October 2016.  The common understanding of an entity "maintaining" a server would include that entity having the technological ability (i.e. the password) and the legal right to access the server.[5]  The SAC lacks any facts to negate this common understanding.  *See Iqbal,* 556 U.S. at 679 (evaluating the sufficiency of a complaint is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). The SAC also implies that Sargeant Family Businesses had the authority to impose policies regarding who could access the server or any data on the server, including the HS3 Materials.[6]  Similarly, although the SAC alleges that Plaintiff's email account was password protected, it concedes that the email was hosted on a company server using a company domain name.  There is no factual allegation that the Sargeant Family Businesses (as the entity "maintaining" the server and providing the email account) did not have a means to override the

---

[5] Webster's Third New International Dictionary (unabridged) defines "maintain" as "to keep in a state of repair, efficiency, or validity: preserve from failure or decline."

[6] Paragraph 26 of the SAC asserts that the Sargeant Family Businesses "had no official or unofficial policies or procedures authorizing the Defendants, or anyone else, to access the HS3 Email Account or to access or obtain the HS3 Materials contained in the HS3 Email Account or on the Sargeant Server."  This assertion seemingly concedes the Sargeant Family Businesses had the legal right to set and enforce such policies if it wanted to do so.

Plaintiff's email account's password, such as an administrative password.  Finally, the SAC alleges that Daniel Sargeant was a co-owner of the Sargeant Family Businesses.  Considering all these facts together, the SAC does not establish a plausible claim that excludes the Sargeant Family Businesses having properly authorized Defendants to access the Sargeant Server and the HS3 Material.

Plaintiff asserts that the SAC's ambiguity about (1) who exercised dominion and control of the Sergeant Server and (2) how the Defendants accessed the server and the HS3 Material are issues of fact that cannot be resolved on a 12(b)(6) motion.  Plaintiff contends that "[t]he ownership of the Sargeant Server, and indeed, the detailed nature of any purported authorization is a matter of factual dispute inappropriate for resolution on a motion to dismiss."  DE 170 at 4. The Court disagrees.  Under *Iqbal* and *Twombly,* the Plaintiff has the burden to allege facts in the complaint that establish a plausible claim for relief, which includes a plausible claim that every element of the cause of action is satisfied.  In order to plead a CFAA violation, the SAC must allege facts that would create a plausible claim that the Defendants' actions were not properly authorized.  One way to do so would be to identify the universe of people who properly could authorize access, then plead facts demonstrating that none granted authorization to the Defendants.  Or, the Plaintiff could identify the person(s) through whom the Defendant(s) accessed the protected computer and the HS3 Material, then allege facts establishing that the person(s) did not have a legal right to grant the access.  Or, the Plaintiff could allege facts establishing that Plaintiff was given rights to control access to the server or the HS3 Material that were superior to the rights of all others who had authority over the server and its data.  The SAC includes none of these facts.

Instead, the SAC attempts to create a plausible claim that the Defendants lacked authorization to access the HS3 Materials by alleging that the Plaintiff never gave Defendants permission, ¶ 25, and that the Sargeant Family Businesses had no policy that would have authorized the Defendants' actions. ¶ 26.   These assertions fall short.  The SAC does not plead that in October 2016 the Plaintiff had the legal right to limit access to the information contained on the Sargeant Server; so, his failure to grant permission is not dispositive.  More importantly, the SAC does not allege that any then-existing rights the Plaintiff had in the HS3 Material were *superior* to those of all other third parties who could have given proper authorization.  *See United States v. Smith,* 353 F. App'x 229, 230 (11th Cir. 2009) (Consent to search may be provided by a third party who possesses common authority over the premises).  At best, the SAC alleges that Plaintiff's email account had a password, but it does not allege that in October 2016 no third party had the right to override that password.

> b.  *United States v. Rodriguez* does not apply

Plaintiff puts great reliance on *United States v. Rodriguez*, 628 F.3d 1258 (11th Cir. 2010) and *United States v. John*, 597 F.3d 263 (5th Cir. 2010).  Plaintiff argues that *Rodriguez* and *John* stand for the proposition that a person (including Defendants here) can never be authorized to access a protected computer for an illegal purpose, because no one can be "authorized" to access a computer in order to obtain information that will be used to commit a crime.  At the oral argument, Plaintiff more fully articulated this theory. He argued that even a person with dominion and control over a protected computer may not exercise that power to access information on the computer if the person's intention is to use the information to commit a crime.  DE 190 at 56-58, 60.

Although *Rodriguez* has been much criticized, it remains controlling precedent for this Court.  *See EarthCam, Inc. v. OxBlue Corp.,* 703 Fed. Appx. 803, 808 & n.2 (11th Cir. 2017); *Hamilton Group Funding,* 2018 WL 1788161 at *9-10.  Because Plaintiff's argument turns on *Rodriguez,* and because the Court disagrees with Plaintiff's reading of *Rodriguez,* the Court will closely analyze that case and explain its disagreement.

*Rodriguez* was a prosecution under the criminal provision of the CFAA.  The Eleventh Circuit summarized the relevant facts as follows:

> From 1995 to 2009, Roberto Rodriguez worked as a TeleService representative for the Social Security Administration. Rodriguez's duties included answering questions of the general public about social security benefits over the telephone. As a part of his duties, Rodriguez had access to Administration databases that contained sensitive personal information, including any person's social security number, address, date of birth, father's name, mother's maiden name, amount and type of social security benefit received, and annual income.

> The Administration established a policy that prohibits an employee from obtaining information from its databases without a business reason. The Administration informed its TeleService employees about its policy through mandatory training sessions, notices posted in the office, and a banner that appeared on every computer screen daily. The Administration also required TeleService employees annually to sign acknowledgment forms after receiving the policies in writing. The Administration warned employees that they faced criminal penalties if they violated policies on unauthorized use of databases. From 2006 to 2008, Rodriguez refused to sign the acknowledgment forms. He asked a supervisor rhetorically, "Why give the government rope to hang me?" To monitor access and prevent unauthorized use, the Administration issued unique personal identification numbers and passwords to each TeleService employee and reviewed usage of the databases.

> In August 2008, the Administration flagged Rodriguez's personal identification number for suspicious activity. Administration records established that Rodriguez had accessed the personal records of 17 different individuals for nonbusiness reasons. The Administration informed Rodriguez that it was conducting a criminal investigation into his use of the databases, but Rodriguez continued his unauthorized use. None of the 17 victims knew that Rodriguez had obtained their personal information without authorization until investigators informed them of his actions.

*United States v. Rodriguez,* 628 F.3d 1258, 1260 (11th Cir. 2010).

17

On appeal, Rodriguez argued that he had not violated the CFAA "because he accessed only databases that he was authorized to use as a TeleService representative." *Id.* at 1263.   The Eleventh Circuit rejected this argument.   It noted, "[t]he policy of the [Social Security] Administration is that use of databases to obtain personal information is authorized only when done for business reasons.   Rodriguez conceded at trial that his access of the victims' personal information was not in furtherance of his duties as a TeleService representative and that 'he did access things that were unauthorized.' In the light of this record, the plain language of the Act forecloses any argument that Rodriguez did not exceed his authorized access." *Id.*

The Eleventh Circuit distinguished two cases upon which Rodriguez's appeal relied.  The first, *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127 (9th Cir. 2009), involved an employee of a residential addiction treatment center who had "emailed documents that he was authorized to obtain to his personal email account.  The treatment center argued that Brekka obtained the documents he emailed without authorization because he later used them for his own personal interests.  The treatment center had no policy prohibiting employees from emailing company documents to personal email accounts, and there was no dispute that Brekka had been authorized to obtain the documents or to send the emails while he was employed." *Rodriguez,* 628 F.3d at 1263 (citation omitted).  The Eleventh Circuit distinguished *Brekka* from *Rodriguez* "because the Administration told Rodriguez that he was not authorized to obtain personal information for nonbusiness reasons." *Id.*

The second case discussed (and distinguished) in *Rodriguez* was the Fifth Circuit's decision in *John,* 597 F.3d 263 (5th Cir. 2010). As summarized by the Eleventh Circuit in *Rodriguez:*

The Fifth Circuit held that use of information may constitute "exceeding authorized access," if the use is criminal.  John, an employee of Citigroup, was authorized to use her employer's computers and to view and print account information.  John used the information to incur fraudulent charges.  The Fifth Circuit observed that "John was authorized to view and print all of the information that she accessed," but concluded that "authorization" as used in the Act, "may encompass limits placed on the *use* of information obtained by permitted access to a computer system and data available on that system" if the use is in furtherance of a crime.  Rodriguez erroneously argues that he cannot be convicted under the Act because his use of the information was not criminal. The problem with Rodriguez's argument is that his use of information is irrelevant if he obtained the information without authorization or as a result of exceeding authorized access.  Rodriguez exceeded his authorized access and violated the Act when he obtained personal information for a nonbusiness reason.

