# Exhibit 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No. 06-60210-CIV-GRAHAM



FILED by ___ D.C.

MAY 10 2006

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

ANDRX THERAPEUTICS, INC.,

    Plaintiff,

vs.

MALLINCKRODT, INC.,

    Defendant.
_____/

## ORDER

**THIS CAUSE** comes before the Court upon Defendant Mallinckrodt, Inc.'s Motion to Dismiss Plaintiff's Complaint [D.E. 14] and Memorandum in Support of Defendant Mallinckrodt, Inc.'s Motion to Dismiss [D.E. 15].

**THE COURT** has reviewed the Motion, the pertinent portions of the record, and is otherwise duly advised in the premises.

### I. BACKGROUND

On July 1, 2001, Defendant Mallinckrodt, Inc. and non-party Andrx Labs entered into a Supply and Marketing Agreement. Under the Agreement, Andrx Labs was required to purchase from Mallinckrodt all of Andrx Lab's commercial requirements for a pharmaceutical product manufactured by Mallinckrodt known as Anexsia. On September 27, 2001, the parties entered into an Amended and Restated Supply and Marketing Agreement, and a related Anexsia Trademark License Agreement. The September 27, 2001 Agreements had the same business purpose as the July 1, 2001



Case 9:06-cv-80428-RJA   Document 293   Entered on FLSD Docket 05/12/2008   Page 3 of 13

Agreement.

Plaintiff Andrx Therapeutics, Inc. is the "legal successor in interest to certain assets of [non-party] Andrx [Corp.]." "[Andrx Corp.] acquired the assets of Andrx [Labs], when it was dissolved in December 2005." Plaintiff is the "legal successor and assignee to the Agreements in all respects, including as to their performance and enforcement..."

According to Plaintiff, the parties performed under the Agreements until December 21, 2005 when Mallinckrodt sent what Plaintiff has characterized as a "Default Letter" listing various breaches of the Agreements. Mallinckrodt's general concern was that Plaintiff was not marketing Anexsia in the contractually required "commercially reasonable" manner. Defendant asserted that Plaintiff's lack of marketing efforts caused a significant decrease in the royalty payments it received from Plaintiff. Finally, on February 7, 2006, Mallinckrodt sent Plaintiff a "Termination Letter" purporting to terminate the parties' Agreements. Along with the Termination Agreement, Mallinckrodt refunded to Plaintiff $100,000 that Plaintiff had paid to it, presumably as royalties under the parties' Agreements.

Plaintiff admits a significant decrease in the royalty payments it made to Mallinckrodt after it: (1) eliminated its brand division; (2) dismissed a significant amount of its sales staff; and (3) removed Anexsia's product name from its website. Plaintiff alleges however that the elimination of its brand division and

sales staff is irrelevant and that it ultimately returned the Anexsia product name to its website although there was no contractual requirement that it be included there in the first place. In this regard, Plaintiff alleges that the parties' Agreements contemplated that it could decrease its marketing activity of Anexsia after a commercially equivalent generic product was introduced into the market. In support of its position, Plaintiff cites to Section 9 of the Amended and Restated Supply and Marketing Agreement which states in part, "[a]t the time when a third party commercially introduces a generic equivalent to [Anexsia], [Plaintiff] shall be relieved of the responsibility of placing [Anexsia] in a preferred marketing Position or employing the Marketing Compliment with respect to [Anexsia]." Plaintiff alleges that a third party did introduce a generic equivalent thereby relieving its marketing responsibilities with respect to Anexsia. Defendant counters that Plaintiff's position with regard to its duty to continue to market Anexsia is untenable because "[Plaintiff's] primary contractual obligation" was to "use commercially reasonable efforts to maximize sales and Net Sales Revenues of [Anexsia and] [P]laintiff admits that [it] is doing nothing to market or promote [Anexsia but] contends, however, that doing nothing constitutes commercially reasonable efforts..." See, Motion to Dismiss, p. 2.

Plaintiff seeks a declaration from the Court: (1) that the Agreements have not been terminated; (2) to resolve the issues

raised in Defendant's Default Letter; and (3) to give Plaintiff direction with respect to the $100,000 refund from Defendant which Plaintiff has not negotiated in order to avoid an admission that the Agreements have been or should be terminated. In the alternative, Plaintiff seeks damages for breach of contract for anticipatory repudiation, and breach of the duty of good faith.

Also pending in a Missouri state court action filed by Mallinckrodt. Mallinckrodt filed the Missouri action twenty-one (21) days after this action was filed against it. The defendants in the Missouri action are Andrx Labs, and Andrx Corp. and the Plaintiff here, Andrx Therapeutics. The Missouri action involves similar issues as those pending here.

