## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No: 9:18-CV-80748- BLOOM/REINHART

DANIEL HALL, BURFORD
CAPITAL LLC, and DUNDROD
INVESTMENTS LTD.,

      Plaintiffs

      vs.

HARRY SARGEANT, III,

      Defendant.

_____

## <u>REPORT AND RECOMMENDATION ON<br>DEFENDANT'S MOTION TO DISMISS (DE 21)</u>

This matter is before the undersigned on an Order of Referral from the presiding District Judge. DE 26. Defendant Harry Sargeant III ("Sargeant" or "Defendant") moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. The undersigned has reviewed the Complaint (DE 1), the Motion to Dismiss (DE 21), Responses filed by Plaintiffs (DE 25), and Defendant's Reply (DE 28). The Court heard oral argument on the Motion on September 20, 2018. DE 40 (transcript). This matter is ripe for decision. For the reasons stated below, the undersigned RECOMMENDS that (1) the Motion to Dismiss Count I be DENIED as to all Plaintiffs, (2) the Motion to Dismiss Count II be DENIED as to all Plaintiffs, (3) the Motion to Dismiss Count III be GRANTED as to Burford Capital, LLC, and be DENIED as to Daniel Hall.

## ALLEGATIONS IN THE COMPLAINT[1]

*The Al-Saleh Litigation*

In 2008, Mohammed Al-Saleh sued Sargeant and others in the Florida Circuit Court in and for Palm Beach County. ¶ 16.[2] In October 2010, Plaintiff Dundrod Investments Ltd. ("Dundrod") entered into an agreement with Al-Saleh to provide litigation funding to assist Al-Saleh in his litigation against Sargeant. ¶ 17. In addition, Dundrod's affiliate, Plaintiff Burford Capital, LLC ("Burford") provided consulting advice to Al-Saleh and his counsel. *Id*. On July 27, 2011, following a trial, a Florida state court jury awarded Al-Saleh a judgment against Sargeant for $28.8 million judgment plus costs and pre-judgment interest. (the "Florida Judgment"). The Florida Judgment was affirmed on appeal and became a final, valid, enforceable judgment. ¶ 18-19.

Al-Saleh took steps to collect the Florida Judgment. In 2014, Al-Saleh's counsel retained Plaintiff Daniel Hall ("Hall"), who was then a principal of Focus Intelligence Ltd. ("Focus"), an asset-tracing and corporate investigations firm in the U.K. ¶ 20. Hall and Focus were retained to conduct investigative work on behalf of Al-Saleh to locate Defendant's assets and assist in efforts to execute the Florida Judgment upon those assets. *Id*. In 2015, an affiliate of Burford acquired Focus. ¶ 21. From that point forward, Hall acted not only on behalf of Al-

---

[1] For purposes of this Motion, the Court accepts all well-pled factual allegations in the Complaint, and all attachments thereto, as true and evaluates all plausible inferences derived from those facts in favor of the Plaintiffs. *See Chaparro v. Carnival Corp.,* 693 F.3d 1333, 1337 (11th Cir. 20112); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC,* 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true.").

[2] All paragraph citations (noted as "¶" or "¶¶") are references to the numbered paragraphs in the Complaint.

Saleh, but also on behalf of Burford and Dundrod, in providing assistance to Al-Saleh and his counsel in pursuing enforcement of the Florida Judgment. *Id.*

On October 4, 2016, after protracted litigation in multiple jurisdictions, Al-Saleh and Sargeant entered into a comprehensive settlement agreement. ("Original Settlement Agreement"). ¶ 22; DE 1-1. The Original Settlement Agreement acknowledged (1) that Sargeant then owed Al-Saleh $39,635,590.22 in final, non-appealable judgments, which were accruing interest at a rate of $4,196.97 per day and (2) that Al-Saleh and those working on his behalf had spent more than $8 million since the July 2011 jury verdict trying to enforce the judgments. ¶ 22; DE 1-1, Recitals E, F. Sargeant agreed to stop trying to prevent collection of the Florida Judgment. ¶ 22. In return, Al-Saleh agreed to accept approximately $33 million spread over several payments. ¶ 22; DE 1-1, § 4.

The Original Settlement Agreement also called for Sargeant to execute a release in favor of Burford, Dundrod, and Al-Saleh within 10 business days, and provided that those releases were incorporated as part of the Original Settlement Agreement. ¶ 23; DE 1-1, § 2.1. It further required Sargeant to "do, and cause to be done, all such additional acts and things, required to be delivered or done pursuant to, or necessary or proper in order to give effect to, all of the terms and provisions of [the Settlement Agreement]." DE 1-1, § 18.

If certain "Actionable Events" occurred, Sargeant would again owe Al-Saleh the full amount of the Florida Judgment. ¶ 23; DE 1-1, §§ 13, 14. One of the Actionable Events was that Sargeant "defaults in the performance of" the Original Settlement Agreement. DE 1-1, § 13(b). A "key part of the agreement was that Defendant would again be liable for the full amount owed if he resumed litigation." ¶ 7.

