**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 18-cv-80748-BLOOM/Reinhart**

DANIEL HALL, BURFORD CAPITAL, LLC
and DUNDROD INVESTMENTS, LTD.,

      Plaintiffs,

v.

HARRY SARGEANT, III,

      Defendant

_____/

**SARGEANT NON-PARTIES' MEMORANDUM ON FORENSIC**
**IMAGING AND MOTION FOR PROTECTIVE ORDER**

Non-Parties, Daniel Sargeant, Asphalt Services, LLC, Sargeant Bulk Asphalt, Inc., Sargeant Bulktainers, Inc., Sargeant Marine, Inc., Sargeant Trading, Ltd. Co., Trigeant, LLC, Trigeant, Ltd., and Trigeant Holdings, Ltd. (the entities are collectively the "Sargeant Affiliates" and, with Daniel Sargeant, all are the "Sargeant Non-Parties"), pursuant to the Court's Order dated March 8, 2019 [D.E. 129], respectfully submit this memorandum regarding the "request" at the March 6, 2019 hearing by counsel for Defendant, Harry Sargeant III ("HS3"), for a forensic examination of computers and hardware, and move for a protective order pursuant to Rule 26(c) and Rule 45(d) of the Federal Rules of Civil Procedure to prevent any forensic imaging or examination of the Sargeant Server, system or computers.

**Introduction**

At the March 6, 2019 hearing, Melissa Coffey, one of the attorneys for HS3, mentioned HS3 was entitled to forensically inspect and image the Sargeant Server. As explained below, there

is no formal request before the Court for forensic inspection and imaging, and even if there was, such a request would be highly intrusive, harassing, over broad, irrelevant, not proportional to the needs of this case, and impose a significant burden on the Sargeant Non-Parties.

### HS3 Has Not Requested to Forensically Examine The Sargeant Server

First, HS3 has not made a formal request to forensically inspect the Sargeant Server. A review of the Subpoenas *Duces Tecum* (the "Subpoenas") served the Sargeant Non-Parties demonstrate no specific request was ever made by HS3 to forensically inspect and image the Sargeant Server.

Counsel for HS3 informed counsel for the Sargeant Non-Parties three requests ask for forensic inspection/imaging. Request No. 15 of the Subpoena to Daniel Sargeant (which is the same as Request No. 15 of the Subpoenas to the Sargeant Affiliates) seeks:

> 15.    All documents from January 1, 2010 to January 1, 2017 concerning Your ownership, interest in, use, or maintenance of the Sargeant Server, as that term is defined in the Counterclaim Complaint, including service records, policies governing use of the server, and invoices concerning the Sargeant Server.

Although the term "documents" includes hard copy documents and electronically stored information (ESI), a discovery request for "[a]ll documents" is not the equivalent of a request to perform a forensic examination or image a server or computer. This requests seeks documents such as service records, policies governing use of the server, and invoices concerning the Sargeant Server.

Nor do Request Nos 17 and 18 in the Subpoena to Dan Sargeant seek a forensic examination or imaging of the Sargeant Server. Those requests seek:

> 17.    All documents concerning Your obtaining the HS3 Material from the Sargeant Server.

> 18.    All documents concerning your accessing the HS3 Email Account, as that term is defined in the Counterclaim Complaint.

- 2 -

The instructions in the Subpoenas also belie and request for forensic inspection or imaging. They ask the Sargeant Non-Parties to produce the documents "in the order in which they appear in Your files" and to "produce any electronic documents or records in native form with all metadata." HS3's counsel's on the spot "request" at the March 6, 2019 hearing for a forensic examination and imaging should be summarily rejected by the Court.

**Forensic Inspection and Imaging of Non-Party**
**<u>Sargeant Server Is Completed Unwarranted</u>**

Factually and legally, forensic inspection and imaging of non-party Sargeant Server is completed unwarranted. Non-parties are not subject to the same discovery obligations as actual parties to a litigation. When discovery is sought from a non-party, "the Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on the non party." *Fears v. Wilhelmina Model Agency, Inc.*, 02 CIV. 4911, 2004 WL 719185, at *1 (S.D.N.Y. Apr. 1, 2004) (citations omitted). *See also Allen v. Howmedica Leibinger, GmhH*, 190 F.R.D. 518, 521 (W.D. Tenn. 1999); *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993). While a non-party is not relieved of obligations to respond to a proper discovery request, "a non-party to an underlying litigation [is] entitle[d] ... to consideration regarding the convenience and expense of complying with a subpoena for discovery." *Tidwell-Williams v. Nw. Georgia Health Sys., Inc.*, 1:97-CV-1726A-JEC, 1998 WL 1674745, at *7 (N.D. Ga. Nov. 19, 1998) (citing *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996)). The case law regarding non-party discovery "reveals a case-specific balancing test wherein the court must weigh factors such as relevance, the need of the party for the documents, the breadth of the document request, and the time period covered by the request against the burden imposed on the person ordered to produce the desired information."

*Cytodyne Techs., Inc. v. Biogenic Techs., Inc.*, 216 F.R.D. 533, 535 (M.D. Fla. 2003) (citing *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545 (11th Cir. 1985)).

Under Rule 45(d), "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). A subpoena that fails to take such steps "must" be quashed. *See* Fed. R. Civ. P. 45(d)(3)(A)(iv). And the Court "must" impose sanctions on the party or its attorney who fails to comply. *See* Fed. R. Civ. P. 45(d)(1).

A subpoena is overbroad and improper if it seeks documents or information that is irrelevant or not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1) (permitting party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case"); *GMA Accessories, Inc. v. Elec. Wonderland, Inc.*, 07 CIV. 3219 PKC DF, 2012 WL 1933558, at *5 (S.D.N.Y. May 22, 2012) ("As discovery under the Federal Rules is limited in scope to that which is 'relevant to any party's claim or defense,' the court may also quash or modify a subpoena that calls for irrelevant information.") (citation omitted); *accord Marjam Supply Co. of Florida, LLC v. Pliteq, Inc.*, 15-CIV-24363, 2018 WL 1456614, at *4 (S.D. Fla. Mar. 23, 2018) ("Although Rule 45 does not identify irrelevance or overbreadth as grounds for quashing a subpoena, courts treat the scope of discovery under a subpoena the same as the scope of discovery under Rule 26."). The proportionality principle sets boundaries on discovery consonant with "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving tire issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Moreover, the Court

"must quash or modify a subpoena that. . . requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii).

In deciding whether a subpoena imposes an undue burden courts balance the requesting party's need for the discovery against the burden imposed on the subpoenaed party. *Fadalla v. Life Automotive Products, Inc.*, 258 F.R.D. 501, 504 (M.D. Fla. Nov. 27, 2007). Factors courts consider in performing this balancing test include: (1) the relevance of the information requested; (2) the need of the requesting party for its production; (3) the breadth of the request for production; (4) the time period covered by the subpoena; (5) the particularity with which the subpoena describes the requested production; and (6) the burden imposed on the subpoenaed party. *Id.*; *Schaaf v. SmithKline Beecham Corp.*, 2006 WL 2246146, *2 (M.D. Fla. Aug. 4, 2006). "[T]he status of the person as a non-party is a factor often weighing against disclosure." Schaaf, 2006 WL 2246146, at *2; Fed. R. Civ. P. 45(d)(3)(A)(iii)–(iv), (B)(i).

Here, forensic inspection and imaging would clearly violate the limitations of Rule 45's protections afforded non-parties as well Rule 26(b)(1)'s limits on "reasonable" discovery which allows a party to obtain discovery of "non-privileged matter ... *relevant* to any party's claim ... and *proportional* to the needs of the case ... considering the importance of the issues ... access to *relevant* information ... parties' resources ... *importance* of the discovery in resolving the issues ... and whether the *burden or expense ...outweighs the likely benefit*".

Rule 26 does not permit a party to unduly burden and harass a non-party and is not an unlimited license for a fishing expedition. The Sargeant Non-Parties are not parties to the litigation and HS3 cannot simply use the power of the Subpoenas to unilaterally treasure hunt through the Sargeant Non-Parties information, wholly unrelated to the claims of the litigation. Giving HS3, through its "independent" forensic computer expert access or potential access to the Sargeant Non-

Parties proprietary, trade secrets, attorney-client and private information is why HS3 wants access into the Sargeant internal computer systems, network and server. No confidentiality order, restrictions or protocols will matter given HS3's past history.

Forensic inspection and imaging is not relevant to the subject matter of the lawsuit. The Sargeant Non-Parties adopt the Plaintiff's arguments in this regard.

Even if HS3 had made a proper request to inspect and image the Sargeant Server (and he did not), and even if such a request sought relevant information (which it does not), electronic discovery is not an automatic right and relevance is not the only consideration. *See Medtronic Sofamor Danek, Inc. v. Michelson,* 299 F.R.D. 550, 552 (W.D. Tenn. 2003). Discovery has ultimate and necessary boundaries apart from relevance. The Court need not compel discovery if it determines that the request is "unreasonably cumulative or obtainable from some other source that is more convenient, less burdensome, or less expensive or the party seeking discovery has had ample opportunity by discovery to obtain the information or the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* at 552-53 (ellipses and citations omitted); *Cognex Corp. v. Electro Scientific Indus., Inc.,* 2002 WL 32309413, *3 (D. Mass July 2, 2002) ("The fact that the back-up tapes are believed to contain relevant documents does not end the inquiry.").

Information relevant to the issues in this case can be obtained from the production of documents pursuant to the Subpoenas (as narrowed by the Court) and deposition testimony from the Sargeant witnesses. *Cf. Cognex,* 2002 WL 32309413, *5 ("At some point, the adversary system needs to say 'enough is enough' and recognize the cost of seeking every relevant piece of discovery is not reasonable.").

This is <u>not</u> a case in which the Sargeant Non-Parties engaged in discovery misconduct, withheld requested information, or are unable or unwilling to search for the requested information,

- 6 -

so there are no grounds for forensic inspection and imaging. *See U&I Corp. v. Advanced Medical Design, Inc.*, 251 F.R.D. 667, 674 (M.D. Fla. 2008) ("In order to gain "direct access to the respondent's databases, the court must make a factual finding of some non-compliance with discovery rules and protect respondents with respect to preservation of his records, confidentiality of non-discoverable matters and costs.") (citing *In re Ford Motor Co.*, 345 F.3d 1315 (11th Cir. 2003)); *Wynmoor Community Council, Inc. v. QBE Ins. Corp.*, 280 F.R.D. 681, 686-87 (S.D. Fla. 2012) ("A Court must be mindful of the potential intrusiveness of ordering forensic imaging, however. *Id.* Before compelling such imaging the court must weigh inherent privacy concerns against its utility. *Id.,* citing, *John B. v. Goetz,* 531 F.3d 448, 460 (6th Cir. 2008). The court should consider "whether the responding party has withheld requested information, whether the responding party is unable or unwilling to search for the requested information, and the extent to which the responding party has complied with discovery requests." *Id.*).

Even where a <u>party</u> commits discovery misconduct (and the Sargeant Non-Parties are not even parties to this lawsuit), courts hold requests to inspect an adversary's computers have acknowledged this form of discovery is highly intrusive, costly and burdensome. For example, *Diepenhorst v. City of Battle Creek*, 2006 WL 1851243 (W.D. Mich. June 30, 2006), demonstrates the exacting standard courts have applied to requests for inspection of an adversary's computers. There, the plaintiff, a former employee of the defendant's police department, alleged that she had been sexually harassed during her employment. In discovery, the defendant demanded production of the plaintiff's computer hard drive for imaging and examination of its contents, and filed a motion to compel when the parties could not agree on the issue. The court denied the defendant's request, finding that the defendant's allegations of discovery misconduct did not justify inspection of the plaintiff's computer, considering the intrusiveness and burden of such a discovery method:

> The discovery process is designed to be extrajudicial, and relies upon the responding party to search his records to produce the requested data. In the absence of a strong showing that the responding party has somehow defaulted in this obligation, the court should not resort to extreme, expensive, or extraordinary means to guarantee compliance. Imaging of computer hard drives is an expensive process, and adds to the burden of litigation for both parties, as an examination of a hard drive by an expert automatically triggers the retention of an expert by the responding party for the same purpose. Furthermore, as noted above, imaging a hard drive results in the production of massive amounts of irrelevant, and perhaps privileged, information. Courts faced with this inevitable prospect often erect complicated protocols to screen out material that should not be part of discovery. Again, this adds to the expense and complexity of the case. This court is therefore loath to sanction intrusive examination of an opponent's computer as a matter of course, or on the mere suspicion that the opponent may be withholding discoverable information. Such conduct is always a possibility in any case, but the courts have not allowed the requesting party to intrude upon the premises of the responding party just to address the bare possibility of discovery misconduct.

*Id*. at *3. In denying the motion, the court noted that "defendant has not attempted to justify its request for the expensive and intrusive process of computer hard drive imaging by any showing of discovery misconduct by plaintiff, nor has defendant identified any category of relevant discovery material that may be uncovered by such a process." *Id*. at *4. The court concluded "[i]n the absence of a showing that plaintiff has destroyed evidence or has otherwise failed in her discovery obligations, the court is unwilling to expand the expense and burden of this case by ordering examination of the computers maintained by either party." *Id*.

Similarly, in *Scotts Co. LLC v. Liberty Mutual Inc. Co.*, 2007 WL 1723509 (S.D. Ohio, June 12, 2007), the plaintiff requested an order requiring the defendant to permit a forensic expert to search its computers, network servers and databases. The district court, noting the burden, intrusiveness and expense of an inspection, denied the plaintiff's request, finding its speculative claims of discovery deficiencies did not justify the examination:

> Plaintiff in this case requests intrusive examination of its opponent's computer systems on the mere suspicion, based solely on the nature of the claims asserted, that defendant may be withholding discoverable information. Plaintiff's speculation is, in the view of this Court, entirely insufficient. Plaintiff's few

- 8 -

allegations of misconduct, which are adequately explained by defendant, simply do not justify Court-mandated access to defendant's information storage systems.

*Id*. at *2.

In *John B. v. Goetz*, 531 F.3d 448 (6th Cir. 2008), the court issued warnings regarding mirror imaging and granted a writ of mandamus setting aside portions of a district court's orders allowing mirror imaging of the defendant's computers. The court quoted the Sedona Principles, a set of 14 principles considered by a Sedona Conference Working Group regarding the treatment of electronic data:

> Civil litigation should not be approached as if information systems were crime scenes that justify forensic investigation at every opportunity to identify and preserve every detail.... [M]aking forensic image backups of computers is only the first step of an expensive, complex, and difficult process of data analysis that can divert litigation into side issues and satellite disputes involving the interpretation of potentially ambiguous forensic evidence.

531 F.3d at 460. *See also Crop Data Management Systems, Inc. v. Software Solutions Integrated, LLC*, 2012 WL 2571201,*1 (E.D. Cal. July 2, 2012) (denying "motion to compel complete forensic imaging and an open-ended inspection" of defendants' computers and servers where the proposed inspection was "overbroad and an improper 'fishing expedition'").

Allowing access to a non-party's server is a highly intrusive and drastic and unnecessary procedure. This form of discovery would inevitably result in incredible burden and expense. The tasks of, among other things, hiring a forensic computer expert, conducting a review for privileged and work-product emails and other documents, and preparing a privilege log (if necessary), would alone be a monumental task that would likely require hundreds of attorney hours and result in tens of thousands of dollars in additional attorney's fees and costs. A protective order is warranted to prevent HS3 from continuing its wholly unnecessary harassment, intrusion, and imposition on the Sargeant Non-Parties of such extensive undue burden and expense.

**<u>Evidentiary Hearing</u>**

To the extent the Court is even considering allowing HS3 to forensically inspect and/or image the Sargeant Server or portions thereof, the Sargeant Non-Parties respectfully request sufficient time to identify, retain and consult with an outside computer expert, further brief this significant issue, and have the issue decided after an evidentiary hearing on HS3's highly intrusive, unwarranted, and burdensome request.

**<u>Conclusion</u>**

The Sargeant Non-Parties respectfully request the Court enter a protective order preventing forensic imaging or examination of the Sargeant Server, systems and computers, and award such other and additional relief the Court deems just and proper.

Dated: March 12, 2019                       Respectfully submitted,

                                         *s/ Jeffrey S. Wertman*
                                      Charles H. Lichtman
                                      Florida Bar No. 501050
                                      Jeffrey S. Wertman
                                      Florida Bar No. 3093
                                      Alejandro Miyar
                                        Florida Bar No. 105399
                                      BERGER SINGERMAN LLP
                                      350 East Las Olas Blvd., Suite 1000
                                      Telephone: (954) 525-9900
                                      Facsimile:  (954) 523-2872
                                      clichtman@bergersingerman.com
                                      jwertman@bergersingerman.com
                                      amiyar@bergersingerman.com
                                      ***Attorneys for Sargeant Non-Parties***

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on March 12, 2019, I caused the foregoing document to be

served on all counsel of record identified on the attached Service List via electronic mail.

　　　　　　　　　　　　　　*s/ Jeffrey S. Wertman*
　　　　　　　　　　　　　　Jeffrey S. Wertman

8971650-1

## SERVICE LIST

Derek T. Ho
dho@kellogghansen.com
Andrew Goldsmith
agoldsmith@kellogghansen.com
**KELLOG HANSEN, TODD, FIGEL & FREDERICK P.L.L.C.**
Summer Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
*Attorneys for Plaintiffs, Daniel Hall, Burford Capital, LLC and Dundrod Investments, Ltd.*

Samuel A. Danon
sdanon@HuntonAK.com
**HUNTON ANDREWS KURTH LLP**
1111 Brickell Avenue, Suite 2500
Miami, FL 33131
*Attorneys for Plaintiffs, Daniel Hall, Burford Capital, LLC and Dundrod Investments, Ltd.*

Christopher M. Kise
ckise@foley.com
Melissa B, Coffey
mcoffey@foley.com
Joshua M. Hawkes
jhawkes@foley.com
**FOLEY & LARDNER LLP**
106 East College Avenue, Suite 900
Tallahassee, Florida 32301-7732
*Attorneys for Defendant, Harry Sargeant, III*

Ryon M. McCabe
rmccabe@mccaberabin.com
Adam T. Rabin
arabin@mccaberabin.com
**MCCABE RABIN, P.A.**
1601 Forum Place, Suite 201
West Palm Beach, Florida 33401-8102
*Attorneys for Defendant, Harry Sargeant, III*