UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-80748-CIV-ALTMAN/Reinhart

**DANIEL HALL, et al.**,

    Plaintiffs,

v.

**HARRY SARGEANT, III**,

    Defendant.

_____/

## OMNIBUS ORDER

**THIS MATTER** came before the Court upon [ECF No. 156] the Defendant's Objections to the Magistrate Judge's discovery rulings, which were issued at a hearing on March 13, 2019, and memorialized in an order on March 14, 2019 [ECF No. 145]. The Court heard oral argument on the Defendant's Objections on June 24, 2019. At a subsequent hearing on June 28, 2019, the Court heard oral argument on both [ECF No. 213] the Plaintiffs' Appeal of a second discovery order [ECF No. 198] and on [ECF No. 256] the Defendant's Expedited Motion to Amend Answer to Add Affirmative Defense. The Court has carefully considered the Magistrate Judge's rulings, the parties' briefings and oral arguments, the record, and the applicable law. The Court presumes the parties' familiarity with the facts of this case.

### Standard of Review

On a party's timely objection to a magistrate judge's decision on a non-dispositive question, this Court must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." FED. R. CIV. P. 72(a). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm

conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *In re Application of O'Keeffe*, 184 F. Supp. 3d 1362, 1366 (S.D. Fla. 2016). This Court is mindful that "magistrate judges are afforded broad discretion in resolving nondispositive discovery disputes." *Johnston v. Aetna Life Ins. Co.*, 282 F. Supp. 3d 1303, 1312 (S.D. Fla. 2017).

**The Defendant's Objections to the March 14, 2019 Order**

In his Objections to the March 14 Order, the Defendant first challenges the Magistrate Judge's denial of his request for the issuance of letters rogatory to facilitate the deposition of Andrew Preston, a non-party who lives in the United Kingdom. (ECF No. 156 at 8–10). For the reasons stated in open court on June 24, 2019, the Court **OVERRULES** the Defendant's Objection on this issue.

The Defendant also objects to the Magistrate Judge's decision to prevent him from examining three electronic devices: a USB stick; a computer server owned by the Plaintiff, Burford Capital, LLC (the "Burford Server"); and a second computer server (the "Sargeant Server") in the possession of non-party Daniel Sargeant and several non-party entities (collectively, the "Sargeant Non-Parties"). (ECF No. 156 at 11–16). The parties have reached agreement as to the USB stick, and the Defendant has withdrawn his request to examine the Burford Server. (ECF No. 265 at 2). Accordingly, the Court **OVERRULES AS MOOT** the Defendant's Objections as to both of these devices.

Turning to the Sargeant Server, the Court shares the Magistrate Judge's skepticism that a forensic examination would uncover evidence of more than marginal relevance to the Plaintiffs' claims for breach of contract and malicious prosecution—the only causes of action that remain in

2

this case. (*See* Transcript of Mar. 13, 2019 Hr'g, ECF No. 156-1 at 88–90). At the June 24 Hearing, the Defendant narrowed his initial request for a forensic examination of the entire Sargeant Server to an analysis only of the server's e-mail archive. But the Defendant has made no showing that even this more circumscribed examination would reveal any relevant evidence that he has not already obtained through the many thousands of e-mails the Plaintiffs have thus far produced.

At oral argument, the Defendant hypothesized that an examination of the Sargeant Server *might* uncover information about how the server's e-mail archive was organized, which could, possibly, shed some light on the question of Daniel Hall's state of mind at the time the files were downloaded—specifically, whether Hall was acting within the scope of his employment when a third party handed him files obtained from the server. The Court finds this prospect highly doubtful. As the Defendant concedes, there is no evidence that Hall ever accessed the Sargeant Server himself—rendering any analysis of the *structure* of the email archive on that server entirely (or, at least, mostly) irrelevant to *Hall*'s state of mind.

On the other hand, the Court finds that a compelled forensic examination of the Sargeant Server would impose an unnecessary burden on non-parties to this litigation—a burden that, in light of the archive's marginal relevance, is entirely disproportionate to the needs of this case. *See, e.g.*, *Great Am. Ins. Co. v. Veteran's Support Org.*, 166 F. Supp. 3d 1303, 1310 (S.D. Fla. 2015). The Supreme Court has recognized the "interrelated consequences for privacy" that necessarily arise from involuntary intrusions into modern electronic devices that "collect[] in one place many distinct types of information." *Riley v. California*, 573 U.S. 373, 394 (2014) (discussing privacy concerns implicated by searches of smartphones); *see also Bakhit v. Safety Marking, Inc.*, 2014 WL 2916490, at *3 (D. Conn. June 26, 2014) (relying in part on *Riley* to deny the plaintiff's motion to compel cell phone data); *Carlson v. Jerousek*, 68 N.E.3d 520, 533 (Ill. App. 2d 2016) (relying

3

on *Riley* to explain the privacy concerns at stake when, in civil discovery, parties seek information stored on electronic devices). Besides these general privacy concerns, an examination of the Sargeant Server would inevitably implicate valid business concerns. In this respect, the Court takes seriously the Sargeant Non-Parties' need to protect the proprietary, confidential, and privileged documents the server indisputably holds. (*See* ECF No. 136 at 5–6, 9).

In the end, the burden on the Sargeant Non-Parties is too great, and the potential evidentiary payoff too trivial, to justify compelling a forensic examination of the Sargeant Server. Accordingly, the Defendant's Objection with respect to the Sargeant Server is **OVERRULED**.

## The Defendant's Expedited Motion to Amend

For the reasons stated in open court on June 28, 2019, the Defendant's Expedited Motion to Amend [ECF No. 256] is **DENIED**.

## The Plaintiff's Appeal of the April 30, 2019 Order

At issue in the Plaintiffs' appeal are 275 documents in the possession of the Defendant's attorneys. These documents stem from an investigation the attorneys conducted on the Defendant's behalf prior to the Defendant's decision to file the Second Amended Complaint ("SAC") against the Plaintiffs—a decision upon which the Plaintiffs' claims in this litigation are based. (*See* ECF No. 213 at 2). The Defendant refused to produce these documents on the basis of the work-product privilege. (*Id.*). After extended briefing and oral argument, the Magistrate Judge concluded that the documents were irrelevant *as a matter of law* to the Plaintiffs' malicious prosecution claim— and thus not discoverable—because, the Magistrate Judge said, the state of mind of the Defendant's attorneys, who filed the SAC, was not imputable to the Defendant. (ECF No. 198 at 2–3).

In their appeal, the Plaintiffs point out that, under general agency principles, an attorney's knowledge can be imputed to his client. (*See* ECF No. 213 at 3–4). The Defendant does not dispute this general proposition, but instead contends that this tenet of agency law does not apply in the context of malicious prosecution claims. (*See* ECF No. 230 at 2–5).

But the Defendant can find no case—nor can the Court—for the bizarre proposition that the general rules of imputation, which admittedly apply in the attorney-client context, somehow do not apply in cases where a malicious prosecution claim has been raised. Indeed, quite to the contrary, at least one court has found no reason to create a special exception for malicious-prosecution cases. *See Nyer v. Carter*, 367 A.2d 1375 (Me. 1977). In that case, the Supreme Judicial Court of Maine had no difficulty imputing to a client his attorney's malicious intent in commencing an action that the client knew nothing about:

> We are satisfied that even though appellant had no specific knowledge that his attorney was to commence an action against Nyer and remained unaware that he had done so until the trial of the malicious prosecution action, the alleged tort arose out of an agency relationship which existed between appellant and his attorney. It follows, then, that if a tort was committed by the agent, the principal is liable if the act was done within the course and scope of the agent's employment, even though appellant did not specifically authorize the tortious conduct.

*Nyer*, 367 A.2d at 1378. Courts in other jurisdictions have similarly applied principles of agency law to hold clients vicariously liable for their attorneys' malicious prosecutions of civil actions—irrespective of whether the client personally held a malicious intent or knew that probable cause was lacking. *See, e.g.*, *SouthTrust Bank v. Jones, Morrison, Womack & Dearing, P.C.*, 939 So. 2d 885, 905–06 (Ala. Civ. App. 2005); *Hewes v. Wolfe*, 330 S.E.2d 16, 22 (N.C. Ct. App. 1985); *Atl. Co. v. Farris*, 8 S.E.2d 665, 668–69 (Ga. Ct. App. 1940); *see also* Restatement (Second) of Agency § 253 cmt. a (1958).

5

At the end of the hearing, the Court gave the Defendant a chance to file a Notice of Supplemental Authority, laying out any case that recognizes the exception he has here advocated for. The next day, the Defendant filed a notice conceding that he could find no such case. [ECF No. 281]. In light of this admitted lack of authority, the Court is unwilling to create a new exception—applicable in malicious prosecution cases—to the long-established rule that a lawyer's knowledge is generally imputed to his client.

Accordingly, the Court concludes that the knowledge and intent of the Defendant's lawyers in filing the SAC—and, by extension, the 275 withheld documents—*may be* relevant to the Plaintiffs' malicious prosecution claim. This is not to say, however, that the contested materials must be produced. As the Court made clear at the June 28 hearing, the Court harbors grave doubts that the Plaintiffs can make the substantial showing necessary to overcome the work-product privilege and to compel the Defendant to produce these records. But that question is best left for the Magistrate Judge to resolve in the first instance.

## Conclusion

For the foregoing reasons,

1. The Court **OVERRULES** [ECF No. 156] the Defendant's Objections to [ECF No. 145] the Magistrate Judge's March 14, 2019 Order. The Court therefore **AFFIRMS** the Magistrate Judge's March 14, 2019 Order.

2. The Court **DENIES** [ECF No. 256] the Defendant's Expedited Motion to Amend Answer to Add Affirmative Defense.

3. The Court **GRANTS** [ECF No. 213] the Plaintiffs' Appeal of [ECF No. 198] the Magistrate Judge's April 30, 2019 Order and remands the parties' dispute over the 275

contested documents to the Magistrate Judge for consideration of whether those documents are discoverable in light of the work-product doctrine.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 2nd day of July 2019.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record