UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No: 9:18-CV-80748-Altman/Reinhart

DANIEL HALL, et al.,

        Plaintiffs,

v.

HARRY SARGEANT, III,

        Defendant.
_____/

## DISCOVERY ORDER

This matter is before the Court on remand from the District Court's Order granting Plaintiff's appeal from my Order Regarding Discovery Disputes. DE 289. The parties have raised additional discovery issues, which are summarized in their Joint Discovery Memorandum. DE 307. On August 1, 2019, a discovery hearing was held. Defendant requested leave to submit supplemental briefing, which was granted. I have now received and reviewed the supplemental briefing. These matters are ripe for decision.

The Federal Rules of Civil Procedure require the Court to secure the "just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. For that reason, Federal Rule of Civil Procedure 26(b)(1) limits discovery to "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Evidence is relevant if: (a) it has any tendency to

make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. A party to federal civil litigation does not get discovery of every piece of relevant information. To effectuate the commands of Rule 1 and Rule 26(b)(1), there comes a point when enough is enough.

The Joint Discovery Memorandum identifies the following four issues for decision: (1) "whether [Defendant Harry Sargeant III] must produce to Plaintiffs all documents reflecting facts of which [Harry Sargeant's] counsel was aware at the time of the filing of the Second Amended Complaint ('SAC') in *Harry Sargeant III v. Maroil Trading, Inc.,* No. 17-81070-Bloom/Reinhart (S.D. Fla. Sept. 25, 2017) (the 'Related Federal Action') related to the factual allegations and legal claims set forth in the SAC," (2) the permissible scope of the trial testimony of Gregory Coleman, Esq., (3) whether certain documents are properly designated as confidential under the Court's confidentiality order, DE 111, and (4) whether Defendant should have discovery of "certain communications related to an agreement between Burford Capital (UK) Limited and Novoship entities." *See generally* DE 307.

I have entered multiple orders detailing the procedural history of this matter and the evidentiary issues it presents. *E.g.,* DE 198 (Order Regarding Discovery Disputes); DE 145 (Order Memorializing Discovery Rulings); DE 155 (Order granting Motion to Dismiss Counterclaims); DE 41 (Report and Recommendation on Motion to Dismiss Complaint). I will not recount them, here. In short, Harry Sargeant settled a long-standing dispute with Mohammed Al-Saleh (the "Al-Saleh Settlement"). Later, Harry Sargeant sued Daniel Hall and others in the Related Federal Action. In that case, Harry Sargeant alleged that Hall and the others hacked into a protected computer to obtain certain sensitive material belonging to Harry Sargeant (the "HS3 Material"), then disseminated the HS3 Material, including traded the HS3 Material for other

materials that were of value to a different client of Hall's (the "Ruperti Material"). I recommended dismissal of the SAC without prejudice. Rather than refile the case in federal court, Harry Sargeant filed a revised version of the SAC in state court. Before he could do so, however, Plaintiffs filed the instant case, which asserts two causes of action: breach of the Al-Saleh Settlement and malicious prosecution.

### 1. Production of Defense Counsel's Work Product

The first issue before the Court is Plaintiffs' request for discovery of certain documents that Defendant asserts are protected by the work-product doctrine ("the Requested Documents"). Plaintiffs argue that they are entitled to the Requested Documents in support of their malicious prosecution claim.

The elements of a cause of action for malicious prosecution are:

> (1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding.

*Debrincat v. Fischer,* 217 So. 3d 68, 70 (Fla. 2017) (citation omitted). For malicious prosecution purposes, probable cause exists if there is "'[a] reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged.'" *Mee Indus. v. Dow Chem. Co.,* 608 F.3d 1202, 1211 (11th Cir. 2010) (citation omitted). "Lack of probable cause can be shown '[w]here it would appear to a 'cautious man' that further investigation is justified before instituting a proceeding,' and such investigation is not undertaken." *Nodal v. Infinity Auto Ins. Co.,* 2011 WL 3297277, at *2 (M.D. Fla. Aug. 2, 2011) (quoting *Harris v. Lewis State Bank,* 482

3

So.2d 1378, 1382 (Fla. Dist. Ct. App. 1986)). Which "'facts and circumstances amount to probable cause is a pure question of law,' while the existence of those facts or circumstances 'in any particular case is a pure question of fact.'" *Mee Indus.,* 608 F.3d at 1211-12 (citing and quoting *City of Pensacola v. Owens* 369 So.2d 328, 330 (Fla. 1979)) (internal quotation marks omitted).

"In an action for malicious prosecution it is not necessary for a plaintiff to prove actual malice; legal malice is sufficient and may be inferred from, among other things, a lack of probable cause, gross negligence, or great indifference to persons, property, or the rights of others." *Alamo Rent-A-Car, Inc. v. Mancusi,* 632 So. 2d 1352, 1357 (Fla. 1994). "Legal malice, which is also referred to as technical malice or malice in law, 'requires proof of an intentional act performed without justification or excuse.' 'Legal malice may be inferred from one's acts,' and - unlike actual malice - 'does not require proof of evil intent or motive.'" *Olson v. Johnson*, 961 So. 2d 356, 359 (Fla. Dist. Ct. App. 2007) (citations omitted).

In or about November 2018, Plaintiffs served their First Set of Requests for Production. Request 17 sought "All Documents upon which you relied in support of the allegations in the SAC in the Related Federal Action." Request 18 sought, "All Documents concerning your motive, purpose, or intent in bringing the SAC, in the Related Federal Action." Request 19 sought, "All documents concerning your investigation of the factual and/or legal basis for the claims asserted in the SAC in the Related Federal Action. Request 20 sought, "All documents concerning your motive, purpose, or intent in voluntarily dismissing the SAC in the Related Federal Action." And Request 21 sought, "All Documents concerning your decision not to assert a claim for violation of the Computer Fraud and Abuse Act in the State Court Action."

On or about December 21, 2018, Defendant served his response. DE 181-1. As to each of these requests, Defendant stated that he would produce responsive documents.[1] He further stated that he had "identified privileged responsive documents to this Request, which [Defendant] will list on his privilege log pursuant to Local Rule 26(e)(2)(C)." DE 181-1 at 10-11. On January 28, 2019, Defendant served a privilege log which identified 484 documents that were being withheld based on claims of either attorney-client or work-product privilege. DE 181-2. Documents numbered 1-275 were communications among members of Defendant's legal team (collectively "Defense Counsel") during January and February 2018. DE 181-2 at 2-18. Plaintiffs now seek to compel production of these documents as relevant to their malicious prosecution cause of action, primarily on the issue of whether probable cause existed for the SAC and (derivatively) whether legal malice existed.

Plaintiffs have been afforded a robust opportunity to develop their theory that Defendant lacked probable cause to file the SAC and therefore also had legal malice. Defendant produced documents responsive to Plaintiffs' Requests for Production concerning the factual basis for the SAC. Plaintiffs propounded an interrogatory to Defendant asking for "the factual basis you had at the time of the filing of the SAC that '[o]n or about October 6, 2016, and again on or about October 28, 2016, DSargent and LAIL unlawfully accessed the Sargeant Server and the HS3 Email Account in Florida, and obtained the HS3 Material from the HS3 Email Account." (quoting paragraph 36 of the SAC). In response, the Defendant identified three sources of information that were the factual basis for these allegations in the SAC: (1) Andrew Preston's

---

[1] I have not been asked to resolve any discovery disputes relating to Defendant's representation that responsive documents would be produced, so the Court concludes that a production occurred.

affidavit, (2) conversations with Patrick Mooney, and (3) conversations with Fahad Al Tamimi and Wilmer Ruperti. 8/1/2019 Hrg. Exs. 1, 2.

Plaintiff has been able to investigate each of the bases identified in the interrogatory response. Plaintiff deposed Harry Sargeant about the facts known to him when the SAC was filed and his knowledge of the investigation that led to those facts. At the discovery hearing, it was proffered that Harry Sargeant did not identify any additional sources of information for the SAC, and that he had testified that he, attorney Christopher Kise, and perhaps other counsel met with Al Tamimi in late 2017. Harry Sargeant further testified that Al Tamimi told them Daniel Sargeant had HS3's "sex tapes" and had given them to an investigator. Harry Sargeant testified that Al Tamimi did not say anything about how Daniel Sargeant obtained the "sex tapes." The Preston affidavit speaks for itself. Mr. Mooney has been deposed; counsel proffered that Mr. Mooney testified that in 2018 he told Harry Sargeant's counsel that in 2015 Daniel Sargeant told Mr. Mooney he could access the HS3 Material. Mr. Al Tamimi was not deposed because he is outside the jurisdiction of the Court; his statements are admissible, if at all, not for the truth of the matter asserted. None of these sources provide evidence of when or how the HS3 Materials were obtained by Daniel Sargeant.

Plaintiffs also had the opportunity to depose Daniel Sargeant about his acquisition of the HS3 Material. As discussed more fully below, Plaintiffs will have the opportunity to depose Gregory Coleman, Esq., who was one of the lawyers who signed the SAC. Separately, Plaintiffs have evidence that on or about December 25, 2013, Harry Sargeant received an email from his brother James Sargeant. Attached to the email were images derived from the HS3 Material. Harry Sargeant notified Defense Counsel, who instructed him to notify the police. Plaintiffs have the email from Defense Counsel to Harry Sargeant telling him to notify the police; they also

6

have the police report that was filed.² Harry Sargeant and several of his family members were deposed about the James Sargeant incident.

Plaintiffs now seek additional documentary discovery to support their malicious prosecution claim. Plaintiffs assert that the Requested Documents are relevant to their malicious prosecution claim because they are probative of (1) Defense Counsel's understanding of the Preston Affidavit, (2) Defense Counsel's knowledge of the conversations with Patrick Mooney, (3) an accurate recitation of what was discussed with Mr. Tamimi, (4) Defense Counsel's knowledge that James Sargeant had sent salacious materials, which were part of the HS3 Material, to Harry Sargeant in 2013, (5) Defense Counsel's knowledge that the metadata showed that the HS3 Material had been downloaded in 2013, not 2016, as alleged in the SAC,³ and (6)

---

² Plaintiffs argue that because the email from Defense Counsel to Harry Sargeant was forwarded to the police, any attorney-client privilege has been waived. They further argue that this waiver should extend to the communications from Harry Sargeant to his counsel that preceded the relevant email. I agree that the email that was forwarded to the police is not privileged. I do not agree that the attorney-client privilege has been waived as to any preceding communications. "There is no bright line test for determining what constitutes the subject matter of a waiver [of the attorney-client privilege], and courts weigh the circumstances of the disclosure, the nature of the advice and whether permitting or prohibiting further disclosures would prejudice the parties. *QBE Ins. Corp. v. Jorda Enterprises, Inc.,* 286 F.R.D. 661, 666 (S.D. Fla. 2012) (J. Goodman) (citing *Fort James Corp. v. Solo Cup Co.,* 412 F.3d 1340, 1349–50 (Fed. Cir. 2005)). The underlying communications are relevant only insofar as they might reveal Defendant and Defense Counsel's knowledge that James Sargeant had the HS3 Material in 2013. That inference is clear from the non-privileged email and from other evidence already provided. Therefore, there is no prejudice to Plaintiffs from denying further discovery of the underlying communication. The nature of the advice is apparent from the face of the email – report this to the police. The circumstances of the disclosure were counsel guiding a client in contacting the police during a crisis. These circumstances do not reflect a strategic decision to waive privilege or to selectively waive privilege for tactical advantage. For all these reasons, I decline to order production of the underlying communications between Harry Sargeant and his counsel.

³ At the discovery hearing, Defense Counsel conceded that they had the relevant metadata before filing the SAC. Plaintiffs can explore this issue during Mr. Coleman's deposition, or can confirm it through stipulation, Request for Admission, or supplemental interrogatory.

Defense Counsel's knowledge of Daniel Hall's status as an employee of Burford (and therefore whether he was covered by the release in the Al Saleh litigation). Plaintiffs assert that the further discovery on these issues will disclose Defense Counsel's subjective knowledge (which is imputable to Defendant) as well as shed light on why certain investigative steps were (or were not) taken. Although Plaintiffs concede that absence of probable cause is determined by an objective standard, they assert that counsel's subjective knowledge (imputed to Defendant) nevertheless is relevant.

In a malicious prosecution case, the facts known to a party initiating a legal proceeding, and the investigation that led up to that filing, are factual issues for which discovery can be had. Whether those facts objectively rise to the level of probable cause is a legal decision for the Court. Because absence of probable cause is an objective standard, it is questionable whether Defense Counsel's subjective beliefs about the sufficiency of the SAC case and the adequacy of the underlying investigation are relevant. Because I would not permit this discovery for other reasons, I do not resolve the relevance question.

Defendant asserts that even if the Requested Documents and the other materials from Defense Counsel's files are relevant, they are protected by the work product privilege. Federal Rule of Civil Procedure 26(b)(3)(A) codifies the work product privilege:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3)(A). There are two categories of work product – fact work product and opinion work product.

8

> "[F]act work product may encompass factual material including the result of a factual investigation." *In re Grand Jury Subpoena Dated July 6, 2005,* 510 F.3d 180, 183 (2d Cir. 2007); *Boehringer Ingelheim Pharmaceuticals, Inc.,* 778 F.3d at 152 (reversing district court's determination that certain investigative documents were opinion work product, as opposed to fact work product because they did not reveal "counsel's legal impressions or views of the case"); *see also Director, Office of Thrift Supervision v. Vinson & Elkins, LLP,* 124 F.3d 1304, 1307 (D.C. Cir. 1997) ("[P]urely factual material embedded in attorney notes" may not be opinion work product).

*Burrow v. Forjas Taurus S.A.,* 334 F. Supp. 3d 1222, 1229–30 (S.D. Fla. 2018) (J. Torres). Opinion work product contains "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). Fact work product can be subject to discover upon a showing of substantial need and the inability to obtain substantially equivalent evidence by other means without undue hardship.

> A non-exhaustive list of factors are assessed in determining substantial need including: (1) the importance of the materials to the party seeking them for case preparation, (2) the difficulty the party will have obtaining them by other means, and (3) the likelihood that the party, even if he obtains the information by independent means, will not have the substantial equivalent of the documents he seeks. *See* Fed. R. Civ. P. 26, Advisory Comm. Notes (1970 amds.); *see also F.T.C. v. Boehringer Ingelheim Pharm., Inc.*, 778 F.3d 142, 155 (D.C. Cir. 2015) ("[A] moving party's burden is generally met if it demonstrates that the materials are relevant to the case, the materials have a unique value apart from those already in the movant's possession, and 'special circumstances' excuse the movant's failure to obtain the requested materials itself.").

*Burrow.,* 334 F. Supp. 3d at 1229–30.

Although fact-based work product may be disclosed on a showing of "substantial need," work-product that reveals an attorney's thought processes receives greater protection. "Opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *In Re: Murphy,* 560 F.2d 326, 336 (8th Cir. 1977) *quoted and cited*

*in Cox v. Adm'r U.S. Steel & Carnegie,* 17 F.3d 1386, 1422 (11th Cir. 1994).[4] The Eleventh Circuit has recognized the crime-fraud exception to be one of the "rare and extraordinary circumstances in which opinion work product is discoverable." *Cox,* 17 F.3d at 1422. Other courts have compelled disclosure of opinion work product only on a showing of "compelling need." *See, e.g., Holmgren v. State Farm Mut. Auto Ins. Co.,* 976 F.2d 573, 577 (9th Cir. 1992) (opinion work product discoverable if attorney's mental impressions are at issue and the need for the material is compelling.)

I conducted an *in camera* review of the 275 items from the privilege log that Plaintiffs seek. I find that they are all opinion work product. Plaintiffs also request other materials from Defense Counsel's files, including all documents reflecting what steps Defense Counsel took in response to the information it obtained from Mooney and Al Tamimi (including documents reflecting *why* Defense Counsel did what it did), and all documents reflecting any internal doubt among Defense Counsel about the sufficiency of the facts underlying the SAC. Most of this material is designed to uncover the mental impressions, conclusions, and opinions of Defense

---

[4] The fact that the requested documents were created in anticipation of other, related, litigation does not eliminate the work product protection:

> Although "[s]ome older cases took the position that the work-product immunity applied only to documents prepared in direct relation to the case at bar," 8 Wright, Miller & Marcus, Fed. Prac. & Fed. P. § 2024, p. 518 (3d ed.2010), more recent cases "have generally found that documents produced in anticipation of litigating one case remain protected in a subsequent case[ ] if they were created by or for a party to the subsequent litigation," *Underwriters Ins. Co. v. Atlanta Gas Light Co.,* 248 F.R.D. 663, 668 (N.D.Ga.2008).

*Doe v. United States*, No. 08-CV-80736-KAM, 2015 WL 4077440, at *6 (S.D. Fla. July 6, 2015) (J. Marra).

Counsel at the time they anticipated litigation over the SAC. It is quintessential opinion work product. Plaintiffs have not met their burden of showing a compelling need for this material.

Alternatively, Plaintiffs argue that work product protection has been waived based on Defendant's intention to call Gregory Coleman, Esq., as a witness at trial. Mr. Coleman was one of Defendant's lawyers when the SAC was filed. Defendant proffers that Mr. Coleman will testify to the investigative steps that were taken before the SAC was filed and will further testify that he personally believed sufficient investigation had been conducted and that probable cause existed for all of the allegations in the SAC. Plaintiffs argue that if Mr. Coleman is permitted to testify to his personal beliefs about the adequacy of the investigation or the sufficiency of the SAC, they should receive the Requested Documents and other opinion work-product to cross-examine Mr. Coleman about the internal communications among counsel that led up to the filing of the SAC. They speculate that there must have been discussions among Defense Counsel about whether to undertake other investigative steps and that Defense Counsel must have raised doubts about the sufficiency of the evidence supporting the SAC. Plaintiffs have not cited any cases where the near-absolute protections of opinion work-product disappeared because counsel testified to underlying facts, nor have they cited a case where opinion work product protections were deemed waived based on this kind of testimony. *C.f. QBE Ins. Corp. v. Jorda Enterprises, Inc.,* 286 F.R.D. 661, 666–67 (S.D. Fla. 2012) (J. Goodman) ("Unlike waiver of attorney-client material, work-product waiver, however, is not a broad waiver of all work-product related to the same subject matter. Instead, it extends only to "factual" or "non-opinion" work-product concerning the same subject matter as the disclosed work-product.") (citation omitted)

Plaintiffs argue that Defendant is using the privilege improperly as both a sword and a shield. They cite to Judge Louis' opinion in *Schultze v. 2K Clevelander LLC,* 2018 WL 4859070

(S.D. Fla. Aug. 29, 2018) and Judge Altonaga's opinion in *Pena v. Handy Wash, Inc.,* 114 F. Supp. 3d 1239 (S.D. Fla. 2015) for the proposition that Defendant should not be able to use Mr. Coleman as a friendly witness without turning over otherwise-privileged materials. Both of those cases arose in the FLSA context and involved a party asserting the affirmative defense of advice of counsel to establish good faith and thereby to negate willfulness. *See* 11th Circuit Pattern Jury Instruction (Criminal) S18 (good faith reliance on advice of counsel is complete defense to unlawful intent). In *Schultze*, the defendant wanted to introduce evidence that it consulted an attorney and thereafter persisted in its existing employment practices. The defendant objected to any discovery into the content of that advice. Judge Louis properly identified an attempt to introduce inferential hearsay, that is, counsel's out-of-court statement that defendant's employment practices were permissible. *Id.* at *2. Similarly, in *Pena,* the defendant refused to allow discovery into the content of attorney-client communications that were the factual basis for the advice-of-counsel defense. Judge Altonaga also found this tactic to be inadmissible inferential hearsay, as well as an inadequate factual basis for the advice-of-counsel defense. *Pena,* 11 4 F. Supp. 3d at 1245 ("the fact Defendants consulted counsel, without more, constitutes hearsay, and is furthermore irrelevant, misleading, and unfairly prejudicial to Plaintiff.").

Those situations are distinguishable from the issue before me. Here, the relevant privilege is the work-product privilege, not the attorney-client privilege. The two privileges have different purposes and different parameters. In addition, Defendant is not asserting an advice-of-counsel affirmative defense. Because that defense rests on the communications between client and counsel, it waives the attorney-client privilege. Mr. Coleman's testimony is not being offered to negate intent. It is being offered as relevant to absence of probable cause and

(derivatively) legal malice. Finally, and perhaps most significantly, Mr. Coleman is being made available for deposition, unlike the situation in *Pena* and *Schultze* where the party seeking to benefit from counsel's evidence refused to permit discovery. The inferential hearsay problem does not exist, here.

Moreover, even if a waiver occurred or if the opinion work-product was otherwise discoverable, I find that permitting wholesale discovery of internal deliberations of Defendant's legal team is not proportional to the needs of the case at this point. As noted above, the issue of absence of probable cause is a legal question determined on an objective standard. Even if Defense Counsel's subjective beliefs are potentially circumstantially relevant to this legal question, the importance of this additional discovery to the resolution of the issues presented does not outweigh the significant intrusion on the attorney-client relationship that would occur, particularly given the other evidence available to establish lack of probable cause. Moreover, the requested discovery is not necessary to afford Plaintiff a reasonable opportunity to rebut Mr. Coleman's testimony. This evidence would be cumulative to the evidence already possessed by Plaintiffs.

Similarly, Plaintiff's request for Defense Counsel's notes from the meetings with Mooney and Al Tamimi is not sufficiently important to resolving the issues in the case and is cumulative. Both Mr. Mooney and Harry Sargeant have been deposed about their conversation. Defendant has provided a sworn interrogatory response summarizing the content of the conversation with Mr. Al Tamimi. Plaintiffs had the opportunity to depose Harry Sargeant about the conversations as well.

To summarize, this additional requested discovery, even if relevant and not privileged, is not proportional to the needs of the case. The existing record consists of (1) documents already

produced related to the drafting and filing of the SAC, (2) sworn interrogatory responses about the basis for the SAC, (3) deposition testimony of Harry Sargeant, his family members, Daniel Sargeant, Mr. Mooney, (soon) Mr. Coleman, and others, and (4) the four corners of the Preston Affidavit. Plaintiffs have ample evidence to argue that, at the time the SAC was filed, a "cautious man" would have undertaken further investigation before alleging that Daniel Hall had conspired with Daniel Sargeant to unlawfully access the HS3 Materials from the Sargeant Server in 2016, and that the same "cautious man" would have undertaken further investigation before making that allegation.

For all these reasons, the Plaintiff's request for discovery of Defense Counsel's materials is denied.

### 2. Scope of Mr. Coleman's Trial and Deposition Testimony

Plaintiffs argue that Mr. Coleman should not be permitted to testify at trial that he would not have signed the SAC if he believed it lacked probable cause, or to otherwise "bless" the SAC. They ask that this issue be clarified before Mr. Coleman's deposition. DE 307 at 4-5.

I decline the invitation to rule *in limine*. Judge Altman has not referred that decision to me. For discovery purposes, Mr. Coleman's testimony about the investigative steps that were taken (and not taken) prior to filing the SAC is relevant fact testimony. I will not preclude Mr. Coleman from being deposed about his opinion concerning the adequacy of the investigation or the sufficiency of the SAC. This testimony is arguably relevant as opinion testimony of a lay witness on the issue of absence of probable cause. *See* Fed. R. Evid. 701; Fed. R. Civ. P. 26(b)(1) ("Information within the scope of discovery need not be admissible in evidence to be discoverable."). It is proper discovery. Whether it is admissible at trial is for Judge Altman to decide.

### 3. Confidentiality Designations

Defendant asserts that Plaintiff has improperly designated 14 discovery documents as "Confidential." Defendant invokes the procedures under the Confidentiality Order that allow the Court to resolve whether these documents are properly designated. I will conduct a separate hearing to address this request.

### 4. Novoship Documents

Defendant has asserted that Hall fails to state a claim for breach of contract because Hall was not a released party under the Al Saleh Settlement. One theory for why Hall was not a released party is that Hall's conduct in providing the Ruperti Material to Daniel Sargeant violated duties Hall and Burford owed to their client, Novoship, so the conduct was *ultra vires* and took Hall outside the class of persons covered by the release. Plaintiffs have asserted (and testified in deposition) that all of Hall's conduct related to the Al Saleh matter was proper and within the scope of Hall's employment such that Burford would have indemnified Hall for any legal action arising from that conduct, including Hall's exchanging the Ruperti Material for the HS3 Material.

Defendant now seeks discovery of communications in 2017 between Burford (UK) and Novoship, which was Burford and Hall's client in the Ruperti litigation.

Hall and Burford originally obtained the Ruperti Materials when they assisted Novoship in litigation against Ruperti. There is currently litigation in the UK among Ruperti, Novoship, Hall, Burford, and other parties arising from the release of the Ruperti Materials outside the original litigation. Defendant seeks discovery of certain 2017 communications between Burford and Novoship related to Novoship's request that it be indemnified for any misuse of the Ruperti Material by Hall or Burford. The Court previously ruled that the acquisition and handling of the

Ruperti Materials was not a proper area of discovery. Nevertheless, if Burford or Hall has made any statements in the Novoship litigation that are inconsistent with their position in this case that Hall was at all times acting within the scope of his employment and that Burford therefore was obligated to indemnify him as part of the Al Saleh Settlement, those statements must be disclosed to Defendant.

**DONE AND ORDERED** in Chambers this 7th day of May, 2019, at West Palm Beach in the Southern District of Florida.

_____
BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE