# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 18-cv-80748-ALTMAN/Reinhart

DANIEL HALL,
BURFORD CAPITAL LLC, and
DUNDROD INVESTMENTS LTD.,

      Plaintiffs,

      v.

HARRY SARGEANT, III,

      Defendant.

_____/

**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS AND STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Daniel Hall, Burford Capital LLC ("Burford Capital"), and Dundrod Investments Ltd. ("Dundrod"), pursuant to Federal Rule of Civil Procedure 56 and Southern District of Florida Local Rule 56.1, hereby file their Response to Defendant Harry Sargeant, III's ("Defendant" or "HS3") Statement of Undisputed Material Facts and Statement of Additional Undisputed Material Facts in Opposition to Defendant's Motion for Summary Judgment and state as follows:

**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS[1]**

1.      Admitted.

2.      Admitted.

3.      Admitted.

4.      Admitted.

5.      Admitted.

6.      Admitted.

7.      Denied as phrased.  Admitted that, before Burford UK acquired Focus, Al-Saleh's counsel retained Focus by engagement letter dated September 25, 2014 to help locate HS3's assets and assist with judgment enforcement.  ECF 323-1 (Hall Tr.) 40:21-44:8, 133:24-138:25; ECF 323-10 at 1-3.

8.      Admitted.

9.      Admitted.

10.      Admitted.

11.      Admitted.

12.      Denied as phrased.  Admitted that, in September 2016, Al-Saleh, HS3, and MAN discussed settling their litigation, which they eventually did.  ECF 323-11, Recital MM.

13.      Admitted.

14.      Admitted.

15.      Denied as phrased.  Admitted that Grossman acted on behalf of Al-Saleh in negotiating and drafting the settlement terms.  ECF 323-2 (Will Tr.) 67:12-15; ECF 323-15 ¶ 3.

16.      Admitted that the prefatory language of the Settlement Agreement states, "THIS

---

[1] Pursuant to Local Rule 56.1, this Response corresponds with the paragraph numbering used in HS3's Statement of Material Facts.  Plaintiffs do not respond to Defendant's headings or footnotes, which do not comply with the separately-numbered paragraph requirement and are not purported to constitute statements of facts.

SETTLEMENT AGREEMENT (the 'Agreement'), effective as of October 4, 2016 (the 'Effective Date'), is made by and among Mohammad Anwar Farid Al-Saleh ('Al-Saleh'), on the one hand, and Harry Sargeant, III ('Sargeant') and Mustafa Abu-Naba'a ('Abu-Naba'a') (collectively 'the SA Parties'), on the other hand, who collectively shall be referred to throughout as the 'Parties' and each, individually, as 'Party.'"  ECF 323-11 at 1.  Otherwise improper legal conclusions to which no response is required.

17.     Denied that Burford US, Dundrod, and Hall were not actively involved in the negotiation and drafting of the Settlement Agreement.  At the request of Al-Saleh, Aviva Will on behalf of Burford US and Dundrod, which were third-party beneficiaries to the Settlement Agreement, reviewed drafts of the Settlement Agreement and provided input on its negotiation and drafting.  ECF 323-2 (Will Tr.) 65:2-25, 67:3-68:9, 93:17-94:10; ECF 324-23 (HS3_0000226) (email between Al-Saleh's and HS3's counsel, referring to phone call between Will and HS3's counsel regarding a draft).  HS3's counsel consistently sent his proposed revisions to drafts of the Settlement Agreement simultaneously to Will and Al-Saleh's counsel.  ECFs 323-18, 323-20, 323-22, 323-24.  Admitted that HS3, MAN, and Al-Saleh, along with their respective counsel, approved the text of the Settlement Agreement.  ECF 323-2 at 65:2-25.

18.     Denied as phrased.  Admitted that HS3 agreed to execute and deliver a Release as part of the Settlement Agreement, and the terms of the Release were to be negotiated after the Settlement Agreement is executed.  ECF 323-11 § 2.  Admitted that HS3 executed a Release, effective October 28, 2016, in which Releasees were Al-Saleh, Burford US, Dundrod, and "all persons or entities for whose acts or omissions the foregoing would or could be derivatively or vicariously liable or to whom the foregoing could or would owe indemnification."  ECF 323-16.

19.     Admitted.

20.     Admitted that the Settlement Agreement included a "Forbearance on Judgment or Assertion of Claims" provision.  ECF 323-11 § 10.  Denied that the provision required Al-Saleh to refrain from taking any action to collect on the Judgments.  The provision required Al-Saleh to "forbear from exercising his rights or remedies to enforce the Judgments or assert[ing] any claim that arises from conduct or events that occurred prior to the Effective Date and that would be subject to the release" during the Forbearance Period (as defined therein).  *Id.*

21.     Admitted that Section 36 of the Settlement Agreement provides that "a non-breaching Party" is entitled to attorneys' fees and costs.  *Id.* § 36.  Admitted that the prefatory

language of the Settlement Agreement included the phrase quoted in paragraph 16 *supra*.  *Id.* at 1.  No response is required to a question of law whether any person or entity other than HS3, MAN, and Al-Saleh is entitled to attorneys' fees and costs under the Settlement Agreement. Subject to foregoing, denied that only HS3, MAN, and Al-Saleh can recover attorneys' fees and costs under the Settlement Agreement, via Section 36 or otherwise.  Section 36 provides for the non-breaching Party's entitlement to attorneys' fees and costs "[i]n addition to all other remedies."  *Id.* § 36.  It has no bearing on whether any person or entity other than HS3, MAN, and Al-Saleh may recover attorneys' fees or costs as compensatory damages.

22.     Denied as phrased.  Admitted that Section 22 of the Settlement Agreement states that "[n]othing expressed or implied in this Agreement is intended, or shall be construed, to confer upon or give any person other than the Parties to this Agreement, the SA Release Parties, Deborah Sargeant individually, Sargeant TBE, IOTC USA, the Burford Entities, and their respective heirs, personal representatives, legal representatives, successors and assigns, any rights or remedies under or by reason of this Agreement."  *Id.* § 22.  No response is required to a question of law whether Hall or Burford UK is included in this list of third-party beneficiaries.

23.     Admitted.

24.     Denied as phrased.  Admitted that Section 27 of the Settlement Agreement states that "[t]his Agreement and the Settlement Documents constitute the entire agreement among the Parties hereto with respect to the subject matter of this Agreement and supersedes all prior agreements, understandings, negotiations and discussions, both written and oral, among the Parties hereto with respect to the subject matter of this Agreement."  *Id.* § 27.

25.     Not supported by cited evidence.  Subject to foregoing, admitted that, following execution of the Settlement Agreement, HS3's counsel took steps to effectuate the terms of the Settlement Agreement, to secure the $20 million initial payment, and to complete various documents related to the Settlement Agreement.

26.     Admitted that Section 13 of the Settlement Agreement defines "Actionable Event" by way of enumerated events.  Whether a breach requires an "Actionable Event" is a question of law to which no response is required.  Subject to foregoing, denied that Section 13 sets forth the only criteria that would qualify as a breach by HS3 or MAN.  *Id.* § 13.

27.     No response is required to a question of law whether a breach of the Release constituted an Actionable Event.  Subject to foregoing, denied that suing on released claims or a

3

breach of the Release was not listed as an Actionable Event.  Under Section 13, an Actionable Event is defined to include a "default[] in the performance of this Agreement."  *Id.* § 13(b).  The Settlement Agreement incorporated and "made" the Release "a part hereof" and obligates releasors not to sue on any released claims.  *Id.* § 2.1.  Suing on released claims or a breach of the Release is thus a "default[] in the performance of this Agreement" and an Actionable Event.

28.     Admitted that, in the parties' post-mediation drafting process, HS's counsel proposed to include in the definition of Actionable Event the phrase, "any of the SA Release Parties defaults in the performance of the releases signed subject to Section 16 below," while proposing to delete a provision making the releases a part of the Settlement Agreement.  ECF 323-18 (HS3_0000017) §§ 2.8, 12(b).  Admitted that the proposed phrase was removed from the definition of Actionable Event after Al-Saleh insisted on the inclusion of the provision making the releases a part of the Settlement Agreement and HS3 acceded.  ECF 323-19 (HS3_0000226) §§ 2.8, 12(b); ECF 323-22 (HS3_0000095) §§ 2, 13(b).

No admissible evidence was cited to support that the removal of the proposed phrase in the definition of the Actionable Event was to eliminate any continuing or executory obligations under the Settlement Agreement following full performance by HS3 and MAN.  HS3's and his counsel Coleman's affidavits are not based on personal knowledge, fail to set out facts that would be admissible in evidence, and do not show that the declarants are competent to testify on the reasons for specific drafting changes.  ECF 323-12 ¶ 28; ECF 323-13 ¶ 4.

Subject to foregoing, denied that the proposed phrase was removed to eliminate any continuing or executory obligations under the Settlement Agreement following full performance by HS3 and MAN.  The proposed phrase was removed as superfluous because the Release was made a part of the Settlement Agreement.  Declaration of Andrew E. Goldsmith (filed herewith) ("Goldsmith Decl.") Ex. 1 (Will Tr.) 131:1-2; 131:6-13.

29.     Not supported by cited evidence.  Subject to foregoing, admitted that the proposed phrase was not reinserted.  ECFs 323-11, 323-19, 323-20, 323-21, 323-22, 323-23, 323-24, 323-25, 323-26.

30.     Admitted that Section 14 of the Settlement Agreement provides that, if an Actionable Event occurs, (a) HS3 and MAN would remain liable for the full amount of the Judgments plus costs; (b) the Forbearance Period would terminate; (c) Al-Saleh may exercise all of his rights and remedies on the security provided under the Settlement Agreement; and (d) Al-

4

Saleh may exercise all of his rights on various stipulations and consent judgments drafted for litigations then pending in Texas, Bahamas, Delaware, and the UK.  ECF 323-11 § 14.  Denied that the foregoing remedies are available only upon the occurrence of an Actionable Event. Section 14 provides for remedies in the event that "an Actionable Event occurs," without any limitations on when such remedies may be otherwise available.  Section 21 further provides that "[t]he remedies provided herein are cumulative and may be exercised alternatively, concurrently, successively or in any other manner and are not exclusive of any remedies provided by law."

31.     Denied as phrased.  Admitted that Sections 15 and 16 of the Settlement Agreement provide that no later than the tenth day after the earlier of the final day of the Forbearance Period or the receipt by Al-Saleh of the Settlement Amount, provided that no Actionable Event has occurred, the parties shall cause the pending litigation to be dismissed, the satisfactions of judgments to be recorded, and Collateral to be released.  *Id.* §§ 15, 16.

32.     Denied that an amendment to the Settlement Agreement was executed between Al-Saleh, MAN, and HS3 on January 9, 2017.  An Amendment was executed on January 6, 2017.  ECF 323-27.  Denied that, in the Amendment, Al-Saleh expressly acknowledges that HS3 fully performed his obligations pursuant to the Settlement Agreement and that no Actionable Event occurred.  In the Amendment, Al-Saleh agreed that, upon receipt of the Remaining Settlement Amount, HS3 and MAN will have fully performed their payment obligations and no Actionable Event will have occurred by then – the two conditions precedent to the dismissal of pending litigation, the recording of the satisfactions of judgments, and the release of Collateral under Sections 15 and 16 of the Settlement Agreement.  ECF 323-27 § 5; *supra* ¶ 31.

33.     Denied as phrased.  Admitted that, as of January 10, 2017, HS3 and MAN paid the Remaining Settlement Amount to Al-Saleh.

34.     Admitted.

35.     Denied as phrased.  Admitted that Al-Saleh's counsel provided a draft of the Release to HS3's counsel on October 5, 2016.  ECF 323-30.  Admitted that HS3's counsel provided edits to the aforementioned draft on October 10, 2016.  ECF 323-21.  Admitted that Al-Saleh's counsel agreed to the form of the Release as revised on October 21, 2016.  ECF 323-37.

36.     Admitted that Hall received drafts of the Release from Al-Saleh's counsel.  ECFs 323-33, 323-36.  Otherwise, cited evidence does not support the statement.  Subject to foregoing, denied that Hall was at that same time or ever actively seeking, obtaining, and disseminating the

HS3 Material.  *Infra* ¶¶ 42, 72-102.

37.     Denied that the Settlement Agreement did not contain an express covenant not to sue.  By expressly incorporating and making the Release a part thereof, the Settlement Agreement contains an express covenant not to sue.  ECF 323-11 § 2.1; ECF 323-16.

38.     Denied that the Release contains no express covenant or promise not to sue on released claims.  ECF 323-16.  It states expressly that it is "intended to be contractual in nature" and prohibits releasors from bringing against any releasee "any and all manner of actions," "causes of action," "suits," "controversies," "disputes," and "claims and demands whatsoever."

39.     An improper legal conclusion to which no response is required.  Subject to foregoing, denied that HS3 did not release any claims against Hall or Burford UK.  By signing the Release, HS3 agreed not to sue Hall or Burford UK on any released claims to the extent that Hall or Burford UK was a Releasee, defined to include "all persons or entities for whose acts or omissions [Al-Saleh, Burford Capital, or Dundrod] would or could be derivatively or vicariously liable or to whom the foregoing could or would owe indemnification."  *Id.*

40.     Admitted that the Complaint alleges that the Release containing a promise not to sue was a "critical" component of the Settlement Agreement.  Compl. ¶ 23.  Denied that there is no admissible evidence that a covenant not to sue was a critical, key provision, or central provision.  ECF 324 ("PSUF") ¶ 49.  Denied that there is no evidence that it was even discussed or even a request from any of the Parties to the Settlement.  Goldsmith Decl. Ex. 1 (Will Tr. 91:7-16) ███████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████ Admitted that Al-Saleh's counsel attested that he would not answer any question on privileged communications regarding the negotiation of the Settlement Agreement.  ECF 323-15 ¶¶ 8-9.

41.     Denied that Hall exchanged the HS3 Material.  Goldsmith Decl. Ex. 2 (Hall Tr. 223:23-226:10); Goldsmith Decl. Ex. 3 (D. Sargeant Tr. 170:21-171:2).  Cited evidence does not show that Hall did not notify Al-Saleh or his counsel of Hall's receipt of the HS3 Material before or after such receipt.  Admitted that Al-Saleh's counsel did not have personal knowledge of Hall's receipt of the HS3 Material prior to the filing of the SAC.

42.     Not supported by cited evidence.  Subject to foregoing, denied that Hall was attempting to acquire the HS3 Material.  ECF 323-1 (Hall Tr.) 456:24-457:8 █████████████

██████████████████████████████████████

████████████████████████████████████████

███████████████████████ ; *id.* 221:12-22; 404:15-19; ECF 323-2 (Will Tr.) 171:21-

25████████████████████████████████████████

████████████████

43.     Not supported by cited evidence.  Subject to foregoing, denied that neither
Burford UK nor Burford US was aware that Hall was planning on giving, and later gave, the
Ruperti Material to Dan S.  ECF 323-2 (Will Tr.) 178:4-6 ███████████████████████████

███████████████████████████████  Goldsmith Decl. Exs. 6, 7, 8 (BUR_0504716,
BUR_0504720, BUR_0504779).  Denied that neither Burford UK nor Burford US was aware
that Hall was planning on giving, and later gave, the Ruperti Material to Dan S.  ECF No. 323-2
(Will Tr.) 205:11-12 █████████████████████████████

44.     [Intentionally omitted in Defendant's Statement of Material Facts.]

45.     Admitted that Al-Saleh's counsel received a copy of the Trigeant Settlement
Agreement in or around May 2015 when it was filed in the Trigeant bankruptcy.  ECF 323-15
¶ 10.  Admitted that Exhibits A and B to the agreement, which neither incorporates nor makes
them a part thereof, contain the term "covenant not to sue."  ECF 323-71, Ex. B. § 4.4 & Exs. A,
B.  Denied that no attempt was made by Al-Saleh or his attorneys to include a covenant not to
sue in the Settlement Agreement or Release.  The Settlement Agreement and Release includes a
covenant not to sue, as requested by Al-Saleh's counsel.  *Supra* ¶¶ 37-39.

46.     Admitted that, from approximately 1990 through 2012, HS3 was involved with
the Sargeant Family in the Sargeant Family Businesses, including Sargeant Marine.  ECF 324-3
(HS3 Tr.) 56:10-12.  Denied that HS3 ever served as an officer or possessed any ownership
interest in Sargeant Marine.  PSUF ¶ 3.

47.     Admitted that the Sargeant Family Businesses were separate companies, each
incorporated and legally distinct from Sargeant Marine.  Denied that HS3 was treated as co-
owner of all Sargeant Family Businesses.  He never held an ownership stake in Sargeant Marine.
*Supra* ¶ 46.  Admitted that he ran some of the Sargeant Family Businesses' business interests
until separating in 2013.  ECF 324-4 (D. Sargeant Tr.) 13:8-11; 79:16-18.

48.     Denied as phrased.  Admitted that Sargeant Marine owned a computer server
located at 3020 North Military Trail, Boca Raton, FL, that hosted the HS3 Email Account.  ECF

324-7 (Rivas Tr.) 145:22-146:9.  Admitted that HS3 used the HS3 Email Account to correspond with women with whom he engaged in extramarital affairs, including sending and receiving emails with photos and videos contained in the HS3 Material.  PSUF ¶ 18.  Admitted that HS3 used the HS3 Email Account to exchange other business and personal information.  *Id.*

49.  Admitted that the Sargeant Family Businesses were businesses run by family. ECF 323-41 (HS2 Tr.) 80:18-20.  Denied that they did not have policies or procedures associated with access to or use of the Sargeant Server or email accounts hosted by it.  PSUF ¶ 6.

50.  Admitted that, while an employee of Sargeant Marine, HS3 used an email account hosted on the Sargeant Server with the address, ███████████████████ (the "HS3 Email Account").  ECF 324-3 (HS3 Tr.) 84:8-14.  Denied that HS3 owned the HS3 Email Account. Sargeant Marine owned it.  *Supra* ¶ 48.  The Sargeant Marine IT Policy provides that computer and email systems are "company property," and "all messages or files composed, sent, or received on these systems are and remain the property of the company."  PSUF ¶ 7.

51.  Denied that HS3 owned the HS3 Email Account.  *Supra* ¶ 50.  Denied that HS3 controlled access to the HS3 Email Account.  Sargeant Marine controlled access to the HS3 Email Account.  ECF 324-7 (Rivas Tr.) 145:9-17; 169:2-12; PSUF ¶ 8.  Denied that only HS3 could authorize another person to access the account.  *Id.*

52.  Denied that the HS3 Email Account was treated as HS3's personal property the entire time he was associated with the Sargeant Family Businesses.  *Supra* ¶¶ 50-51.

53.  Denied that HS3 never authorized anyone to access the HS3 Email Account without HS3's permission before HS3's ouster.  Sargeant Marine controlled access to the HS3 Email Account.  *Supra* ¶¶ 50-51.

54.  Denied that HS3 did not authorize Dan S. to, and Dan S. did not access, the HS3 Email Account without HS3's permission while HS3 was at the Sargeant Family Businesses. Sargeant Marine controlled access to the HS3 Email Account.  As an owner of Sargeant Marine, Dan S. had authority to control access to it.  *Supra* ¶¶ 50-51; ECF 324-7 (Rivas Tr.) 145:18-21.

55.  Denied as phrased.  Admitted that, on a number of occasions, James Sargeant accessed the HS3 Email Account per HS3's request while HS3 was an employee of Sargeant Marine.  ECF 323-39 (J. Sargeant Tr.) 39:4-24.

56.  Admitted that HS3 used a password for the HS3 Email Account while he was an employee of Sargeant Marine.  ECF 324-3 (HS3 Tr.) 89:14-16; ECF 324-4 (D. Sargeant Tr.)

292:22-24; ECF 324-7 (Rivas Tr.) 148:15-23.  Denied that there were no policies authorizing anyone aside from HS3 to access the HS3 Email Account besides the system administrator. *Supra* ¶¶ 50-51.

57.  Admitted.

58.  Admitted that the employees of the Sargeant Family Businesses and some family members used sargeant.net email accounts, including HS3's wife and HS3's children, one of whom was a minor.  ECF 323-14 (HS3 Tr.) 162:24-163:13, 172:19-173:14.  Cited evidence does not show that Dan S.'s wife and Dan S.'s children used the sargeant.net email accounts.

59.  Denied as phrased.  Admitted that the HS3 Material was defined in the SAC to consist of 278 .msg files from the HS3 Email Account that contain HS3's personal communications, documents, Microsoft Outlook email files, and photos and videos.  ECF 1-4 ¶ 22 & Ex. A.  Admitted that the HS3 Material contained videos and photos of intimate activity and consensual relations involving HS3 and others.  ECF 324-54 (McGowan Aff. Ex. A) at Ex. B.  It is a question of law whether the HS3 Material contained "private" information, to which no response is required.  HS3's extramarital relationship was widely known, and it was "commonplace" for HS3 to show sexually explicit photos and videos to friends, colleagues, and other acquaintances.  PSUF ¶¶ 20-21.

60.  Admitted, except that it is a question of law whether the HS3 Material contained "private" information, to which no response is required.  PSUF ¶¶ 20-21.

61.  Denied as phrased.  Admitted that, in or about February 2013, after litigation, HS3 left Sargeant Marine.  ECF 324-4 (D. Sargeant Tr.) 13:21-24, 79:16-18; ECF 323-14 (HS3 Tr.) 57:1-9.

62.  Denied.  Rivas testified that he did not have any conversation with HS3 about HS3's email or his access to the Sargeant Server after HS3 left Sargeant Marine in or about February 2013.  Goldsmith Decl. Ex. 4 (Rivas Tr.) at 119:21-120:4, 182:7-24.

63.  Not supported by cited evidence.  Admitted that Rivas acted friendly with HS3. *Id.* 38:6-7.

64.  Cited evidence does not show that Senior told HS3 that the HS3 Email Account was destroyed at or about the time that HS3 left Sargeant Marine.  ECF 323-14 (HS3 Tr.) 170:13-16 ███████████████████████████████████████████████

████████████████████████████████████████████████

65.     Denied that HS3 relied upon the representations referenced in paragraphs 62 or 64 because those representations were not made or supported by cited evidence.  *Supra* ¶¶ 62, 64.  It is an improper question of law whether HS3's conclusion was reasonable, to which no response is required.  Subject to foregoing, denied that HS3 concluded reasonably that the HS3 Email Account had been destroyed.  HS3 was aware that the content of the HS3 Email Account had been made available to James Sargeant by Christmas 2013.  PSUF ¶¶ 25-28.

66.     Denied that the representations referenced in paragraphs 62 or 64 were false because those representations were not made or supported by cited evidence.  *Supra* ¶¶ 62-64.  Denied that HS3 later learned that the HS3 Email Account had not been destroyed.  Rivas testified that the HS3 Email Account was removed from the Sargeant Server before October 2016.  ECF 324-7 (Rivas Tr.) 196:7-24; Goldsmith Decl. Ex. 4 (Rivas Tr.) 180:11-25.  Admitted that HS3 learned that the HS3 Email Account had been accessed and the HS3 Material had been copied and made available to James Sargeant.  PSUF ¶¶ 25-28.

67.     Not supported by cited evidence.  Subject to foregoing, denied that Dan S. advised Hall in January 2015 that Dan S. possessed compromising information concerning HS3; that HS3 was unaware that Dan S. had access to this information; that HS3 was told the HS3 Email Account had been deleted; that Dan S. could access the HS3 Email Account; or that Dan S. did not have HS3's permission to do so.  ECF 323-1 (Hall Tr.) 173:10-25; Goldsmith Decl. Ex. 2 (Hall. Tr.) 176:3-8, 180:11-16; 181:25-182:6.  Admitted that Dan S. met Hall in January 2015 and said that he had obtained HS3's emails and had access to them.  ECF 323-1 (Hall Tr.) 174:14-20; Goldsmith Decl. Ex. 2 (Hall Tr.) 182:7-14.

68.     Admitted that, during the January 2015 meeting of Dan S., Hall, and others, a family dispute regarding salacious material sent to HS3's wife by another family member was discussed.  Goldsmith Decl. Ex. 2 (Hall Tr.) 176:9-16, 180:5-10.  Admitted that the existence of salacious material concerning HS3 was mentioned at the meeting.  *Id.* 177:15-19.

69.     Admitted.

70.     Admitted, except that it is a question of law whether HS3's emails contained "private" information, to which no response is required.  PSUF ¶¶ 20-21.

71.     Admitted.

72.     Denied that Hall requested information from HS3's Email Account in October 2016 or after the Settlement Agreement was finalized and executed.  In August 2016, Hall

10

communicated with Dan S. about Dan S. giving him a USB drive that Hall understood to contain ███████████████████████████ of HS3's Sargeant Marine email.  ECF 323-1 (Hall Tr.) 94:9-96:21, 151:7-153:17; ECF 324-16 (Hall Tr.) 219:2-222:17; *see also* ECF 324-15 (Will Tr.) 161:12-19.  Denied that Hall bypassed Al-Saleh's and Dan S.'s lawyers.  Admitted that Hall discussed directly with Dan S. the possibility of Dan S. giving him the USB drive.

73.     Admitted that, as of October 2016, the information contained in the HS3 Email Account was more than three-and-a-half years old.  ECF 324-54 (McGowan Aff. Ex. A) at Ex. B.  Admitted that October 2016 was more than 20 months after Lichtman provided ██████ ████ selection of emails in January 2015.  ECF 324-16 (Hall Tr.) 202:4.  Denied that Lichtman in fact provided all emails relevant to anything HS3 was doing in business.  Hall later received many additional emails related to HS3's business activities.  *Id.*  Admitted that Lichtman stated in his January 2015 email that "[h]ere are Harry's emails that we pulled out of the system and were given to me some time ago," which includes "all emails of any nature . . . relevant to anything Harry was doing in business" and that "I have sent the IT guy at Trigeant back on a mission to pull emails to or from Harry that go back to 2004, very few of which had ever been reviewed by me or others."  ECF 323-50 at 2.

74.     Admitted that Hall was aware that the USB drive contained HS3's entire email archive, ████████████████████████████████  ECF 323-1 (Hall Tr.) 404:15-19.

75.     No admissible evidence is cited.  Subject to foregoing, denied that Hall made a request in October 2016.  Admitted that, in 2016, Dan S. was pursuing claims against Ruperti and Ruperti's companies on behalf of LAIL.  ECF 323-49.

76.     Denied that material Hall provided to Dan S. in October 2016 (the "Ruperti Material") was confidential.  ECF 323-1 (Hall Tr.) 267:14-16; *id.* 273:23-274:4 ████ ███████████████████████████████; *id.* at 285:3-286:13.  Admitted that Hall received the Ruperti Material during his judgment enforcement work on behalf of Novoship.  *Id.* 268:3-274:14.  Admitted that Novoship was a client of Focus's, and that Focus was acquired by Burford UK in 2015.  ECF 323-53; ECF 323-5 (BUR_0504810).  Admitted that the Ruperti Material was referenced in the Preston Affidavit.  ECF 323-49 ¶ 122.

77.     Admitted.

78.     Denied that the Ruperti Material was subject to various confidentiality restrictions.  ECF 323-1 (Hall Tr.) 267:14-16; *id.* 273:23-274:4 ██████████████████████

79.     Admitted that Hall did not inform or seek permission from anybody at Novoship that he was going to give the Ruperti Material to Dan S.  *Id.* 228:22-229:9.  Denied that Hall ignored any duties to Novoship.  *Supra* ¶¶ 76, 78.  Denied that Hall traded the Ruperti Material to Dan S. in exchange for the HS3 Material.  *Supra* ¶ 41.

80.     Admitted that, in the UK proceedings involving Novoship, Burford UK and Hall submitted their Defence stating that the information at issue in that litigation was in the public domain and was otherwise not private and confidential.  ECF 323-58.  Denied that the foregoing statement was Hall and Burford UK's sole defense.  *Id.*  Denied that Hall did not check if the information at issue in that litigation was in the public record when he disclosed it to Dan S.  In October 2016, Hall was aware that the information at issue had been submitted to open court in a UK litigation involving Ruperti resolved in 2015.  ECF 323-1 (Hall Tr.) 285:3-286:13.

81.     Admitted that Hall did not notify, or seek permission from, his superiors at Burford UK prior to providing the Ruperti Material to Dan S.  *Id.* 305:8-18.

82.     Admitted that, in text messages between Hall and Dan S. in August and October 2016, Hall discussed the possibility of Dan S. giving him a USB drive containing the entire content of HS3's Sargeant Marine email archives, and Dan S. discussed the possibility of Hall giving him some material related to Ruperti.  ECF 323-51.

83.     Admitted.

84.     Denied that Hall proposed to exchange the Ruperti Material for the HS3 Material.  *Supra* ¶ 41.  Admitted that, on August 19, 2016, Hall texted Dan S.: "I've some Wilmer Stuff for you. And I'd love the other stuff we discussed."  ECF 323-51.

85.     Admitted that on October 3, 2016, Hall and Dan S. scheduled a meeting and Hall texted Dan S.: "I'd like a usb stick from your good self as well."  *Id.*

86.     Admitted, except that it is a question law whether HS3's emails contained "private" information, to which no response is required.  PSUF ¶¶ 20-21.

87.     Not supported by cited evidence.  Subject to foregoing, denied.  *Supra* ¶ 42.

88.     Admitted that, in October 2016, Hall received a USB drive that he understood to contain ████████████████████████ of HS3's Sargeant Marine email.  ECF 323-1 (Hall Tr.) 94:9-96:21, 151:7-153:17; ECF 324-16 (Hall Tr.) 219:2-222:17; *see also* ECF 324-15 (Will Tr.) 161:12-19.  Admitted that, ██████████████████████████ ECF 323-

1 (Hall Tr.) 404:15-19.  Admitted that Hall viewed a few salacious materials.  *Id.* 106:4-21.

Admitted that Hall transmitted, by electronic means, a few salacious materials to certain Burford

personnel and two close friends.  ECFs 323-62, 323-65, 323-66, 323-67.

       89.    Admitted.

       90.    Admitted that, before receiving the USB drive, Hall understood it to contain █████

████████████████████ of HS3's Sargeant Marine email and that █████████████████

███████████████  *Supra* ¶ 88.  Admitted that on October 14, 2016, Perez texted to

Hall, "Made a copy for you to keep. It's pretty nasty. Lol."  ECF 323-68.  Admitted that Hall

replied in ████████████ ECF 323-1 (Hall Tr.) 405:4, "Thanks. I literally can't wait to

see it," ECF 323-68.  Whether HS3's emails contained "private" information is an issue of law to

which no response is required.  PSUF ¶¶ 20-21.

       91.    Admitted.

       92.    Admitted that Hall received the HS3 Material on October 14, 2016, after the

Settlement Agreement was executed.  *Supra* ¶¶ 13, 91.  Admitted that October 14, 2016 was

during the Forbearance Period (as defined in the Settlement Agreement).  ECF 323-11 § 10.

Denied that Hall requested the HS3 Material after the Settlement Agreement was finalized and

executed and during the Forbearance Period.  *Supra* ¶ 87.

       93.    Admitted that J. Sargeant was not involved in providing the HS3 Material to Hall.

ECF 323-60 (Perez Tr.) 155:14-156:12 (pp. 20-21).  Otherwise not supported by cited evidence.

       94.    Admitted that, in October 2016, Perez received the USB drive containing █████

██████████████████████ of HS3's Sargeant Marine email the HS3 Email Account,

ECF 324-16 (Hall Tr.) 219:2-222:17, which included the HS3 Material, from Daniel Rivas, ECF

323-60 (Perez Tr.) 185:1-5 (p. 23).  Admitted that, at that time, Perez and Rivas watched a few

salacious materials before she provided the USB drive to Hall.  *Id.* 185:1-188:23 (pp. 23-26).

       95.    Not supported by cited evidence.  Denied that Hall requested the HS3 Material.

*Supra* ¶ 42.

       96.    Denied as phrased.  Admitted that Al-Saleh's counsel did not have

contemporaneous personal knowledge of Hall's receipt of the HS3 Material.  ECF 323-38 ¶ 7;

ECF 323-15 ¶ 13.  Cited evidence does not show that Hall disseminated the HS3 Material.

       97.    Denied that neither Al-Saleh nor Al-Saleh's counsel requested that Hall obtain the

HS3 Material.  Al-Saleh and Al-Saleh's counsel engaged Hall to help locate HS3's assets and

assist with judgment-enforcement efforts.  Goldsmith Decl. Ex. 2 (Hall Tr.) 40:5-44:14, 133:16-138:7; ECF 323-10.  Cited evidence does not show that Hall disseminated the HS3 Material.

98.    Denied as phrased.  Admitted that Al-Saleh's counsel did not have personal knowledge of Hall's receipt of the HS3 Material until HS3 filed the SAC.  ECF 323-38 ¶ 7; ECF 323-15 ¶ 13.  Cited evidence does not show that Hall disseminated the HS3 Material.

99.    Admitted that Hall never advised HS3 that he obtained the HS3 Material.  Cited evidence does not show that Hall disseminated the HS3 Material.

100.    Cited evidence does not show that only Hall's subordinates had contemporaneous knowledge that Hall received the HS3 Material or that no one else at Burford UK, Burford US, or Dundrod was aware that Hall received the HS3 Material.  Denied that Hall requested the HS3 Material.  *Supra* ¶ 42.  Admitted that Will is a senior managing director at Burford Capital who testified as a Rule 30(b)(6) witness on its behalf in this case.  ECF No. 323-2 (Will Tr.) 9:19.  Admitted that, after receiving the HS3 Material, Hall transmitted a few salacious videos and photos to Will.  ECF 323-62.  Admitted that Will received the foregoing materials and viewed a portion of them on October 21, 2016.  ECF No. 323-2 (Will Tr.) 165:10-13; 170:15-21.

101.    Cited evidence does not show that Hall and Will were actively engaged in the negotiation of the Release.  Admitted that, on October 10 and 22, 2016, Hall and Will received copies of a draft form of the Release from Al-Saleh's counsel.  ECFs 323-32, 323-34, 323-35, 323-36.  Admitted that, on October 21, 2016, Will received a few salacious videos and photos concerning HS3 and viewed a portion of them.  ECF 323-62; ECF 323-2 (Will Tr.) 165:10-13; 170:15-21.

102.    Cited evidence does not show that Al-Saleh's counsel agreed to the form of the Release after Will reviewed salacious materials.  Admitted that HS3's and Al-Saleh's counsel drafted and negotiated more than 60 documents, including the form of the Release, during a three-week period after the execution of the Settlement Agreement and that Al-Saleh's counsel agreed to the form of the Release on October 21, 2016.  ECF 323-37.  Admitted that, on October 21, 2016, Will received a few salacious videos and photos concerning HS3 from Hall and viewed a portion of them.  ECF 323-62; ECF 323-2 (Will Tr.) 165:10-13; 170:15-21.

103.    An improper legal conclusion to which no response is required.

104.    Denied that Hall exchanged the Ruperti Material for the HS3 Material.  *Supra* ¶ 41.  Otherwise, an improper legal conclusion to which no response is required.

105.    Denied that Hall requested or obtained specifically the HS3 Material.  *Supra* ¶ 42.
Denied that Hall's actions receiving HS3's emails in October 2016 lacked any legitimate
judgment enforcement purpose.  Hall received a USB drive that Hall understood to contain ███
███████████████████████████ of HS3's Sargeant Marine email in furtherance of Al-Saleh's
judgment enforcement efforts.  ECF 323-1 (Hall Tr.) 94:9-96:21, 151:7-153:17; ECF 324-16
(Hall Tr.) 219:2-222:17; ECF 324-15 (Will Tr.) 161:12-19.

106.    Denied that Hall's receipt of HS3's emails in October 2016 was irrelevant to asset
recovery or other legitimate purpose.  *Supra* ¶ 105.  It is a question of law whether the HS3
Material contained "private" information, to which no response is required.  PSUF ¶¶ 20-21.

107.    Denied as phrased.  Admitted that the salacious materials concerning HS3
contained in the USB drive did not have an independent use for Al-Saleh's judgment
enforcement efforts, in furtherance of which Hall received the USB drive.  *Supra* ¶ 105.

108.    Not supported by cited evidence.  Subject to foregoing, denied.  Hall received a
USB drive containing ██████████████████████████ of HS3's Sargeant Marine email
in furtherance of Al-Saleh's judgment enforcement efforts.  *Supra* ¶ 105.

109.    Not supported by cited evidence.  Subject to foregoing, denied that the Sargeant
Server was accessed in 2015 or 2016.  The HS3 Material was obtained from the HS3 Email
Account in August 2013.  PSUF ¶¶ 70-71.  The HS3 Email Account was disconnected in
February 2013 and could no longer be accessed on the Sargeant Server.  Goldsmith Decl. Ex. 4
(Rivas Tr. 183:13-20); ECF 324-7 (Rivas Tr.) 196:7-24.

110.    Not supported by cited evidence.  Subject to foregoing, denied.  Tamimi only
informed HS3 about the existence of the Preston Affidavit and did not identify Hall or how Dan
S. obtained the HS3 Material.  PSUF ¶¶ 67, 69.  Nor did the Preston Affidavit identify how Dan
S. obtained the HS3 Material.  ECF 323-49 ¶ 153.

111.    Not supported by cited evidence.  Subject to foregoing, denied.  HS3 was aware
the content of the HS3 Email Account was available to J. Sargeant by Christmas 2013.  PSUF
¶¶ 25-28.

112.    No admissible evidence was cited to support the statement.  Subject to foregoing,
denied.  Maroil Trading, Inc. and Sea Pioneer Shipping Corporation filed a claim against
Novoship (UK) Limited and other defendants in the High Court of Justice in the UK.  *See* ECF
323-56.  On March 14, 2019, the defendants filed a defense and additional claim against Burford

UK and Hall. *Id.* On May 2, 2019, the defendants filed an amended defense and additional claim against Burford UK and Hall. ECF 323-57.

113.   No admissible evidence was cited to support the statement. Subject to foregoing, denied. The defendants in the UK proceeding referenced in paragraph 112 stated in their amended defence and additional claim that they seek *inter alia* "[a] declaration that [a settlement agreement dated October 18, 2017 among Hall, Burford UK, and the defendants] has been validly rescinded" or alternatively "rescission on the grounds of deceit." *Id.* at 22.

114.   Denied as phrased. Admitted that Hall received the Ruperti Material while he was engaged in judgment enforcement efforts for Novoship. ECF 323-1 (Hall Tr.) 356:3-11.

115.   No admissible evidence was cited to support the statement. Subject to foregoing, denied that Hall disclosed the Ruperti Material in exchange for the HS3 Material. *Supra* ¶ 41. Otherwise, improper legal conclusions to which no response is required.

116.   No admissible evidence was cited to support the statement.

117.   Not supported by cited evidence. Subject to foregoing objection, denied that Hall faced internal criticism at Burford UK for his conduct concerning his transfer of the Ruperti Material. ECF 323-1 (Hall Tr.) 355:4-10. Denied that Hall exchanged the Ruperti Material for the HS3 Material. *Supra* ¶ 41.

118.   Denied as phrased. Admitted that Hall received the USB drive from Perez on October 14, 2016. ECF 323-1 (Hall Tr.) 88:18-89:2. Admitted that Hall sent an email to certain Burford personnel attaching two pictures from the USB drive. ECF 323-67.

119.   Denied as phrased. Admitted that, on October 16, 2016, Hall sent a picture from the USB drive to his two close friends via WhatsApp. Def. Ex. 32A. Admitted that Hall was with the two individuals in Miami on the day that Hall received the USB drive from Perez. ECF 323-1 (Hall Tr.) 400:16-401:15. Admitted that the two individuals are not affiliated with Burford US, Burford UK, or Dundrod. *Id.* 117:2-13.

120.   Denied as phrased. Admitted that, on October 17, 2016, Hall sent a picture from the USB drive to AMO, a Burford UK colleague, and exchanged messages regarding the picture and ███████████ with AMO via WhatsApp. ECF 323-66.

121.   Not supported by cited evidence. Admitted that Hall watched a video from the USB drive with certain Burford personnel in the UK. ECF 323-52 (Beam Tr.) 143:3-15; ECF 323-1 (Hall Tr.) 442:7-16.

122.    Denied as phrased.  Admitted that, on October 21, 2016, Will provided Hall with her personal email address at his request and that Hall sent some salacious materials from the USB drive to Will.  Def. Exs. 30, 32.  Admitted that, in an email to Will dated October 21, 2016, Hall wrote, as ████████████████ Hall Tr. at 441:8-14, "I'd suggest you grab a glass of wine and treat yourself to the 5mins of video."  ECF 323-63.

123.    Not supported by cited evidence.  Subject to foregoing, denied.  Hall instructed Beam not to save a copy of the USB drive on NetDocs.  ECF 323-52 (Beam Tr.) 200:201:3. Beam saved a copy on her Burford-issued computer.  *Id.* 141:23-142:16.

124.    Denied.  Hall received a USB drive that Hall understood to contain ████████ ██████████████████  of HS3's Sargeant Marine email in furtherance of Al-Saleh's judgment enforcement efforts.  *Supra* ¶ 105.  Hall directed Beam to review the USB drive in furtherance of the same.  ECF 323-52 (Beam Tr.) 139:12-140:12.  Admitted that the salacious materials concerning HS3 contained in the USB drive did not have an independent use.

125.    Not supported by cited evidence.  Subject to foregoing, denied that only Beam reviewed any material in the USB drive.  ECF 323-1 (Hall Tr.) 103:2-104:5.  Denied that Beam's review of the USB drive was limited to emails between HS3 and two women.  ECF 323-52 (Beam Tr.) 203:4-23, 209:8-210:23; ECF 324-18 (PX24 at BUR_0003658.005 (identifying contacts beyond the two women)).

126.    Denied.  Hall, Will, Beam, Dinolt, and AMO did not receive the HS3 Material in its entirety; each received one or more items from it. ECF 323-2 (Will Tr.) 23:22-24:19.

127.    Cited evidence does not show that Hall disseminated the HS3 Material.  Subject to foregoing, admitted that Hall received the HS3 Material on October 14, 2016 after the Settlement Agreement was executed.  *Supra* ¶¶ 13, 91.  Admitted that October 14, 2016 was during the Forbearance Period.  *Supra* ¶ 92.  Admitted that HS3's and Al-Saleh's counsel drafted and negotiated the form of the Release among other documents, during a three-week period following the execution of the Settlement Agreement.  ECF 323-37.

128.    Not supported by cited evidence.

129.    Cited evidence does not support that Hall engaged in any illicit conduct, or obtained or disseminated the HS3 Material.  Otherwise an improper, conclusory speculation unsupported by any admissible evidence, to which no response is required.

130.    Cited evidence does not support that Hall disseminated the HS3 Material at any

time.  Subject to foregoing, admitted that neither Burford US nor Will notified HS3 that Hall received the HS3 Material.  ECF 323-2 (Will Tr.) 175:8-11.

131.    Admitted.

132.    An improper, conclusory statement unsupported by admissible evidence, to which no response is required.  Subject to foregoing, denied that the allegations were accurate based on the facts that HS3 knew or should have known at the time of the filing.  PSUF ¶¶ 60-82.

133.    Admitted that HS3 is not a lawyer.  Otherwise, an improper invocation of an advice-of-counsel defense.  ECF 289 (Order) at 4 (July 2, 2019).  HS3 authorized the filing of the SAC by his counsel on his behalf.  ECF 324-5 (HS3 Ans. 2d RFAs) at 2, Nos. 32, 33.

134.    Improper, conclusory statements unsupported by admissible evidence, to which no response is required.

135.    No admissible evidence is cited.  Subject to foregoing, admitted that paragraph 153 of the Preston Affidavit stated that, in October 2016, "Mr Hall maintained his request for copies of the personal material relating to Mr Harry Sargeant III.  [Dan S.] made arrangements to provide that material to Mr Hall which, Mr Sargeant informs me, is of a sensitive personal nature and is entirely unrelated to these proceedings."  ECF 323-49 ¶ 153.

136.    Admitted that HS3 and his counsel met with Mooney before filing the SAC.  Admitted that Mooney provided certain documents, which speak for themselves.  Otherwise, no admissible evidence was cited in support of the statements.  Mooney's affidavit is not based on personal knowledge, fails to set out facts that would be admissible in evidence, and does not show that the declarant is competent to testify to Dan S.'s conduct in 2016.  ECF 323-46.  Subject to foregoing, admitted that Mooney told HS3 that Dan S. had already obtained materials from HS3's email account by early 2015.  PSUF ¶ 65.  Admitted that Mooney's discussions with Dan S. occurred only in early 2015.  *Id.* ¶ 64.  Denied that HS3 and his counsel's conversations with Mooney related to any of Dan S.'s conduct in August or October 2016.  *Id.* ¶¶ 64-66.

137.    Admitted that Mooney testified that, in early 2015, Dan S. informed Hall that he already "had obtained highly explicit intimate videos and photographs of [HS3]" from HS3's "former email account."  ECF 323-47 (Mooney Tr.) 39:18-41:15.  Otherwise, cited evidence does not support the statements.  *Supra* ¶¶ 110-11.

138.    Not supported by cited evidence.  Subject to foregoing, denied.  HS3 testified that Tamimi had no basis to know how Dan S. obtained the HS3 Material.  PSUF ¶ 67.  Denied that

Dan S. traded the HS3 Material with Hall.  *Supra* ¶ 41.

139.    No admissible evidence was cited in support of the statements.  Allegations in the SAC, statements made during mediation, and any testimony by a witness previously undisclosed are inadmissible.  ECF 323-72 (Coleman Tr.) 78:1-87:25.

140.    No admissible evidence was cited in support of the statements.  Subject to foregoing, admitted that LAIL produced emails between Dan S., Preston, and Hall from May to July 2017, which speak for themselves.  ECFs 323-61, 323-70.  Denied that they discussed an exchange or indemnity.  *Supra* ¶ 41; Goldsmith Decl. Ex. 2 (Hall Tr.) 344:4-346:17.

141.    Admitted that HS3 through his attorneys were aware of and reviewed the LAIL production metadata.  Denied that only some of HS3's emails produced by LAIL had the Date Last Modified of August 28, 2013.  PSUF ¶ 71.  Denied that the Date Last Modified was not conclusive as to the date of access to the HS3 Email Account.  The metadata establishes that the HS3 Material was obtained from the HS3 Email Account in August 2013.  *Id.* ¶¶ 70-71.

142.    Admitted.

143.    Admitted that HS3 is not a lawyer.  Otherwise, an improper invocation of an advice-of-counsel defense.  ECF 289 (Order) at 4 (July 2, 2019).

144.    Improper, conclusory statements, to which no responsive is required.  Subject to foregoing, denied.  HS3's counsel admitted that not even a minimal effort was undertaken to corroborate the information provided by Tamimi or Mooney, nor did counsel do anything to verify any of the statements in the Preston Affidavit.  PSUF ¶ 83.  Similarly, HS3's counsel conducted no investigation to determine whether the photos that James Sargeant sent via text message in 2013 were among the HS3 Material.  *Id.*

145.    No admissible evidence was cited in support of the statements.  Subject to foregoing, admitted that Mooney told HS3 that Dan S. had already obtained materials from HS3's email account by early 2015.  PSUF ¶ 65.  Denied that HS3 counsel's conversations with Mooney related to any of Dan S.'s conduct in August or October 2016.  *Id.* ¶¶ 64-66.

146.    Admitted that Burford US, Dundrod, and Al-Saleh were not named as defendants in the SAC.  ECF 323-71.  Denied that they were the only Releasees.  ECF 323-16.

147.    Admitted that the SAC alleged that the HS3 Email Account was accessed on or about October 6 and October 28, 2016.  ECF 323-71 ¶¶ 35-37.  Denied that the HS3 Email Account was accessed on October 14, 2016.  The HS3 Email Account had been removed from

the Sargeant Server by October 2016.  ECF 324-7 (Rivas Tr.) 196:17-24.  Otherwise, an improper legal conclusion, to which no response is required.

148.   Not supported by cited evidence.  Subject to foregoing, admitted that HS3 voluntarily dismissed the SAC on June 4, 2018.  Otherwise denied.  PSUF ¶ 58.

149.   Not supported by cited evidence.  Subject to foregoing, admitted that HS3 refiled some of his claims in state court.  PSUF ¶ 57.  Otherwise denied.  *Supra* ¶ 148.

150.   Improper legal conclusions, to which no response is required.

151.   Admitted.

152.   Admitted.

153.   Improper legal conclusions, to which no response is required.  Subject to foregoing, denied that HS3 did not file the SAC against Hall out of malice.  PSUF ¶ 53.  Denied that HS3 sought redress for Hall's alleged conduct.  *Id.* ¶ 54.

154.   Not supported by cited evidence.

155.   Not supported by cited evidence.  An improper legal conclusion, to which no response is required.  Subject to foregoing, admitted that Hall has not personally paid attorneys' fees and costs related to the SAC or this lawsuit.

156.   An improper legal conclusion, to which no response is required.

157.   Admitted that Sections 3.4, 3.5, and 3.6 of the Services and Management Agreement contain the quoted provisions.  ECF 323-81.  Otherwise an improper legal conclusion, to which no response is required.

**PLAINTIFFS' STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS**

1.   In January 2015, as part of Hall's investigative work on behalf of Al-Saleh, Hall and Al-Saleh's counsel met with Dan S. and his counsel.  ECF 323-1 (Hall Tr.) 150:21-153:3.

2.   Aviva Will represented Burford in the negotiation of the Settlement Agreement.  ECF 323-2 (Will Tr.) 64:19-25.  Will testified that she believed language stating that an Actionable Event would include when "any of the SA Release Parties defaults in the performance of the releases signed subject to Section 16 below" was removed because Al-Saleh and his lawyers ███████████████████████████  *Id.* 101:2-3.

3.   Al-Saleh assigned his interests in his judgments against HS3 to Dundrod effective as of January 12, 2017.  Goldsmith Decl. Ex. 5 (BUR_0003764).

DATED:  September 6, 2019

Respectfully submitted,

/s/  *Samuel A. Danon*

Samuel A. Danon (FBN 892671)
Armando Cordoves, Jr. (FBN 112425)
HUNTON ANDREWS KURTH LLP
1111 Brickell Avenue, Suite 2500
Miami, FL 33131
Tel.: (305) 810-2500
Email: sdanon@HuntonAK.com
Email: acordoves@HuntonAK.com

Derek T. Ho (*pro hac vice*)
Andrew E. Goldsmith (*pro hac vice*)
Minsuk Han (*pro hac vice*)
Christine A. Bonomo (*pro hac vice*)
Jan E. Messerschmidt (*pro hac vice*)
KELLOGG, HANSEN, TODD
   FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
Email:  dho@kellogghansen.com
Email:  agoldsmith@kellogghansen.com
Email:  mhan@kellogghansen.com
Email:  cbonomo@kellogghansen.com
Email:  jmesserschmidt@kellogghansen.com

*Counsel for Plaintiffs Daniel Hall, Burford*
*Capital LLC, and Dundrod Investments Ltd.*