UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cv-80748-ALTMAN/Reinhart

DANIEL HALL,
BURFORD CAPITAL LLC,
AND DUNDROD INVESTMENTS LTD.,

    Plaintiffs,

    v.

HARRY SARGEANT, III,

    Defendant.
_____/

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

                                                                    **PAGE**

TABLE OF AUTHORITIES ................................................................................................ iv

INTRODUCTION ................................................................................................................ 1

ARGUMENT ........................................................................................................................ 1

    I.      SUMMARY JUDGMENT SHOULD BE GRANTED TO PLAINTIFFS ON THEIR CONTRACT CLAIM ....................................................................... 1

           A.     The Release and Settlement Agreement Contain Enforceable Promises Not To Sue ........................................................................ 1

                1.   The Language of the Releases and Settlement Agreement. ................. 1

                2.   Purposes of the Release and Settlement Agreement. ........................... 2

                3.   Applicable Canons of Construction. ..................................................... 2

           B.     The Amendment Did Not Extinguish Defendant's Obligation Not To Sue ................................................................................ 3

           C.     Plaintiffs Have Standing To Sue for Breach .............................................. 3

           D.     Defendant's Breach Is an Actionable Event ............................................... 4

           E.     The Actionable Event Provision Is Not an Unenforceable Penalty Clause ................................................................................ 6

           F.     Plaintiffs Are Also Entitled to Compensatory Damages ............................ 6

    II.     HALL IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON HIS MALICIOUS PROSECTUION CLAIM ............................................................... 7

           A.     The Undisputed Evidence Establishes Bona Fide Termination in Hall's Favor ................................................................................ 7

           B.     The Undisputed Evidence Shows Defendant Lacked Probable Cause .................................................................................... 8

                1.   The Correct Legal Standard. ................................................................. 8

                2.   Lack of Evidence for Defendant's Claims. ........................................... 9

           3.  Evidence Contradicting the SAC's Claims. ........................................... 10

           4.  The Release. ........................................................................................ 12

      C.      Defendant Sued Hall Maliciously ................................................................ 12

III.     DEFENDANT'S AFFIRMATIVE DEFENSES DO NOT PRECLUDE
        SUMMARY JUDGMENT ....................................................................................... 13

CONCLUSION ............................................................................................................................ 13

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Ace Elec. Supply Co. v. Terra Nova Elec., Inc.*, 288 So. 2d 544 (Fla. 1st DCA 1973) .................. 6

*Cerniglia v. Cerniglia*, 679 So. 2d 1160 (Fla. 1996) ..................................................................... 3

*City of Homestead v. Johnson*, 760 So. 2d 80 (Fla. 2000) .............................................................. 4

*City of Pompano Beach v. Beatty*, 222 So. 3d 598 (Fla. 4th DCA 2017) ....................................... 4

*Cohen v. Corwin*, 980 So. 2d 1153 (Fla. 4th DCA 2008) ................................................................ 7

*Coleman v. Circle K Stores, Inc.*, 2012 WL 2282575 (M.D. Fla. June 18, 2012) .......................... 9

*Cordoba v. Dillard's, Inc.*, 419 F.3d 1169 (11th Cir. 2005) ............................................................ 4

*DeBoskey v. SunTrust Mortg., Inc.*, 2017 WL 4083557 (M.D. Fla. Sept. 14, 2017) ...................... 7

*DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53 (1st Cir. 1999) .............................. 12

*Eli Research, LLC v. Must Have Info Inc.*, 2015 WL 5934632
      (M.D. Fla. Oct. 6, 2015) ..................................................................................................... 13

*Endacott v. Int'l Hosp., Inc.*, 910 So. 2d 915 (Fla. 3d DCA 2005) ................................................. 8

*Enter. Leasing Co. v. Demartino*, 15 So. 3d 711 (Fla. 2d DCA 2009) .......................................... 3

*Franklin v. Curry*, 738 F.3d 1246 (11th Cir. 2013) ..................................................................... 12

*Gill v. Kostroff*, 82 F. Supp. 2d 1354 (M.D. Fla. 2000) ................................................................. 7

*Goldstein v. Sabella*, 88 So. 2d 910 (Fla. 1956) ............................................................................ 8

*hiQ Labs, Inc. v. LinkedIn Corp.*, 2019 WL 4251889 (9th Cir. Sept. 9, 2019) .............................. 9

*In re W.B. Care Center, LLC*, 419 B.R. 62 (S.D. Fla. 2009) .......................................................... 2

*Jacob Maxwell, Inc. v. Veeck,* 110 F.3d 749 (11th Cir. 1997) ........................................................ 2

*Jones v. UPS Ground Freight*, 683 F.3d 1283 (11th Cir. 2012) .................................................. 12

*Julian Depot Miami, LLC v. Home Depot U.S.A., Inc.*, 364 F. Supp. 3d 1354
      (S.D. Fla. 2018) ................................................................................................................... 5

*Kislak v. Kreedian*, 95 So. 2d 510 (Fla. 1957) .................................................................................. 2

*Lebron v. Royal Caribbean Cruises, Ltd.*, 2018 WL 5098972
    (S.D. Fla. Aug. 14, 2018) ............................................................................................................ 13

*Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306 (Fla. 2000) ................... 3

*Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202 (11th Cir. 2010) ....................................................... 8

*Melford v. Kahane & Assocs.*, 371 F. Supp. 3d 1116 (S.D. Fla. 2019) .................................... 8, 12

*Metals, Inc., of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895 (11th Cir. 2000) .............................. 5

*Nippon Credit Bank, Ltd. v. Matthews*, 291 F.3d 738 (11th Cir. 2002) ........................................ 6

*Polezoes v. Bartlett*, 921 So. 2d 35 (Fla. 4th DCA 2006) ................................................................. 6

*Quintero v. Geico Marine Ins. Co.*, 389 F. Supp. 3d 1153 (S.D. Fla. 2019) ................................ 13

*Real Estate Mortg. Network, Inc. v. Cadrecha*, 2012 WL 1581967
    (M.D. Fla. Apr. 30, 2012) .......................................................................................................... 13

*Rosen v. Fla. Ins. Guar. Ass'n*, 802 So. 2d 291 (Fla. 2001) ............................................................ 3

*San Francisco Distribution Ctr., LLC v. Stonemason Partners, LP*,
    183 So. 3d 391 (Fla. 3d DCA 2014) ............................................................................................ 6

*SFM Holdings, Ltd. v. Banc of Am. Secs., Inc.*, 764 F.3d 1327 (11th Cir. 2014) ........................... 7

*SRGC, LLC v. Billy Casper Golf, LLC*, 2018 WL 3067907 (M.D. Fla. Jan. 31, 2018) ................. 5

*Steadman v. Specialized Loan Servicing, LLC*, 2018 WL 3413029
    (S.D. Fla. May 4, 2018) ............................................................................................................. 13

*Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*,
    904 F.3d 1197 (11th Cir. 2018) ................................................................................................... 3

*Treasure Coast, Inc. v. Ludlum Constr. Co.*, 760 So. 2d 232 (Fla. 4th DCA 2000) ................. 6, 7

*Union Oil of Cal. Amsco Div. v. Watson*, 468 So. 2d 349 (Fla. 3d DCA 1985) ............................ 7

*United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in
    State of Ala.*, 941 F.2d 1428 (11th Cir. 1991) ......................................................................... 13

*United States v. Marder*, 208 F. Supp. 3d 1296 (S.D. Fla. 2016) ................................................ 13

*Ware v. United States*, 971 F. Supp. 1442 (M.D. Fla. 1997) ............................................................ 9

*Wohl Built, Inc. v. Maxum Indem. Co.*, 2018 WL 5020194 (S.D. Fla. Apr. 19, 2018) ................ 13

*Zuk v. E. Penn. Psych. Inst. Of the Med. Coll. Of Penn.*, 103 F.3d 294 (3d Cir. 1996) ............... 12

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 676 .......................................................................................... 12

Plaintiffs Daniel Hall, Burford Capital LLC ("Burford Capital"), and Dundrod Investments Ltd. ("Dundrod") and under Federal Rule of Civil Procedure 56, submit this Reply Memorandum of Law in Support of their Motion for Partial Summary Judgment.

## INTRODUCTION

The one thing the parties agree on is that the issues in this case are ripe for summary judgment. The Settlement Agreement and Release are unambiguous, and the facts related to malicious prosecution are undisputed. Defendant's position, however, largely ignores his own words: the plain language of the promises he made in the Settlement Agreement and Release and the unambiguous concessions that he made in his deposition and that his counsel made in open court. Those words entitle Plaintiffs, not Defendant, to summary judgment. Defendant's opposition throws spaghetti at the wall to try once again to escape liability for his conduct. While we respond to all his arguments here, Plaintiffs submit that summary judgment should be granted based on a straightforward reading of the contract and the undisputed evidence demonstrating the lack of probable cause for the Defendant's now-dismissed claims against Hall.

## ARGUMENT

**I.  SUMMARY JUDGMENT SHOULD BE GRANTED TO PLAINTIFFS ON THEIR CONTRACT CLAIM**

**A.  The Release and Settlement Agreement Contain Enforceable Promises Not To Sue**

In their opening memorandum, Plaintiffs explained why the language of multiple provisions of the Settlement Agreement and Release shows that the parties intended to create an enforceable promise not to sue. *See* Pls.' Mot. for Partial Summ. J. at 13-15 (ECF No. 321) ("Pls. Mot."); *see also* Pls.' Opp'n to Def.'s Mot. for Summ. J. at 3-4 (ECF No. 339) ("Pls. Opp."). Defendant concedes the agreements are unambiguous, *see* Def.'s Resp. to Pls.' Partial Mot. for Summ. J. at 6 n.8 (ECF No. 341) ("Def. Opp."), but he does not offer any alternative interpretation of their language. And the points he does make are unpersuasive.

**1. The Language of the Releases and Settlement Agreement.** Rather than offer a coherent interpretation of the entire contract, Defendant (at 2) urges that the absence of the words "covenant not to sue" ends the inquiry. But he offers no response to the wealth of authority cited by Plaintiffs holding that contracts are to be interpreted based on the language as a whole, not based on labels or "magic words." Pls. Mot. at 13; Pls. Opp. at 3-4. And Defendant offers no

account of the Release's language, which states that it is an agreement, "contractual in nature,"[1] to "release" "any and all manner of actions . . . [and] suits." Pls. SUF ¶¶ 48-50 (Release at 1); Pls. Mot. at 15-17. What does that language mean, if not an agreement not to sue? Defendant never says, and his silence on the Release's text is deafening.

Defendant also offers no coherent interpretation of the multiple provisions of the Settlement Agreement showing that breach of the Release constitutes breach of the Settlement Agreement: (1) the Release is incorporated into the Settlement Agreement and "made a part [t]hereof" (Section 2.1); (2) Burford Capital and Dundrod are named third-party beneficiaries of the Settlement Agreement; (3) the Settlement Agreement contains procedural provisions governing a suit to enforce the releases, including a jury waiver (Section 41) and an anti-waiver / anti-estoppel provision (Section 21); and (4) the Settlement Agreement requires the parties to take all additional acts necessary or proper to give effect to the agreement, including the releases. Again, Defendant's silence on the Settlement Agreement's language is dispositive.

**2. Purposes of the Release and Settlement Agreement.** In explaining his understanding of the Release, Defendant said: "*I never sued him [Al-Saleh]*." Pls. SUF ¶ 49 (HS3 Tr. at 243:6-9). He then repeated: "***Never sued Mohammad Al-Saleh***." *Id.* Defendant shared the common-sense understanding that the Settlement Agreement's core purpose was to *prevent* the parties from being embroiled in future litigation so that they would be "done" with one another. *Id.* (HS3 Tr. at 240:17-21). The agreement not to sue was critical to that objective. Again, Defendant's brief fails to address his own critical concession.

**3. Applicable Canons of Construction.** Defendant's opposition lacks any meaningful response to Plaintiffs' cases interpreting releases to create enforceable duties not to sue. As Defendant acknowledges (at 9), *In re W.B. Care Center, LLC*, 419 B.R. 62 (S.D. Fla. 2009) held that a "waiver of a right to sue in mutual releases converts those releases into a covenant not to sue." That holding is on point here. Defendant criticizes *W.B. Care* because it relied on Circuit precedent, *Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749 (11th Cir. 1997), involving licensing

---

[1] Defendant admits, as he must, that the provision that the Release is "contractual in nature" creates an enforceable contract. *See* Def. Opp. at 9 (language "adopts the common practice of interpreting the Release according to principles of contract law"); *Kislak v. Kreedian*, 95 So. 2d 510, 515 (Fla. 1957) ("The concept of a contract . . . contemplates an agreement enforceable at law between two or more parties for the doing or not doing of some specific thing.").

agreements, but he articulates no coherent reason why that distinction matters. No less than licensees, parties to a settlement want the assurance of a promise not to sue.

Defendant also does not dispute that releases of future claims and partial releases of some but not all tortfeasors are properly interpreted to create covenants not to sue. Pls. Mot. at 13-14.[2] Nor does he dispute that the releases here were partial and released future claims. Those uncontested legal principles alone demonstrate that the agreements here create a duty not to sue.[3]

### B. The Amendment Did Not Extinguish Defendant's Obligation Not To Sue

As explained in Plaintiffs' opposition to Defendant's summary judgment motion, the Settlement Agreement Amendment between Al-Saleh and Defendant could not have abridged the releasees' third-party rights. Pls. Opp. at 15-17. And in any event, the Amendment did not do so. On Defendant's account, the Amendment terminated the Settlement Agreement, and replaced it wholesale. But it plainly did not. Rather, it merely amended Defendant's payment obligations to Al-Saleh, in return for a discount off of the total settlement amount.

### C. Plaintiffs Have Standing To Sue for Breach

Defendant says he is entitled to summary judgment because Hall is not a third-party beneficiary under Section 22 of the Settlement Agreement. That is a red herring: Burford Capital and Dundrod are express third-party beneficiaries under Section 22, and they clearly can sue for breach of Defendant's promise that he would not sue them *or* those who could cause them to be vicariously liable or owe indemnification. *See also Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1211 n.11 (11th Cir. 2018) (company had standing to enforce agents' contractual rights under an incontestability clause).

Hall can also sue in his own right, as a releasee. *See Enter. Leasing Co. v. Demartino*, 15

---

[2] Because a release at common law extinguished the releasor's rights against *the world*, Florida case law has long held that a "release" of some but not all tortfeasors is properly interpreted as a covenant not to sue the releasees. *See Rosen v. Fla. Ins. Guar. Ass'n*, 802 So. 2d 291, 294-96 (Fla. 2001). Indeed, Defendant must rely on that principle to argue that his claims against Daniel Sargeant and Andrew Preston are not released.

[3] Defendant argues (at 2 n.1) that releases of intentional torts are unenforceable in Florida as against public policy. But a release of *past* conduct (even intentional) is not an unenforceable exculpatory clause. *See Cerniglia v. Cerniglia*, 679 So. 2d 1160 (Fla. 1996) (barring tort claims for assault and battery barred by release reached during a dissolution of marriage action); *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 313 (Fla. 2000) (declining to find unenforceable a choice-of-law provision that would bar fraud claim).

So. 3d 711, 714 (Fla. 2d DCA 2009) ("an intended third-party beneficiary of a release has standing to enforce that release"). Section 22 does not detract from Hall's rights. Indeed, the whole point of Section 22 is to give those who benefit under the releases the right as third-party beneficiaries to bring a claim for breach of the Settlement Agreement.

> D. **Defendant's Breach Is an Actionable Event**

The Settlement Agreement provides that "default[ ] in the performance of this Agreement" constitutes an Actionable Event, thus entitling Burford Capital and Dundrod to the unpaid amount of the judgment (which Defendant does not contest is approximately $13.8 million). Pls. SUF ¶ 45 (Settlement Agreement § 13(b)). "[T]his Agreement" unambiguously includes the Release, which is expressly incorporated in Section 2.1. A lawsuit on a released claim thus constitutes a "default" in the performance of Defendant's obligation not to sue. Defendant's attempts to avoid the clear terms of the Settlement Agreement are unpersuasive.

Defendant argues (at 3-4) that an Actionable Event "could occur only prior to full payment of the Settlement Amount." That limitation has no basis in the language of Section 13(b). *See, e.g.*, *City of Pompano Beach v. Beatty*, 222 So. 3d 598, 600 (Fla. 4th DCA 2017) ("[T]he court's task is to apply the parties' contract as-written, not 'rewrite' it under the guise of judicial construction."). Moreover, it contradicts Section 2.1 of the Settlement Agreement, which specifically incorporates the releases and makes them terms of the Settlement Agreement itself, and the terms of the Release, which provide that Defendant "*forever* discharge[d]" his claims against Hall. *See, e.g.*, *City of Homestead v. Johnson*, 760 So. 2d 80, 84 (Fla. 2000) (rejecting interpretation that "would negate the operation" of contract provision).

Citing no evidence, Defendant argues (at 3-4) that the "entire purpose of the Actionable Events sections" was to "ensure Al-Saleh was either paid in full or had secure and immediate access to relief in the event of a default." The Court should not credit that unsupported assertion. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). And at any rate, that speculation cannot override the Settlement Agreement's plain terms.

Finally, it is Defendant's construction, not Plaintiffs', that leads to untenable results. It would be wholly contrary to the express purpose of the Settlement Agreement to "fully and *finally* resolve any and all disputes" between the parties if the obligation not to sue disappeared after Defendant made the required settlement payments. Pls. SUF ¶ 45. Defendant's argument rests on the premise that violating *other* provisions of Section 13 should not trigger liability for

4

the full Judgment Amount once Defendant has fully paid the settlement amount. But the Court need not resolve every hypothetical dispute that could arise under that agreement. At any rate, there is nothing "incongruous," much less "absurd," about applying the provisions of Section 13 post-payment. Def. Opp. at 4. It is hardly absurd that Section 13(a) would make him liable for the Judgment Amount if Al-Saleh discovered today that Defendant had made materially inaccurate representations or warranties and hold him liable for the Judgment Amount. Such inaccurate representations might well justify a claim for rescission, which would make Defendant liable again for the full Judgment Amount. Nor is Section 13(d) absurd insofar as it would prevent Defendant from filing for bankruptcy without risk of liability for the Judgment Amount. Given that Defendant is a billionaire with a history of evading his lawful debts, a bankruptcy filing would almost certainly be a maneuver designed to insulate Defendant against any future liability (for example, for breach of the Settlement Agreement). It is hardly unreasonable for Al-Saleh to have sought to impose a high price for that kind of sham tactic.

Defendant's argument that certain remedies available under Section 14 may not apply post-payment turns principles of contract interpretation on their head, turning the remedies provision into the proverbial tail wagging the dog. Even if, in (some other) case, certain remedies made available do not apply on their own terms, the Court simply need not impose such remedies. *SRGC, LLC v. Billy Casper Golf, LLC*, 2018 WL 3067907, at *3 (M.D. Fla. Jan. 31, 2018) ("the law does not require the performance of vain or useless things") (quoting *All. Metals, Inc., of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895, 905 (11th Cir. 2000)).

Defendant's invocation of parol evidence on this point is passing strange and should be rejected, because his own brief argues that the Settlement Agreement and Release are unambiguous. *See* Def. Opp. at 6 n.8; *Julian Depot Miami, LLC v. Home Depot U.S.A., Inc.*, 364 F. Supp. 3d 1354, 1359 n.3 (S.D. Fla. 2018) (rejecting request to consider parol evidence because the parties agreed the contract was unambiguous). At any rate, the parties' negotiation history shows that both sides *did* intend to make breach of the release an Actionable Event. Defendant focuses on the revision that his counsel proposed to Section 13(b). But the parties declined to implement that proposed change not because they rejected making breach of the Release an Actionable Event, but because Al-Saleh's alternative revisions made defense counsel's proposed

5

language unnecessary to effectuate that shared understanding. *See* Pls. Opp. at 7-9.[4]

### E. The Actionable Event Provision Is Not an Unenforceable Penalty Clause

Defendant claims (at 7-8) that requiring him to pay $13.8 million would constitute a "grossly disproportionate" penalty.[5] But the $13.8 million is not a penalty; it is the remaining Judgment Amount Defendant admitted that he owed. *See Nippon Credit Bank, Ltd. v. Matthews*, 291 F.3d 738, 751 (11th Cir. 2002) (judgment did not constitute a penalty because it was "based on a settlement agreement which substantially reduced the amount sought in the underlying litigation"); *Polezoes v. Bartlett*, 921 So. 2d 35, 37 (Fla. 4th DCA 2006) (payment of amount that would have been owed on underlying debt were it not settled "cannot legally amount to a penalty under a settlement contract"). At any rate, an award of $13.8 million is hardly "grossly disproportionate" where Plaintiffs have suffered more than $3.6 million in damages (and counting) because of Defendant's breach of the release. *See Treasure Coast, Inc. v. Ludlum Constr. Co.*, 760 So. 2d 232, 234 (Fla. 4th DCA 2000) (enforcing default provision in settlement agreement requiring payment of entire agreed amount of $65,000 where defendant failed to make timely payments of settlement amount of $37,000).

### F. Plaintiffs Are Also Entitled to Compensatory Damages

Defendant agrees that under traditional contract-law principles, breach of the Release and Settlement Agreement would entitle Plaintiffs to compensatory damages, which includes the attorneys' fees and costs that Burford Capital incurred in defending Hall against Defendant's

---

[4] Defendant and his trial counsel have submitted declarations purporting to opine on their understanding of the negotiations. But one side's subjective views are not parol evidence. *See Ace Elec. Supply Co. v. Terra Nova Elec., Inc.*, 288 So. 2d 544, 549 (Fla. 1st DCA 1973). Plaintiffs have moved to strike those declarations, because they do not comply with the requirements of Rule 56(c). *See* Pls.' Mot. to Strike Def.'s Suppl. Decls. Submitted in Opp'n to Pls.' Partial Mot. for Summ. J (filed concurrently herewith). Under the personal-knowledge standard Defendant himself espouses (at 6-7), these declarations are not competent evidence.

[5] Defendant argues (at 8) that the damages are "readily ascertainable" because those damages are just the litigation costs. But "[t]he determination to be made is whether damages were readily ascertainable at the time of the *contract*, not whether damages were readily ascertainable at the time of the *breach*." *San Francisco Distribution Ctr., LLC v. Stonemason Partners, LP*, 183 So. 3d 391, 394 n.5 (Fla. 3d DCA 2014). Given Defendant's litigious nature, which had ensnared Al-Saleh and Plaintiffs for the better part of three years, and costing Al-Saleh and Burford Capital upwards of $8 million, *see* Pls. SUF ¶ 45 (Settlement Agreement, Recital F), it was far from ascertainable to determine the damages ahead of time.

unlawful lawsuit.  *See* Def. Opp. at 8 (citing cases).  There is thus no genuine dispute that Plaintiffs are entitled to at least their attorneys' fees and costs.

## II.     HALL IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON HIS MALICIOUS PROSECTUION CLAIM

### A.     The Undisputed Evidence Establishes Bona Fide Termination in Hall's Favor

There can be no genuine dispute that when counsel stated that Defendant voluntarily dismissed the SAC because of the "futility of any federal claims," he was conceding those claims' lack of merit.[6]  *See, e.g.*, *SFM Holdings, Ltd. v. Banc of Am. Secs., Inc.*, 764 F.3d 1327, 1344 (11th Cir. 2014) (denial on futility grounds constitutes an appealable final judgment that the claim lacks merit).  Similarly, there was no ambiguity in counsel's statement that Defendant "only ha[d] one choice" – to dismiss from federal court and refile in state court – because the lack of a viable federal claim destroyed federal jurisdiction.  Pls. Mot. at 23; Pls. SUF ¶ 59.

Defendant tries to backtrack from these concessions, saying he voluntarily dismissed the SAC as a tactical judgment despite his "fundamental disagreement" with Judge Reinhart's R&R.  Def.'s Mot. for Summ. J. at 10 (ECF No. 320) ("Def. Mot.").  But his counsel's statements are binding judicial admissions, *see* Pls. Mot. at 23, and Defendant cannot contradict them, especially given that he has consistently invoked the attorney-client privilege and work product doctrine to preclude Plaintiffs from obtaining discovery into his motives for dismissal.  Moreover, even setting aside his counsel's admissions, Judge Reinhart's R&R, the lack of probable cause for his claims, and the dismissal of Defendant's amended counterclaims compel the same conclusion:  the dismissal objectively reflected "the . . . suit's lack of merit."  Pls. Opp. at 21 (citing *Union Oil of Cal. Amsco Div. v. Watson*, 468 So. 2d 349, 354 (Fla. 3d DCA 1985) (voluntary dismissal is a favorable termination "where the record contains evidence indicating a lack of probable cause") (citation omitted)); *Cohen v. Corwin*, 980 So. 2d 1153, 1156 (Fla. 4th DCA 2008) (voluntary dismissal is favorable where "the allegations in the underlying complaint are demonstrated to be false and there is evidence the plaintiff knew they were false").[7]

---

[6] Pls. SUF ¶ 58 (statement of Gregory Coleman that Judge Reinhart "made clear that he did not think . . . that no matter how we reshuffled those Federal Law claims, he didn't think that we could establish those claims. . . . [W]e said fine."); *id.* ("The Court had previously indicated the futility of any federal claims, and suggested the propriety of state court jurisdiction.").

[7] Defendant's cases are inapt.  *Gill v. Kostroff*, 82 F. Supp. 2d 1354, 1365 (M.D. Fla. 2000) (concluding that termination due to a consent motion to vacate the judgment was not a bona fide

7

Defendant attempts to salvage his position by arguing there was only "partial" termination. Def. Mot. at 20. But that is not correct: the entire SAC was dismissed, not just part. Pls. SUF ¶¶ 54, 56-59 (Coleman Tr. at 14:23-24); Pls. Mot. at 4-5. And *all* of his claims have now been terminated favorably to Hall.[8] At any rate, as Plaintiffs set out in their summary judgment opposition brief, Pls. Opp. at 22-23, favorable termination of the CFAA count is sufficient, and Defendant's cases are inapposite because they involve a situation – not present here – where the plaintiff *prevailed* on some but not all of his claims.

### B. The Undisputed Evidence Shows Defendant Lacked Probable Cause

**1. The Correct Legal Standard.** The evidence that Defendant had at the time of filing the SAC does not reasonably support his critical allegation that Hall "agreed" with Daniel Sargeant to "unlawfully access" the HS3 Email Account. *See* Pls. SUF ¶ 61 (SAC ¶ 33); Pls. Mot. at 24-25; Pls. Opp. at 23-24. Unsurprisingly as a result, Defendant portrays (at 11-12) the probable cause standard as toothless, dismissing the "cautious man" standard as "misleading,"[9] and arguing that to show lack of probable cause, the plaintiff "must essentially have no evidence to support his claims." But under binding Circuit precedent, probable cause requires "[a] reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged." *Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1211 (11th Cir. 2010) (quoting *Goldstein v. Sabella*, 88 So. 2d 910, 911 (Fla. 1956)). That "reasonableness" requirement is not empty. Defendant's effort to drain the probable cause standard of all content is not only wrong as a matter of doctrine but bad public policy, as it would encourage the filing of lawsuits based on no more than sheer speculation, and deny wrongfully accused defendants any recourse.

---

termination); *DeBoskey v. SunTrust Mortg., Inc.*, 2017 WL 4083557, at *7 (M.D. Fla. Sept. 14, 2017) (finding that a voluntary dismissal for lack of standing was "not a dismissal 'of such a nature as to indicate innocence of the [Plaintiff]") (citation omitted).

[8] Defendant has acknowledged that the dismissal with prejudice means he is now "barred from relitigating those claims here [in state court]." Pl.'s Suggestion of Mootness at 4, *Sargeant v. Sargeant*, No. 50-2018-CA-007932-XXXX-MB (Fla. 19th Cir. Ct. May 24, 2019).

[9] It is Defendant's case citations that are "misleading," because they concern malicious prosecution actions against *attorneys*, where a higher standard applies. *See Endacott v. Int'l Hosp., Inc.*, 910 So. 2d 915, 920 (Fla. 3d DCA 2005); *Melford v. Kahane & Assocs.*, 371 F. Supp. 3d 1116, 1125 (S.D. Fla. 2019).

8

**2. Lack of Evidence for Defendant's Claims.** The core problem with Defendant's claim of probable cause is that he pays no heed to the elements of his legal claims. The CFAA and CADRA are computer hacking statutes. The conduct they prohibit is "breaking and entering" into a protected computer. *hiQ Labs, Inc. v. LinkedIn Corp.*, 2019 WL 4251889, at *12 (9th Cir. Sept. 9, 2019); *see* Pls. SUF ¶ 56 (R&R at 28 (CADRA tracks CFAA)). Likewise, Defendant's common-law conspiracy claim required Defendant to establish that Hall conspired to intrude into a *physical place* as to which he had an expectation of privacy. *See* Order Granting Pls.' Mot. To Dismiss Am. Countercl. with Prejudice at 15-16 (ECF No. 155) ("ACC Dismissal Order") (citing cases and "[a]ssuming without deciding" that an email account constitutes such a place). Thus, probable cause required Defendant to have facts sufficient to warrant a "cautious man" in the belief that Daniel Sargeant hacked into Defendant's email account – the only computer even arguably mentioned in the SAC – without Defendant's authorization, and that Daniel Sargeant did so in furtherance of an agreement with Hall.

But Defendant never had – and still to this day does not have – any factual basis for the allegation that Hall and Daniel Sargeant agreed to access that account in 2016. Try as he might, Defendant cannot obscure that fatal lack of evidence. Defendant (at 13-16) offers a laundry list of facts. Many of these are from the discovery record – and thus cannot support probable cause because they were not known to Defendant at the time. *See* Order Memorializing Disc. Rulings at 2 (ECF No. 145) (citing *Ware v. United States*, 971 F. Supp. 1442, 1474 (M.D. Fla. 1997)). And many are unsupported by the record, as set forth in Plaintiffs' reply statement of facts, filed concurrently herewith. But more importantly, the Court will look in vain for any facts even suggesting that Daniel Sargeant hacked into Defendant's email account, or that Hall knowingly agreed to engage in such hacking.

Indeed, nowhere does Defendant ever contend that he had a reasonable belief that there was a conspiracy to "break and enter" into Defendant's email or computer. Rather, he merely states (at 17) that he thought that "Hall and Dan Sargeant agreed to an unlawful exchange and in fact exchanged the information" – conduct that is not unlawful. *See Coleman v. Circle K Stores, Inc.*, 2012 WL 2282575, at *4 (M.D. Fla. June 18, 2012) ("A lack of probable cause may be established by proof that a . . . . proceeding was instituted on facts that could as well be explained innocently.") (internal quotation marks omitted).

Defendant's responses to Plaintiffs' undisputed material facts are to the same effect:

9

| | | **Plaintiffs' Statement of Undisputed Material Facts (ECF No. 324)** | **Defendant's Opposition to Plaintiffs' Statement of Undisputed Material Facts (ECF No. 340)** |
|---|---|---|---|
| ¶ 62 | **The Preston Affidavit** | "HS3 could not identify any portion of the Preston Affidavit that supported the allegations [that Dan Sargeant would unlawfully access the HS3 Email Account]." | "**Disputed.** The Preston Affidavit sets forth the dates of *exchange* of information between Hall and Dan S." |
| ¶ 63 | **LAIL Documents** | "None of the email messages . . . shows or suggests that Hall and Daniel Sargeant *agreed to access* the HS3 Email Account." | "**Disputed.** The Preston-Hall-Dan S. 2017 emails establish that there was an agreement *to exchange* 'personal material relating to' HS3." |
| ¶ 64 | **Conversations with Patrick Mooney** | "Mooney had no direct or indirect knowledge of Daniel Sargeant's conduct in 2016. . . . [and] did not know of *any agreement* between Hall and Daniel Sargeant." | "**Disputed.** The gravamen of Mooney's testimony is that Dan S. had *the ability* to access the HS3 Email Account . . . [and] the HS3 Material that Hall actually *received* was from the archived HS3 Email Account." |
| ¶ 67 | **Conversations with Fahad Tamimi** | ". . . HS3 acknowledges that Tamimi had no basis to know how Daniel Sargeant *obtained the HS3 Material* . . . [and] he could not recall . . . [his] basis for the knowledge he did purport to have." | "**Disputed.** Fahad Al-Tamimi informed HS3 and his counsel that Dan S. had access to . . . information in the HS3 Email Account . . . and *traded it* to an investigator." |

Because Defendant's opposition brief concedes – and the undisputed evidence shows – that Defendant lacked any evidence to support the critical factual predicate of computer hacking, there is no genuine dispute that he lacked probable cause.[10]

**3. Evidence Contradicting the SAC's Claims.** Not only did Defendant lack any affirmative evidence of breaking and entering his email account, but it was unreasonable for him to *assume* that unauthorized access had occurred given the wealth of evidence known to him and his lawyers that the HS3 Material had already been removed from Defendant's email account

---

[10] Defendant's amended counterclaims – filed after substantial discovery had been taken – is also telling because it omits the SAC's allegation that Daniel Sargeant unlawfully accessed Defendant's email account in October 2016. ECF No. 68; Pls. Mot. at 26; *see also* ACC Dismissal Order at 16-17 (ECF No. 155) (finding that the amended counterclaims only alleged that Dan Sargeant told Hall that the emails were "available" from the HS3 Email Account). Defendant now says (at 21 n.39) that he "stands by" the SAC's allegations, but his counsel's withdrawal of the allegation after receipt of a Rule 11 letter speaks for itself.

long before October 2016.  Defendant does not dispute that, based on the metadata of the HS3 Material received from LAIL, Defendant knew (or should have known) that those emails were removed from the HS3 Email Account no later than August 2013.  Instead, he pivots to a new factual story:  that Daniel Sargeant obtained the HS3 Material from an "email archive" stored on the Sargeant Server in 2016.  But the SAC does not allege that Daniel Sargeant accessed an email archive, and Defendant cannot establish probable cause for the SAC by offering a new theory based on allegations never made in the SAC.  Moreover, whether at the filing of the SAC or even now, there is no evidence to support his theory.  He points to no evidence that such an archive exists, or where it was stored; nor does he have any evidence about whether, when, and how Daniel Sargeant accessed it.  And the Sargeant Server was controlled by Daniel Sargeant, so there is no plausible argument that he lacked authorization to access it.  *See* Pls. SUF ¶¶ 4-5, 56 (R&R at 13-16).

Defendant's account of Christmas 2013 fares no better.  Especially given the files' metadata, the clear inference from James Sargeant's Christmas 2013 text messages is that the HS3 Material had been taken from the HS3 Email Account and was already in the possession of other Sargeant family members by late 2013.  That undercuts the reasonableness of any inference that Daniel Sargeant hacked into Defendant's email account in 2016 to obtain those same materials.  Defendant's contention (at 20) that he believed that James Sargeant took the photos "from his old phone" is self-serving speculation that does not help him in any event:  however James Sargeant obtained the photos, they were no longer securely maintained in his email account in 2016, and it was thus unreasonable for Defendant to assume that Daniel Sargeant hacked into the HS3 Email Account (or even an email archive) to obtain them.

Defendant's argument (at 12 n.20) that he could have done "little else" to investigate his claims rings hollow.  Defendant *already had* ample information from which he knew or should have known that there was no basis for his claims.  Moreover, when Defendant filed the SAC, he had an ongoing lawsuit against Daniel Sargeant's company, LAIL.  After he obtained the HS3 Material (with the metadata) from LAIL in discovery on or about January 25, 2018, he could have conducted "further investigation" through discovery of LAIL or from third parties (including the Sargeant companies, who controlled the HS3 Email Account).  Instead, after less than a month – out of anger at Hall and Daniel Sargeant – he filed his SAC based on made-up allegations of computer hacking that conveniently fit his legal theories.  That "shoot first, ask

11

questions later" approach is exactly what the "reasonable belief" and "cautious man" standard forbids.[11]

**4. The Release.** Defendant also knew (or should have known) that he lacked probable cause because the SAC's claims against Hall were released. That is clear from the face of the SAC, which alleges that Hall (1) acted "on behalf" of Al-Saleh and Burford Capital and (2) engaged in conduct occurring before the Release's Effective Date. *See* Pls. Mot. at 17-20. Defendant merely argues (at 21) that dismissal due to a release is not an "adjudication on the merits" or "bona fide termination," but that is irrelevant to lack of probable cause based on the Release. *See Melford*, 371 F. Supp. 3d at 1126 (granting summary judgment in favor of plaintiff as to lack of probable cause where release barred defendant's underlying action).

### C. Defendant Sued Hall Maliciously

Defendant admits he was "outrage[d]" at Hall, Pls. Mot. at 11, because he thought it was "despicable," "disgusting," "horrible," "criminal," "revolting," "unprofessional," and "unethical" for Hall to have obtained his personal emails as part of the Al-Saleh investigation, Pls. SUF ¶ 53. Defendant says his "outrage" does not constitute malice because he also thought the conduct was unlawful, but that belief is unreasonable because Defendant knew or should have known that the allegations against Hall were false. *See* Restatement (Second) of Torts § 676 cmt. c. (1977) (litigant brings a lawsuit with an improper purpose (that is, malice) where he cannot "cannot believe that the claim is meritorious"). And Defendant's after-the-fact characterizations cannot create a genuine dispute of fact, because he already testified that he sued Hall out of ill-will and with no evidence to support his claims. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294-96 (11th Cir. 2012) ("courts owe a nonmovant no duty to disbelieve his sworn testimony which he chooses to submit for use in the case to be decided") (internal quotation marks omitted).

---

[11] The requirement of a reasonable basis is not relaxed simply because a plaintiff may have challenges satisfying it. *Cf. Franklin v. Curry*, 738 F.3d 1246, 1252 n.6 (11th Cir. 2013) ("[Plaintiff] cites no legal basis for her contention that her lack of knowledge should relax the pleading standard to which she is held."); *DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999) ("While this may mean that a civil plaintiff must do more detective work in advance, the reason is to protect society from the costs of highly unpromising litigation."); *Zuk v. E. Penn. Psych. Inst. Of the Med. Coll. Of Penn.*, 103 F.3d 294, 299 (3d Cir. 1996) ("[D]iscovery is not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it.").

### III. DEFENDANT'S AFFIRMATIVE DEFENSES DO NOT PRECLUDE SUMMARY JUDGMENT

Defendant opposes summary judgment because Plaintiffs did not negate Defendant's affirmative defenses in their opening motion. That is not the law. "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim.'" *Steadman v. Specialized Loan Servicing, LLC*, 2018 WL 3413029, at *2 (S.D. Fla. May 4, 2018) (quoting *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in State of Ala.*, 941 F.2d 1428, 1437 (11th Cir. 1991)). Rather, it is *Defendant's* burden to show a genuine factual dispute on his affirmative defenses. *See Lebron v. Royal Caribbean Cruises, Ltd.*, 2018 WL 5098972, at *2 (S.D. Fla. Aug. 14, 2018); *United States v. Marder*, 208 F. Supp. 3d 1296, 1318 (S.D. Fla. 2016). Defendant has failed to carry his burden here. As to his First, Second, Sixth, Ninth, and Eleventh defenses, he merely recites the defenses and asserts that they are valid.[12] That is not enough. *See, e.g.*, *Real Estate Mortg. Network, Inc. v. Cadrecha*, 2012 WL 1581967, at *2 (M.D. Fla. Apr. 30, 2012) (granting partial summary judgment where opposing party's affirmative defenses were unsupported by record). As to his Eighth defense, Defendant argues that unclean hands bars injunctive relief, but given the dismissal of Defendant's counterclaims, Plaintiffs' request for injunctive relief, like their declaratory judgment count, is now moot. Finally, on his Third through Fifth defenses, Plaintiffs are entitled to summary judgment for the reasons set out in their Motion (at 29-30), to which Defendant has forfeited any response.[13]

### **CONCLUSION**

For these reasons, the Court should grant Plaintiffs' motion for partial summary judgment and deny Defendant's motion for summary judgment.

---

[12] Defendant's request (at 24) that his first and second affirmative defenses for failure to state a claim be treated as "specific denials" cannot help him avoid summary judgment. *See Quintero v. Geico Marine Ins. Co.*, 389 F. Supp. 3d 1153 (S.D. Fla. 2019) (party opposing summary judgment "may not simply rest upon mere allegations or denials of the pleadings.").

[13] The cases cited by Defendant are not to the contrary. *See Eli Research, LLC v. Must Have Info Inc.*, 2015 WL 5934632 at *3 (M.D. Fla. Oct. 6, 2015) (motion for partial summary judgment solely on defendant's affirmative defenses); *Wohl Built, Inc. v. Maxum Indem. Co.*, 2018 WL 5020194, at *7 (S.D. Fla. Apr. 19, 2018) (defendant met its burden when it "cited to provisions in the record supporting its . . . affirmative defenses").

DATED: September 20, 2019    Respectfully submitted,

/s/ Samuel A. Danon
Samuel A. Danon (FBN 892671)
Armando Cordoves, Jr. (FBN 112425)
HUNTON ANDREWS KURTH LLP
1111 Brickell Avenue, Suite 2500
Miami, FL 33131
Tel.: (305) 810-2500
Email: sdanon@HuntonAK.com
Email: acordoves@HuntonAK.com

Derek T. Ho (*pro hac vice*)
Andrew E. Goldsmith (*pro hac vice*)
Minsuk Han (*pro hac vice*)
Christine A. Bonomo (*pro hac vice*)
Jan E. Messerschmidt (*pro hac vice*)
KELLOGG, HANSEN, TODD
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7900
Email: dho@kellogghansen.com
Email: agoldsmith@kellogghansen.com
Email: mhan@kellogghansen.com
Email: cbonomo@kellogghansen.com
Email: jmesserschmidt@kellogghansen.com

*Counsel for Plaintiffs Daniel Hall, Burford Capital LLC, and Dundrod Investments Ltd.*