UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 18-cv-80748-ALTMAN/Reinhart

DANIEL HALL,
BURFORD CAPITAL LLC, and
DUNDROD INVESTMENTS LTD.,

      Plaintiffs,

      v.

HARRY SARGEANT, III,

      Defendant.

_____/

## DEFENDANT'S OBJECTIONS TO MAGISTRATE JUDGE REINHART'S ORDER ON MOTIONS TO UNSEAL DOCUMENTS (ECF NOS. 349, 363)

Defendant Harry Sargeant, III ("HS3"), through his undersigned counsel and pursuant to 28 U.S.C. § 636 and Fed. R. Civ. P. 72, files this Objection to Magistrate Judge Reinhart's Order Granting in Part and Denying in Part Motions to Unseal Documents [ECF No. 379] (the "Unsealing Order").

## INTRODUCTION

On September 22, 2019, this Court, *sua sponte*, ordered the parties to submit their respective positions regarding the sealed documents in the Court file. [ECF No. 356]. The catalyst for this order was an initial request made by the media for public access to materials filed under seal [ECF No. 349], which was followed by a second request after the briefing order was entered [ECF No. 363]. Following the parties' briefing, this Court referred the issues to Magistrate Judge Reinhart for consideration and adjudication. At that time, this Court noted, "my own view is that aside from the salacious videos themselves and perhaps the photos . . . that the rest of the docket really should be public." **Exhibit A** at 7.

Unfortunately, Magistrate Judge Reinhart misapprehended the procedural history of the issues herein presented, failed to perform any analysis on whether any specific document merited sealed treatment, ignored this Court's expressed views regarding public access, and ignored the vast body of case law establishing without question that this Court is indeed open to the public.

Instead, Magistrate Judge Reinhart applied the standard of review applicable to a motion for reconsideration, even though the media and the Court, not the parties, raised the issue which required the briefing. Thus, the Unsealing Order side-stepped any analysis of the public's right of access to the Court's docket, and, by default, the confidentiality order [ECF No. 111] entered only to facilitate discovery, has controlled the sealing analysis and determination.

However, established precedent and the expressed policy of this Court make clear the requisite analysis must be performed. Applied herein, that analysis yields only one result, namely, that the documents do not merit sealed treatment. Indeed, even application of the reconsideration standard does not alter this conclusion.

Therefore, the Court should set aside the Unsealing Order and order the following documents unsealed, or unsealed versions placed in the record, with the appropriate privacy redactions as herein detailed: ECF Nos. 249-1, 333-1 through 333-18, 334-1 through 334-14, 347 through 347-9, 348-1, and 348-2.[1]

## BACKGROUND

The confidentiality order entered in this case [ECF No. 111] directs the parties to file material designated as "Confidential" "under seal in accordance with the Court's rules and procedures for filing sealed items." (¶ 9). However, that same order recognizes that it is "for the purpose of facilitating discovery" and should not "be construed or presented as a judicial determination that any" such material "is entitled to protection under Rule 26(c)." (¶ 10).

Forced to comply with the confidentiality order's directive to file such material under seal and noting his disagreement with Plaintiffs' designations, HS3 moved to file under seal several

---

[1] As HS3 has noted previously, some of these documents require simple redactions to protect the identity of third parties. The Court can and should protect the identity of these non-parties through appropriate redactions where it concerns the salacious material. *See, e.g.*, *Thomas v. Delmarva Power & Light Co.*, No. 15-433, 2016 WL 9685173, at *3 (D. Md. Dec. 12, 2016) (granting motion in employment discrimination action to redact names of non-party employee witnesses and comparators because their "identities . . . are not important to the disposition of this case" and there was a "compelling interest in protecting [their] privacy"); *Am. Friends Servs. Comm. v. City & Cty. of Denver*, No. 02-740, 2004 WL 7334020, at *7-8 (D. Colo. Feb. 19, 2004) (redaction of identifying information of non-party individuals was appropriate because "[n]one of these individuals voluntarily joined the instant lawsuit, or, presumably, expected to be referenced in documents filed with this court," and their privacy interests justified redaction). Further, HS3 does not object to unsealing the documents ordered unsealed in the Unsealing Order (*i.e.*, ECF Nos. 142, 159, 164, 218, 238, 248, 249, 305, 329, 333, 334, 345, and 348). Unsealing Order at 9.

2

documents designated by Plaintiffs as "Confidential."[2]   Thus, when HS3 moved to file "Confidential" documents under seal as exhibits to substantive motions,[3] he noted the standard for sealing documents associated with substantive work of the Court [ECF Nos. 204, 326, 342] and argued that the documents sought to be filed under seal did not meet that standard, but nonetheless moved to file the documents under seal as mandated by the confidentiality order.  The Court granted the motions to file under seal at various stages in the case without any analysis of the merits of the confidentiality designations at issue, and the documents were subsequently filed under seal. [*e.g.*, ECF Nos. 232, 329, 345].

Following the summary judgment filings, on September 6, 2019, a reporter with *The Financial Times* requested access to "all sealed documents" in the case, noting specifically she had "been reporting on these court proceedings and believe[d] there is a genuine and substantial public interest in being granted access to the sealed documents." [ECF No. 349].

Thereafter, on September 27, 2019, a reporter with the London *Daily Mail* made a similar request. [ECF No. 363]. That request noted correctly that "the U.S. Constitution and common law provide the public and the press with a presumptive right of access to court records and proceedings." *Id*. at 1. The reporter also advised that "there is a strong public interest in this information being made available.  Along with colleagues at other publications, [she has] been reporting closely on the[se] court proceedings . . . . Already these reports have uncovered matters which deeply affect a wide range of retail investors with exposure to the parties, as well as other members of the public who have come into contact with Burford Capital and its employees." *Id*. at 2.

After the first request, the Court, *sua sponte*, directed the parties to file responses to the media request [ECF No. 356], and the parties complied.  [ECF Nos. 360, 362].   As noted above, before referring the media requests and the parties' briefing to Magistrate Judge Reinhart [ECF No. 374], the Court observed that, with few exceptions, "the rest of the docket really should be public." Exhibit A at 7.

---

[2] The Unsealing Order acknowledges that HS3 filed such motions to seal under protest of the designations.  Unsealing Order at 4 n.1 (referring to [ECF No. 156 ¶ 3], but the correct cite appears to be [ECF No. 157 ¶ 3]).

[3] The motions at issue for this objection are [ECF No. 203], HS3's motion for reconsideration; [ECF Nos. 323, 324], the parties' statements of material facts; and [ECF Nos. 339, 340], the parties' responses to the statements of material facts.

Despite that direction, Magistrate Judge Reinhart applied the reconsideration standard, finding that "[f]or each of the sealed documents listed above, the Court was aware of the standard for sealing, and was specifically aware (in most cases) that Defendant believed that standard had not been met. Therefore, the current issue before me is properly viewed as a request to reconsider the prior sealing orders by me, Judge Bloom, and Judge Altman." Unsealing Order at 8.

However, since the Court, not the parties, raised the current issues; since the media requests post-dated any rulings by Magistrate Judge Reinhart as to the sealed documents; and since the documents sealed as part of the summary judgment filings were never considered by Magistrate Judge Reinhart pursuant to the appropriate standards, the motion for reconsideration standard is simply not applicable. Indeed, Magistrate Judge Reinhart noted previously that any issues relative to sealing documents attached to a motion for summary judgment were never properly before him. When considering arguments relative to the propriety of certain confidentiality designations, and applying the far more lenient standard within the confidentiality order, Magistrate Judge Reinhart stated:

> [I]f they're going to be attached to the motion for summary judgment, that will be a Judge Altman issue as to whether they should be filed under seal or not. He has not delegated that to me. So I really think the only procedural vehicle under which I can provide you any guidance is to just treat it as a request to I guess reverse or reconsider the confidentiality designation that was made by the plaintiffs.

[ECF No. 327 at 32].

## LEGAL STANDARD

Because the Unsealing Order is dispositive as to the media requests' motion to unseal it may be viewed as a report and recommendation. *See, e.g.*, *Smith v. Powder Mountain, LLC*, No. 08-80820, 2010 WL 5483327, at *1 (S.D. Fla. Dec. 8, 2010) ("a motion to intervene, which, because of its dispositive nature, cannot be decided by a magistrate judge absent the parties' consent"), *report and recom'n adopted*, 2011 WL 9845 (S.D. Fla. Jan. 3, 2011); *see also Newman v. Sun Capital, Inc.*, No. 09-445, 2010 WL 326069, at *1 (M.D. Fla. Jan. 21, 2010) (same); *Virgin Islands Water & Power Auth. v. Gen. Elec. Intern. Inc.*, 561 Fed. Appx. 131, 133 (3d Cir. 2014) (the 28 U.S.C. § 636(b)(1)(A) "list of dispositive motions is not an exhaustive one, but instead merely 'informs the classification of other motions as dispositive or nondispositive.' ").

4

If the Unsealing Order is viewed as a report and recommendation, it is reviewed under a *de novo* standard of review. *See* Fed. R. Civ. P. 72(b)(3); *Jeffrey S. by Ernest S. v. State Bd. of Educ. of State of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990) ("the district judge in making the ultimate determination of the matter, would have to give fresh consideration to those issues to which specific objection has been made by a party").

If the Unsealing Order is viewed as an order, "Rule 72(a) requires a district court to modify or vacate a magistrate judge's order to the extent that the order 'clearly erroneous or is contrary to law.'" *In re O'Keeffe*, 184 F. Supp. 3d 1362, 1366 (S.D. Fla. 2016), *aff'd*, 660 Fed. Appx. 871 (11th Cir. 2016). A finding is clearly erroneous when reviewing the entire evidence, the Court is left with the firm conviction that a mistake has been made. *Id.* (citing *Krys v. Lufthansa German Airlines*, 119 F.3d 1515, 1523 (11th Cir. 1997)).

At all events, application of either standard yields the same result. Simply put, none of the sealed documents satisfy the requisite standard, Magistrate Judge Reinhart's ruling should be reversed, and the documents at issue should be unsealed as explained herein.[4]

## ARGUMENT

### I.      This Court is Open to the Public.

Eleventh Circuit law is clear: court filings are matters of public record absent extraordinary circumstances. "Once a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case." *Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992). Plaintiffs, as the party seeking protection, must show with specific demonstration the need for any protection. *See, e.g.*, *United States v. Garrett*, 571 F.2d 1323, 1326 (5th Cir. 1978) ("The burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements."). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" are insufficient to meet Plaintiffs' burden. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992). The default position and strong presumption is that the documents are public. *Comm'r, Ala. Dep't of Corr. v. Advance Local Media, LLC*, 918 F.3d 1161, 1173 (11th Cir. 2019) ("This public right of access, based in the common law, may only be overcome when a

---

[4] Even though the Unsealing Order stays effect until December 31, 2019, to avoid any potential waiver, HS3 files these objections within 14 days of "being served with a copy" of the order, as required by Rule 72, Federal Rules of Civil Procedure.

court determines—after balancing the respective competing interests of all parties—that the party seeking to keep the information confidential has shown good cause.").

Moreover, the common law presumption of public access to court filings is grounded in the First Amendment. *Press-Enter. Co. v. Super. Court. of Cal. for Riverside Cty.*, 478 U.S. 1 (1986) (preliminary hearing closed to the public and sealing transcript of the same violated the First Amendment" (quoting *Press-Enter. Co. v. Super. Ct. of Cal.*, 464 U.S. 501, 510 (1984)). "The media and public presumptively have a right to access judicial records." *Advance Local Media*, 918 F.3d at 1166 (holding state's lethal injection protocol judicial record subject to common law right of access and affirming unsealing of same).[5]

This Court is likewise committed to the presumption of the common law right of access. S.D. Fla. Local Rule 5.4(a). Sealing judicial records requires a showing of good cause, and parties must "provide the Court with more than just the existence of an agreement between the Parties and conclusory statements regarding an alleged harm from disclosure." *Sec. Networks, LLC. v. Vision Sec., LLC*, No. 14-80453, 2014 WL 12538975, at *1 (S.D. Fla. Apr. 8, 2014). Indeed, in this Court, "parties generally cannot keep from public view discovery materials filed with the court in connection with dispositive motions." *Emess Capital, LLC v. Rothstein*, 841 F. Supp. 2d 1251, 1252 (S.D. Fla. 2012).[6]

---

[5] *See also, e.g.*, *United States v. Ignasiak*, 667 F.3d 1217 (11th Cir. 2012) (finding district court abused its discretion in refusing to unseal impeachment information about a witness and noting "that there exists a presumption of openness in all legal proceedings."); *United States v. Ochoa-Vasquez*, 428 F.3d 1015 (11th Cir. 2005) (holding district court's order sealing documents related to drug trafficking conspiracy violated the First Amendment); *Wilson v. Am. Motors Corp.*, 759 F.2d 1568 (11th Cir. 1985) (ordering unsealing because district court abused its discretion in sealing entire case record).

[6] *See also, e.g.*, *Gubarev v. Buzzfeed, Inc.*, 365 F. Supp. 3d 1250, 1255 (S.D. Fla. 2019) (unsealing motions, documents relating the motions, and orders on motions because continued sealing "would contravene the presumption of the common law right of access" and no good cause exists to rebut that presumption); *Paresky v. United States*, No. 18-23569, 2019 WL 4888689, at *2 (S.D. Fla. Aug. 30, 2019) (denying motion to file amended complaint and certain exhibits under seal because, inter alia, the presumption of public access is stronger with regard to dispositive documents); *Noveshen v. Bridgewater Assocs., LP*, No. 13-61535, 2016 WL 1579264, at *2 (S.D. Fla. Apr. 19, 2016) (granting defendant's motion to remove confidentiality designations and requiring documents to be part of the public record where "Plaintiff has failed to assert sufficient facts to support its request that this Court depart from its general policy that court filings are matters of public record and that there is a common law right of access to public records in civil cases."); *Morris Hatchery, Inc. v. Interlink Grp. Corp. USA, Inc.*, No. 10-24480, 2012 WL 13012495, at *1 (S.D. Fla. Apr. 16, 2012) (denying motion to seal deposition transcripts that contained "attorneys'

Here, there is simply no balancing test in the record.  Plaintiffs have also never made the "particular and specific demonstration" to justify any sealed filings, all of which were the product of the confidentiality order.  Plaintiffs' failure to timely make this requisite showing forecloses any sealed protection: "Since the confidential designation was not challenged until the Press intervened, Firestone's Response to Intervenors' Motion to Unseal is the document that must establish good cause for continued protection."  *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1310-13 (11th Cir. 2001).[7]  The confidentiality order required the party seeking to file a "Confidential" document to follow the Court's local rule for filing documents under seal. [ECF No. 111 ¶ 9].  Thus, HS3 was effectively an unwilling participant in seeking sealed treatment of documents Plaintiffs' designated as "Confidential," even though HS3 disagreed with the designation and argued that even if properly designated, the documents did not merit sealed filing. [*e.g.*, ECF No. 342].  As such, instead of showing why such documents should be filed under seal, a showing difficult to make as HS3 did not designate the documents as "Confidential" in the first place, HS3 actually argued the opposite, that there was no reason to file the documents under seal.[8]  Further, in every instance, possibly because of the apparent agreement

eyes only" designations, citing court's obligation to "to consider whether to prevent public access to the documents, consistent with the requirements of Local Rule 5.4."); *Sec. & Exch. Comm'n v. Solow*, No. 09-61868, 2011 WL 13277548, at *1 (S.D. Fla. Dec. 5, 2011) (denying unopposed motion to file documents under seal finding defendants failed to show good cause for filing settlement under seal); *U.S. ex rel. Pac. v. Doctors Care Health Servs., Inc.*, No. 05-14017, 2007 WL 1140934, at *2 (S.D. Fla. Apr. 17, 2007) (unsealing complaint and entire record in qui tam action because government failed to provide good reason for continued seal); *Mendez v. Jarden Corp.*, No. 10-80966, 2011 WL 13227825, at *1 (S.D. Fla. Feb. 25, 2011) (denying plaintiff's motion seal in forma pauperis application and supporting financial affidavit for lack of good cause); *Sony Comput. Entm't Am., Inc. v. NASA Elecs. Corp.*, No. 07-20819, 2008 WL 11333414, at *1 (S.D. Fla. Feb. 12, 2008) (granting motion to lift seal and compel production of unredacted license because the plaintiff "failed to demonstrate why the redacted [license] should remain under seal, particularly in view of the extensive public testimony about this document.").

[7] *See also Romero*, 480 F.3d at 1248 ("Without a more specific showing . . . good cause for sealing the documents was not established."); *Wilson*, 759 F.2d at 1571 ("we find nothing in the record to support the sealing of this record"); *Gubarev*, 365 F. Supp. 3d at 1258 ("failed to show good cause to rebut the presumption"); *Noveshen*, 2016 WL 1579264, at *2 ("Plaintiff has failed to assert sufficient facts to support its request that this Court depart from its general policy that court filings are matters of public record and that there is a common law right of access to public records in civil cases.").

[8] HS3 challenged the "Confidential" designation on numerous documents that he expected to file with his motion for summary judgment.  [ECF No. 307].  HS3 made these challenges noting

between the parties, the Court granted the motion to file under seal without a response and without analysis. *See, e.g.*, [ECF Nos. 232, 329, and 345].

In any event, the media is certainly not bound by any of the confidentiality designations made by the parties. But the media requests seeking access to documents filed in connection with dispositive motions were never considered independently by Magistrate Judge Reinhart, and no good cause demonstration of any kind was required. Indeed, even Plaintiffs' response to the media requests [ECF No. 360] *fails to include any specific demonstration or actual evidence required to justify the sealed status of these documents*. Magistrate Judge Reinhart simply ignored established precedent, shifted the burden to the media and HS3, erroneously applied the reconsideration standard to the media requests, and failed to analyze affirmatively whether the requisite balancing test had been met with respect to the specific documents currently under seal.

## II. The Reconsideration Standard Does Not Apply to the Media Requests.

The reconsideration standard simply cannot apply because the media, not the parties, requested access, and the Court, not the parties, requested briefing on those media requests. Thus, there was nothing about the media requests or the briefing responsive to the Court's own order that sought "reconsideration."

Moreover, issues regarding the propriety of sealing documents filed in connection with dispositive motions have never been considered. Indeed, there is no rationale in the record for sealing the documents associated with the substantive motions; Plaintiffs' never filed any evidence to support sealing documents they designated "Confidential" and hardly introduced the detailed and specific "factual and legal basis for departing from the policy that Court filings are public." S.D. Fla. Local Rule 5.4(a). Indeed, the prior process was akin to filing documents under seal by

---

specifically he fully expected to file the documents in connection with his summary judgment motion and hoped to avoid the sealed filing process for those documents. [ECF No. 327] at 31 ("the reason we're asking is because we anticipate that we'll be filing each of these materials with our motion for summary judgment"). However, Magistrate Judge Reinhart expressly limited his review to the propriety of the designation (a different and lesser standard) finding he did not have the delegated authority to determine whether those documents merited sealed filing. *See, e.g.*, [ECF No. 327 at 67] ("And so I'll leave that one to Judge Altman to sort out, applying the standard for sealing, as opposed to the standard for confidentiality."). Thus, even though Magistrate Judge Reinhart did find that some of Plaintiffs' "Confidential" designations did not even meet the extremely broad definition of "Confidential" in the confidentiality order (*e.g.*, [ECF No. 327 at 56, 60, 62, 66]), many documents were allowed to retain their "Confidential" designation and still other documents were simply not reviewed under that process.

agreement, which is as noted improper. *Sec. Networks, LLC.*, 2014 WL 12538975, at *1 ("more than just the existence of an agreement between the Parties" required for sealed treatment).

Plaintiffs' response to the media requests illustrates that there has really been no prior determination as to whether any particular document merits sealed filing treatment. Plaintiffs admitted filing some documents "under seal that Magistrate Judge Reinhart concluded did not merit Confidential treatment." [ECF No. 360 at 4]. The documents were filed in conjunction with Plaintiffs' summary judgment papers. Plaintiffs corrected the mistake and filed the documents on the open docket only after they responded to the Court's order to address the media requests. [ECF No. 361]. Otherwise, it presumably would have gone unnoticed. Prior to that time, Plaintiffs requested, HS3 consented, and the Court ruled that those documents could be filed under seal. Clearly, the prior sealing process was not truly a determination of whether the documents merited sealed treatment.

### III.     None of the Documents Warrant Sealed Treatment.

Applying either the standard of review applicable to judicial records filed in connection with dispositive motions, or the reconsideration standard,[9] it is apparent the media requests should be granted and the documents unsealed.

---

[9] Even assuming the Court determines the issue has been previously decided, the failure of Plaintiffs to demonstrate that the documents merit sealed treatment is a manifest error and within the Court's discretion to correct. Rule 54(b) allows orders to "be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *Ehlen Floor Covering, Inc. v. Lamb*, 2010 WL 2734728, at *1 (M.D. Fla. July 8, 2010) ("The court's ability to reconsider and revise a prior order is not dependent upon a change of law or facts, but is within the discretion of the judge.") (citing *Bon Air Hotel, Inc. v. Time, Inc.*, 426 F.2d 858, 862 (5th Cir. 1970) ("vacating the earlier order was within the district court's power")); *see also, e.g.*, *Inetianbor v. CashCall, Inc.*, 962 F. Supp. 2d 1303, 1306-07 (S.D. Fla. 2013) ("While Rule 54(b) does not specify a standard for reconsideration, 'the Advisory Committee Notes make clear that 'interlocutory judgments . . . are left subject to the complete power of the court rendering them to afford such relief as justice requires.' ") (quoting *Grupo Televisa v. Telemundo Commc'ns Grp., Inc.*, No. 04-20073, 2007 WL 4699017, at *1 (S.D. Fla. Oct. 11, 2007)); *James River Ins. Co. v. Fortress Sys., LLC*, No. 11-60558, 2012 WL 6738534, at *3 (S.D. Fla. Dec. 31, 2012) (same). The Unsealing Order cited three bases for reconsideration, but the case it cited to was discussing Rule 59, "New Trial; Altering or Amending a Judgment." Unsealing Order at 8-9 ("There are only three bases for granting a motion for reconsideration: '1) an intervening change in controlling law; 2) the availability of new evidence; and 3) the need to correct clear error or prevent manifest injustice.' ") (quoting *Williams v. Cruise Ships Catering & Serv. Int'l, N.V.*, 320 F. Supp. 2d 1347, 1357-58 (S.D. Fla. 2004)).

Magistrate Judge Reinhart applied the manifest error prong to the orders directing sealed filings [ECF Nos. 329 and 345] and the notices of filing under seal [ECF Nos. 142, 159, 164, 218, 238, 248, 249, 305, 333, 334, and 348],[10] appropriately finding there was no basis to seal those documents.  Unsealing Order at 9 ("[t]hey do not contain sensitive or proprietary information").

However, Magistrate Judge Reinhart did not apply the manifest error prong to the substantive documents filed under seal (*i.e.*, ECF Nos. 249-1, 333-1 through 333-18, 334-1 through 334-14, 347 through 347-9, 348-1, and 348-2).  Instead, the Unsealing Order was dismissive as to those documents.  Unsealing Order at 9 ("As to the remaining sealed documents, there has been no showing of clear error or manifest injustice, ***even for those documents for which a common right of access exists***.") (emphasis added).  This disregards established precedent and places the burden on the media (strangers to the case) and HS3 (who has always opposed sealed treatment).  Magistrate Judge Reinhart's ruling is contrary to the law that "'[t]he operations of the courts and the judicial conduct of judges are matters of utmost public concern.'"  *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1245 (11th Cir. 2007) (quoting *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 839 (1978)).  Thus, even if there were no opposition, it is incumbent upon the Court to review sealed filings when questioned by the media, a process that the Court started when it directed the parties to respond to the media requests [ECF No. 356].  The Unsealing Order cut the process short without any real examination of whether the documents at issue merit sealed treatment.

The orders directing sealing, the notices of filing under seal, and Plaintiffs' "Confidential" documents should all be evaluated under the same rubric: none justified sealed treatment before the media requests, and all should now be unsealed.  Plaintiffs offered no evidence to justify sealed treatment and there is nothing on the face of the documents that would indicate any harm would come if filed in the open record of the Court.  In sum, nothing has been proffered that warrants denial of the public right of access to judicial records.

a.  *Sealed Documents Filed with HS3's SMF [ECF No. 323]*.

A review of the documents filed reveals that they do not merit sealed treatment.  First, the Unsealing Order notes (at 6) that Magistrate Judge Reinhart had previously "found good cause to

_____

[10] The sealing of the notices was just a function of the CM/ECF system, which only allows for filing of the sealed document with the "Sealed Document (Restricted)" option.  Filing the notice of sealed filing with this option necessarily seals the notice that the documents are attached to.

seal" the document at [ECF No. 249-1], which has been referred to as the AMO memo.  HS3 filed the AMO memo as an exhibit to his statement of material facts. [ECF No. 334-11].  The AMO memo is a summary of information that Hall and his associate obtained at a meeting with Daniel Sargeant and others in January 2015.  Plaintiffs' proffered basis for sealing it was as follows:

> The memorandum includes numerous non-public details of HS3's businesses and, by implication, reveals the methods and strategies Burford employs in judgment enforcement generally. Revealing these methods and strategies would harm Burford by educating both adversaries and competitors, thereby reducing Burford's effectiveness in future cases and its competitive advantages in the marketplace. They are thus confidential business information and merit protection under Rule 26.

[ECF No. 227 at 3].  There was no affidavit or other factual evidence submitted to support Plaintiffs' broad assertion of harm.[11]  Nor was there any written order conducting the required balancing test.  Not only did Plaintiffs' assertion lack evidentiary support, it is plainly illogical. The AMO memo is simply an account of non-privileged discussions between parties who were litigating against HS3 in different cases.[12]  Non-public details of HS3's businesses, to the extent they are revealed in the memo, reveal nothing about general judgment enforcement strategies, but even if they did, these "strategies" were shared publically.  *See, e.g.*, ECF No. 1-6 (an exposé on Hall in the *Wall Street Journal* discussing the asset-enforcement strategy against HS3 including seizing guns and watches from HS3's home, how Hall "sketched out Mr. Sargeant's lifestyle and business practices using credit-card statements obtained by subpoena," how an "analyst began monitoring the son's Instagram account," how Hall monitored and sought to capitalize on the "longrunning family feud" with the potential exposure of $52 million, discussing seizure of a "deposit box at Claridge's," and an attempt to seize a jet).  The entire case was laid out by Plaintiffs in the *Wall Street Journal* the year before they brought their Complaint.  Nothing in the AMO memo offers greater insight into any "strategies" than this article.  Plaintiffs' claim of an implied harm for already public information is therefore insufficient to justify sealing.  *Gubarev*, 365 F. Supp. 3d at 1257 ("Additionally, if information is or already has been out in the public domain,

---

[11] Plaintiffs did not expound upon any potential harm in their response to the Court's order to brief the media request. *See* [ECF No. 360].

[12] As noted, the only items warranting protection from public disclosure are the names of the Jane Does referenced in the memo.

sealing is unwarranted.").  Nevertheless, in considering the issues prior to any filing of dispositive motions, Magistrate Judge Reinhart accepted Plaintiffs proffer six days later in a paperless order without waiting for a response/reply from HS3 [ECF No. 232], and then summarily reaffirmed his own order in the context of the media requests.

The AMO memo is also highly relevant to this Court's consideration of the dispositive motions.  The AMO memo demonstrates Hall's early knowledge of the existence of the HS3 Email Account and, importantly the existence of the sex tapes and other salacious materials.  When viewed in context with the email from Charles Lichtman [ECF No. 323-50], sent a few days later, it is apparent that Hall asked for and received any and all relevant asset-tracing information from the HS3 Email Account in early 2015, and was denied access to the sex tapes and other salacious materials.  This then bears directly on Hall's current claims that his efforts in October 2016 were "legitimate" (since he already had the relevant business items) and he did not specifically seek the sex tapes (even though that was all that was previously denied).  As such evidence bears directly on substantive issues before the Court, they are judicial records that should not be sealed from public view.

Next, ECF No. 334-1 is Hall's employment contract.  This document (1) establishes Hall **works for Burford UK** and not either of Plaintiffs, Dundrod or Burford US, and (2) specifies conduct (such as the rogue acts at issue herein) resulting in Hall's termination without notice, including bringing his employer into disrepute, a large basis of David Reade's report at ECF No. 323-69.  This evidence bears directly on the Court's consideration of whether Hall's rogue conduct falls within the scope of the Release.  Thus again, this is a judicial record relative to a dispositive motion that should be public.

ECF Nos. 334-2 and 334-3 are emails in the summer of 2017 between Hall, Andrew Preston, and Daniel Sargeant.  These are the versions that HS3 had produced to him by LAIL[13] before filing the SAC, but other versions are filed openly in the record [ECF No. 340-12 at 29-37].[14]  Indeed, Plaintiffs likely do not even object to these versions of the emails being unsealed because they removed the confidentiality designation on the versions they produced in this matter.

---

[13] Undefined terms used herein reference terms from the prior briefing.  The Appendix at ECF No. 376-2 has a more complete listing of terms.

[14] The fact this information is already public demonstrates further the lack of any real analysis performed by Magistrate Judge Reinhart.

These emails bear directly on the Court's decision on summary judgment because they showed what HS3 knew at the time he filed the complaint including that Hall actively exchanged the Ruperti Material for the "sensitive" sex tapes; that Hall breached his obligations to Burford client Sovcomflot in so doing, that Hall was "facing some criticism internally as a result of the provision" of the Ruperti Material to Daniel Sargeant; that Hall "asked for a hold harmless indemnity" from Daniel Sargeant; that Daniel Sargeant "provided [the HS3 Material to Hall] and was prepared to live with the consequence of [Hall] using that information in the public domain"; and that the exchange of the Ruperti Material for the HS3 Material was an "information swap for mutual benefit." Again, all public judicial records.

ECF Nos. 334-4 through 334-7 are corporate organization charts showing where Burford US and Dundrod reside within the corporate structure relative to Hall's actual employer, Burford UK. The first two are custom made for this litigation, and the second two are actual organization charts from 2016 and 2018. The specially made charts contain very little information outside the companies at issue in this litigation and the second two have the rest of the companies redacted. While this information is likely able to be reproduced from public filings in the UK and US, even if it were normally confidential information, Plaintiffs chose to enter a public forum and voluntarily put these issues in controversy. They cannot then shield from the public documents and testimony relevant to issues they introduced as part of their own case. Moreover, Plaintiffs have not proffered any particular and specific evidence warranting a seal.

ECF Nos. 334-8 and 334-9 are two different versions of the services and management agreement ("SMA"). These agreements define the role of Burford US and Burford UK within the corporate structure and specify that any provision of services was to be treated as that company's independent business activities, as discussed by Peter Arden's report. [ECF No. 323-78]. The SMA flatly contradicts Plaintiffs' current (and convenient) assertions of shared liability, eliminates any possibility of vicarious liability attaching to Burford or Dundrod as a result of Hall's rogue acts, and establishes based on Plaintiffs' own evidence that Hall cannot fall within the scope of the Release. The SMA and the corporate organizational charts [ECF Nos. 334-4 through 334-7] evidence Plaintiffs' affirmative adoption of a protective structure which they cannot now disregard to shoehorn Hall into the Release. Such evidence bears directly on this Court's consideration of the substantive issues presented by the dispositive motions and should not be sealed from the public.

ECF No. 334-10 is the Focus Intelligence, Ltd. engagement letter with Al-Saleh's lawyers, executed before Hall's former firm was acquired by Burford UK.  This is the initial and only engagement letter, and evidences no direct connection between Al-Saleh and Hall.  ECF No. 334-11 is the AMO memo discussed above.  Again, more items bearing directly on the substantive issues presented by the dispositive motions.

ECF No. 334-12 and 334-13 are the Burford US deposition excerpts and Hall deposition excerpts, respectively, cited by HS3.  These excerpts contain basic background of the witnesses as well as the witnesses' reaction and cross-examination to the documents and issues relevant to this case.  For example, as discussed in the hearing, Burford US's corporate witness made critical admissions which belie fully Burford US' attempts to argue about the "intent" of the Parties. Exhibit A at 138; ECF No. 334-12 at 111.  Moreover, Burford US' and Hall's testimony as to these issues should be no less public than any such testimony proffered if he took the stand at trial.  *See, e.g.*, *Gubarev*, 365 F. Supp. 3d at 1260 ("The trial would have been open to the public anyway.").

b.  *Sealed Documents Filed with Plaintiff's SUF [ECF No. 324]*.

Sealed documents related to Plaintiffs' SUF were filed at [ECF No. 333], and HS3 does not have the sequencing of the documents.  However, most of the documents could be refiled with appropriate redactions, specifically the following: Senior's, HS3's, Daniel Sargeant's, Bianca Beam's, and Greg Coleman's transcripts; the unredacted version of Plaintiffs' SUF; and the affidavit of Michael McGowan.  Burford US and Hall's transcripts, the heavily redacted billing statements, the forward purchase agreement where Dundrod purchased a stake in Al-Saleh's litigation, and the affidavit of Ed Davis can all be immediately unsealed.  The Burford UK and Focus share purchase agreement has already been filed in the open docket [at ECF No. 361-1] so there is no reason to keep the one filed [at ECF No. 333] under seal.

The documents Plaintiffs rely on should be filed in the open to the maximum extent possible because HS3 is in the position of having to prove a negative, *i.e.*, that he did not have malice and that Hall did not create vicarious liability under the Release when HS3 sued him.  Thus, it is important for the public to be able to evaluate the Plaintiffs arguments and evidence in order to determine whether their story (i.e., that after a settlement was finalized with Al-Saleh, Hall was somehow on a mission from his employer to obtain previously denied HS3 sex tapes and previously provided years' old email data despite any contemporaneous evidence of same) is credible.

c.   *Sealed Documents Filed with HS3's SUF Resp. [ECF No. 340].*

These documents are filed at ECF Nos. 348-1 and 348-2 and consist of additional excerpts from the testimony of Hall and the Burford US corporate designee.  The same analysis applies to this testimony as above.  Indeed, it is difficult to imagine this type of testimony offered at trial being sealed from the public.  *See, e.g.*, *Press-Enter. Co.*, 478 U.S. 1 (1986) (closing hearing to the public violated the First Amendment).

d.   *Sealed Documents Filed with Plaintiff's SMF Resp. [ECF No. 339].*

These documents are sealed at ECF Nos. 347 through 347-9.  With the exception of one document, ECF No. 347-5, these documents should all be immediately unsealed.  ECF No. 347-5, is the deposition transcript of Daniel Rivas and can be refiled with a few simple redactions to protect the identities of third parties.

The remainder can be unsealed immediately.  Several of the documents are already on the public docket.  ECF No. 347-1 is Andrew Goldsmith's declaration offering the remainder of the exhibits, and it is unsealed at ECF No. 337-1.  ECF Nos. 347-6 and 347-7 are the assignment of judgment and email from Bianca Beam related to the collection of Ruperti Material that Plaintiffs later filed at ECF Nos. 361-2 and 361-3, respectively.

ECF No. 347 is the unredacted copy of the Plaintiffs' response to HS3's SMF, there are only a few quotes of "Confidential" documents, and none of the material implicates the salacious material involved in this case.   ECF Nos. 347-2, 347-3, and 347-4 are deposition transcripts of Burford US corporate designee, Hall, and Daniel Sargeant.  Finally, ECF Nos. 347-8 and 347-9 are cover emails.  Although, HS3 challenged the designation of these emails and Plaintiffs successfully resisted on the basis that they could not be separated from their attachment, Plaintiffs filed them without any attachments (one is just a continuation of the chain that HS3 was interested in filing and did not have any attachments).   ECF No. 327 at 66-67 ("As to the documents beginning at 504720 and continuing through 504778 . . . I'll overrule the objection and ***allow that to remain confidential for discovery purposes***. I do believe those have to be read as an integrated whole, because the e-mail doesn't really make sense and isn't really relevant unless you look to the underlying documents. And so ***I'll leave that one to Judge Altman to sort out, applying the standard for sealing, as opposed to the standard for confidentiality***.") (emphasis added).  Note again, Magistrate Judge Reinhart never actually applied the correct standard.  Moreover, without

the attachments, there is no reason to keep the documents under seal and they should be immediately unsealed.

　　　　　　　e.　*Sealed Documents Filed with HS3's Supplemental Standing Brief Regarding Standing [ECF No. 376].*

　　　　Although not part of the Unsealing Order, HS3 recently filed some billing exemplars sent to Burford US by Plaintiffs' two firms for this and the prior litigation related to the SAC.  [ECF No. 381-1].[15]  Attorneys' fees are central to the Plaintiffs claim, and the billing records do not include any actual time records.  These records were filed because they are only example months provided to support HS3's argument that Burford US and Dundrod lack standing, and that Hall never himself incurred any fees defending the SAC.  These documents establish all of the bills were addressed to ***Burford US as the client***, a device that Burford US and Dundrod cannot employ to manufacture their own standing.  *See, e.g.*, *Miccosukee Tribe of Indians of Fla. v. Cypress*, 686 Fed. Appx. 823 (11th Cir. 2017) (finding district court's sealing of billing records deprived opposing counsel due process in determining proper amount of sanctions and ordering district court to unseal records).

　　　　In sum, the Unsealing Order effectively operated as a presumption in favor of sealed filings, despite a complete lack of any particular and specific demonstration by the Plaintiffs or any support in the record for any of the above documents remaining sealed.

## CONCLUSION

　　　　For the foregoing reasons, HS3 respectfully requests that the Court set aside Magistrate Judge Reinhart's Unsealing Order and order the following documents unsealed:  ECF Nos. 334-1 through 334-10, 334-12 through 334-14, 347 through 347-4, 347-6 through 347-9, 348-1, and 348-2.  Further, HS3 respectfully requests that the Court order the parties to cooperate to refile the following documents with appropriate redactions:  ECF Nos. 249-1, 333-1 through 333-18, 334-11, 347-5.

---

[15] The other two filings filed at that time were the notice of sealing [ECF No. 381] and the order directing the sealed filing, which can both be immediately unsealed under the logic of the Unsealing Order that unsealed similar documents.

Dated:  December 26, 2019                              Respectfully submitted,


Ryon M. McCabe                                         */s/   Melissa B. Coffey*
Fla. Bar No. 9075                                      Christopher M. Kise
rmccabe@mccaberabin.com                                Fla. Bar No. 855545
Adam T. Rabin                                          Melissa B. Coffey
Fla. Bar No. 985635                                    Fla. Bar No. 84090
arabin@mccaberabin.com                                 Kathryn T. Williams
Lauren E. Johnson                                      Fla. Bar. No. 112191
Fla. Bar No. 112027                                    Joshua M. Hawkes
ljohnson@mccaberabin.com                               Fla. Bar No. 112539
**MCCABE RABIN, P.A**.                                 **FOLEY & LARDNER LLP**
1601 Forum Pl Ste. 201                                 106 East College Avenue, Suite 900
West Palm Beach, FL 33401-8102                         Tallahassee, FL 32301-7732
Office: 561-659-7878                                   Tel: (850) 222-6100
                                                       Fax: (850) 561-6475
Curtis B. Miner                                        Email: ckise@foley.com
Fla. Bar No. 885681                                    Email: mcoffey@foley.com
curt@colson.com                                        Email: jhawkes@foley.com
Stephanie A. Casey
Fla. Bar No. 97483                                     Gregory W. Coleman
scasey@colson.com                                      Florida Bar No. 846831
**COLSON HICKS EIDSON**                                gcoleman@lawclc.com
255 Alhambra Circle                                    **CRITTON, LUTTIER & COLEMAN, LLP**
Penthouse                                              303 Banyan Blvd., Suite 400
Coral Gables, FL 33134                                 West Palm Beach, FL 33401
Tel: (305) 476-7400                                    Telephone: (561) 842-2820
                                                       Facsimile: (561) 844-6929

                                                       *Counsel for Defendant Harry Sargeant, III*

**CERTIFICATE OF SERVICE**

I hereby certify that, on December 26, 2019, a true and correct copy of the foregoing was

filed and served on all counsel of record via the CM/ECF system.

*/s/ Joshua M. Hawkes*
Joshua M. Hawkes