**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 18-cv-80748-ALTMAN/Reinhart**

DANIEL HALL,
BURFORD CAPITAL LLC, and
DUNDROD INVESTMENTS LTD.,

      Plaintiffs,

      v.

HARRY SARGEANT, III,

      Defendant.

_____/

**PLAINTIFFS' OPPOSITION TO DEFENDANT HARRY SARGEANT, III'S**
**MOTION FOR SANCTIONS AND/OR RECONSIDERATION OF OMNIBUS ORDER**

## <u>TABLE OF CONTENTS</u>

**PAGE**

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION .................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND....................................................................2

LEGAL STANDARDS ..........................................................................................................5

ARGUMENT ......................................................................................................................6

I.      DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT ...............................6

II.     SANCTIONS ARE NOT WARRANTED .....................................................10

      A.     Sanctions Are Not Warranted Under the Court's Inherent Authority ..................10

      B.     Sanctions Are Not Warranted Under Rule 37........................................12

CONCLUSION..................................................................................................16

## **TABLE OF AUTHORITIES**

PAGE(S)

CASES

*1100 West, LLC v. Red Spot Paint & Varnish Co.*, 2009 WL 1605118
     (S.D. Ind. June 5, 2009) ......................................................................................13

*Allen v. Tyson Foods, Inc.*, 121 F.3d 642 (11th Cir. 1997)..........................................5, 9

*Allstate Ins. Co. v. Papanek*, 2019 WL 6698342 (S.D. Ohio Dec. 9, 2019)...................15

*Amos v. Bodycote Thermal Processing, Inc.*, 2017 WL 10379637
     (E.D. Tenn. Feb. 10, 2017) ..................................................................................15

*Bautista v. Cruise Ships Catering & Serv. Int'l, N.V.*, 350 F. Supp. 2d 987
     (S.D. Fla. 2003), *aff'd mem.*, 120 F. App'x 786 (11th Cir. 2004)........................5

*Benzion v. Vivint, Inc.*, 2013 WL 12014439 (S.D. Fla. Sept. 9, 2013) ..........................10

*Brican Am. LLC Equip. Lease Litig.*, *In re*, 977 F. Supp. 2d 1287 (S.D. Fla. 2013),
     *report and recommendation adopted*, 2013 WL 12092311 (S.D. Fla. 2013).....................5

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)........................................11

*Brock v. County of Napa*, 2012 WL 2906593 (N.D. Cal. July 16, 2012) ...............15, 16

*Brown v. Oil States Skagit Smatco*, 664 F.3d 71 (5th Cir. 2011)...................................11

*Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366
     (S.D. Fla. 2002)....................................................................................................5

*Byrne v. Nezhat*, 261 F.3d 1075 (11th Cir. 2001) .........................................................11

*Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. California*,
     649 F. Supp. 2d 1063 (E.D. Cal. 2009)..................................................................9

*Carnival Cruise Line v. Stankovic*, 2017 WL 1378568 (S.D. Fla. Apr. 11, 2017).........3

*Chavez v. City of Albuquerque*, 402 F.3d 1039 (10th Cir. 2005) ..................................11

*Christians of Cal., Inc. v. Clive Christian N.Y., LLP*, 2014 WL 3605526
     (S.D.N.Y. July 18, 2014) ......................................................................................9

*Coquina Invs. v. Rothstein*, 2012 WL 3202273 (S.D. Fla. Aug. 3, 2012), *aff'd*
     *sub nom. Coquina Invs. v. TD Bank, N.A.*, 760 F.3d 1300 (11th Cir. 2014) ....................14

*De Mello E Silva v. Citibank, N.A.*, 2020 WL 8115993 (S.D. Fla. Nov. 6, 2020) .........9

*De Saro v. United States*, 305 F. Supp. 2d 1330 (S.D. Fla. 2004)..................................14

*DeepGulf Inc. v. Moszkowski*, 333 F.R.D. 249 (N.D. Fla. 2019) ..............................................6, 12

*Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298
  (11th Cir 2009)..........................................................................................................................11

*Englebrick v. Worthington Indus., Inc.*, 620 F. App'x 564 (9th Cir. 2015)..................................11

*Florida Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514 (11th Cir. 1996) ...................10

*Flury v. Daimler Chrysler Corp.*, 427 F.3d 939 (11th Cir. 2005) ................................................12

*Fossil Indus., Inc. v. Onyx Specialty Papers, Inc.*, 302 F.R.D. 288 (E.D.N.Y. 2014).....................13

*Global Energies, LLC, In re*, 763 F.3d 1341 (11th Cir. 2014) ..................................................9, 10

*Gonzales v. Garcia*, 2020 WL 5658718 (S.D. Cal. Sept. 23, 2020)..............................................15

*Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017)..................................................15

*Great Lakes Reins. (UK) PLC v. Jorge Roca*, 2009 WL 10712148
  (S.D. Fla. Feb. 23, 2009)............................................................................................................8

*Gridley v. Cleveland Pneumatic Co.*, 127 F.R.D. 102 (M.D. Pa. 1989)..........................................9

*Hendricks v. Smartvideo Techs., Inc.*, 511 F. Supp. 2d 1219 (M.D. Fla. 2007) ............................6

*Hicks v. Client Servs., Inc.*, 2009 WL 10667498 (S.D. Fla. June 17, 2009)...................................5

*Hull v. Municipality of San Juan*, 356 F.3d 98 (1st Cir. 2004)......................................................12

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694
  (1982).......................................................................................................................................14

*Jones v. Discount Auto Parts, LLC*, 2017 WL 1396477 (M.D. Fla. Apr. 19, 2017) ......................8

*Lambert v. Worldwide Mktg. Techs. Corp.*, 708 F. App'x 559 (11th Cir. 2017)...........................11

*Laukus v. Rio Brands, Inc.*, 292 F.R.D. 485 (N.D. Ohio 2013)...............................................13, 14

*Malautea v. Suzuki Motor Co.*, 987 F.2d 1536 (11th Cir. 1993) ..................................................13

*Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317
  (S.D. Fla. 2010)........................................................................................................................10

*Martin v. DaimlerChrysler Corp.*, 251 F.3d 691 (8th Cir. 2001) ................................................12

*McDaniel v. Bradshaw*, 2011 WL 1827731 (S.D. Fla. May 12, 2011) ..........................................9

*McKinley v. Kaplan*, 177 F.3d 1253 (11th Cir. 1999) ...................................................................9

*ML Healthcare Servs., LLC v. Publix Super Mkts., Inc.*, 881 F.3d 1293
(11th Cir. 2018)................................................................................................14

*Moten v. Maverick Transp., LLC*, 2015 WL 6593089 (N.D. Ala. Oct. 30, 2015).....................8, 9

*Norfolk S. Ry. Co. v. Boatright R.R. Prods., Inc.*, 2019 WL 1199836
(N.D. Ala. Mar. 14, 2019)................................................................................9

*Okla. Federated Gold & Numismatics, Inc. v. Blodgett*, 24 F.3d 136
(10th Cir. 1994)................................................................................................14

*Omega SA v. 375 Canal, LLC*, 324 F.R.D. 47 (S.D.N.Y. 2018), *aff'd in part and
dismissed in part*, 984 F.3d 244 (2d Cir. 2021) .......................................................6

*People for the Ethical Treatment of Animals, Inc. v. Dade City's Wild Things,
Inc.*, 2020 WL 897988 (M.D. Fla. Feb. 25, 2020) ....................................................11, 13

*Preferred Care Partners Holding Corp. v. Humana, Inc.*, 2009 WL 982460
(S.D. Fla. Apr. 9, 2009) ....................................................................................13

*Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218 (11th Cir. 2017) ...............5, 10

*Qantum Commc'ns Corp. v. Star Broad., Inc.*, 473 F. Supp. 2d 1249
(S.D. Fla. 2007)................................................................................................11, 12

*Searock v. Stripling*, 736 F.2d 650 (11th Cir. 1984).................................................13

*Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151 (11th Cir. 2012) ....................................5

*TEC-Serv, LLC v. Crabb*, 2012 WL 12925238 (S.D. Fla. Dec. 26, 2012) ....................................13

*Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051 (9th Cir. 1998)..................................13, 14

*Vargas v. Peltz*, 901 F. Supp. 1572 (S.D. Fla. 1995).................................................12

*VIP Auto Glass, Inc. v. GEICO Gen. Ins. Co.*, 2018 WL 3649638
(M.D. Fla. Jan. 3, 2018) ....................................................................................15

**STATUTES AND RULES**

Fed. R. Civ. P.:

Rule 12 ............................................................................................9

Rule 15 ............................................................................................9

Rule 26(a)..........................................................................................6

Rule 37 ..........................................................................6, 12, 13, 15

Loc. R. 7.1(c)(2)................................................................................ 8, 10

Plaintiffs Daniel Hall, Burford Capital LLC, and Dundrod Investments Ltd. respectfully submit this memorandum of law in opposition to Defendant's Motion for Sanctions and/or Reconsideration of Omnibus Order, ECF No. 372 ("Mot."). The Motion should be denied.

## INTRODUCTION

Defendant's wholly disproportionate response to an inadvertent discovery mistake by Plaintiffs' counsel is regrettable and all too consistent with Defendant's scorched-earth tactics throughout this litigation. Plaintiffs have already offered the only reasonable remedy – reopening Daniel Hall's deposition to allow Defendant to question him about the inadvertently overlooked messages. The Court should reject Defendant's effort to obtain unfair litigation advantage from a routine discovery oversight made entirely in good faith.

Defendant's lead argument – that the overlooked WhatsApp messages prove that Hall was acting *ultra vires* (and that Defendant is therefore now entitled to summary judgment) – is utterly without merit. Far from a "smoking gun," the messages support Plaintiffs' interpretation of events more than Defendant's: the messages were between Hall *and another Burford employee*. At most, the messages will provide Defendant with some additional material for cross-examination at trial on an issue that the Court has repeatedly said is not appropriate for summary judgment.

There is also no basis for the extreme discovery sanctions Defendant seeks. As explained below, Plaintiffs' counsel acted entirely in good faith; indeed, the oversight was an unintended consequence of counsel's well-intentioned efforts to limit the number of people who had access to Defendant's sexually explicit materials. Once counsel realized that several messages had been overlooked, Plaintiffs promptly produced them. To be clear, Hall had nothing to do with the process of reviewing and producing the messages from his mobile phone, which he had provided to counsel at the outset of this litigation in 2018. The circumstances here bear no resemblance to the extreme discovery abuses in the cases Defendant cites.

This is a routine discovery mishap with a straightforward solution. Given that the only conceivable prejudice Defendant suffered was the inability to question Hall about the messages at his deposition, Plaintiffs have already offered to allow Defendant to depose Hall regarding the messages. Defendant's request for more extravagant relief should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

The Court is intimately familiar with the background in the case, so we limit ourselves to only the most relevant history.

In February 2018, Defendant sued Hall, alleging that "Hall was engaged as an investigator in a bitter, global feud with HS3 seeking recovery of millions of dollars from HS3 on behalf of a . . . Burford client, Mohamm[a]d Al-Saleh.  As part of those efforts, Hall sought information regarding HS3 that Burford could use to leverage and/or extort HS3 into a payment or settlement." ECF No. 1-4 ¶ 31.  To obtain that information, according to Defendant, Hall agreed with Defendant's brother Dan Sargeant and others "that DSargeant and [his company] would unlawfully access the HS3 Email Account, obtain the HS3 Material, and provide the HS3 Material to Hall." *Id*. ¶ 33.  Defendant alleged that the HS3 Material included "business information, business and personal communications, documents, Microsoft outlook email files, and personal, sensitive photographs and videos." *Id*. ¶ 22.

After Magistrate Judge Bruce Reinhart recommended that Defendant's claims against Hall be dismissed, *see* ECF No. 1-5, Defendant dismissed his complaint without prejudice, and Plaintiffs filed the Complaint in this case.  Plaintiffs alleged that, by suing Hall, Defendant had breached his settlement agreement with Al-Saleh.  *See* ECF No. 1 ¶¶ 52-58.[1]

Both sides moved for summary judgment in whole or part.  *See* ECF Nos. 320, 321.  As relevant here, the Court denied both motions as to whether Hall was a releasee under Defendant's settlement agreement with Al-Saleh.  *See* ECF No. 420 at 26-33.  In that agreement, Defendant granted releases – and, the Court held, covenants not to sue, *see id*. at 19 – to "(a) Al-Saleh, (b) Burford Capital, LLC, and (c) Dundrod Investments Ltd., and all persons or entities for whose acts or omissions the foregoing would or could be derivatively or vicariously liable or to whom the foregoing could or would owe indemnification." ECF No. 1-3 at 9.

The Court rejected Defendant's argument that no reasonable factfinder could conclude that Hall acted as Burford's agent when he obtained Defendant's salacious images and other materials, and thus was a releasee.  First, Aviva Will, who at the time was managing the

---

[1] Defendant filed a variation on his original claims in state court.  *See* ECF No. 21-1.  After that case was stayed, he filed counterclaims here, *see* ECF No. 54, amended them when Plaintiffs moved to dismiss, *see* ECF No. 68, and sought reconsideration and leave to file second amended counterclaims after his first amended set was dismissed, *see* ECF Nos. 155, 203.  The Court denied both forms of relief.  *See* ECF No. 246.

Al-Saleh case for Burford, testified that Hall obtained a "larger group of documents" with the salacious images as part of his investigative work of tracing Defendant's assets.  *See* ECF No. 420 at 27.  Hall similarly testified that he obtained the USB drive containing those materials as part of his Al-Saleh work.  *See id.* at 27-28.  Both Will and Hall testified that Will had supervised Hall's work on the Al-Saleh matter.  *See id.* at 28.  The Court concluded there was thus "plenty of evidence from which a reasonable fact-finder could find" that Hall was acting as Burford's agent under Florida law.  *Id.*

Second, the Court held that there "likewise would be enough evidence for a reasonable fact-finder to find that Burford" could or would owe Hall indemnification under UK law, if it governed.  *Id.*  The Court rejected Defendant's *Daubert* challenge to Plaintiffs' UK law expert who opined on this point, and it noted that Defendant "has adduced precious little in support of his contention" that the expert was wrong.  *Id.* at 29.

Third, the Court rejected several objections Defendant lodged to the above conclusions. *See id.* at 29-32.  One of these is relevant here.  Defendant "point[ed] to several pieces of evidence" that he argued showed that Hall was not acting on Burford's behalf.  *Id.* at 30.  The Court held that evidence insufficient to preclude a factfinder from finding for Plaintiffs, in part because Defendant had "admitted" in his complaint that Hall had obtained the material "[a]s part of" his efforts to support Al-Saleh.  *Id.*  The Court concluded that "assessments of credibility—no less than the weighing of evidence—are fact questions not susceptible of disposition at summary judgment."  *Id.* at 31.  As the Court said at oral argument, "[T]hat seems like a wonderful question to pose to the jury.  What was Mr. Hall's intention?  What was Mr. Hall's subjective desire?  Was it an improper motive to conduct an intentional tort and get off on watching pornography videos of this guy that he was investigating?  Maybe.  Was it, on the other hand, to earnestly make sure that the assets were tracked down such that Mr. Sargeant could not, as he had before, evade his responsibilities time and time again?"  Nov. 21, 2019 Mot. Hr'g Tr. 102:8-16, ECF No. 388.[2]

---

[2] That this case should be tried to the bench rather than a jury, *see* ECF No. 461, does not change the analysis.  *See Carnival Cruise Line v. Stankovic*, 2017 WL 1378568, at *1 (S.D. Fla. Apr. 11, 2017) (denying motion to reconsider denial of summary judgment and proceeding to bench trial because "there is conflicting testimony," and, "[t]o resolve that conflict, I necessarily will have to determine the credibility of the witnesses").

Defendant did not move for summary judgment on his Ninth Affirmative Defense, which contends Hall cannot prevail because his purported trade of material related to Wilmer Ruperti for the Sargeant material violated Burford's obligations to another client, allegedly triggering an "adverse interest exception." ECF No. 54 at 10; *see also* ECF No. 320 (not addressing the defense). Plaintiffs moved for partial summary judgment on the ground that the doctrine is not a defense at all, but instead "an exception to the ordinary rule that the actions of an agent are attributed to the principal." ECF No. 321 at 30. The Court denied Plaintiffs' motion, reasoning that, drawing inferences in Defendant's favor, it could not find that any reasonable factfinder would necessarily conclude that Hall had been working in Burford's interest. *See* ECF No. 420 at 33 & n.20.

During discovery, Plaintiffs' counsel Kellogg Hansen had produced 11 WhatsApp messages that Hall exchanged with his Burford colleague Alex MacInnes-Ostrouch. *See* ECF No. 323-66. These messages had been stored on Hall's mobile phone, which he provided to outside counsel shortly after Defendant sued him. *See* Declaration of Andrew E. Goldsmith ¶¶ 2, 5 (May 19, 2021) ("Goldsmith Decl.") (filed herewith). In March 2021, English counsel for Burford Capital (UK) Limited (Freshfields Bruckhaus Deringer, LLP) informed Kellogg Hansen that it had reviewed the messages from Hall's phone in connection with *Maroil Trading Inc. v. Cally Shipholdings Inc. v. Burford Capital (UK) Limited*, Case No. 2018-000824, pending in the High Court of Justice Business and Property Courts of England and Wales Commercial Court. *See* Goldsmith Decl. ¶ 7. Defendant is not a party in that case, and the events at issue there, while overlapping, are not identical to those at issue here. *See id*. Freshfields therefore performed its own document review. *See id*. Freshfields reported that it had identified several additional WhatsApp messages between Hall and MacInnes-Ostrouch, beyond the 11 messages Plaintiffs produced in March 2019. *See id*. ¶ 8.

In light of this, Kellogg Hansen re-reviewed the WhatsApp messages between Hall and MacInnes-Ostrouch. *See id*. ¶ 9. Kellogg Hansen determined that five additional messages were within the scope of material Plaintiffs had agreed to produce in response to Defendant's requests for production in this case. *See id*. ¶ 10. Plaintiffs produced those messages on April 2, 2021. *See id*.; ECF Nos. 472-2, 472-3.

On April 29, 2021, the parties held a meet-and-confer telephone call during which counsel for Defendant stated their intention to move for summary judgment and/or sanctions.

*See* Goldsmith Decl. ¶ 12.  The following day, Plaintiffs informed Defendant that they would oppose the motion but noted, "Plaintiffs might agree to make Mr. Hall available for half an hour, via Zoom, so that Defendant can depose him about the text messages before trial." *Id*. ¶ 13; Goldsmith Decl. Ex. A.  Defendant did not respond to that suggestion.  *See* Goldsmith Decl. ¶ 14.  He filed the Motion later that day.

## LEGAL STANDARDS

Reconsideration may be appropriate in light of " '(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice.' "  *Hicks v. Client Servs., Inc.*, 2009 WL 10667498, at *1 (S.D. Fla. June 17, 2009) (quoting *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002)).  "For a court to reconsider its prior judgment the moving party must present facts or law of a 'strongly convincing nature' that would induce a court to reverse its prior decision.  The 'reconsideration of a previous order is an extraordinary remedy to be employed sparingly.' "  *Id.* (quoting *Burger King*, 181 F. Supp. 2d at 1369; *Bautista v. Cruise Ships Catering & Serv. Int'l, N.V.*, 350 F. Supp. 2d 987, 992 (S.D. Fla. 2003), *aff'd mem.*, 120 F. App'x 786 (11th Cir. 2004) (table)) (citation omitted).

"Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law."  *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).  The court must view all inferences in favor of the non-movant.  *See*, *e.g.*, *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).  "Where a fact-finder is required to weigh a deponent's credibility, summary judgment is simply improper."  *Strickland*, 692 F.3d at 1162.  Accordingly, "even in the absence of collaborative [sic] evidence, a plaintiff's own testimony may be sufficient to withstand summary judgment."  *Id*. at 1160.

The Court may exercise its inherent power "to sanction the willful disobedience of a court order, and to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017).  The showing required to justify the sanction of dismissal is particularly demanding:  "direct evidence of subjective bad faith" or conduct "so egregious that it could only be committed in bad faith."  *Id*. at 1224-25.  Dismissal is inappropriate, even if the conduct at issue resulted in a "waste of time and effort," if the responsible party did not act "with bad intentions."  *Id.* at 1228.  The party moving for sanctions must prove bad faith by clear and

convincing evidence.  *See In re Brican Am. LLC Equip. Lease Litig.*, 977 F. Supp. 2d 1287, 1300 (S.D. Fla. 2013), *report and recommendation adopted*, 2013 WL 12092311 (S.D. Fla. 2013).

If a party "fails to obey an order to provide or permit discovery," the Court "may issue further just orders."  Fed. R. Civ. P. 37(b)(2)(A).  Similarly, if a party "fails to provide information" as required by Rule 26(a), the Court "may impose . . . appropriate sanctions."  Fed. R. Civ. P. 37(c)(1)(C).  "Sanctions under Rule 37 are intended to (1) compensate the court and parties for the added expenses caused by discovery abuses, (2) compel discovery, (3) deter others from engaging in similar conduct, and (4) penalize the offending party or attorney."  *DeepGulf Inc. v. Moszkowski*, 333 F.R.D. 249, 252-53 (N.D. Fla. 2019).  "Courts also impose sanctions to prevent unfair prejudice to litigants and insure the integrity of the discovery process."  *Id.* (internal quotation marks omitted).  "To dismiss a case under Rule 37, the Court must find bad faith."  *Hendricks v. Smartvideo Techs., Inc.*, 511 F. Supp. 2d 1219, 1232 (M.D. Fla. 2007).

## ARGUMENT

## I.   DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT

This Court already held that there is "more than enough evidence in the record" for a reasonable factfinder to conclude that Hall was acting as Burford's agent.  ECF No. 420 at 27. That is still true after the recent production of additional WhatsApp messages, so "the key fact prohibiting entry of summary judgment remains unchanged," *Omega SA v. 375 Canal, LLC*, 324 F.R.D. 47, 53 (S.D.N.Y. 2018), *aff'd in part and dismissed in part*, 984 F.3d 244 (2d Cir. 2021), and reconsideration should be denied.

Throughout 2018 and 2019, the parties conducted extensive fact and expert discovery, including on the two factual issues that Defendant claims the newly produced messages conclusively resolve.  First, reversing course from his previous allegation that Hall obtained Defendant's salacious images as part of a broader tranche of material intended to support enforcement of Al-Saleh's judgment, Defendant argues in this case that Hall obtained the images for personal reasons.  *See*, *e.g.*, Mot. at 1.  During discovery, Plaintiffs produced text messages that Hall exchanged with Annette Perez, Dan Sargeant's employee who provided the images to Hall along with 168,000 other email messages.  On October 14, 2016, approximately an hour before Perez gave Hall the USB drive containing the data, Perez wrote to Hall, "Made a copy already for you to keep.  It's pretty nasty.  Lol."  ECF No. 323-68 at 4.  Hall replied, "Thanks. I literally can't wait to see it."  *Id.*  The next day Perez wrote to Hall, "Still cringing after seeing

6

those photos and videos." *Id*. Hall replied, "Yeah, they are pretty real. Will take a while to scrub that from the memory." *Id*. Perez responded by describing another sexually explicit photo of Defendant that a colleague had shown her. *Id*. Defendant's counsel asked Hall about these texts at his deposition, suggesting they reflected " ████████████████████████████

████████████████████ " Hall Tr. 405:23-25, ECF No. 323-1; *see also id*. at 403:24-409:6. Hall explained that he did not recall what he had in mind at the time, but he likely had been joking. *See id*. at 405:22-406:12. Dan Sargeant also testified that Hall asked him for the salacious images. *See* D. Sargeant Tr. 45:1-7, 63:3-6, 63:15-21, 71:9-11, ECF No. 323-42.

Second, Defendant argues that Hall obtained the salacious images and other material from Dan Sargeant (via Perez) as part of a "bargained-for exchange" for material related to Dan Sargeant's adversary Ruperti. Mot. at 1. Related to this point, during discovery, Plaintiffs produced text messages that Hall exchanged with Dan Sargeant. Two months before Perez gave the USB drive to Hall, Hall wrote to Dan Sargeant, "Let me know if you want to meet up next week. I've some Wilmer stuff for you. And I'd love the other stuff we discussed." ECF No. 323-51. Defendant's counsel asked Hall at his deposition whether this message " ████████████

████████ " Hall Tr. 223:10-11, ECF No. 337-3. Hall explained that it did not, in part because Hall provided materials to Dan Sargeant to cultivate him as a potential client, not to induce him to provide information about Defendant. *See id*. at 223:9-226:10. In addition, Defendant produced an email that Andrew Preston – Dan Sargeant's lawyer – sent to Hall in May 2017. *See* ECF No. 323-61. Preston wrote, " ████████████████████████████████

████████████████████████████████████████████████████

████████████████ " *Id*. Defendant's counsel asked Hall whether this too indicated that Hall had suggested an exchange, and Hall again explained it did not. *See* Hall Tr. 353:14-354:14, ECF No. 248-1.

The recently produced messages do not materially change the picture, much less demonstrate that Hall committed perjury, notwithstanding Defendant's accusations and table of purported inconsistencies (at Ex. A). In one of the messages, Hall wrote to MacInnes-Ostrouch, " ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ ."

ECF No. 472-2. Defendant argues (at 1) that the last sentence of this message conclusively shows that Hall was not acting on Burford's behalf. But if anything the message suggests the

opposite, because Hall was communicating with a Burford colleague. In any event, even if a factfinder could read the message as Defendant proposes, it is certainly not conclusive. Indeed, the Court previously denied summary judgment in the presence of other similar messages.[3]

In the other message Defendant touts, Hall wrote that Dan Sargeant wanted information related to Commerzbank and Wilmer Ruperti and then said, "████████████████ ████" ECF No. 472-2. Defendant argues (at 1) this shows that Hall traded the Ruperti information for the Sargeant information in a "bargained-for exchange." But to suggest the message supports Defendant, the Motion quotes it only in part. The message begins, "████ ████████████████████████████████████████" ECF No. 472-2. Far from proving a trade, the message as a whole shows that Hall was giving Dan Sargeant material without necessarily receiving anything in return. Moreover, here too the Court denied summary judgment in the face of similar evidence.[4]

These messages cannot support summary judgment for Defendant for the additional reason that Defendant has not taken the time to ask Hall about them. *See Jones v. Discount Auto Parts, LLC*, 2017 WL 1396477, at *9-11 (M.D. Fla. Apr. 19, 2017) (denying defendant's summary judgment motion on medical causation where defendant moved to exclude plaintiff's treating physicians rather than depose them). Defendant requests additional depositions as an alternative form of relief (at 17 n.10), but Plaintiffs already offered to make Hall available, *see* Goldsmith Decl. Ex. A. Defendant ignored that proposal and instead elected to proceed on the current record, presumably with plans to seek additional evidence and move for summary judgment yet again if the Court finds the current record insufficient, as it should. Local Rule 7.1(c)(2) bars such repetitive motions for good reason.

Other courts have refused to reconsider denials of summary judgment on disputed issues of intent, knowledge, or state of mind despite new evidence. *See, e.g., Great Lakes Reins. (UK) PLC v. Jorge Roca*, 2009 WL 10712148, at *2-3 (S.D. Fla. Feb. 23, 2009) (whether insurer would have issued policy if applicant had not omitted fact from application); *Moten v. Maverick*

---

[3] As noted above, for example, the summary judgment record already included Hall writing to Perez, apparently about the same material, "I literally can't wait to see it." ECF No. 323-68.

[4] As noted, Hall wrote to Dan Sargeant, "Let me know if you want to meet up next week. I've some Wilmer stuff for you. And I'd love the other stuff we discussed," ECF No. 323-51, and Preston asserted that Hall had offered Dan Sargeant information ██████████████████████ ████████████████ Hall Tr. 353:14-354:14, ECF No 248-1; ECF 323-61.

*Transp., LLC*, 2015 WL 6593089, at *5-7 (N.D. Ala. Oct. 30, 2015) (whether employer had legitimate reasons for terminating employee); *Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. California*, 649 F. Supp. 2d 1063, 1072-73 (E.D. Cal. 2009) (whether parties had mutual understanding of contract). These courts instead chose to "leave[] the questions of fact and credibility" for trial. *Moten*, 2015 WL 6593089, at *7. This Court should as well.

The cases cited by Defendant (at 10-11) offer no support for his supposed entitlement to summary judgment. Three of the cases concerned attempts to re-plead dismissed claims, not to reverse a summary judgment ruling. *See Norfolk S. Ry. Co. v. Boatright R.R. Prods., Inc.*, 2019 WL 1199836 (N.D. Ala. Mar. 14, 2019); *Christians of Cal., Inc. v. Clive Christian N.Y., LLP*, 2014 WL 3605526 (S.D.N.Y. July 18, 2014); *McDaniel v. Bradshaw*, 2011 WL 1827731 (S.D. Fla. May 12, 2011). The movants in those cases had to meet only the less-demanding Rule 12 standard for stating a claim, and they benefitted from Rule 15's liberal policy in favor of amending complaints. *See McKinley v. Kaplan*, 177 F.3d 1253, 1258 (11th Cir. 1999) (per curiam) (leave to amend should be "freely given" absent bad faith, futility, or other good cause). Here, the Court must draw all inferences in Plaintiffs' favor. *See Allen*, 121 F.3d at 646.

Defendant's other cases also have little bearing on the present situation. In *Gridley v. Cleveland Pneumatic Co.*, 127 F.R.D. 102, 104 (M.D. Pa. 1989), newly discovered evidence served to *create* a genuine issue of material fact – by revealing ambiguity in a contract – where it did not exist before. In *De Mello E Silva v. Citibank, N.A.*, 2020 WL 8115993, at *1 (S.D. Fla. Nov. 6, 2020), the party seeking reconsideration managed to eliminate a factual issue, but the issue was straightforward: who had signed a particular form. When the court first ruled, little evidence of the signatory's identity was in the record. Deposition testimony and a sworn declaration later eliminated one candidate, pinpointed another, and left no plausible alternative. *See id.* at *3. While reconsideration on that clear-cut record may have been appropriate, that result has no application to the disputed state-of-mind issue here.

Finally, *In re Global Energies, LLC*, 763 F.3d 1341 (11th Cir. 2014) (per curiam), does not support Defendant either. There, two business partners decided to squeeze out a third via involuntary bankruptcy. *See id.* at 1344-45. The third tried to dismiss the bankruptcy petition for being filed in bad faith but could not prove it. *See id.* at 1345-46. After the bankruptcy proceedings ended, he obtained pre-bankruptcy emails between the other partners and their counsel openly discussing the use of bankruptcy to push him out. *See id.* According

to the Eleventh Circuit, these emails evinced bad faith so plainly that "it would be clear error to interpret the emails as showing anything other than that [the two] conspired to . . . file the bankruptcy petition in bad faith." *Id.* at 1349-50.

The Court should deny Defendant's request for summary judgment on the adverse-interest defense for a second, independent reason as well.  Defendant did not include the defense in his prior motion for summary judgment.  As to this issue, the Motion is a second motion for summary judgment, not a motion for reconsideration.  Successive summary judgment motions are prohibited absent leave of the Court, *see* Loc. R. 7.1(c)(2), which Defendant has not sought and should not be given.  There is no argument that a single WhatsApp message changed the landscape enough to justify summary judgment on an issue that Defendant previously did not even find worthy of a motion.  *See Benzion v. Vivint, Inc.*, 2013 WL 12014439, at *3 (S.D. Fla. Sept. 9, 2013) (denying leave to file second summary judgment motion).

## II.   SANCTIONS ARE NOT WARRANTED

### A.   Sanctions Are Not Warranted Under the Court's Inherent Authority

The Court should reject Defendant's request for dismissal under the Court's inherent power because the Motion does not come close to demonstrating "direct evidence of subjective bad faith" or conduct "so egregious that it could only be committed in bad faith."  *Purchasing Power*, 851 F.3d at 1224-25.  Defendant has made no effort to show that the delayed production of the WhatsApp messages reflects subjective bad faith.  Nor could he.  As explained in the Declaration of Andrew E. Goldsmith, filed herewith, outside counsel took custody of Hall's mobile phone three years ago.  *See* Goldsmith Decl. ¶ 2.  The inadvertent failure to produce five messages during discovery was an oversight by outside counsel, caused by their limiting the number of persons with access to Defendant's salacious images to respect the privacy of Defendant and others depicted in the images.  *See id.* ¶¶ 3-5, 11.  Plaintiffs produced the messages on April 2, 2021, *see id.* ¶ 10, shortly after being alerted to them and long before trial.  There was no bad faith.  *See, e.g.*, *Florida Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1521 (11th Cir. 1996) (rejecting dismissal as sanction for 17-month delay in production of documents because circumstances did not evince bad faith); *Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317, 1333 (S.D. Fla. 2010) (rejecting default judgment despite spoliation, because "the plaintiff has failed to show, through direct or circumstantial evidence, that the defendant exhibited bad faith").

Defendant argues (at 12) the messages reveal the entire litigation was a bad-faith undertaking.  But, as set forth above, the text messages simply will not bear the weight Defendant places on them.  They do not suggest, much less compel, the findings of "perjury and pervasive misconduct" that Defendant demands (at 12).  *Cf. Byrne v. Nezhat*, 261 F.3d 1075, 1125 (11th Cir. 2001) ("Standing alone, a false or inconsistent statement in a deposition does not compel the conclusion of bad faith."), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).  On the contrary, as explained above, the messages support Plaintiffs' interpretation of the events.  At best for Defendant, they are cumulative of other evidence already in the record when the Court denied Defendant's motion for summary judgment.

The cases Defendant cites (at 12-13) involved egregious discovery misconduct that bears no resemblance to this case.  In *People for the Ethical Treatment of Animals, Inc. v. Dade City's Wild Things, Inc.*, 2020 WL 897988 (M.D. Fla. Feb. 25, 2020), which concerned the treatment of tigers at a zoo, the defendants demonstrated "a complete disregard for the rule of law."  *Id.* at *2-3, *5.  Despite the court ordering the defendants to keep the tigers in their ordinary condition for an inspection, the defendants surreptitiously moved them out of state.  *Id.* at *2.  Plaintiffs have undertaken no such "calculated and deliberately deceptive" defiance of the Court.  *Id.* at *10.

Defendants' other cases are likewise inapt.  In *Eagle Hospital Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306-07 (11th Cir. 2009), the defendants secretly monitored the plaintiff's email communications with counsel for nearly two years.  In *Lambert v. Worldwide Marketing Technologies Corp.*, 708 F. App'x 559, 562 (11th Cir. 2017) (per curiam), the plaintiff defied an order to produce her computer for examination and then mailed threatening letters to the defendants' customers.  In *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 73 (5th Cir. 2011) (per curiam), the plaintiff was caught in an outright lie, testifying in one case that he left his job solely because of racial harassment and in another that he did so solely because of back pain from a car accident.  The plaintiffs in two other cases cited by Defendant admitted that their claims rested on lies.  *See Chavez v. City of Albuquerque*, 402 F.3d 1039, 1042 (10th Cir. 2005) (plaintiff alleging excessive force in arrest admitted he was target of police chase, not innocent bystander); *Englebrick v. Worthington Indus., Inc.*, 620 F. App'x 564, 565 (9th Cir. 2015) (product-liability plaintiffs admitted using gas cylinder to smoke meth when it exploded).

Defendant's reliance on *Qantum Communications Corp. v. Star Broadcasting, Inc.*, 473 F. Supp. 2d 1249 (S.D. Fla. 2007), is likewise meritless.  In *Qantum*, the plaintiff alleged that the

defendants negotiated with a competitor in violation of a non-solicitation agreement. *Id.* at 1253. Hale, owner of the defendant company and himself a defendant, "lied under oath regarding the key issue" in the case. *Id.* at 1270. Hale testified that he had no contact with the competitor before a particular date, but third-party documents revealed Hale began serious negotiations with the competitor six months before. *See id.* at 1270, 1272-73. Moreover, the defendants urged the competitor to keep negotiations secret from the plaintiff and filed for bankruptcy, despite being solvent, to block litigation. *See id.* at 1274-76. Given the defendants' "clear pattern of disregard for the integrity of the judicial system," entry of default judgment was warranted. *Id.* at 1278.[5]

These are cases involving extreme disregard for the integrity of the judicial process. Nothing remotely similar has occurred here.

### B.    Sanctions Are Not Warranted Under Rule 37

Sanctions are not appropriate under Rule 37 because Defendant has not been prejudiced by the delayed production of five WhatsApp messages, and Plaintiffs and their counsel have acted in good faith. Sanctions under the rule "are intended to (1) compensate the court and parties for the added expenses caused by discovery abuses, (2) compel discovery, (3) deter others from engaging in similar conduct, and (4) penalize the offending party or attorney," as well as to (5) "prevent unfair prejudice to litigants and insure the integrity of the discovery process." *DeepGulf*, 333 F.R.D. at 252-53 (internal quotation marks omitted). Sanctions here would serve none of these purposes. Defendant is the one who imposed added expense on the parties and the Court by filing the Motion rather than accepting Plaintiffs' offer that he depose Hall. No discovery need be compelled, because the messages were produced and additional deposition time offered. No party or attorney need be deterred or penalized where the delayed production was a simple error. Defendant has not been prejudiced, nor the integrity of discovery compromised.

**1.** Defendant's request for dismissal under Rule 37 is no stronger than his request for dismissal under the Court's inherent power, because Rule 37 dismissal likewise requires "willful

---

[5] Defendant's other cases involve similarly egregious conduct and shed no light on this case. *See Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 943-45 (11th Cir. 2005) (plaintiff alleging defective airbags sold vehicle despite defendant's request for inspection); *Hull v. Municipality of San Juan*, 356 F.3d 98, 101 (1st Cir. 2004) (personal-injury plaintiff concealed prior incidents that likely caused injuries); *Martin v. DaimlerChrysler Corp.*, 251 F.3d 691, 694-95 (8th Cir. 2001) (Title VII plaintiff falsely denied having sued previous employer and concealed identity of medical providers); *Vargas v. Peltz*, 901 F. Supp. 1572, 1580-82 (S.D. Fla. 1995) (plaintiff fabricated evidence and falsely accused defendants of threatening her and her family).

or bad faith" misconduct.  *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993).
Absent a clear showing of bad faith, courts consistently reject dismissal and default judgment as
a sanction.  *See Fossil Indus., Inc. v. Onyx Specialty Papers, Inc.*, 302 F.R.D. 288, 293 (E.D.N.Y.
2014) (rejecting dismissal as sanction where belated document production reflected "ordinary
negligence, not intentional conduct"); *TEC-Serv, LLC v. Crabb*, 2012 WL 12925238, at *2-3
(S.D. Fla. Dec. 26, 2012) (rejecting summary judgment grant as sanction for belated production
where facts did "not support a finding of willfulness"); *Preferred Care Partners Holding Corp.
v. Humana, Inc.*, 2009 WL 982460, at *2, *16-17 (S.D. Fla. Apr. 9, 2009) (rejecting default
judgment as sanction, despite production of "approximately 10,000 documents on the eve of
trial," because oversight was "careless, not willful").  Indeed, under the 2015 amendments to
Rule 37, when electronically stored information is *destroyed*, a court may dismiss an action
"only upon finding that the party acted with the intent to deprive another party of the information's
use in the litigation."  Fed. R. Civ. P. 37(e)(2).  It follows that dismissal for *delayed* production
also cannot be appropriate when such a showing cannot be made.  Given the absence of any
plausible assertion of such intent, dismissal is inappropriate here.[6]

  In addition to *People for the Ethical Treatment of Animals*, addressed above, Defendant's
other authorities for Rule 37 dismissal (at 16) involve inapposite facts.  In *Valley Engineers Inc.
v. Electric Engineering Co.*, 158 F.3d 1051 (9th Cir. 1998), the plaintiffs concealed a "smoking
gun" memo exonerating the defendants, despite specific orders to produce it and imposition of
other sanctions.  *Id.* at 1054.  The memo was obtained only through dogged discovery efforts
by the defendants, escalating judicial sanctions, and a change in the plaintiffs' counsel.  *Id.*  In
*1100 West, LLC v. Red Spot Paint & Varnish Co.*, 2009 WL 1605118 (S.D. Ind. June 5, 2009),
an environmental-contamination case, the defendant denied using the chemicals at issue, while
concealing *70,000 responsive documents* showing it had used the chemicals for years.  *Id.* at *11.
A Freedom of Information Act request eventually revealed the documents.  *Id.* at *5-6.

  In *Laukus v. Rio Brands, Inc.*, 292 F.R.D. 485 (N.D. Ohio 2013), a trademark case, the
defendants asserted laches because of the plaintiff's delay after sending a cease-and-desist letter.

---

[6] Rule 37 dismissal also turns on "[w]hether the other party's preparation for trial was
substantially prejudiced."  *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984) (citation
omitted).  Plaintiffs produced the text messages nearly six months before trial, so Defendant
cannot plausibly claim prejudice at trial.

*Id.* at 490-92.  The plaintiff concealed evidence that he had known of and investigated the alleged infringement nine months earlier than acknowledged.  *Id.* at 489.  The evidence came out only inadvertently, after the plaintiff named one of his lawyers as a witness and the lawyer produced documents when he was deposed.  *Id.*  The plaintiff's counsel also knowingly made false representations to the Sixth Circuit, among other bad-faith conduct.  *Id.* at 493-94.

These cases are indeed "instructive," as Defendant asserts (at 16), but not in Defendant's favor.  They involve "a shocking betrayal of obligations to the court and opposing counsel" and "a purposeful evasion of discovery obligations."  *Valley Eng'rs*, 158 F.3d at 1055.  That courts choose dismissal as the sanction for such extreme misconduct shows how excessive the sanction would be here.  Indeed, Defendant repeatedly cites *Coquina Investments v. Rothstein*, 2012 WL 3202273 (S.D. Fla. Aug. 3, 2012), *aff'd sub nom. Coquina Invs. v. TD Bank, N.A.*, 760 F.3d 1300 (11th Cir. 2014), but the court in that case rejected a default-judgment sanction, despite documenting a "pattern of discovery abuses before, during, and after trial."  *Id.* at *13.

**2.**  As an alternative sanction, Defendant proposes (at 17-18) that the Court "designate facts."  *See* Fed. R. Civ. P. 37(b)(2)(A)(i).  This sanction is appropriate only when a party has destroyed evidence, withheld it, or otherwise put it beyond reach.  *See, e.g.*, *ML Healthcare Servs., LLC v. Publix Super Mkts., Inc.*, 881 F.3d 1293, 1308 (11th Cir. 2018) (affirming denial of adverse inference because "this is not the sort of case where the unpreserved evidence clearly would have resolved a crucial issue").  The cases Defendant cites (at 17) illustrate the point. *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707-09 (1982) (affirming designation of facts regarding forum contacts where defendants refused to participate in jurisdictional discovery and defied court orders); *Coquina Invs.*, 2012 WL 3202273, at *16-17 (directing facts as sanction for discovery abuses that continued during and after trial); *De Saro v. United States*, 305 F. Supp. 2d 1330, 1333 (S.D. Fla. 2004) (designating facts where corporate defendant refused to provide representative for deposition); *cf. Okla. Federated Gold & Numismatics, Inc. v. Blodgett*, 24 F.3d 136, 138-41 (10th Cir. 1994) (affirming order barring defendant from calling witnesses and presenting exhibits at trial, after defendant refused to answer discovery requests and be deposed).

Here, the text messages have not been destroyed.  Defendant has them and is free to use them to cross-examine Hall and to argue their significance to the factfinder.  There is no basis to find Plaintiffs intended to deprive Defendant of evidence they voluntarily produced.

*See Gonzales v. Garcia*, 2020 WL 5658718, at *3 (S.D. Cal. Sept. 23, 2020) (denying Rule 37 sanctions where late production resulted from confusion, not intent to deprive); *Amos v. Bodycote Thermal Processing, Inc.*, 2017 WL 10379637, at *4 (E.D. Tenn. Feb. 10, 2017) (similar). Designated facts are not appropriate. *See Allstate Ins. Co. v. Papanek*, 2019 WL 6698342, at *11 (S.D. Ohio Dec. 9, 2019) (denying motion for designated facts because "full discovery on the late document disclosure has occurred," so "no undue prejudice will result from a full presentation of facts").

      **3.**   Attorney's fees and costs covering "the entire action" (at 18) are no more appropriate than the other sanctions Defendant requests.  Defendant relies on *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017), concerning inherent-power sanctions, but that case requires the same showing of bad faith that, as already explained, Defendant cannot make. *See id.* at 1184. *Goodyear* said complete fee-shifting would be appropriate only in "exceptional cases," such as when "a plaintiff initiates a case in *complete bad faith*, so that every cost of defense is attributable only to sanctioned behavior." *Id.* at 1187-88 (emphasis added).  The delayed production of the WhatsApp messages here, which at best for Defendant are cumulative of the prior record, is not remotely adequate to satisfy *Goodyear*.  Defendant's lone example of complete fee-shifting makes this clear.  In *VIP Auto Glass, Inc. v. GEICO General Insurance Co.*, 2018 WL 3649638, at *5 (M.D. Fla. Jan. 3, 2018), the plaintiff committed a genuine fraud on the court, forging a customer's signature on a form critical to the plaintiff's claim.  The "fraudulent and brazenly unethical actions" by the plaintiff in *VIP Auto Glass*, *id.*, bear no relation to this case.

      **4.**   As a final alternative, Defendant asks in a footnote (at 17 n.10) "to depose and seek further document production from Hall, Burford, [MacInnes-Ostrouch], Andrew Preston, Plaintiffs' counsel, and perhaps others."  As noted above, Plaintiffs invited Defendant to depose Hall before Defendant filed the Motion.  Plaintiffs stand by their offer.  But Defendant has provided no justification for questioning anyone else or resuming document discovery.  Nor should the Court award Defendant attorney's fees incurred in filing the Motion or in taking any further testimony from Hall.  Given Defendant's refusal to engage with Plaintiffs before burdening Plaintiffs and the Court with the Motion, "[a]warding attorney's fees in this situation . . . [would] create[] an incentive for litigants to file sanctions motions instead of working with opposing counsel to remedy the late disclosure with minimal Court involvement." *Brock v. Cty. of Napa*, 2012 WL 2906593, at *6 (N.D. Cal. July 16, 2012).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Defendant's Motion.


DATED:  May 19, 2021                              Respectfully submitted,

                                                          */s/ Samuel A. Danon*
                                                          Samuel A. Danon (FBN 892671)
                                                          Armando Cordoves, Jr. (FBN 112425)
                                                          HUNTON ANDREWS KURTH LLP
                                                          Wells Fargo Center
                                                          333 SE 2nd Avenue, Suite 2400
                                                          Tel.: (305) 810-2500
                                                          Email: sdanon@HuntonAK.com
                                                          Email: acordoves@HuntonAK.com

                                                          Derek T. Ho (*pro hac vice*)
                                                          Andrew E. Goldsmith (*pro hac vice*)
                                                          Minsuk Han (*pro hac vice*)
                                                          KELLOGG, HANSEN, TODD,
                                                            FIGEL & FREDERICK, P.L.L.C.
                                                          1615 M Street, N.W., Suite 400
                                                          Washington, D.C. 20036
                                                          Tel: (202) 326-7900
                                                          Email:  dho@kellogghansen.com
                                                          Email:  agoldsmith@kellogghansen.com
                                                          Email:  mhan@kellogghansen.com

                                                          *Counsel for Plaintiffs Daniel Hall, Burford*
                                                          *Capital LLC, and Dundrod Investments Ltd.*

16