*Rodriguez*, 628 F.3d 1258, 1263 (11th Cir. 2010) (citations omitted) (emphasis in original).  A closer analysis of the *John* opinion gives further context for these statements in *Rodriguez.*  The *John* court framed the issue before it as:

whether "authorized access" or "authorization" may encompass limits placed on the *use* of information obtained by permitted access to a computer system and data available on that system. We conclude that it may, at least when the user knows or reasonably should know that he or she is not authorized to access a computer and information obtainable from that access in furtherance of or to perpetrate a crime.

To give but one example, an employer may "authorize" employees to utilize computers for any lawful purpose but not for unlawful purposes and only in furtherance of the employer's business.

597 F.3d at 271 (emphasis in original).  The Fifth Circuit then held, "Access to a computer and data that can be obtained from that access may be exceeded *if the purposes for which access has been given are exceeded.*  In other words, John's access to Citigroup's data was confined. She was not authorized to access that information for any and all purposes but for limited purposes."  *Id.* at 272 (emphasis added).

The Court disagrees with Plaintiff's position that *Rodriguez* holds that a person always "exceeds authorized access" if the material being accessed will be used to commit a crime.[7] The above-quoted passages from R*odriguez* and *John*, along with the plain text of the CFAA, establish the following legal principles: (1) the person with control over the protected computer can limit the use for which the information on the computer may be accessed or used, (2) one such limitation could be, but need not be, that properly accessed information not be used to commit a crime, and (3) if the person with control imposes such a limitation on use, then a person who accesses the protected computer for the purpose of exceeding that use limitation "exceeds authorized access" under the CFAA, *see EarthCam, Inc.* 703 F. App'x at 808 ("Although it is not entirely clear, one of the lessons from *Rodriguez* may be that a person exceeds authorized access if he or she uses the access in a way that contravenes any policy or term of use governing the computer in question."); *United States v. Nosal*, 676 F.3d 854, 862 (9th Cir. 2012) (en banc) (describing *Rodriguez* and *John* as "decisions of our sister circuits that interpret   the CFAA broadly   to   cover violations of   corporate computer use   restrictions or violations of  a  duty  of  loyalty."). The  actual  use  of  the  accessed  information  may be circumstantial evidence of an intent to exceed authorized access where a relevant limitation on

---

[7] As the Court explained at the oral argument,

> I believe what *Rodriguez* says is that an employer can have an internal policy that limits the use to which an employee makes of information. And if . . . an employee is allowed, as they were in *Rodriguez*, to access certain information for certain purposes but not for other purposes, and they access it for one of the unapproved purposes, then they had exceeded authorization. But I believe *Rodriguez* stands for the proposition that that all relates to internal policies within the company. It does not relate to any subsequent use of the information to commit a separate crime or whether the motivation to obtain the information was to commit a crime.

*See* Transcript (DE 190) at 114-115.

use exists.  As discussed below, if proper authorization existed to obtain information in the first instance, the subsequent use of that information, by itself, does not independently create liability under Section 1030(a)(2)(C).[8]

These cases do not stand for the proposition (asserted by Plaintiff) that, as a matter of law, the person with control over a protected computer can never authorize the information on that computer to be accessed for use in a crime. These cases do, however, affirm that the person with control over the protected computer has the ultimate power to impose, modify, or rescind any limitation on the use of information on that computer; they also retain the legal right to authorize third parties to access the protected computer.

c.   Whether Plaintiff abandoned his rights is a factual question

As an alternative ground for dismissing the CFAA claims, Defendants argue that Plaintiff abandoned any rights he had in the HS3 Materials when he disassociated from the Sargeant Family Businesses in 2012.  Defendants rely on *Owen v. Cigna,* 188 F. Supp. 3d 790, 793 (N.D. Ill. 2016).  Defendants argue that *Owen* holds, as a matter of first impression, that a former employee cannot assert a CFAA claim for materials that were left on the employer's email server.  To date, no court in the Eleventh Circuit has adopted *Owen.*

In *Owen,* an employee used her work computer to access personal emails that were stored on an internet-based server.[9]  In response to a CFAA claim, the employer argued that it could not exceed its authority to access the computer because the computer belonged to the employer "--

---

[8] Conceivably, authorizing access knowing that a person will use the accessed information for a criminal purpose, or using materials obtained through authorized access for a criminal purpose, could create some other cause of action, but no such claim is before this Court.

[9]  The opinion noted that the complaint did not explain "precisely how Defendants used her former work computer to access her personal emails."  *Id.* at 791

not to Owen -- and Owen, who had left the company, was no longer using it." *Id.* at 793.  In granting the employer's motion to dismiss the CFAA count with prejudice, the court said, "[n]one of Owen's allegations suggests that she retained any authority to grant or deny anyone permission to access her former work computer after she left PCI." *Id.*

The Court does not read *Owen* to stand for a blanket rule that a former employee can never retain rights in materials stored on the former employer's computer.  Rather, *Owen* suggests that there could be situations where a former employee retains authority to grant or deny access to a former work computer.  Thus, whether an employer can properly authorize access to a former employee's materials on the employer's computer is a factual question.

The SAC fails to state a claim that any Defendant accessed the Sargeant Server without authorization or that they exceeded authorized access with regard to the HS3 Materials.  On this basis, Counts I and II should be dismissed as to all Defendants.  *See PNC Mortg. v. Superior Mortg. Corp.*, No. CIV.A. 09-5084, 2012 WL 627995, at *4 (E.D. Pa. Feb. 27, 2012) ("[b]ecause Plaintiff fails to state a claim under the CFAA, Plaintiff also fails to state a claim for conspiracy to violate the CFAA").[10]

### 2. *Loss under the CFAA*

The CFAA violation alleged in Counts I and II requires that the Plaintiff "incurs a minimum 'loss' of $5,000 as a result of the defendant's violation of the CFAA."  *Brown Jordan International, Inc. v. Carmicle*, 846 F.3d 1167, 1173 (11th Cir. 2017).  As relevant here, the CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to

---

[10] Because the plain text of the CFAA and binding Eleventh Circuit precedent interpreting that text compel this conclusion, the Court cannot consider Plaintiff's argument that Defendants' "extraordinary CFAA interpretation would countenance the owner of any computer system to utilize under all circumstances all information contained on that system for any purpose, however unlawful, with no consequence at all under the CFAA." DE 171 at 5.  Even assuming Plaintiff to be correct, that is a concern for the legislative branch to address.

an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense."  18 U.S.C. 1030(e)(11).  This category of loss incorporates "direct costs of responding to the violation."  *Brown Jordan,* 846 F.3d at 1174.

Defendants assert that the SAC fails to adequately plead CFAA damages.  Paragraph 51 of the SAC alleges that Plaintiff "suffered 'damage' and/or 'loss' under the CFAA, in an amount exceeding $5,000 [which] . . . includes the cost of reasonably investigating and otherwise responding to the CFAA violations (including the hiring of a forensic computer analyst to conduct investigation and analysis)."  ¶ 51.  Count II contains an identical allegation.  ¶ 61.  The SAC must allege facts plausibly showing that the costs incurred for forensic computer analysis were a reasonable cost arising from the alleged unlawful accessing of the HS3 Material.  Given that the SAC does not allege that Plaintiff had access to the Sargeant Server in 2016, it is not clear what forensic computer services Plaintiff would have needed as a result of his emails being accessed on that server, or how those services would have been related to the alleged CFAA violation.  As such, the allegations in Paragraphs 51 and 61 do not plead sufficient facts to establish a plausible claim that the forensic computer services were a "reasonable cost."

As an alternative, Defendants argue that Plaintiff cannot be a "victim" for purposes of the CFAA loss provision because he is not the owner of the protected computer.  The Ninth Circuit has held that a person may assert a CFAA claim even if he does not own, operate, or maintain the relevant server.  "The civil remedy extends to any person who suffers damage . . . Individuals other than the computer's owner may be proximately harmed by unauthorized access, particularly if they have rights to data stored on it." *Theofel v. Farey–Jones,* 359 F.3d 1066, 1078 (9th Cir. 2004) (emphasis omitted).  Thus, whether Plaintiff qualifies as a "victim" under 18 U.S.C. 1030(e)(11) appears to be a factual question.

### 3. *Use of the HS3 Materials*

The SAC alleges that "Defendants agreed together that [Daniel Sargeant] and LAIL would [1] unlawfully access the HS3 Email Account, [2] obtain the HS3 Material, and [3] provide the HS3 Material to Hall" in exchange for the Ruperti Materials which "was of great value to [Daniel Sargeant]/LAIL in advancing [the London] litigation." ¶¶ 33, 40. The alleged post-acquisition dissemination of the HS3 Materials is not an independent basis for liability under 18 U.S.C. § 1030(a)(2)(C). A violation of that statute is complete when the protected computer is accessed without proper authorization or when information on that computer is obtained or altered.

By its plain terms, Section 1030(a)(2)(C) prohibits accessing a protected computer without authorization, or accessing a protected computer with authorization but using that access to "obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6). Section 1030(a)(2)(C) speaks only to accessing, obtaining, or altering information on a protected computer; it says nothing about prohibiting the subsequent dissemination or use of that information. That Congress did not intend to extend liability under Section 1030(a)(2)(C) to improper use of information is reinforced by the fact that the neighboring provision of the CFAA specifically prohibits communicating, delivering, or transmitting sensitive Government information that was obtained without proper authorization. *See* 18 U.S.C. § 1030(a)(1). Thus, when it wanted to do so, Congress knew how to prohibit the use of information obtained without proper authorization. For these reasons, the Court concludes that a CFAA violation is completed when the perpetrator accesses a protected computer without authorization or exceeds authorized access to that computer. *See United States v. Pacchioli,* 718

F.3d 1294, 1300 (11th Cir. 2013) ("[O]rdinarily, an offense is 'complete' when all the elements of the crime have been satisfied.").

### 4.  *Hall and Preston*

In addition to the reasons stated above, Count II should be dismissed as to Hall and Preston because the SAC fails to allege sufficient facts to establish that Hall or Preston had prior knowledge that the HS3 Materials were to be obtained without proper authorization. To join a conspiracy, a person must have knowledge of the illegal objective of the agreement and must intend to further that objective. Therefore, to survive Preston and Hall's Motions to Dismiss Count II, Plaintiff must have pled a plausible claim that Preston and Hall knew *in advance* that the HS3 Material was to be obtained without proper authorization, and that Preston and Hall intended to help achieve that objective.[11] The SAC fails to do so.

Shorn of its conclusory statements, the SAC is bereft of facts supporting a plausible conclusion that Hall conspired to violate the CFAA. The SAC alleges that (1) Hall told the other Defendants he had the Ruperti Materials and was willing to trade them for information that could be used to help collect the judgment from Plaintiff, ¶¶ 29-31, (2) Hall knew that the other Defendants could obtain the HS3 Materials, ¶ 32,[12] (3) Hall ultimately traded the Ruperti Materials for the HS3 Materials, ¶¶ 35, 37, and (4) thereafter, Hall negotiated with the other Defendants for a payment. ¶¶ 39-41. These allegations fall short of establishing a plausible

---

[11] As discussed above, any violation of Section 1030(a)(2)(C) would have ended when the HS3 Material was acquired; any corresponding conspiracy would have achieved its objective, and therefore ended, at the same time. *See United States v. Knowles*, 66 F.3d 1146, 1155 (11th Cir. 1995) ("A conspiracy ends after 'the central purposes of a conspiracy have been attained.'") (quoting and citing *Grunewald v. United States*, 353 U.S. 391, 401-02 (1957).

[12] Although Paragraph 32 does not contain facts establishing *how* Hall had this knowledge, when it is linked with other allegations in the SAC, there exists a plausible claim that prior to October 2016 Hall knew that Daniel Sargeant and LAIL could obtain the HS3 Materials.

claim that Hall agreed to obtain the HS3 Materials without proper authorization or that he knew that the HS3 materials would be obtained without proper authorization.  Without this agreement or knowledge, Hall cannot be part of the conspiracy alleged in Count II.

Similarly, the SAC fails to allege sufficient facts to establish a plausible claim that Preston conspired to violate the CFAA.  The SAC alleges (1) Preston was an attorney for LAIL, ¶ 6, (2) in August 2016, Preston learned that Hall had access to the Ruperti Materials, which had great value to Preston and his clients, ¶ 29, (3) Preston used the Ruperti Material in furtherance of the London Litigation, ¶¶ 38, 42, and (4) Preston negotiated with Hall for a payment related to Hall's providing the HS3 Materials to the other Defendants.  ¶¶ 39-41.  These allegations fail to establish a plausible claim that Preston knew that the Sargeant Server existed, let alone that he knew how the HS3 Materials were to be obtained, knew that acquisition was to be without proper authorization, or agreed to obtain the materials without proper authorization.  Based on the factual allegations in the SAC, Preston cannot be part of the conspiracy alleged in Count II.

### B.  Count III (Stored Communications Act)

The Stored Communications Act (SCA) provides that

> whoever (1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains . . . a wire or electronic communication while it is in electronic storage [violates the SCA].

18 U.S.C. § 2701(a).  In addition to being a criminal statute, the SCA provides a private civil right of action.  18 U.S.C. § 2707(a).

Defendants do not dispute that the Sargeant Server is a "facility" within the meaning of the SCA.  Although "[t]he word facility is not defined by the SCA . . . [t]he general consensus of case law considering facilities under the SCA is that servers containing information qualify as facilities, and that the purpose of the SCA was to prevent 'hacking' into such facilities." *Brown*

*Jordan Int'l, Inc. v. Carmicle,* No. 0:14-CV-60629, 2014 WL 11350232, at *4 (S.D. Fla. Aug. 29, 2014) (citations omitted) (J. Rosenberg).

LAIL and Daniel Sargeant argue that Count III must be dismissed because the SAC (1) fails to plead a necessary element – lack of authorization by the electronic communications service provider and (2) fails to plead cognizable damages.  In support of their first argument, Defendants cite *Fraser v. Nationwide,* 352 F.3d 107 (3rd Cir. 2003) and *Joseph v. Carnes,* 108 F. Supp. 3d 613, 616 (N.D. Ill. 2015) for the proposition that a private employer who provides electronic communications services to its employees cannot violate the Stored Communications Act because, by definition, that employer (as the electronic communications provider) can authorize whatever access it desires.  Plaintiff responds that *Rodriguez* and *John* apply to the Stored Communications Act in the same way that they apply to the CFAA -- even the provider of electronic communications service cannot authorize an unlawful act.

For the same reasons that the CFAA claims fail to properly plead that the Defendants acted without proper authorization, Count III also fails to plead a plausible claim that the Sargeant Server and the HS3 Materials were accessed without proper authorization.  Here, again, the Court rejects Plaintiff's interpretation of the *Rodriguez* and *John* cases.  Both cases arise under the CFAA.  They do not limit the plain text of the Stored Communications Act, which exempts conduct authorized "by the person or entity providing a wire or electronic communication service."  18 U.S.C. § 2701(c)(1).  Plaintiff has not identified any other reported decision that has adopted Plaintiff's interpretation of the Stored Communications Act.

**C.  Count IV (CADRA)**

Florida's Computer Abuse and Data Recovery Act ("CADRA") provides in relevant part:

A person who knowingly and with intent to cause harm or loss [o]btains information from a protected computer without authorization and, as a result,

27

> causes harm or loss . . . is liable . . . in a civil action to the . . . owner of information stored in the protected computer who uses the information in connection with the operation of a business.

Fla. Stat. Ann. § 668.803 (West).  Defendants' arguments challenging the CADRA claim parallel their arguments against the CFAA claims.  They assert that the CADRA claim must be dismissed because it fails to properly plead that the Defendants acted without proper authorization and because no cognizable loss exists.  The Court agrees that Count IV should be dismissed without prejudice for the reasons stated above relating to Count I.

### D.  <u>Count V (Breach of Contract)</u>

LAIL and Daniel Sargeant argue that Plaintiff has failed to plead damages with specificity.  The District Court previously found that damages for breach of contract were properly pled, which is now the law of the case. DE 87 at 27-28.  The Motion to Dismiss Count V should be denied.

### E.  <u>Count VI (Invasion of Privacy by Intrusion)</u>

Florida's common law tort of invasion of privacy by intrusion protects against physical or electronic intrusion into one's private quarters; "[t]he intrusion to which this refers is into a 'place' in which there is a reasonable expectation of privacy." *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003). LAIL and Daniel Sargeant argue that Plaintiff had no continuing expectation of privacy in the HS3 Material, and that he has failed to plead damages with specificity.  The SAC pleads sufficient facts to establish a plausible claim that Plaintiff retained some privacy interest in the HS3 Materials.[13]  As with Count V, it also sufficiently pleads damages. The full extent of that privacy interest, and the legal implications arising from it, are

---

[13] Although Plaintiff may have retained *some* privacy interest in the HS3 Materials for purposes of a Florida tort claim, for the reasons discussed above, the SAC fails to plead sufficient facts to establish a plausible claim that any such interest was superior to all others who exercised dominion and control over the Sergeant Server and the HS3 Material.

not properly resolved through a Motion to Dismiss. The Motion to Dismiss Count VI should be denied.

**F.   <u>Count VII (Invasion of Privacy by Public Disclosure of Private Facts)</u>**

Florida's tort of invasion of privacy by public disclosure of private facts protects against the dissemination of truthful private information which a reasonable person would find objectionable. *Id.* "The elements can be summarized as 1) the publication, 2) of private facts, 3) that are offensive, and 4) are not of public concern." *Cape Publications, Inc. v. Hitchner*, 549 So. 2d 1374, 1377 (Fla. 1989).

The sole non-speculative, non-conclusory factual allegation relating to dissemination of the HS3 Material is that on or about October 28, 2016, Daniel Sargeant and LAIL provided the HS3 Material to Hall.   ¶ 37.   The SAC then summarily alleges that this information was publicized to "an unknown number of other persons through electronic and/or other means," ¶ 100, and that "[u]pon information and belief" Hall further publicized it to unidentified others within his company and "to an unknown number of other persons through electronic and/or other means." ¶ 101.   These latter allegations are not entitled to the assumption of truth.

There is no allegation that the named defendants in Count VII – LAIL and Daniel Sargeant – disclosed the HS3 Material to anyone other than Hall.   Moreover, the SAC fails to allege sufficient facts to create a plausible claim that the HS3 Material was disseminated to the "public," as required.   *See Bilbrey v. Myers*, 91 So. 3d 887, 889 (Fla. Dist. Ct. App. 2012) (where complaint alleged that defendant published assertions about plaintiff's homosexuality to members of plaintiff's church, court held the complaint "did not establish enough publicity to make [defendant's] conduct actionable").   Therefore, Count VII should be dismissed without prejudice.

**G.** **Count VIII (Civil Conspiracy)**

Count VIII alleges a multiple object civil conspiracy by all Defendants.  The alleged objects of the conspiracy are (1) to invade Plaintiff's privacy by intrusion, (2) to invade Plaintiff's privacy by public disclosure of private facts, and (3) to violate CADRA.  ¶ 107.  The alleged manner and means of the conspiracy was to obtain, use, and publicize the HS3 Material.  ¶ 107.

The elements of a civil conspiracy are: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts performed pursuant to the conspiracy." *Charles v. Fla. Foreclosure Placement Ctr., LLC,* 988 So. 2d 1157, 1159–60 (Fla. Dist. Ct. App. 2008) (*cited in United Technologies Corp v. Mazer,* 556 F.3d at 1271). Notably, a civil conspiracy under Florida law cannot exist without a completed predicate offense.  *See Gateway Inv'rs, LLC v. Innovest Cappital, Inc*., 402 F. App'x 459, 461 (11th Cir. 2010) (where the underlying Florida claim is "non-actionable, there can be no conspiracy with respect thereto"); *cf.*, *e.g., Iannelli v. United States,* 420 U.S. 770, 777 (1975) ("Conspiracy is an inchoate offense, the essence of which is an agreement to commit an unlawful act.").

Because the Court finds that the SAC fails to properly plead a violation of CADRA or of invasion of privacy by publication, the Motion to Dismiss should be granted as to all Defendants for those objects of the conspiracy.[14]  In contrast, because the Court finds that the SAC properly

---

[14]  Defendants note that CADRA, unlike the CFAA, lacks its own conspiracy provision. Defendants therefore argued that the Florida legislature purposely omitted a conspiracy provision from CADRA, and that the civil conspiracy statute cannot be used to fill this gap.  Because the Court finds that Plaintiff has not sufficiently pled a conspiracy under CADRA, the Court declines to reach the issue of whether the Florida civil conspiracy statute supports a conspiracy to violate CADRA.  That analysis in the first instance should be undertaken by the Florida

alleges an invasion of privacy by intrusion against LAIL and Daniel Sargeant, the Motion to Dismiss that object of Count VIII against them should be denied.

The remaining issue is whether the SAC properly pleads a claim of civil conspiracy against Hall and Preston for invasion of privacy by intrusion. As noted above, the SAC fails to allege facts sufficient to create a plausible claim that Hall or Preston was aware of the source from which the HS3 Materials were to be obtained. As such, the SAC fails to properly plead that they conspired to obtain these materials from a location in which they knew Plaintiff had a reasonable expectation of privacy. Count VIII should be dismissed in full as to them.

## IV.   MOTION TO DISMISS UNDER RULE 12(b)(2)

Preston was personally served with the SAC on February 26, 2018. DE 97. Therefore, this Court has personal jurisdiction over Preston if he is "subject to the jurisdiction of a court of general jurisdiction in [Florida]." Fed. R. Civ. P. 4(k)(1)(A). The SAC asserts that Florida's long-arm statute, Florida Statutes Section 48.193, applies to Preston because *inter alia*, "as set forth herein, Preston conspired with the other Defendants to commit a tort and violate federal and Florida law in Florida (*i.e.,* the violation of CFAA and CADRA and invasion of [Plaintiff]'s privacy), resulting in harm in Florida, and one or more overt acts in furtherance of the conspiracy were committed within this judicial district in Florida." ¶ 14.

For the reasons stated above, the SAC fails to contain sufficient factual averments to establish a plausible claim that Preston participated in a conspiracy to violate CFAA or that he conspired to violate CADRA, or to invade Plaintiff's privacy. Therefore, because the SAC fails

---

courts, not this federal court, until the Plaintiff files a complaint that otherwise properly pleads a CADRA conspiracy.

to allege a *prima facie* case that Preston participated in a predicate offense under the Florida long-arm statute, it fails to establish this Court's personal jurisdiction over Preston.

At oral argument, the Plaintiff agreed that if the Court found that the SAC failed to plead a *prima facie* basis for personal jurisdiction over Preston the Court need not reach the question whether the record outside the four corners of the SAC supported personal jurisdiction. Similarly, because the SAC fails to establish statutory long-arm jurisdiction, the Court does not address whether the due process clause would permit it to exercise personal jurisdiction over Preston.

## V.  IMPROPER JOINDER

Defendants Daniel Sargeant, Preston, and Hall argue that their joinder in the SAC was untimely under the Court's scheduling order.  Because the Court recommends dismissal of the SAC with leave to amend, it does not reach this argument.

## VI. RECOMMENDATION

The undersigned **RECOMMENDS** that:

1.      Defendant Andrew Preston's Motion to Dismiss Counts II and VIII (DE 129) be **GRANTED WITHOUT PREJUDICE** for failure to state a claim upon which relief can be granted and, alternatively, for lack of personal jurisdiction.

2.      Defendant Daniel Hall's Motion to Dismiss Counts II and VIII (DE 131) be **GRANTED WITHOUT PREJUDICE** for failure to state a claim upon which relief can be granted.

3.      Defendants LAIL and Daniel Sargeant's Motion to Dismiss (DE 142) be **GRANTED IN PART WITHOUT PREJUDICE** (as to Counts I, II, III, IV, VII and VIII) for

failure to state a claim upon which relief can be granted and **DENIED IN PART** (as to Counts V and VI).

4.      Plaintiff be given until **June 21, 2018**, to file a Third Amended Complaint.


## <u>NOTICE OF RIGHT TO OBJECT</u>

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Beth Bloom, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).


**DONE AND SUBMITTED** in Chambers this 30th day of May, 2018, at West Palm Beach in the Southern District of Florida.

_____
BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE

# Exhibit F

**U.S. District Court**
**Southern District of Florida (West Palm Beach)**
**CIVIL DOCKET FOR CASE #: 9:18-cv-80748-BB**

Hall et al. V. Harry Sargeant, III                         Date Filed: 06/08/2018
Assigned to: Judge Beth Bloom                              Jury Demand: Plaintiff
Cause: 28:1331 Federal Question                            Nature of Suit: 190 Contract: Other
                                                           Jurisdiction: Federal Question

**Plaintiff**

**Daniel Hall**                          represented by   **Armando Cordoves , Jr.**
                                                          Hunton Andrews Kurth LLP
                                                          1111 Brickell Avenue
                                                          Suite 2500
                                                          Miami, FL 33131
                                                          3058102515
                                                          Email: acordoves@huntonak.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Andrew E. Goldsmith**
                                                          Kellogg Hansen Todd Figel & Frederick PLLC
                                                          Summer Square
                                                          1615 M. Street, Suite 400
                                                          Washington, DC 20036
                                                          202-326-7945
                                                          Email: agoldsmith@kellogghansen.com
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Derek T. Ho**
                                                          Kellogg Huber Hansen Todd Evans & Figel PLLC
                                                          1615 M Street NW
                                                          Suite 400
                                                          Washington, DC 20036
                                                          202-326-7900
                                                          Email: dho@kellogghansen.com
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Samuel Alberto Danon**
                                                          Hunton Andrews Kurth LLP
                                                          1111 Brickell Avenue
                                                          Suite 2500
                                                          Miami, FL 33131
                                                          305-810-2500
                                                          Fax: 810-2460
                                                          Email: sdanon@huntonak.com
                                                          *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Burford Capital LLC**                  represented by   **Armando Cordoves , Jr.**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Andrew E. Goldsmith**
                                                          (See above for address)
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Derek T. Ho**
                                                          (See above for address)

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Samuel Alberto Danon**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Dundrod Investments Ltd.**                    represented by   **Armando Cordoves , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew E. Goldsmith**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Derek T. Ho**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Samuel Alberto Danon**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Harry Sargeant III**

| # | Docket Text | Date Filed |
|---|---|---|
| 1 | COMPLAINT against Daniel Hall, Dundrod Investments Ltd., Burford Capital LLC. Filing fees $ 400.00 receipt number 113C-10721183, filed by Daniel Hall, Dundrod Investments Ltd., Burford Capital LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Civil Cover Sheet, # 8 Summon(s) Harry Sargeant III)(Danon, Samuel) (Entered: 06/08/2018) | 06/08/2018 |
| 2 | Clerks Notice of Judge Assignment to Judge Donald M. Middlebrooks and Magistrate Judge Dave Lee Brannon. Pursuant to 28 USC 636(c), the parties are hereby notified that the U.S. Magistrate Judge Dave Lee Brannon is available to handle any or all proceedings in this case. If agreed, parties should complete and file the Consent form found on our website. It is not necessary to file a document indicating lack of consent. (lh) (Entered: 06/11/2018) | 06/08/2018 |
| 3 | Clerks Notice to Filer re: Electronic Case. Parties Not Added. The Filer failed to add all parties associated with the case.Filer is instructed to add the additional parties by filing a Notice of Entry of Parties. It is not necessary to re-file this document. (lh) (Entered: 06/11/2018) | 06/08/2018 |
| 4 | Notice of Entry of Parties Listed NOTE: New Filer(s) will appear twice, since they are also a new party in the case. New Filer(s)/Party(s): Harry Sargeant III. (Cordoves, Armando) (Entered: 06/11/2018) | 06/11/2018 |
| 5 | Summons Issued as to Harry Sargeant III. (lh) (Entered: 06/11/2018) | 06/11/2018 |
| 6 | Notice of Pending, Refiled, Related or Similar Actions by Burford Capital LLC, Dundrod Investments Ltd., Daniel Hall (Cordoves, Armando) (Entered: 06/11/2018) | 06/11/2018 |
| 7 | Corporate Disclosure Statement by Burford Capital LLC identifying Corporate Parent Burford Capital Holdings for Burford Capital LLC (Cordoves, Armando) (Entered: 06/11/2018) | 06/11/2018 |
| 8 | Corporate Disclosure Statement by Dundrod Investments Ltd. identifying Corporate Parent BC Holdings Limited for Dundrod Investments Ltd. (Cordoves, Armando) (Entered: 06/11/2018) | 06/11/2018 |
| 9 | EX PARTE EMERGENCY MOTION with Certification of Emergency attached by Burford Capital LLC, Dundrod Investments Ltd., Daniel Hall. Responses due by 6/25/2018 (Attachments: # 1 Affidavit Decl. Derek T. Ho in support of Plaintiffs' Motion for Temporary | 06/11/2018 |

| | Restraining Order, # 2 Text of Proposed Order Granting Temporary Restraining Order, # 3 Certification of Emergency)(Cordoves, Armando) Modified to unseal per DE 15 on 6/14/2018 (cbr). (Entered: 06/11/2018) | |
|---|---|---|
| 10 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Andrew E. Goldsmith. Filing Fee $ 75.00 Receipt # 113C-10729567 by Burford Capital LLC, Dundrod Investments Ltd., Daniel Hall. Responses due by 6/26/2018 (Attachments: # 1 Certification of Andrew E. Goldsmith, # 2 Text of Proposed Order)(Danon, Samuel) (Entered: 06/12/2018) | 06/12/2018 |
| 11 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Derek T. Ho. Filing Fee $ 75.00 Receipt # 113C-10729651 by Burford Capital LLC, Dundrod Investments Ltd., Daniel Hall. Responses due by 6/26/2018 (Attachments: # 1 Certification of Derek T. Ho, # 2 Text of Proposed Order)(Danon, Samuel) (Entered: 06/12/2018) | 06/12/2018 |
| 12 | ORDER TRANSFERRING CASE to Judge Beth Bloom for all further proceedings, accepted and signed on 6/13/2018. Judge Donald M. Middlebrooks and Magistrate Judge Dave Lee Brannon no longer assigned to case. Signed by Judge Donald M. Middlebrooks on 6/13/2018. (mc) (Entered: 06/13/2018) | 06/13/2018 |
| 13 | PAPERLESS ORDER granting 10 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Attorney Andrew E. Goldsmith. Signed by Judge Beth Bloom (BB) (Entered: 06/13/2018) | 06/13/2018 |
| 14 | PAPERLESS ORDER granting 11 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Attorney Derek T. Ho. Signed by Judge Beth Bloom (BB) (Entered: 06/13/2018) | 06/13/2018 |
| 15 | ORDER denying 9 Sealed/Ex Parte Emergency Motion/Certification of Emergency. Signed by Judge Beth Bloom on 6/14/2018. (cbr) (Entered: 06/14/2018) | 06/14/2018 |
| 16 | Clerk's Notice of Compliance re 15 Order on Sealed/Ex Parte Emergency Motion/Certification of Emergency (cbr) (Entered: 06/14/2018) | 06/14/2018 |
| 17 | SUMMONS (Affidavit) Returned Executed on 1 Complaint, with a 21 day response/answer filing deadline by Daniel Hall, Dundrod Investments Ltd., Burford Capital LLC. Harry Sargeant III served on 6/21/2018, answer due 7/12/2018. (Cordoves, Armando) (Entered: 06/26/2018) | 06/26/2018 |

# Exhibit G

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No: 9:18-cv-80748

DANIEL HALL, BURFORD
CAPITAL LLC, and DUNDROD
INVESTMENTS LTD.,

     Plaintiffs,

     vs.

HARRY SARGEANT, III,

     Defendant.

**JURY TRIAL DEMANDED**

**COMPLAINT FOR DECLARATORY JUDGMENT,
INJUNCTIVE RELIEF, AND DAMAGES**

Plaintiffs Daniel Hall, Burford Capital LLC ("Burford Capital"), and Dundrod

Investments Ltd. ("Dundrod"), by and through their attorneys, hereby file this Complaint for

declaratory judgment, injunctive relief, and damages against Defendant Harry Sargeant, III

("HS3" or "Defendant"), and state as follows:

**PRELIMINARY STATEMENT**

1.     This action stems from the baseless lawsuit that HS3 pursued in this Court against

Mr. Hall in *Harry Sargeant, III v. Maroil Trading, Inc., et al.*, Civ. No. 17-81070, which was

assigned to District Judge Beth Bloom and Magistrate Judge Bruce Reinhart.  That lawsuit is

referred to herein as the "Related Federal Action," and all docket numbers herein refer to that

action.  HS3 first brought claims against Mr. Hall by joining him as an additional defendant in

his Second Amended Complaint ("SAC"), dated February 20, 2018.  *See* Dkt. 93.  The SAC

alleged that Mr. Hall conspired to violate the Computer Fraud and Abuse Act ("CFAA") and

1

Florida state law by agreeing that his co-defendants – Daniel Sargeant, Latin American Investments Limited ("LAIL"), and Andrew Preston (LAIL's UK counsel) – would obtain unauthorized access to a computer server maintained by the Sargeant Family Businesses (the "Sargeant Server") in order to obtain certain personally sensitive materials that HS3 had left behind on the Sargeant Server when he separated from the family businesses in 2012 (the "HS3 Material").  The SAC alleged that Mr. Hall's co-defendants obtained the materials from the Sargeant Server on October 6, 2016 and October 28, 2016.

2.     On May 30, 2018, Magistrate Judge Reinhart issued a Report and Recommendation to Judge Bloom that Mr. Hall's Motion to Dismiss the SAC be granted under Federal Rule of Civil Procedure 12(b)(6).  *See* Dkt. 191 ("R&R").  Judge Reinhart recommended dismissal of Mr. Hall for three principal reasons:  (1) that HS3's allegations failed to state a claim that Mr. Hall's co-defendants violated the CFAA or the parallel Florida Computer Abuse and Data Recovery Act ("CADRA"); (2) that the SAC contained no plausible, non-conclusory allegations that Mr. Hall knew in advance or agreed to any unlawful actions by his co-defendants; and (3) the SAC contained inadequate factual allegations that the HS3 Material was publicly disclosed.  *See id.* at 10-31.

3.     After the issuance of the R&R, Mr. Preston, joined by Mr. Hall and the other defendants, requested a stay of discovery pending resolution of any objections to the R&R.  HS3 opposed that motion, insisting that discovery proceed even though Judge Reinhart was recommending that Mr. Hall be dismissed from the case.  In denying the stay motion, Judge Reinhart authorized HS3 to pursue limited discovery to support his claims, but the scope of that discovery was far narrower than HS3 had sought.  In addition, Judge Reinhart authorized Mr.

Hall and his co-defendants to seek discovery from HS3, including discovery relating to HS3's reputation, which he had put directly at issue in his SAC.  *See* Dkt. 194 at 4.

4.     Under Federal Rule of Civil Procedure 72, HS3 had until June 13, 2018, to object to the R&R.  Rather than object, however, on June 4, 2018, HS3 abruptly dismissed his claims voluntarily, in what appears to be a procedural gambit to shop for a more favorable forum.  *See* Dkt. 196.  HS3's voluntary dismissal is without prejudice and leaves Mr. Hall facing the real, ongoing, and concrete threat that HS3 will re-assert these or similar claims against Mr. Hall – and possibly Burford Capital and/or Dundrod – presumably in a different forum that allows him to evade Judge Reinhart's motion-to-dismiss and discovery rulings.

5.     Not only did the allegations that *were* in the SAC fail to state a claim, but HS3's SAC *omitted* allegations that would have revealed a clear-cut affirmative defense on the part of Mr. Hall.  Effective October 28, 2016, as part of a global settlement between HS3 and Mohammed Al-Saleh (whose litigation against HS3 was assisted by Mr. Hall and Burford Capital), HS3 executed a full and complete release of Burford Capital, Dundrod, and those working on their behalf (including Mr. Hall) with respect to all claims based on conduct occurring on or before that date.  Because HS3's SAC did not reference the Settlement Agreement and Release, and the litigation never progressed past the Rule 12 stage, Mr. Hall never had an opportunity to assert his affirmative defense of release or counterclaim of breach of contract.  But, as set forth below, the Settlement Agreement and Release constitutes a full and complete defense to the claims asserted by HS3 against Mr. Hall in the Related Federal Action.

6.     To avoid the expense associated with further protracted litigation regarding HS3's baseless claims, and to facilitate the expeditious resolution of Mr. Hall's clear-cut affirmative defense to such claims, Plaintiffs seek a declaratory judgment, pursuant to 28 U.S.C. § 2201, that

3

Mr. Hall is not liable to HS3 for the claims asserted in the SAC because (1) those claims are barred by the Settlement Agreement and Release and (2) Mr. Hall did not conspire to violate the CFAA or Florida law.  Plaintiffs also seek an order, pursuant to 28 U.S.C. § 2202, permanently enjoining HS3 from re-asserting those baseless claims in any court.

7.       Not only is the Release executed by HS3 a complete defense to any future claim, but HS3's filing of the SAC in the Related Federal Action constituted a breach of the Settlement Agreement and Release.  At the time of the settlement, HS3 owed Mr. Al-Saleh more than $39 million in final, non-appealable judgments, which were accruing interest at a rate of more than $4,000 per day.  Mr. Al-Saleh and those working on his behalf spent more than $8 million over more than five years trying to enforce the judgments.  In exchange for HS3 giving up his campaign of evasion, Mr. Al-Saleh agreed to accept approximately $33 million spread over several payments.  But a key part of the agreement was that HS3 would again be liable for the full amount owed if he resumed litigation.  Accordingly, HS3's breach of the Settlement Agreement by filing the SAC triggers liquidated damages of at least $13.8 million, plus attorneys' fees and costs.  Moreover, HS3's filing of the SAC against Mr. Hall constitutes malicious prosecution.  Accordingly, in addition to declaratory and injunctive relief barring HS3 from refiling his claims, Plaintiffs seek damages for HS3's contract breach and tortious conduct.  Those damages include the attorneys' fees and other costs incurred defending Mr. Hall against HS3's baseless and contractually-barred claims.

## PARTIES, JURISDICTION, AND VENUE

8.      Plaintiff Daniel Hall is a citizen and resident of the United Kingdom ("U.K.").

9.      Plaintiff Burford Capital LLC is a Delaware limited liability company.  Its only member is Burford Capital Holdings (UK) Limited ("Burford Capital Holdings"), which is registered in the U.K.

10.      Plaintiff Dundrod Investments Ltd. is a Guernsey registered company.

11.      Defendant Harry Sargeant, III is a citizen of Florida and a resident of Palm Beach County, Florida.

12.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is diversity of citizenship among the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.  This Court also has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367, because there exists an actual controversy arising under a federal statute (the CFAA), and because all claims under state law form part of the same case or controversy.

13.      Because an actual controversy within the Court's jurisdiction exists, this Court may grant declaratory and injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

14.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District and a substantial part of the events or omissions giving rise to the claims set forth in this Complaint occurred in this District.

15.      This Court has personal jurisdiction over Defendant because he resides and is domiciled in Palm Beach County, Florida.

## STATEMENT OF FACTS

### A.    Mr. Al-Saleh's Litigation Against HS3

16.    In 2008, Mr. Al-Saleh sued HS3 and others in the Florida Circuit Court in and for Palm Beach County.  Mr. Al-Saleh and HS3 were partners in a Florida-registered oil trading business, International Oil Trading Company ("IOTC"), which provided fuel to the U.S. Department of Defense ("DOD") during the Iraq war.  Mr. Al-Saleh alleged that HS3 unlawfully diverted profits from IOTC's oil contract with the DOD away from Mr. Al-Saleh.

17.    In October 2010, Dundrod entered into an agreement with Mr. Al-Saleh to provide litigation funding to assist Mr. Al-Saleh in his litigation against HS3.  In addition, Dundrod's affiliate, Burford Capital, provided consulting advice to Mr. Al-Saleh and his counsel.

18.    On July 27, 2011, following a trial, a Florida state court jury awarded Mr. Al-Saleh a $28.8 million judgment (and a judgment for costs and pre-judgment interest) against HS3 (the "Florida Judgment").  A Florida appeals court upheld the verdict in May 2013.  The Florida Supreme Court also affirmed the verdict, exhausting HS3's avenues for appeal.

19.    Notwithstanding the final, valid, and enforceable Florida Judgment, HS3 steadfastly refused to pay.  Moreover, Mr. Al-Saleh found that HS3 had undertaken numerous steps designed to conceal the location of his assets and avoid execution of the Florida Judgment upon those assets.  For example, two days before the jury's decision, HS3 transferred the ownership of a Texas refinery from Florida to Texas.  HS3's efforts to avoid the Florida Judgment required Mr. Al-Saleh and his counsel to pursue asset recovery and judgment enforcement efforts against HS3 across the U.S. and in multiple jurisdictions across the globe, including in the U.S. Bankruptcy Court for this District.  *See In re International Oil Trading Co.*, Case No.: 15-21596-EPK (S.D. Fla. Bankr.) (Kimball, Bankr. J.).

20.     In 2014, Mr. Al-Saleh's counsel retained Mr. Hall, who was then a principal of Focus Intelligence Ltd. ("Focus"), an asset-tracing and corporate investigations firm in the U.K. Mr. Hall and Focus were retained to conduct investigative work on behalf of Mr. Al-Saleh to locate HS3's assets and assist in efforts to execute the Florida Judgment upon those assets.

21.     In 2015, an affiliate of Burford Capital LLC acquired Focus.  From that point forward, Mr. Hall, who was previously unaffiliated with Burford Capital, acted not only on behalf of Mr. Al-Saleh, by whom he was originally retained in 2014, but also on behalf of Burford Capital and Dundrod, in providing assistance to Mr. Al-Saleh and his counsel in pursuing enforcement of the Florida Judgment.

**B.      The Settlement Agreement and Release**

22.     On October 4, 2016, after protracted litigation in multiple jurisdictions, HS3 entered into a comprehensive settlement agreement with Mr. Al-Saleh ("Original Settlement Agreement").  At the time, as set forth in the agreement, HS3 owed Mr. Al-Saleh $39,635,590.22 in final, non-appealable judgments, which were accruing interest at a rate of $4,196.97 per day. *See* Ex. A, Recital E.  Mr. Al-Saleh and those working on his behalf had spent more than $8 million since the July 2011 jury verdict trying to enforce the judgments.  *See id*. Recitals C, F.  In exchange for HS3 giving up his campaign of evasion, Mr. Al-Saleh agreed to accept approximately $33 million, a significant discount compared to the total amount of the judgments, spread over several payments.

23.     Critically, however, the Original Settlement Agreement called for HS3 to execute a release in favor of Burford Capital, Dundrod, and Mr. Al-Saleh within 10 business days, and provided that those releases were incorporated as part of the Original Settlement Agreement.  *See*

*id*. § 2.1.  If HS3 breached those releases, and resumed litigation, he would again owe Mr. Al-Saleh the full amount of the Florida Judgment.  *See id*. § 14.

24.     The parties amended the Original Settlement Agreement effective January 6, 2017.  *See* Ex. B ("Amendment to Settlement Agreement" or "Amendment" and, together with the Original Settlement Agreement, the "Settlement Agreement").  The Amendment reduced HS3's total payment obligation by $190,000 in exchange for payment of the full outstanding amount by January 10, 2017.  *See id.* §§ 1.1, 1.2.  It also provided that the parties would complete the exchange of the releases required by § 2.1 of the Original Settlement Agreement by January 9, 2017.  *See id.* § 3.

25.     On January 9, 2017, HS3 delivered a release in favor of Mr. Al-Saleh, Burford Capital, and Dundrod, as well as "all persons or entities for whose acts or omissions the foregoing would or could be derivatively or vicariously liable or to whom the foregoing could or would owe indemnification."  Ex. C (the "Release").  The Release specifies that it is "intended to be contractual in nature" – that is, to prohibit HS3 as a matter of contract from suing any of the released parties on released claims.  *Id.*

26.     The Release, which bears an effective date as of October 28, 2016, covers all claims "known or unknown, fixed or contingent, accrued or un-accrued, liquidated or unliquidated" that HS3 "ever had or now has, upon, by reason of, arising out of, or in connection with any matter, cause, or thing whatsoever, including, but not limited to, any matter, cause, or thing whatsoever relating to the relationship between RELEASORS and RELEASEES, from the beginning of the world to the date hereof."  *Id.*  The Release specifies that it is to be "broadly construed in favor of the RELEASEES."  *Id.*

27.     The Settlement Agreement made Burford Capital, Dundrod, and Mr. Al-Saleh, as well as their personal representatives and legal representatives (including Mr. Hall), third-party beneficiaries entitled to enforce the agreement.  *See* Settlement Agreement § 22.

28.     In short, the Settlement Agreement and Release give Burford Capital, Dundrod, and any persons working on their behalf (including Mr. Hall) a claim for breach of contract if HS3 sues them based on any conduct occurring on or before October 28, 2016.

29.     Effective January 12, 2017, Mr. Al-Saleh executed an assignment of the Florida Judgment to Dundrod.

**C.     HS3 Breaches the Settlement Agreement and Release**

30.     HS3's SAC in the Related Federal Action breached the Settlement Agreement and Release by claiming that Mr. Hall violated the CFAA and Florida state law through alleged conspiracies that ended on or before October 28, 2016, the effective date of the Release.

31.     Specifically, according to the allegations of the SAC, which is attached hereto as Exhibit D, HS3 was engaged in a business relationship with other members of his family, including his brothers, Daniel Sargeant and James Sargeant, and his father Harry Sargeant, Jr. (collectively, the "Sargeant Family"), from 1990 through 2012.  *See* SAC ¶ 17.  The Sargeant Family owned and operated a number of for-profit businesses involved in the sale, transport, and distribution of asphalt and other petroleum products (collectively, the "Sargeant Family Businesses").  *See id*.  The Sargeant Family Businesses maintained a computer server – the Sargeant Server – in Boca Raton, Florida, and used that server to conduct their business operations.  *See id*. ¶ 19.

32.     In 2012, HS3 had a falling out with his family and cut ties with the Sargeant Family Businesses.  *See id*. ¶¶ 17, 31.  Apparently, however, HS3 did not remove certain

9

personal and business information – the HS3 Material – that he had stored in an allegedly password-protected email account on the Sargeant Server (the "HS3 Email Account"). *See id*. ¶¶ 21-24, 36.

33.     The SAC further alleged that, "[a]s part of" Mr. Hall's work on behalf of Mr. Al-Saleh, Mr. Hall "sought information regarding HS3 that Burford could use to leverage and/or extort HS3 into a payment or settlement." *Id*. ¶ 31.  Mr. Hall therefore allegedly agreed with Daniel Sargeant and others in August 2016 that Daniel Sargeant "would unlawfully access the HS3 Email Account, obtain the HS3 Material, and provide the HS3 Material to Hall." *Id*. ¶ 33.

34.     Finally, the SAC alleged that, in furtherance of that agreement, on October 6, 2016 and October 28, 2016, Daniel Sargeant accessed the Sargeant Server and the HS3 Email Account and obtained the HS3 Material. *See id*. ¶ 36.  The SAC also alleged that on October 28, 2016, Daniel Sargeant and LAIL disclosed the HS3 Material to Mr. Hall "and an unknown number of other persons." *See id*. ¶¶ 100-01.

35.     Based on these allegations, the SAC asserted claims against Mr. Hall for (1) conspiracy to violate the CFAA, 18 U.S.C. § 1030(a)(2)(C), and (2) civil conspiracy under Florida law to violate Florida's CADRA, Fla. Stat. § 668.801 *et seq*., and to invade HS3's privacy.  *See* SAC ¶¶ 54, 107.

36.     On May 30, 2018, Magistrate Judge Reinhart issued the R&R, recommending that both claims against Mr. Hall be dismissed (along with most of the other claims in the SAC against other defendants).  The R&R, which is attached hereto as Exhibit E, concluded that, based on the allegations of the SAC, any CFAA violation "would have ended when the HS3 Material was acquired" and "any corresponding conspiracy would have achieved its objective, and therefore ended, at the same time."  R&R, Dkt. 191 at 25 n.11.  Given that the SAC itself

alleged that Mr. Hall's co-defendants obtained the HS3 Material on or before October 28, 2016, any CFAA claims against Mr. Hall are clearly covered by the Release.

37.     The alleged CADRA conspiracy and the alleged conspiracy to invade HS3's privacy, like the alleged CFAA conspiracy, were complete on October 28, 2016.  The SAC alleged that Mr. Hall and others had obtained and publicized the HS3 Material by that date, thus achieving the alleged objectives of the conspiracy.  All of the allegations in the SAC against Mr. Hall thus are covered by the plain terms of the Release.

   **D.     Mr. Hall Is Not Liable To HS3**

38.     In addition to violating the Settlement Agreement and Release, HS3's claims against Mr. Hall in the SAC were (and are) baseless.  In fact, HS3 lacked probable cause to assert them against Mr. Hall.

39.     First, Daniel Sargeant and LAIL could not have violated the CFAA or CADRA by accessing the Sargeant Server because, as HS3 himself alleges in the SAC, the Sargeant Family Businesses (one of which was LAIL) owned the Sargeant Server.  Daniel Sargeant, as the owner of those businesses, could not have accessed the Sargeant Server without or in excess of authorization, as required for violations of both CFAA and CADRA.

40.     Moreover, HS3 had abandoned the HS3 Material and any reasonable expectation of privacy in it by leaving it on the Sargeant Server when he separated from the Sargeant Family Businesses more than four years before Daniel Sargeant's allegedly improper access.

41.     Second, even assuming hypothetically that Daniel Sargeant and LAIL did violate the CFAA or CADRA in obtaining the HS3 Material, Mr. Hall was not aware they would do so and thus did not agree to violate those statutes.  Mr. Hall, who was an outsider to the Sargeant Family Businesses, had no knowledge of where the HS3 Material was stored, what technological

11

steps were required to obtain it, and who within the Sargeant Family Businesses had the requisite authorization needed to take those steps.  He therefore lacked the requisite knowledge and mental state to agree to violate CFAA or CADRA.

42.     Third, Mr. Hall is not liable to HS3 for conspiring to invade his privacy.  Because Daniel Sargeant and LAIL owned the Sargeant Server, and because HS3 abandoned the HS3 Material there, HS3 could not have had the reasonable expectation of privacy required for a claim for invasion of privacy by intrusion.  Mr. Hall also did not conspire to invade HS3's privacy by public disclosure of private facts because conspiracy under Florida law requires a completed predicate offense, and Mr. Hall, Daniel Sargeant, LAIL, and Mr. Preston did not disclose the HS3 Material to a sufficient number of people to constitute public disclosure.

### E.     HS3 Brought Baseless Claims Out of Malice Toward Mr. Hall and Burford Capital

43.     HS3 brought the SAC against Mr. Hall, even though his claims were without probable cause for the multiple reasons given above, because he desired to harm Mr. Hall and Burford, both financially and reputationally.  HS3, angry at losing a highly-publicized lawsuit and being forced to pay nearly $33 million to Mr. Al-Saleh and Burford Capital, harbored deep-seated ill will toward Burford Capital and Mr. Hall.  The SAC itself described the litigation as a "bitter, global feud" between HS3, Mr. Al-Saleh and Mr. Hall.  SAC ¶ 31.  HS3's bitterness toward Mr. Hall and Burford Capital did not end with the Settlement Agreement and Release.

44.     In fact, HS3's bitterness toward Mr. Hall and Burford Capital intensified after the *Wall Street Journal* published an article on November 7, 2017, entitled *Jet-Set Debt Collectors Join a Lucrative Game:  Hunting the Superrich*.  *See* Ex. F.  The article profiled Mr. Hall by chronicling his efforts to chase HS3's assets across the globe.  It also highlighted HS3's lavish lifestyle, his legal maneuvers to hide and protect his assets around the globe, and his efforts to

evade legal process to avoid execution of the Florida Judgment.  Approximately three months

after the article's publication, after the deadline for joinder of parties had already passed, HS3

filed the SAC naming Mr. Hall.  HS3 filed the SAC notwithstanding the lack of probable cause

for his claims, in retaliation against Mr. Hall and Burford Capital for their role in assisting Mr.

Al-Saleh his acrimonious litigation against HS3.  As a result, Mr. Hall and Burford Capital were

forced yet again to spend time and money responding to HS3's baseless and abusive litigation

tactics.

### COUNT I:
### DECLARATORY JUDGMENT
### (ON BEHALF OF ALL PLAINTIFFS)

45.     Plaintiffs incorporate by reference the preceding allegations.

46.     As alleged above, HS3 sued Mr. Hall in the Related Federal Action by joining

him in the SAC.  Although HS3 voluntarily dismissed the SAC, that dismissal was without

prejudice.  Mr. Hall therefore is subject to an ongoing, real, and concrete threat that the claims

will be refiled.

47.     Mr. Hall is entitled to a declaratory judgment of nonliability to HS3.  First, HS3's

claims against Mr. Hall in the Related Federal Action are barred by the Settlement Agreement

and Release.  Second, Mr. Hall is not liable to HS3 because (1) there was no underlying violation

of the CFAA or Florida state law; (2) Mr. Hall did not knowingly agree with his co-defendants to

violate the CFAA or Florida state law; and (3) Mr. Hall did not knowingly agree with his co-

defendants to invade HS3's privacy.

48.     Plaintiffs Burford Capital and Dundrod have standing to seek a declaration of

nonliability to HS3.  Burford Capital and Dundrod are also releasees and third-party beneficiaries

entitled to enforce the Settlement Agreement and Release.  There is an actual controversy

between Burford Capital, Dundrod, and HS3 because Burford Capital and Dundrod are at risk of being held vicariously liable if Mr. Hall is found liable to HS3.  Moreover, the breach of contract claim asserted by Burford Capital and Dundrod against HS3 (*see* Count II) creates an actual controversy between the parties as to whether the claims in the Related Federal Action are covered by the Settlement Agreement and Release.

49.     Plaintiffs are therefore entitled to a declaration under 28 U.S.C. § 2201 that the claims in the SAC against Mr. Hall are barred by the Settlement Agreement and Release, that the conduct alleged in the SAC does not give rise to liability to HS3, and that HS3 is barred from again bringing those claims against Plaintiffs.

50.     Plaintiffs are also entitled under 28 U.S.C. § 2202 to preliminary and permanent injunctive relief prohibiting HS3 from bringing the baseless claims in the Related Federal Action against any of the Plaintiffs in violation of the Settlement Agreement and Release.

**COUNT II:**
**BREACH OF CONTRACT**
**(ON BEHALF OF ALL PLAINTIFFS)**

51.     Plaintiffs incorporate by reference the preceding allegations.

52.     As alleged above, HS3's claims against Mr. Hall in the Related Federal Action are barred by the Settlement Agreement and Release.

53.     HS3's filing of the SAC in the Related Federal Action constituted a breach of the Settlement Agreement and Release.

54.     Plaintiffs are third-party beneficiaries under § 22 of the Settlement Agreement and entitled to assert a claim for breach of the same.

14

55. HS3's breach is an Actionable Event under § 13 of the Settlement Agreement. Therefore, HS3 is liable under § 14 of the Settlement Agreement in an amount to be determined, but at least $13.8 million.

56. Alternatively, HS3 is liable for damages, including compensatory damages, caused by his breach of the Settlement Agreement and Release.

57. As a result of his breach, HS3 is also liable under § 36 of the Settlement Agreement for Plaintiffs' reasonable attorneys' fees and costs, in an amount to be determined.

58. Plaintiffs are also entitled to preliminary and permanent injunctive relief prohibiting HS3 from bringing the claims in the Related Federal Action against any of the Plaintiffs in violation of the Settlement Agreement and Release.

## COUNT III:
## MALICIOUS PROSECUTION
## (ON BEHALF OF DANIEL HALL AND BURFORD CAPITAL)

59. Plaintiffs incorporate by reference the preceding allegations.

60. HS3 caused the SAC in the Related Federal Action to be filed against Mr. Hall.

61. HS3 lacked probable cause for asserting claims against Mr. Hall in the Related Federal Action. HS3 knew that the claims against Mr. Hall in the Related Federal Action were barred by the Settlement Agreement and Release. HS3 personally executed the Settlement Agreement and Release on or around January 9, 2017, with advice of competent counsel, and HS3 had knowledge of its contents. HS3 knew – or reasonably should have known – that the claims against Mr. Hall in the Related Federal Action were released claims. HS3 also lacked probable cause to believe that Mr. Hall knew about or agreed to participate in any violations of federal or Florida law by his co-defendants.

15

62.     HS3 acted with actual malice by prosecuting the Related Federal Action against Mr. Hall.  HS3 brought the SAC against Mr. Hall in retaliation against – and with animosity toward – Mr. Hall and Burford Capital, because of their role in assisting Mr. Al-Saleh in enforcing the Florida Judgment and because of his anger at the *Wall Street Journal's* unflattering coverage of him in the article about Mr. Hall.  Because of that animosity and ill will, HS3 sought to do harm to Mr. Hall and Burford Capital for harm's sake.

63.     HS3 also acted with legal malice by prosecuting the Related Federal Action, which may be inferred from the lack of probable cause underlying the Related Federal Action and HS3's gross negligence to the rights of Mr. Hall and Burford Capital.  Among other things, as set forth above, HS3's claims were plainly barred by the Settlement Agreement and Release.

64.     The voluntary dismissal of the Related Federal Action was a bona fide termination of the action in favor of Mr. Hall.  HS3 voluntarily dismissed his claims against Mr. Hall only after Magistrate Judge Reinhart issued the R&R in the Related Federal Action recommending that both claims against Mr. Hall be dismissed because of the absence of plausible, non-conclusory allegations supporting those claims.  Alternatively, the declaratory and injunctive relief sought herein will, once granted, constitute bona fide termination of the Related Federal Action in favor of Mr. Hall.

65.     Plaintiffs suffered damages as a result of HS3's unlawful conduct, including but not limited to attorneys' fees and costs, in an amount to be determined.

66.     Plaintiffs are also entitled to preliminary and permanent injunctive relief prohibiting HS3 from bringing the claims in the Related Federal Action against any of the Plaintiffs.

16

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief:

1.      A declaration and judgment pursuant to 28 U.S.C. § 2201 that Plaintiffs are not liable to HS3 for any of the transactions or occurrences alleged in the Related Federal Action because:

   a. HS3's claims are barred by the Settlement Agreement and Release; and

   b. Mr. Hall did not conspire to violate the CFAA or Florida law.

2.      An order permanently enjoining HS3 from refiling the claims in the Related Federal Action, or any other claims based on events that occurred on or before October 28, 2016, against Plaintiffs.

3.      Damages in an amount to be determined.

4.      Attorneys' fees and costs.

5.      Punitive damages.

6.      Such further relief as the Court deems just and equitable.

Dated:  June 8, 2018

Respectfully submitted,

By: */s/ Samuel A. Danon*
Samuel A. Danon
Fla. Bar No. 0892671
sdanon@HuntonAK.com
Armando Cordoves, Jr.
Fla. Bar No. 112425
acordoves@HuntonAK.com
**HUNTON ANDREWS KURTH LLP**
Sabadell Financial Center
1111 Brickell Avenue, Suite 2500
Miami, FL 33131
Telephone: (305) 810-2510
Facsimile: (305) 810-2460


Derek T. Ho
Andrew E. Goldsmith
**KELLOGG, HANSEN, TODD, FIGEL**
 **& FREDERICK, P.L.L.C.**
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
Facsimile: (202) 326-7999
dho@kellogghansen.com
agoldsmith@kellogghansen.com


*Attorneys for Plaintiffs*