Defendant's motion to dismiss is based on three alternative theories, each of which, Defendant alleges, is individually sufficient to warrant dismissal. First, Defendant argues that Andrx Labs and Andrx Corp. are indispensable parties which Plaintiff, Andrx Therapeutics, has failed to join. Defendant alleges that these indispensable parties can not be joined because they would destroy diversity jurisdiction and therefore this action should be dismissed under Federal Rule of Civil Procedure 19 for failure to join an indispensable party. Second, and alternatively, Defendant argues that the Missouri action "is a superior vehicle for resolving all controversies which are the subject of this case in that all necessary parties have been joined in that case, including Andrx Corp., which is not, and cannot be made, a party

4

here." See, Motion to Dismiss, p. 2. Third, as a further alternative, Defendant argues that the Complaint fails to state a claim upon which relief can be granted because the parties' Agreements "makes clear that, as [Plaintiff's] primary contractual obligation...[Plaintiff] agreed to 'at all times...use commercially reasonable efforts to maximize sales [of Anexsia'" and Plaintiff admits in the Complaint that it is "doing nothing to market or promote [Anexsia]." See, Motion to Dismiss, p. 2.

## II. MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a plaintiff give notice of his claim by including in the complaint a "short and plain statement of the claim showing that the pleader is entitled to relief." See, Fed. R. Civ. Proc. (8)(a)(2); Swierkiewicz v. Soreman, N.A., 534 U.S. 506, 512 (2002). Thus, a complaint shall not be dismissed for "failure to state a claim unless it appears beyond doubt that the plaintiff cannot prove a set of facts which will entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to plaintiff and accept its allegations as true. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Beck v. Deloitte & Touche, 144 F.3d 732 (11th Cir. 1998). Thus, in the context of a motion to dismiss, the issue is not whether plaintiff will ultimately prevail, but "whether the claimant is entitled to offer evidence to

support the claims," as pled. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

### III. DISCUSSION[1]

#### A. Failure to Join an Indispensable Party

Federal Rule of Civil Procedure 19 "provides a two-part test for determining whether an action should proceed in a nonparty's absence. The first question is whether complete relief can be afforded in the present procedural posture, or whether the nonparty's absence will impede either the nonparty's protection of an interest at stake or subject parties to a risk of inconsistent obligations." City of Marietta v. CSX Transp., Inc., 196 F.3d 1300, 1305 (11th Cir. 1999). If the answer to this threshold question suggests the need for the presence of the non-party, the court must consider whether "'in equity and good conscience,' the action should go forward as cast." Id. In making this determination, the court considers four factors: "first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's

---

[1] The Amended and Restated Supply and Marketing Agreement contains a New York choice of law clause which the parties agree requires the application of New York law. Accordingly, the Court applies New York law where appropriate.

6

absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." See, Fed. R. Civ. Proc. 19(b).

In this case, the answer to the threshold question indicates that Andrx Corp. and Andrx Labs do not need to be joined. Plaintiff's complaint seeks relief based on Agreements entered into between Defendant and Andrx Labs. However, the complaint alleges that Plaintiff, Andrx Therapeutics, is the "legal successor in interest to certain assets of [non-party] Andrx [Corp.]." "[Andrx Corp.] acquired the assets of Andrx [Labs], when it was dissolved in December 2005." Plaintiff also alleges that it is the "legal successor and assignee to the Agreements in all respects, including as to their performance and enforcement..." Accordingly, Plaintiff Andrx Therapeutics, has acquired the right to bring this action. Plaintiff's claims, however, remain subject to the same defenses that Defendant had against Plaintiff's predecessors and assignors. GMAC Commercial Credit LLC v. Spring Ind., Inc., 171 F.Supp.2d 209, 214 (S.D.N.Y. 2001). Andrx Corp. and Andrx Labs do not need to be present as parties for Defendant to cite to their breaches in its defense. As Plaintiff correctly points out, "to follow Mallinckrodt's logic, entry into an assignment would require that all original parties on one side of a contract would have to be named in any future litigation arising out of that contract, as a matter of mandatory joinder, no matter the number of assignments along the way." See, Opp. to Motion to Dismiss, p. 9. The law

7

does not require such joinder.

Additionally, Defendant's reliance on paragraph 25 of the Amended and Restated Supply and Marketing Agreement as a bar on assignment of the Agreements is misplaced. Paragraph 25 states:

> [t]his Agreement shall inure to the benefit and be binding upon the parties hereto, their successors and assigns; provided, however, that neither party shall, without the prior written consent of the other party, assign or transfer any of its right, benefits, obligations, or other interest under this Agreement to any other party, except that, without seeking the consent of the other party, either party may assign this Agreement to an Affiliate; provided that, such assignment shall not operate to relieve the assigning party of any liability or responsibility hereunder, absent the express written agreement of the other party.

Defendant does not dispute that Plaintiff, Andrx Therapeutics, and non-party Andrx Corp. are affiliates of Andrx Labs. Andrx Labs therefore could assign the Agreements to Andrx Corp. or Andrx Therapeutics without Plaintiff's consent. The fact that the Agreement states that the assignment does not relieve Andrx Labs of any "liability or responsibility" is irrelevant and merely a correct statement of New York law. Defendant therefore still has available to it any claims properly brought against Andrx Labs or Andrx Corp. Such claims make Andrx Labs and Andrx Corp. proper defendants, not plaintiffs, in an action brought by Mallinckrodt.

B. The Missouri Action

Defendant argues that the Missouri action filed by it twenty-one (21) days after this action is the most appropriate vehicle for

resolution of all the disputes stemming from the Agreements at issue here. In support of its argument, Defendant cites to <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277 (1995); <u>Brillhart v. Excess Ins., Co.</u>, 316 U.S. 491 (1942); <u>Ameritas Variable Life Ins., Co. v. Roach</u>, 411 F.3d 1328 (11th Cir. 2005); <u>Angora Enterprises, Inc. v. Condominium Ass'n of Lakeside Village, Inc.</u>, 796 F.2d 384 (11th Cir. 1986); and <u>Ven-Fuel, Inc. v. Dept. of the Treasury</u>, 673 F.2d 1194 (11th Cir. 1982). This line of cases discusses a court's discretion in deciding whether to exercise jurisdiction over a declaratory judgment action when there is a parallel state court action. Plaintiff's claim here however besides seeking declaratory judgment also seeks damages for breach of contract. None of the cases cited by Defendant involve a situation similar to that here where in addition to seeking declaratory relief the plaintiff is also seeking damages for breach of contract.

The line of cases discussing the Colorado River Doctrine is the most applicable under the circumstances here where there is a declaratory judgment count and counts for breach of contract. "<u>Colorado River</u> addresses the circumstances in which federal courts should abstain from exercising their jurisdiction because a parallel lawsuit is proceeding in one or more state courts." <u>Ambrosia Coal & Constr. Co. v. Pages Morales</u>, 368 F.3d 1320, 1327 (11th Cir. 2004). Under these circumstances, abstention may be proper based on considerations of "wise judicial administration, giving regard to conservation of judicial resources and

comprehensive disposition of litigation." <u>Colorado River Water Conservation Dist. v. U.S.</u>, 424 U.S. 800, 817 (1976) (citations omitted). However, as the Supreme Court recognized, "[g]enerally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction...'" <u>Id</u>. Factors that a court should look at in deciding whether to dismiss in favor of a parallel state court proceeding include, the desirability of avoiding piecemeal litigation, and the order in which jurisdiction was obtained by the concurrent forums. <u>Id</u>. at 818. Finally, the Supreme Court cautioned that "[o]nly the clearest justifications will warrant dismissal" of the federal court action. <u>Id</u>.

In this case, these factors weigh against dismissal. Defendant acknowledges that this action was filed before the Missouri action, thereby triggering the first filed rule. <u>Id</u>. Regarding the desirability of avoiding piecemeal litigation, Defendant repeatedly asserts through its moving papers that Andrx Corp. and Andrx Labs could not be parties in this action without destroying diversity jurisdiction. However, the question of whether diversity jurisdiction would be destroyed if Andrx Corp. and Andrx Labs were joined as third party defendants is an open question in this circuit. <u>See</u>, <u>Ameritas Variable Life Ins. Co.</u>, 411 F.3d at 1331 ("the district court expressed concern about its ability to appropriately exercise supplemental jurisdiction over

10

the non-diverse third-party litigants if [defendant] were to seek to join them. The district court noted that the question is an open one in the Eleventh Circuit and the Supreme court...") Therefore, it is not entirely clear that piecemeal litigation would result if this action was not dismissed. Accordingly, the "clear[] justifications" required for dismissal do not exist in this action. Colorado River Water Conservation Dist., 424 U.S. at 818.

C.  Failure to State a Claim

Defendant argues alternatively that the complaint should be dismissed for failure to state a claim. In support of this argument, Defendant asserts that Plaintiff's efforts to market Anexsia were not "commercially reasonable." However, whether Plaintiff's efforts in fact were or were not "commercially reasonable" is not a proper inquiry at the motion to dismiss stage because it goes to the merits of Plaintiff's complaint. In the context of a motion to dismiss, the issue is not whether plaintiff will ultimately prevail, but "whether the [plaintiff] is entitled to offer evidence to support the claims," as pled. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). In this case, Plaintiff has sufficiently pled the elements of its claims for declaratory judgment and breach of contract so as to be "entitled to offer evidence to support [these] claims." Id.

IV. CONCLUSION

Based on foregoing, it is

**ORDERED AND ADJUDGED** that Defendant Mallinckrodt, Inc.'s Motion to Dismiss Plaintiff's Complaint [D.E. 14] with Memorandum in Support of Defendant Mallinckrodt, Inc.'s Motion to Dismiss [D.E. 15] is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 10th day of May, 2006.

DONALD L. GRAHAM
UNITED STATES DISTRICT JUDGE

cc: All Counsel of Record