The parties amended the Original Settlement Agreement effective January 6, 2017. ("Amendment" and, together with the Original Settlement Agreement, the "Settlement Agreement"). ¶ 24; DE 1-2. The Amendment reduced Sargeant's total payment obligation by $190,000 in exchange for payment of the full outstanding amount by January 10, 2017. ¶ 24; DE 1-2. § 1. It also provided that the parties would complete the exchange of the releases required by the Original Settlement Agreement by January 9, 2017. ¶ 24; DE 1-2, § 3. It further provided that upon full payment of the settlement amount, Sargeant "will have fully performed [his] obligations pursuant to the Settlement Agreement and no Actionable Event will have occurred." DE 1-2, § 5. Neither Hall, Burford, nor Dundrod was a signatory to the Amendment.

On January 9, 2017, Sargeant delivered a release, as required by the Settlement Agreement (the "Release"). ¶ 25; DE 1-3. The "Releasees" under the Release were Al-Saleh, Burford, and Dundrod, as well as "all persons or entities for whose acts or omissions the foregoing would or could be derivatively or vicariously liable or to whom the foregoing could or would owe indemnification." DE 1-3 at pp. 3-4. The effective date of the Release was October 28, 2016. ¶ 26; DE 1-2 at p. 5. It covered:

> any and all manner of actions, causes of action, suits, debts, costs, loss of services, obligations, liabilities, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, disputes, trespasses, damages, judgments, executions, claims and demands whatsoever, regardless of whether known or unknown, fixed or contingent, accrued or un-accrued, liquidated or unliquidated, at law or in equity or under federal, state, local, statutory or common law, foreign, international, or other law, rule, or regulation [that Sargeant] ever had or now has, upon, by reason of, arising out of, or in connection with any matter, cause, or thing whatsoever, including, but not limited to, any matter, cause, or thing whatsoever relating to the relationship between RELEASORS and RELEASEES, from the beginning of the world to the date hereof.

¶ 26; DE 1-2 at p. 3. The Release specifies that it is "intended to be contractual in nature" and to be "broadly construed in favor of the RELEASEES." ¶ 26; DE 1-3 at pp. 3, 5.

4

Hall was a third-party beneficiary of the Settlement Agreement because he was a legal representative of Burford, Dunrod, and Al-Saleh and was working on behalf of Burford, Dundrod, and Al-Saleh. ¶¶ 27, 28. The Release inured "to the benefit of the successors and assigns of RELEASEES." DE 1-3 at p. 4.    Al-Saleh assigned the Florida Judgment to Dundrod effective January 12, 2017. ¶ 29.

On January 13, 2017, Al-Saleh recorded Satisfactions of Judgment with the Palm Beach County Clerk of Court indicating that the Florida Judgment has been satisfied. DE 21-2.[3]

*The Prior Federal Action*

After the Settlement Agreement was executed, Sargeant filed in this Court the case of *Harry Sargeant, III v. Maroil Trading, Inc., et al.*, Case No. 17-CV-81070-Bloom/Reinhart ("Prior Federal Action"). On February 20, 2018, a Second Amended Complaint ("SAC") was filed, which joined Hall as a new defendant. DE 1-4. The SAC alleged:

- in or about August 2016, Hall was "engaged as an investigator in a bitter, global feud with [Sargeant] seeking recovery of millions of dollars from [Sargeant] on behalf of a separate Burford client, Mohammed Al-Saleh." DE 1-4 at ¶ 31.

---

[3] The Satisfactions of Judgment were attached as Exhibit 2 to Sargeant's Motion to Dismiss. Attached as Exhibit 1 was a complaint filed in the 15th Judicial Circuit Court in and for Palm Beach County on June 21, 2018, captioned *Harry Sargeant, III v. Daniel Sargeant, Latin American Investments, Ltd., an Isle of Man company, Andrew Preston, and Daniel Hall* ("the State Court Action"). DE 21-1. Having heard no objection from the Plaintiffs, the Court takes judicial notice of the documents attached to the Motion.  *See Jacobs v. Estefan*, No. 15-22393-CV, 2016 WL 9632885, at *3 (S.D. Fla. July 6, 2016) (J. Goodman) (finding courts can take judicial notice of public records, such as court filings, and may consider any exhibits attached to a motion to dismiss without converting it into a summary judgment motion, where the exhibits are central to the claims in the complaint and are undisputed) (citing *Horne v. Potter*, 392 Fed.Appx. 800, 802 (11th Cir. 2010)).

- on or about October 6, 2016, and again on October 28, 2016, Daniel Sargeant (Defendant's brother) and Latin American Investments Limited ("LAIL") made unauthorized access to a computer server maintained by Defendant's former employer in order to obtain certain personally sensitive materials that Defendant had left behind on the server ("the Sargeant Material") when he separated from employment in 2012. ¶ 1; DE 1-4 at ¶ 36.

- On or about October 28, 2016, Hall obtained the Sargeant Material in exchange for information that Hall had obtained from a different Burford client ("the Ruperti Material"), which was of value to Daniel Sargeant, LAIL, and Andrew Preston (LAIL's UK lawyer) in an unrelated matter. DE 1-4 at ¶¶ 30-37.

- In or about May 2017, Hall sought compensation from LAIL, Daniel Sargeant, and Preston for providing the Ruperti Material to them in exchange for the Sargeant Material. DE 1-4 at ¶ 39-40.

- "Upon information and belief, Hall on or about October 28, 2016, and thereafter further publicized the [Sargeant] Material to others within Burford, and to an unknown number of other persons, through electronic and/or other means." ¶111.

Hall was a named defendant in two counts of the SAC. Count II alleged that Hall conspired with Daniel Sargeant, LAIL, and Preston to "unlawfully obtain" the Sargeant Material by intentionally accessing the server, in violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(b). DE 1-4 at ¶¶ 53-62. Count VIII of the SAC alleged that Hall,

Daniel Sargeant, LAIL, and Preston engaged in a civil conspiracy to violate the Florida Computer Abuse and Data Recovery Act ("CADRA") and to invade Sargeant's privacy by intrusion and publication of private facts. DE 1-4 at ¶¶ 106-118. The SAC did not mention the Settlement Agreement or the Release. ¶ 5

Hall moved to dismiss the SAC for failure to state a claim upon which relief could be granted. DE 1-5 at p. 3. That motion was referred to the undersigned for a Report and Recommendation. *Id.*

On May 30, 2018, the undersigned issued a Report and Recommendation finding that Counts II and VIII against Hall should be dismissed without prejudice under Federal Rule of Civil Procedure 12(b)(6). DE 1-5 (hereinafter "R&R"). The R&R recommended dismissal of these counts against Hall because: (1) the SAC failed to allege sufficient facts to establish a plausible claim that Hall's co-defendants accessed the server without proper authorization, as required by the CFAA or CADRA (R&R at p. 14)[4]; (2) that the SAC failed to allege sufficient facts to establish a plausible claim that Hall "agreed to obtain the [Sargeant] Materials without proper authorization or that he knew that the [Sargeant] Materials were to be obtained without proper authorization (R&R at pp. 25-26); (3) the SAC contained inadequate factual allegations that Hall was aware that the Sargeant Material would be obtained from a location in which Defendant had a reasonable expectation of privacy (R&R at p. 32), and (4) the SAC failed to adequately plead that the Sargeant Material was publicly disclosed (R&R at p. 30). *See generally*, ¶ 2.

After the issuance of the R&R, Hall and the other defendants in the Prior Federal Action requested a stay of discovery pending resolution of any objections to the R&R. ¶ 3. Sargeant opposed that motion, insisting that discovery proceed even though the R&R recommended that

---

[4] Citations herein to the pages of the R&R or other pleadings refer to the page number assigned by the CM/ECF system, not the page numbers in the original document.

Hall be dismissed from the case. *Id.* The undersigned denied the stay motion. *Id.* Sargeant was authorized to pursue limited discovery to support his claims, "but the scope of that discovery was far narrower than Sargeant had sought." *Id.* In addition, Hall and the other defendants were authorized to seek discovery from Sargeant, including discovery relating to Sargeant's reputation. *Id.*

Under Federal Rule of Civil Procedure 72, Sargeant had until June 13, 2018, to object to the R&R. ¶ 4. Rather than object, on June 4, 2018, Sargeant dismissed his claims voluntarily and without prejudice. *Id.* The instant action was filed on June 8, 2018. DE 1.

*State Court Action*

On June 21, 2018, Sargeant filed the State Court Action. DE 21-1. It alleged that Hall conspired with Daniel Sargeant and LAIL to invade Harry Sargeant's privacy by publishing the Sargeant Material to third parties. DE 21-1 at p. 17-18. It also alleged that Hall conspired with Daniel Sargeant, LAIL, and Preston to invade Harry Sargeant's privacy and to violate CADRA "by unlawfully obtaining, using, and publicizing the [Sargeant] Material." DE 21-1 at p. 19. It did not re-allege the CFAA conspiracy claim that had been asserted in the Prior Federal Action.

## LEGAL STANDARD FOR MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy the Rule 8 pleading requirements, a complaint must provide the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly,* 550 U.S. at 570); *see also Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1288-90 (11th Cir. 2010).

## DISCUSSION

*Count I – Declaratory Judgment*

Count I seeks a declaration that "the claims in the SAC against Mr. Hall are barred by the Settlement Agreement and Release, that the conduct alleged in the SAC does not give rise to liability to [Sargeant], and that [Sargeant] is barred from again bringing those claims against Plaintiffs." ¶ 49; *see also* ¶ 6 ("Plaintiffs seek a declaratory judgment, pursuant to 28 U.S.C. § 2201, that Mr. Hall is not liable to [Sargeant] for the claims asserted in the SAC because (1) those claims are  barred by the Settlement Agreement and Release and (2) Mr. Hall did not conspire to violate the  CFAA or Florida law."). Sargeant argues that this Court should defer to the State Court Action and abstain from deciding Count One. The court finds that abstention is not warranted.

As a preliminary matter, the parties dispute which abstention doctrine, if any, the Court should apply. Sargeant's Motion sought abstention under the *Wilton-Brillhart* doctrine. DE 21 at pp. 7-12. *See Wilton v. Seven Falls Co.,* 515 U.S. 277 (1995); *Brillhart v. Excess Ins. Co. of Am.,* 316 U.S. 491 (1942); *Ameritas Variable Life Ins. Co. v. Roach,* 411 F.3d 1328 (11th Cir. 2005). Plaintiffs respond that the *Wilton-Brillhart* doctrine does not apply because the complaint on its

face asserts a mixed claim for declaratory and coercive relief. They argue that a mixed claim is evaluated under the *Colorado River* abstention doctrine, *see Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800 (1976), but that even if the *Wilton-Brillhart* analysis applied, the Court should not abstain. DE 25 at pp. 12-19.[5]

Plaintiffs, citing pre-1981 Fifth Circuit cases, advocate for a bright-line rule that *Wilton-Brillhart* abstention cannot apply to a mixed claim. DE 25 at pp. 13-14; *see PPG Industries, Inc. v. Continental Oil Co.,* 478 F.2d 674, 679 (5th Cir. 1973); *Occidental Life Ins. Co. v. Nichols,* 216 F.2d 839, 842 (5th Cir. 1954); *see generally Mega Life and Health Ins. Co. v. Tordion,* 399 F. Supp. 2d 1366, 1369-70 (S.D. Fla. 2005) (J. Jordan) (collecting cases and holding that *Colorado River*, not *Wilton-Brillhart*, applies to mixed claim). Sargeant argues for a more flexible "heart of the matter" analysis. DE 28 at p. 3; *see West Coast Life Ins. Co. v. Ruth Secaul 2007-1 Ins. Trust,* 2010 WL 11506019 (S.D. Fla. May 14, 2010) (J. Dimitrouleas); *see also Geico General Ins. Co. v. Hampel,* 2011 WL 13217490 at *3 n.2 (S.D. Fla. Nov. 1, 2011) (J. Dimitrouleas) (applying *Wilton-Brillhart* doctrine even though complaint sought attorney's fees and costs in addition to declaratory relief.). Alternatively, Sargeant asserts that the *Wilton-Brillhart* doctrine applies to a mixed claim "'if the claims for coercive relief are frivolous or if the claims for coercive relief were added as a means of defeating *Brillhart.*'" DE 28 at p. 3 (citing and quoting *New England Ins. Co. v. Barnett,* 561 F.3d 392, 395-96 (5th Cir. 2009)). Sargeant argues that both exceptions apply here because Counts II and III "were added solely to aid the Complaint's staying power in federal court." DE 28 at p. 3.

_____

[5] Plaintiffs further argue that Sargeant waived any claim to *Colorado River* abstention because he did not invoke this doctrine in his initial motion. DE 25 at 19 n. 9. Because the Court finds on the merits that *Colorado River* abstention would not be proper, it does not address whether Sargeant waived this argument.

Until overruled, decisions of the Fifth Circuit before October 1, 1981, remain binding precedent on this Court. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981). Sargeant has not identified an Eleventh Circuit decision overturning *PPG Industries,* nor has the Court identified one. Similarly, Sargeant has not pointed to any evidence in the record from which the Court could conclude that Counts II and III are frivolous or were added solely as a means of defeating *Wilton-Brillhart* abstention. To the contrary, as discussed more fully below, the Court finds that Counts II and III each state a claim upon which relief can be granted.[6] Therefore, the Court holds that *Wilton-Brillhart* abstention is not applicable to the mixed claims pled here.

After considering all of the relevant factors, the Court declines to abstain under *Colorado River.*

> Under the *Colorado River* doctrine, when a party seeks coercive relief in addition to declaratory relief, federal courts have a virtually "unflagging obligation . . . to exercise the jurisdiction given them," and should only abstain in "exceptional circumstances." *Colorado River,* 424 U.S. at 813, 817. Thus, the "rule is generally that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal Court having jurisdiction." *Id.* at 817. A federal district court should consider the following factors in deciding whether to dismiss a suit on abstention grounds under *Colorado River*: (1) whether one of the courts has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the potential for piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal or state law will be applied; and (6) the adequacy of each forum to protect the parties' rights. *Ambrosia Coal and Construction Co. v. Morales,* 368 F.3d 1320, 1331 (11th Cir. 2004) (interpreting *Colorado River* and its progeny). In applying these factors, one must

---

[6] The parties also dispute the order in which the Court should consider the sufficiency of the causes of action alleged in the Complaint. Sargeant argues that the Court should first determine if Counts II and III state claims upon which relief can be granted, and if they do not the Court should apply *Wilton-Brillhart* abstention. DE 28 at p. 3. Plaintiffs respond that the Court cannot "slice and dice" the complaint in this manner; they argue that the Court must decide whether to abstain under *Colorado River* before considering whether Counts II and III are sufficiently pled. DE 40 at pp. 33-34. Because the Court holds that *Wilton-Brillhart* abstention is not applicable here, regardless of the order in which the respective causes of action are considered, the Court declines to address the correct "order of operations." *Id.*

keep in mind that the "abstention inquiry must be heavily weighed in favor of the exercise of jurisdiction." *Id.* at 1332.

*Mega Life & Health Ins. Co.,* 399 F. Supp. 2d at 1370.  The Court considers each factor in turn.

The instant action does not involve the disposition of property. The first *Colorado River* factor does not militate in favor of abstention.

The second factor focuses "primarily on the physical proximity of the federal forum to the evidence and witnesses" and whether the state forum would be a more convenient and efficient locale. *See Ambrosia Coal,* 368 F.3d at 1332. The Court takes judicial notice that the federal courthouse in West Palm Beach is approximately three city blocks away from the 15th Judicial Circuit's courthouse. The second factor does not weigh in favor of abstention.

The third factor requires "a threat 'of piecemeal litigation that is abnormally excessive or deleterious,' and a simple dispute over the validity of a contract does not pose such a threat." *Mega Life,* 399 F. Supp. 2d at 1371 (quoting and citing *Ambrosia Coal*).  Plaintiff has not shown that the requisite threat exists.

The fourth factor looks to which court first obtained jurisdiction. The instant action was initiated on June 8, 2018; the State Court Action was filed on June 21, 2018. Thus, this Court first obtained jurisdiction.  In addition, the undersigned is extremely familiar with the issues in the case, having presided over litigation involving the Motion to Dismiss the SAC.

The fifth factor "only strongly favors abstention if the case involves 'complex questions of state law.'" *Id.* (citations omitted). The instant case involves straight-forward issues of Florida law relating to breach of contract and malicious prosecution, which this Court is fully competent to adjudicate.[7]

---

[7] The undersigned notes that the presiding District Judge served on the Florida state bench from 1995 to 2014.

Finally, Sargeant has not shown, nor even argued, that this Court cannot adequately protect his rights. Conversely, Plaintiffs are all citizens of the United Kingdom. ¶¶ 8-10. Sargeant is a citizen of Florida. ¶ 11. Plaintiffs invoke this Court's diversity jurisdiction, which is designed to protect an out-of-state litigant from local bias. *See Lumbermen's Mut. Cas. Co. v. Elbert*, 348 U.S. 48, 54 (1954) (Frankfurter, J., concurring) ("The stuff of diversity jurisdiction is state litigation. The availability of federal tribunals for controversies concerning matters which in themselves are outside federal power and exclusively within state authority, is the essence of a jurisdiction solely resting on the fact that a plaintiff and a defendant are citizens of different States. The power of Congress to confer such jurisdiction was based on the desire of the Framers to assure out-of-state litigants courts free from susceptibility to potential local bias."). While the undersigned has no doubt that the 15th Judicial Circuit could provide a fair and equitable forum to Plaintiffs, Congress has, for policy reasons, afforded them the option to proceed here. Nothing in this record weighs against allowing them their preferred forum. The sixth factor favors retention of federal jurisdiction over this dispute.

Having considered all the required factors, the Court finds that *Colorado River* abstention is not warranted. The Motion to Dismiss Count I should be denied.

*Count II – Breach of Contract*

Count II alleges breach of contract. A party alleging breach of contract must plead (1) the existence of a valid contract, (2) a material breach, and (3) damages. *Rollins, Inc. v. Butland*, 951 So.2d 860, 876 (Fla. Dist. Ct. App. 2006). Sargeant challenges whether the Complaint satisfies the first two elements. DE 21 at p. 13.

Plaintiffs assert that part of the Settlement Agreement was an agreement that Sargeant would not sue Plaintiffs for any conduct that occurred prior to October 28, 2016. The Complaint

further alleges that Sargeant breached the Settlement Agreement by filing the SAC. Sargeant responds that the Settlement Agreement contained a release of claims, which is an affirmative defense, not a covenant not to sue. As such, Sargeant argues, the filing of the SAC cannot give rise to a breach of contract, even if the claims asserted in the SAC were, in fact, released as part of the Settlement Agreement. DE 21 at p. 14; DE 28 at pp. 7-8.

Plaintiffs assert that although the Settlement Agreement does not contain an express covenant not to sue, several provisions of the Settlement Agreement when read together evince such a covenant. DE 40 at pp. 43-45. Sargeant argues that the Settlement Agreement is unambiguous and there is no implied covenant not to sue. DE 40 at pp. 67-68.

As Sargeant argues, a settlement agreement is a contract which must be construed using ordinary principles of contract interpretation. *See* DE 21 at p. 13 (citing *In Re Managed Care Litig.,* 2010 WL 6532985 at *3 (S.D. Fla. Aug. 15, 2010) (J. Moreno). If the Settlement Agreement is unambiguous, the Court must enforce its terms without regard to the intent of the parties. *See Talbott v. First Bank Fla., FSB*, 59 So. 3d 243, 245 (Fla. Dist. Ct. App. 2011). If, however, there is ambiguity, the Court must attempt to discern the intent of the parties, including through the consideration of parole evidence. *Id.*; *see Rosen v. Florida Ins. Guar. Ass'n,* 802 So. 2d 291, 295 (Fla. 2001) (recognizing the "deeply rooted principle of Florida law that the intent of the parties controls interpretation of their releases.").

Here, the Complaint alleges that the intent of the parties to the Settlement Agreement was to foreclose Sargeant from suing Plaintiffs in the future. Plaintiffs further allege that a covenant not to sue arises, at a minimum, from the provisions of the Settlement Agreement which state (1) that the Release is intended to be contractual in nature, (2) that the Release covers "any and all manner of actions, causes of actions, suits, … controversies, … disputes, … claims and demands

whatsoever," and (3) that Sargeant will do all acts necessary to effectuate the Settlement Agreement. DE 25 at 12-13; DE 40 at pp. 43-45. Plaintiffs present a plausible reading of the Settlement Agreement that could create a covenant not to sue if determined to be the intent of the parties. Hence, unless the Settlement Agreement on its face unambiguously excludes the existence of a covenant not to sue, the Court cannot dismiss Count II at this procedural juncture. *See BioHealth Med. Lab., Inc. v. Cigna Health & Life Ins. Co*., 706 F. App'x 521, 524 (11th Cir. 2017). The Settlement Agreement does not unambiguously rule out a covenant not to sue. The Court therefore finds that because the Settlement Agreement could plausibly be read to include a covenant not to sue, the Motion to Dismiss Count II on this basis must be denied.

Sargeant next argues that the filing of the SAC could not violate the Settlement Agreement because that Agreement had been fully performed and concluded, so no Actionable Event could exist. DE 21 at pp. 14-15. Plaintiffs respond that a "default in the performance of [the Settlement] Agreement" is an Actionable Event. DE 1-1 at Sec. 13(b): DE 25 at pp. 22-23. Alternatively, Plaintiffs argue that the Actionable Events are not the exclusive means by which the Settlement Agreement could be breached. DE 25 at pp. 22-23.

Sargeant's argument assumes that the Actionable Events were the sole affirmative duties imposed on him as part of the Settlement Agreement.  *See* DE 40 at p. 21-23.  The Court has determined that the Complaint states a plausible claim that the Settlement Agreement incorporated a covenant not to sue, which would be an additional affirmative duty.  Whether such a covenant actually existed and, if so, how it interacted with Actionable Events provisions of the Settlement Agreement cannot be resolved at this time. Therefore, at this stage of the proceedings, the Court must reject Sargeant's argument that the Settlement Agreement was fully performed and concluded.

Sargeant also argues that Hall cannot assert a breach of the Settlement Agreement because he was not a named party in the Release. DE 21 at pp. 14-15. Plaintiffs respond that the allegations in the SAC and in the Complaint make clear that Hall was, at all relevant times, acting as an agent for Burford and Dundrod and assisting them in enforcing the Florida Judgment on behalf of Al-Saleh. DE 25 at 24. As such, they argue, it is plausible that Dundrod and Burford "would or could" be held vicariously liable for Hall's actions. The Court agrees with Plaintiffs. *See Aequicap Ins. Co. v. CDS Transp., Inc.*, No. 09-61511-CIV, 2010 WL 11506049, at *2 (S.D. Fla. May 11, 2010) (J. Seitz) (vicarious liability can be imposed on an entity by showing that an individual was an agent of that entity and was acting within the scope of employment) (citing *Special Olympics, Fla. v. Showalter*, 6 So. 3d 662, 665 (Fla. Dist. Ct. App. 2009)).

Finally, Sargeant argues that the claims in the SAC involved intentional torts occurring after October 28, 2016, the date of the Release. DE 21 at pp. 15-16. Sargeant therefore argues that these claims were not, and could not be, released. *Id.* The SAC alleged that Hall conspired to obtain the Sargeant Material without proper authorization "on or about October 6, 2016" and "on or about October 28, 2016," and that he exchanged the Ruperti Material for the Sargeant Material "on or about October 28, 2016." DE 1-4 at ¶¶ 30-37. It further alleged that "upon information and belief, Hall on or about October 28, 2016, and thereafter" publicized the Sargeant Material. DE 1-4 at ¶ 111.

The allegation that an event occurred "on or about" a certain date does not lock the pleader into that exact date. The pleader only must prove that the event occurred on a date reasonably close to the date alleged. *See* Eleventh Circuit Pattern Jury Instruction (Criminal) B9.1A. Therefore, viewing the Complaint in the light most favorable to Plaintiffs, the SAC alleged

conduct occurring on or before the date of the Release. It will ultimately be an issue for the finder of fact whether the SAC alleged claims arising after October 28, 2018.

### Count III – Malicious Prosecution

Count Three alleges that the filing of the SAC constituted malicious prosecution of both Hall and Burford. As the Florida Supreme Court recently explained, to prove malicious prosecution, a plaintiff must establish the following elements:

> (1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding.

*Debrincat v. Fischer,* 217 So. 3d 68, 70 (Fla. 2017) (citation omitted).

### 1.  Burford's Malicious Prosecution Claim

Sargeant argues that Burford cannot assert a malicious prosecution claim because Burford was not a party to the Prior Federal Action. DE 21 at pp. 16-17. Burford points to *Rushing v. Bosse,* 652 So. 2d 869 (Fla. Dist. Ct. App. 1995) for the proposition that the current plaintiff need not have been a defendant in the prior proceeding so long as the prior proceeding was "directed against" the current plaintiff. DE 25 at p. 26. In *Rushing,* the Florida appellate court held that a minor child could bring a malicious prosecution claim based on a prior adoption proceeding in which the child was not a named defendant. This holding was based on the appellate court's conclusion that the first element of malicious prosecution required only "the commencement of an original civil or criminal judicial proceeding." *Id.* at 874. The *Rushing* Court stated, "[n]one of the earlier [Florida] supreme court opinions nor prior opinions of this court hold that the plaintiff in a malicious prosecution action must be actually named as a defendant in the first proceeding,

although this would logically follow in most types of civil and criminal proceedings." *Id.* (citation omitted).

Burford cannot maintain a malicious prosecution claim arising from the filing of the SAC because Burford was not a party defendant in the Prior Federal Action. In *Debrincat v. Fischer*, 217 So. 3d 68 (Fla. 2017), which post-dates *Rushing*, the Florida Supreme Court stated that malicious prosecution required a prior judicial proceeding "against the present plaintiff," that the "present plaintiff [was] the defendant in the original proceeding," and that the original proceeding concluded with a bona fide termination "in favor of the present plaintiff." *Id.* at 70. Taken together, these statements make clear that the present plaintiff alleging malicious prosecution must have been a defendant in the prior proceeding. Burford has not cited to any other cases in which a non-party to the original action was permitted to pursue a malicious prosecution claim under Florida law. *See also Antoine v. State Farm Mutual Automobile Ins. Co.,* 662 F. Supp. 2d 1318, 1322-24 (M.D. Fla. 2009) (declining to extend *Rushing* to case where current plaintiff was not a party to original proceeding but was subjected to judgment collection efforts arising from that proceeding).

Even assuming *Rushing* is not limited to its unique facts, Burford has not pled a plausible claim that the Prior Federal Action was "directed against" Burford or that Burford is a "victim" of the Prior Federal Action analogous to the minor child in *Rushing*. The Complaint alleges that Sargeant filed the SAC "because he desired to harm Mr. Hall and Burford, both financially and reputationally." ¶ 43. It further alleges that Burford was required to "spend time and money responding to" the Second Amended Complaint. ¶ 44. It does not contain further factual allegations establishing how or why the filing of the SAC required Burford, a non-party, to spend

time and money. Nor does the Complaint contain factual allegations establishing a plausible claim that Burford was reputationally harmed by the filing of the SAC.

At oral argument, counsel for Plaintiffs stated that Burford was harmed financially because it was required to indemnify Hall's legal fees in the Prior Federal Action. DE 40 at p. 50 That fact is not alleged in the Complaint. Even if that fact were pled, it would not entitle Burford to file a cause of action for malicious prosecution. The Complaint does not allege that Sargeant was aware that Burford would be required to indemnify Hall's defense costs; absent that fact, Burford's obligation to pay Hall's fees, standing alone, does not create an inference that Sargeant directed the SAC at Burford.

Finally, Burford's reading of *Rushing* goes too far. Plaintiff has not cited, nor has the Court identified, any case where the mere existence of an indemnification obligation was sufficient to allow a non-party indemnor to file a malicious prosecution claim. To recognize a malicious prosecution claim arising solely from an indemnification relationship would significantly expand the scope of the malicious prosecution tort. Absent clearer guidance from the Florida state courts, the undersigned declines to read *Rushing* so broadly. Whatever the continuing vitality of *Rushing*, it has no application here.[8]  Burford cannot maintain a malicious prosecution claim.

### 2. Bona Fide Termination

Sargeant next argues that the voluntary dismissal of the SAC without prejudice was not a bona fide termination of the proceedings in favor of Hall. DE 21 at pp. 17-18. The Court finds that the Complaint contains sufficient allegations to establish a plausible claim that the voluntary

---

[8] The Court does not decide whether *Rushing* is limited solely to child custody cases, nor does the Court decide whether the Florida Supreme Court has implicitly overruled *Rushing*.

dismissal of the SAC was a bona fide termination of the proceedings in favor of Hall. Writing for

the Third District Court of Appeal, then-state-Judge Wilkie D. Ferguson explained:

> Generally, whether a withdrawal or abandonment of the proceedings constitutes a favorable termination depends upon the circumstances under which the withdrawal occurs. Where dismissal is on technical grounds, for procedural reasons, or any other reason not inconsistent with the guilt of the accused, it does not constitute a favorable termination. The converse of that rule is that a favorable termination exists where a dismissal is of such a nature as to indicate the innocence of the accused. For example, where a dismissal is taken because of insufficiency of the evidence, the requirement of a favorable termination is met. In order to determine whether the termination of an action prior to a determination on the merits tends to indicate innocence on the part of the defendant one must look to whether the manner of termination reflects on the merits of the case.
>
> In some cases a voluntary dismissal does reflect on the merits, as where the record contains evidence indicating a lack of probable cause. Other voluntary dismissals, however, are either not on the merits or entirely unreflective of the merits in that no implication of a lack of reasonable ground for the action follows from the dismissal.

*Union Oil of California Amsco Div. v. Watson,* 468 So.2d 349, 354 (Fla. Dist. Ct. App. 1985)

(citations omitted). The R&R found that the SAC did not plead sufficient facts to create a

plausible claim that Hall was liable for any of the claims against him. The R&R recommended

giving Sargeant leave to file a Third Amended Complaint, including re-alleging all of the claims

against Hall, supported by additional facts. Sargeant voluntarily dismissed the SAC instead. In

addition, the State Court Action does not re-allege that Hall participated in the CFAA

conspiracy. Viewed in the light most favorable to Hall, these facts establish a plausible claim that

the voluntary dismissal should be treated as a bona fide termination on the merits. In particular,

they raise a plausible inference that Sargeant dismissed the SAC because there were not

sufficient facts to support the causes of action against Hall, especially the CFAA claim.

3.  Probable Cause

Next, Sargeant argues that, even viewing the alleged facts in the light most favorable to the Plaintiffs, there is not a plausible claim that Sargeant lacked probable cause when he filed the SAC. DE 21 at pp. 18-20. For malicious prosecution purposes, probable cause exists if there is "'[a] reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged.'" *Mee Indus. v. Dow Chem. Co.,* 608 F.3d 1202, 1211 (11th Cir. 2010) (citation omitted). "Lack of probable cause can be shown '[w]here it would appear to a 'cautious man' that further investigation is justified before instituting a proceeding,' and such investigation is not undertaken." *Nodal v. Infinity Auto Ins. Co.,* 2011 WL 3297277, at *2 (M.D. Fla. Aug. 2, 2011) (quoting *Harris v. Lewis State Bank,* 482 So.2d 1378, 1382 (Fla. Dist. Ct. App. 1986)).

The SAC alleged that Hall willfully joined a conspiracy to obtain the Sargeant Material by accessing the server without prior authorization. A conspiracy requires proof that a person entered into an agreement to do something that the law forbids and/or joined an existing conspiracy with knowledge of the conspiratorial objective and with the intent to further that objective. *See* Eleventh Circuit Pattern Jury Instructions, (Criminal Cases) (2016), Offense Instruction 13.1, "General Conspiracy Charge," 18 U.S.C. § 371. The SAC did not allege facts to plausibly infer that Hall knew in advance how, or from where, the Sargeant Material would be obtained, let alone that they would be obtained illegally. Similarly, the SAC did not allege facts to plausibly infer that Hall later learned that the Sargeant Material were illegally obtained and formed an intent to further that alleged conspiratorial objective. The SAC also alleged, based purely on speculation and with no factual support, that Hall disseminated the Sargeant Material to others. Viewed in the light most favorable to Hall, the lack of facts to support these core allegations are sufficient to

create a plausible inference that a cautious man would have undertaken further investigation before filing these claims. Therefore, the Complaint sufficiently pleads that Sargeant lacked probable cause for Counts II and VIII of the SAC.

    4.  <u>Malice</u>

Finally, Sargeant argues that the Hall has failed to sufficiently plead malice. DE 21 at p. 20. "In an action for malicious prosecution it is not necessary for a plaintiff to prove actual malice; legal malice is sufficient and may be inferred from, among other things, a lack of probable cause, gross negligence, or great indifference to persons, property, or the rights of others." *Alamo Rent-A-Car, Inc. v. Mancusi,* 632 So. 2d 1352, 1357 (Fla. 1994). "Legal malice, which is also referred to as technical malice or malice in law, 'requires proof of an intentional act performed without justification or excuse.' 'Legal malice may be inferred from one's acts,' and - unlike actual malice - 'does not require proof of evil intent or motive.'" *Olson v. Johnson*, 961 So. 2d 356, 359 (Fla. Dist. Ct. App. 2007) (citations omitted). When viewed in the light most favorable to Hall, the same facts that support a plausible inference of no probable cause also support a plausible inference that Sargeant acted with legal malice.

**<u>RECOMMENDATION</u>**

For the foregoing reasons, the undersigned **RECOMMENDS** that:

1.  The Motion to Dismiss Count I be **DENIED**;

2.  The Motion to Dismiss Count II be **DENIED**;

3.  The Motion to Dismiss Count III be **DENIED** as to Daniel Hall, but be **GRANTED** as to Burford Capital, LLC.  Because the Court holds as a matter of law that Burford

cannot assert a malicious prosecution claim because it was not a party to the Prior Federal Action, it is further **RECOMMENDED** that Burford not be granted leave to amend its Complaint.

## **NOTICE OF RIGHT TO OBJECT**

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Beth Bloom, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**DONE AND SUBMITTED** in Chambers this 1st day of October, 2018, at West Palm Beach in the Southern District of Florida.

_____
BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE