UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 18- 80748-CIV-ALTMAN/Reinhart

DANIEL HALL,
BURFORD CAPITAL LLC, and
DUNDROD INVESTMENTS LTD.,

 Plaintiffs,

v.

HARRY SARGEANT, III,

 Defendant.
_____/

**ORAL ARGUMENT REQUESTED**

## HS3's REPLY IN SUPPORT OF MOTION FOR SANCTIONS FOR PERJURY AND DISCOVERY ABUSE AND/OR RECONSIDERATION OF OMNIBUS ORDER

## TABLE OF CONTENTS

ARGUMENT .................................................................................................................................. 1

    I.    Reconsideration of the Omnibus Order is Warranted. ....................................................... 1

    II.    Sanctions are Warranted Under this Court's Inherent Authority and Rule 37. ................ 6

    III.    Alternatively, HS3 Is Entitled to Additional Discovery ................................................... 9

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abruscato v. GEICO Gen. Ins. Co.*,
   No. 3:13-CV-962-J-39JBT, 2014 WL 12616965 (M.D. Fla. May 30, 2014) ........................ 12

*Boateng v. GEICO Gen. Ins. Co.*,
   No. 10-60147-CIV, 2010 WL 11550033 (S.D. Fla. June 15, 2010) ..................................... 11

*Brock v. Cty. of Napa*, 2012 WL 2906593 (N.D. Cal. July 16, 2012) ........................................... 7

*Brown v. Oil States Skagit Smatco*,
   664 F.3d 71 (5th Cir. 2011) ..................................................................................................... 8

*Brown v. Oil States Skagit Smatco*,
   664 F.3d 80 (5th Cir. 2011) ..................................................................................................... 8

*Byrne v. Nezhat*,
   261 F.3d 1075, 1125 n.93 (11th Cir. 2001) ............................................................................. 7

*Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Calif.*,
   649 F. Supp. 2d 1063 (E.D. Cal. 2009) ................................................................................... 4

*Cerrato v. Nutribullet, LLC,*
   No. 8:16-CV-3077-T-24JSS, 2017 WL 5000334 (M.D. Fla. Nov. 2, 2017) .......................... 11

*Chavez v. City of Albuquerque*,
   402 F.3d 1039 (10th Cir. 2005) ............................................................................................... 9

*Coquina Invs. v. Rothstein*,
   No. 10-60786-Civ., 2012 WL 3202273 (Aug. 3, 2012) ........................................................ 10

*De Mello E Silva v. Citibank, N.A.,*
   No. 19-23547-CIV, 2020 WL 8115993 (S.D. Fla. Nov. 6, 2020) ........................................... 4

*Englebrick v. Worthington Industries, Inc.*,
   620 F. App'x 564 (9th Cir. 2015) ........................................................................................ 8, 9

*Equal Emp. Opportunity Comm'n v. M1 5100 Corp.*,
   No. 19-CV-81320, 2020 WL 3581372 (S.D. Fla. July 2, 2020) ........................................... 10

*Flintlock Const. Servs., LLC v. Well-Come Holdings, LLC,*
   710 F.3d 1221 (11th Cir. 2013) ............................................................................................... 4

*Fossil Indus., Inc. v. Onyx Specialty Papers, Inc.*,
   302 F.R.D. 288 (E.D.N.Y. 2014) ............................................................................................ 7

*Garmley v. Cochran*,
   651 F. App'x 933 n.2 (11th Cir. 2016) ................................................................................. 3

*Great Lakes Reinsurance (UK) PLC v. Jorge Roca*,
   No. 07-23322-CIV, 2009 WL 10712148 (S.D. Fla. Feb. 23, 2009) ....................................... 4

*Jones v. Discount Auto Parts*,
   No. 616CV138ORL37KRS, 2017 WL 1396477 (M.D. Fla. Apr. 19, 2017) .......................... 7

*Lakeview Loan Servicing, LLC v. Mobley,*
   No. 1:16-CV-4572-MHC, 2020 WL 5548769 (N.D. Ga. Aug. 14, 2020) ............................ 11

*Lambert v. Worldwide Marketing Tech. Corp.*,
   708 F. App'x 559 (11th Cir. 2017) ....................................................................................... 9

*Moten v. Maverick Transp., LLC*,
   No. 1:14-CV-00786-KOB, 2015 WL 6593089 (N.D. Ala. Oct. 30, 2015) ........................... 4

*Olson v. Stewart,*
   737 F. App'x 478 (11th Cir. 2018) ....................................................................................... 3

*Panock v. Knead Dough Baking Co.*,
   No. 03 C 8550, 2005 WL 8177381 (N.D. Ill. Apr. 26, 2005) .............................................. 12

*Pardue v. Wal Mart Stores, Inc.*,
   No. CV 04-82-BU-RWA, 2006 WL 8435813 (D. Mont. Jan. 19, 2006) ............................. 12

*People for the Ethical Treatment of Animals, Inc. v. Dade City's Wild Things, Inc.*,
   No. 8:16-CV-2899, 2020 WL 897988 (M.D. Fla. Feb. 25, 2020) ......................................... 8

*Pitts v. HP Pelzer Auto. Sys., Inc.*,
   331 F.R.D. 688 (S.D. Ga. 2019) ......................................................................................... 11

*Seven Seas Cruises S. De R.L. v. V. Ships Leisure SAM*,
   No. 09-23411-CIV, 2011 WL 772855, (S.D. Fla. Feb. 19, 2011) ....................................... 10

*Sow v. James River Ins. Co.*,
   No. 9:19-CV-81065, 2020 WL 1322886 (S.D. Fla. Mar. 20, 2020) .................................... 11

*Stern v. O'Quinn*,
   253 F.R.D. 663 (S.D. Fla. 2008) ........................................................................................ 11

*Wright v. Farouk Sys., Inc.,*
   701 F.3d 907 (11th Cir. 2012) .............................................................................................. 3

**Other Authorities**

FED. R. CIV. P. 16(b) ................................................................................................................ 11

FED. R. CIV. P. 26(g) .......... 12

FED. R. CIV. P. 37(b) .......... 10

FED. R. CIV. P. 37(c) .......... 11

FED. R. CIV. P. 54(b) .......... 3

FED. R. EVID. 801 .......... 5

Defendant, Harry Sargeant, III ("HS3"), through his undersigned counsel and pursuant to Federal Rules of Civil Procedure 37 and 54(b) and this Court's Order (ECF No. 478) hereby submits this reply in support of his Motion for Sanctions for Perjury and Discovery Abuse and/or Reconsideration of Omnibus Order (the "Motion").

## ARGUMENT

Plaintiffs' Opposition to the Motion (ECF No. 480) frames the issue presented as a "routine discovery mishap," attempting to shift the Court's focus away from Hall's patent perjury. But Plaintiffs cannot simply ignore Hall's perjury and the natural repercussions of that perjury: summary judgment for HS3 and/or sanctions.

**I.     Reconsideration of the Omnibus Order is Warranted.**

The cornerstone of Hall's position, the basis for Plaintiffs' expert opinion, and the key factual inference underlying the Court's conclusion in the Omnibus Order is that Hall acted with a "business purpose" in procuring the HS3 Material, and the sex tapes were simply, and unfortunately, "irrelevant" and "extraneous" material included in what was otherwise legitimate asset-tracing information. While this uncorroborated account was universally contradicted by the others actually involved in the exchange, Hall maintained his story, and it was adopted by Burford Capital, LLC's ("Burford") corporate representative, Aviva Will ("Will"). Indeed, as exemplified by these video excerpts, Hall's repeated denials under oath were so unequivocal and vigorous that, in view of his contemporaneous WhatsApp messages wherein Hall admits his actual intent so clearly (■■■■■■■■■■■■■■■■■), there can be no doubt Hall perjured himself and caused others to adopt and advance his perjured narrative. Exhibit A, Excerpts from Videotaped Deposition of Daniel Hall, May 1, 2019, available here:



.

Hall testified, *inter alia*, that: he was more interested in other items and not HS3's sex tapes (Hall Dep. at 405:7-14); his "■■■■■■■■■■■■■■■■■" (Hall Dep. at 456:24); "■■■■■■■■■■■■■■■■■■■■■■■■■■■" (Hall Dep. at 458:5-7); he "■■■■■■" did not want the sex tapes (Hall Dep. at 86:8); he "■■■■■■■■■■■■■■■■■■■■■■■■■■■" (Hall Dep. at 91:25-92:3); the sex tapes were extraneous and he "■■■■■■■■■■■■■■■■■■■■■■■■" (Hall Dep. at 85:25-86:2); and he even took offense at the notion he "■■■■■■■■■■■■■■" (Hall Dep. at 196:20-21). *See* Ex. A, available ■■■■■■

1

███████. Will testified that Hall obtained the HS3 Material "as part of a larger group of documents which were useful, could have been useful and, in fact, I think were in connection with asset tracing that involved a large collection of E-mails and other information that he was hoping to use as part of the investigative work." ECF No. 420 at 27 (quoting ECF No. 333-7; Will Tr. at 161). Both Hall and Will testified that Hall was being "supervised" in his asset tracing work, evidencing Hall was acting on Burford's behalf. ECF No. 420 at 27-28 (citing Will Tr. at 179; Hall Tr. at 468). Indeed, until now, Will and Hall have contended Hall incidentally obtained the sex tapes while procuring other purportedly legitimate material. *See* Mot. at 5 (citing Will Tr. at 219:13-19 "████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████").[1]

Finally, Plaintiffs' expert, Jasbir Dhillon QC, based his entire opinion on the assumption Hall was acting "(1) within the scope of his employment and his authority; and (2) for the purpose of enforcing Mr. Al-Saleh's judgment against Mr. Sargeant." ECF No. 318-6 ¶ 7.

Having been denied access to the recently disclosed WhatsApp messages, HS3's arguments focused heretofore on, *inter alia*, the absence of any evidence of an actual business purpose. The Court, in denying HS3's motion for summary judgment, held that: at the summary judgment stage, all reasonable inferences must be drawn in favor of the Plaintiffs, Hall and Will had advanced a plausible story, and HS3's purported "'absence of evidence of Hall's business purpose is not the same as evidence of its absence.'" ECF No. 420 at 31. Indeed, the concluding section of the Court's analysis of whether Hall is a "releasee" under the Settlement Agreement—wherein it rejects the arguments advanced by HS3 in support of summary judgment—is premised almost entirely on purported factual disputes that, in light of Hall's admission, are no longer disputes. *Id.* at 29-32.

First, the Court rejected HS3's argument that Burford is not vicariously liable for Hall's

---

[1] *See also* Burford Tr. at 164:24-25 (████████████████████████████████████████████"); 187:9-16 ("████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████"). All emphasis in quoted materials contain herein is supplied unless otherwise noted.

2

conduct on the assumption that he was acting as Burford's agent, which, as discussed above, is entirely premised on Hall's "business purpose." *Id.* at 29-30. Again, Hall's newly disclosed admission reveals the absence of any such business purpose. Second, the Court rejected HS3's argument that Hall was not acting on Burford's behalf because the SAC alleged Hall was seeking "information that *Burford could use* to leverage and/or extort HS3 into a payment or settlement." *Id.* at 30 (emphasis in original). We now know from Hall's admission that he intentionally sought the sex tapes. Thus, irrespective of what HS3 alleged in the SAC, the actual facts establish Hall's intent, and those facts control. *See Garmley v. Cochran*, 651 F. App'x 933, 937 n.2 (11th Cir. 2016) ("allegations in a complaint do not constitute evidence at summary judgment"); *Olson v. Stewart*, 737 F. App'x 478 (11th Cir. 2018); *Wright v. Farouk Sys., Inc.,* 701 F.3d 907, 911 n.8 (11th Cir. 2012). Third, drawing "all reasonable inferences" in Plaintiffs' favor, the Court rejected HS3's arguments regarding Andrew Preston's testimony that Hall lacked a business purpose. ECF No. 420 at 31. Hall's admission renders those inferences unreasonable. Finally, the Court rejected HS3's argument that Hall was not acting on Al-Saleh's behalf on the basis of Hall and Will's testimony that Hall's continued investigation was intended to protect Al-Saleh if HS3 defaulted under the Settlement Agreement. *Id.* at 32. Hall's contemporaneous admission that he "█████ ███████████" reveals this is, and always was, a manufactured narrative. Mot., Ex. B.

Therefore, contrary to Plaintiffs' perfunctory assertion that "the key fact[s] prohibiting summary judgment remain unchanged" (Opp. at 6, citation and quotation marks omitted), the recently disclosed WhatsApp messages wherein Hall himself states his intent so clearly (█████ ███████████) establish no reasonable inference remains to be drawn in favor of Hall. Hall's own words provide the "evidence of [the] absence" of a legitimate business purpose. ECF No. 420 at 31. The newly disclosed evidence thus fully supports reconsideration of the Omnibus Order. *See* FED. R. CIV. P. 54(b); *De Mello E Silva v. Citibank, N.A.,* No. 19-23547-CIV, 2020 WL 8115993, at *2 (S.D. Fla. Nov. 6, 2020) (new evidence "highly material" to party's motion and sufficient to grant reconsideration). *See also, Flintlock Const. Servs., LLC v. Well-Come Holdings, LLC,* 710 F.3d 1221, 1225 (11th Cir. 2013).[2]

---

[2] The cases Plaintiffs cite to suggest reconsideration is inappropriate did not address newly disclosed evidence. *Great Lakes Reinsurance (UK) PLC v. Jorge Roca*, No. 07-23322-CIV, 2009 WL 10712148, at *1 (S.D. Fla. Feb. 23, 2009) (denying reconsideration because plaintiff failed to show new evidence or manifest factual error); *Moten v. Maverick Transp., LLC*, No. 1:14-CV-00786-KOB, 2015 WL 6593089, at *1 (N.D. Ala. Oct. 30, 2015) ("Maverick specifically

Attempting to diminish the significance of Hall's newly disclosed admission, Plaintiffs point to evidence and testimony demonstrating Hall's misuse of HS3's sex videos and photos. Opp. at 6-7 n.3. But Plaintiffs ignore a fundamental distinction. Evidence of what Hall did *after* he obtained the tapes, while probative, is not fully dispositive like Hall's direct, contemporaneous admission of his actual intent. This is why Hall's direct admission is so impactful, and the failure to disclose that admission so significant.³

Nonetheless, Plaintiffs argue Hall's admission is simply consistent with other evidence in this case. ECF No. 480-2, Ex. A to Affidavit of A. Goldsmith. But Hall's admission reveals for the first time, in Hall's own words, Hall's actual intent in procuring the HS3 Material – to get HS3's "███████████" Mot., Ex. B. Thus, while this admission is certainly consistent with the testimony of all the other non-Burford witnesses, it is entirely *inconsistent* with Hall's perjured narrative (which Will adopted) that forms the foundation of Plaintiffs' case and the denial of HS3's motion for summary judgment.

Up to this point, all other evidence (save Hall and Will's testimony) supported the conclusion Hall acted without any business purpose and intentionally sought to obtain HS3's sex tapes. Moreover, at no time, in any of Hall's communications with any person regarding the exchange, does Hall reference any purpose or evince any intent other than as expressly stated in his newly disclosed admission.⁴ ***There is not a single communication or document in the record regarding Hall's purported business or "asset tracing" motivation.***⁵ But, because of Hall and

---

acknowledges that the ***evidence it now presents was in its possession at the time it filed its motion for summary judgment***."); *Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Calif.*, 649 F. Supp. 2d 1063, 1070 (E.D. Cal. 2009) (same).

³ Plaintiffs also claim the messages evidence a business purpose because they were sent to Hall's subordinate. Opp. at 1, 7. Applying this flawed logic, Hall's email to Aviva Will, Hall's superior, instructing her to "███████████████████████" would likewise evidence a business purpose. ECF No. 323-63 at 1.

⁴ Hall also testified he did not provide Dan Sargeant the Ruperti Material in a "███████." *See* Mot., Ex. A. But the WhatsApp messages make clear he would not give Dan Sargeant the Ruperti Material "███████████" Mot., Ex. B. Plaintiffs' focus on Hall's assertion he provided some, but not all, information regarding Ruperti to Dan Sargeant before he obtained the sex tapes (Opp. at 8) does not alter the fact that this was a *quid pro quo* exchange, contrary to Hall's testimony.

⁵ Further, before obtaining the HS3 Material, Hall never notified, let alone received authorization from, Al-Saleh, Al-Saleh's counsel, HS3, or his employer, Burford UK. ECF No. 323, HS3's Statement of Material Facts ("SMF") ¶¶ 41-43, 95-98; *see also* ECF No. 323-2 at 175-178; ECF No. 323-38, ¶ 7. Hall and Will never discussed or communicated about obtaining or using the HS3

4

Will's testimony, the Court determined a factual issue precluded summary judgment. Simply put, Hall was entitled to tell his story to the jury. Hall's newly disclosed admission now eliminates any genuine factual issue, warranting reconsideration of the Omnibus Order. Hall's admission is not hearsay and may itself be offered for its truth, thus establishing conclusively Hall's intent was to obtain HS3's sex tapes. FED. R. EVID. 801. Halls' admission is therefore akin to an undisputed fact under Local Rule 56.1(c), or an admission under Federal Rule of Civil Procedure 36.

As noted, all others actually involved in the exchange confirmed fully Hall intentionally sought the sex tapes. Dan Sargeant and Andrew Preston testified that Hall wanted the sex tapes, not information for asset recovery purposes. ECF No. 323, SMF ¶ 87; *see also* ECF No. 323-42 at 45, 63, 71; ECF No. 323-61; ECF No. 323-49 ¶ 153. More precisely, Dan Sargeant testified that Hall specifically asked him "for the videos" and that Hall "said '[h]ey, I would like to see the pictures that you guys said existed.'" ECF 323, SMF ¶ 86; *see also* ECF No. 323-42 at 45, 63. Dan Sargeant further testified that he instructed Annette Perez to "take some of the photos and videos, put them on a flash drive, and send them over to [Hall]." ECF No. 323-42 at 46:20. Similarly, Preston stated, under oath, that Hall was pursuing material "of a sensitive personal nature" about HS3. ECF No. 420 at 62; ECF No. 323, SMF ¶ 87; *see also* ECF No. 323-49 ¶ 153. Preston further testified that "Mr Hall maintained his request for copies of the personal material relating to [HS3]." ECF No. 420 at 62; ECF No. 323, SMF ¶ 87; *see also* ECF No. 323-49 ¶ 153.

Moreover, everything Hall obtained in October 2016 relative to HS3's business affairs and legitimate asset tracing **had already been provided to him in 2015 by Mr. Litchman.** ECF No. 323, SMF ¶¶ 68, 71, 73, 109; *see also* ECF No. 323-48; ECF No. 323-50 at 2 (wherein Litchman tells Hall he is providing Hall "[redacted]" but is not including "[redacted]"). Thus, the only thing Lichman did ***not*** provide in 2015 were the sex tapes and photos. Additionally, the relevant business emails were at least three years old when Hall received them

---

Material to further Al-Saleh's interests. Moreover, when Hall obtained the tapes, Al-Saleh had already executed the Settlement Agreement, and HS3 and Al-Saleh were actively working together to implement its terms. ECF No. 323, SMF ¶¶ 35-36; *see also* ECF Nos. 323-30 - 323-36; ECF No. 323-37; ECF No. 323-1 at 98:4-10, 452-456, 391:4-392:2; ECF No. 323-2 at 169:12-170:8. Indeed, Al-Saleh and his lawyers ***never even knew*** about the HS3 Material until after HS3 filed the Related Federal Action. ECF No. 323, SMF ¶¶ 96-98; *see also* ECF No. 323-38 ¶ 7; ECF No. 323-15 ¶ 13; ECF No. 323-2 at 176-77.

5

in 2016, rendering them virtually useless for tracing current assets. ECF No. 420 at 3 (citing ECF No. 323, SMF ¶¶ 61, 67); ECF No. 323, SMF ¶ 73; *see also* ECF No. 323-52 at 220:11-16 (no emails dated after 2012).

Further, Hall claimed he was seeking the HS3 Material ***after*** the Settlement Agreement was executed out of a purported concern HS3 might breach the Settlement Agreement. *See* Mot., Ex. A. But the Settlement Agreement was incredibly over-secured. HS3 paid $20 million of the $33 million total up-front and provided multiple mortgages, properties, stocks and consent judgments as security for the remaining amount due. ECF No. 328-1, §§ 4.1, 11.1-11.5, 11.7, 12.2, 14. The notion that Hall needed three-year-old emails as security against any possible breach by HS3 is, at best, spurious.

However, all of this evidence contravening Hall's perjured narrative was, at the time of the Omnibus Order, deemed insufficient to warrant summary judgment given all reasonable inferences were to be drawn in Hall's favor. Again, simply put, Hall was entitled to tell his story to the jury. But now, this evidence coupled with Hall's express and contemporaneous admission regarding his true intent leave no doubt HS3 is entitled to summary judgment. No reasonable inferences remain to be drawn in Plaintiffs' favor and, respectfully, the Court should reconsider its Omnibus Order.[6]

## II.     Sanctions are Warranted Under this Court's Inherent Authority and Rule 37.

Plaintiffs argue that sanctions pursuant to the Court's inherent authority are not warranted because HS3 has not demonstrated bad faith. But Plaintiffs focus myopically on the nondisclosure of the messages, ignoring Hall's patent perjury.[7] In arguing against dismissal as a sanction, Plaintiffs point to cases not addressing perjury, but instead discovery mishaps.[8] Additionally,

---

[6] Plaintiffs' contention (Opp. at 8) that HS3 somehow waived reconsideration by rejecting Plaintiffs purported remedy of deposing Hall via Zoom for 30 to 60 minutes is without merit. HS3 is not required to accept a plainly insufficient "remedy" before seeking relief. Plaintiffs' reliance on *Jones v. Discount Auto Parts*, where the defendant took a "calculated risk of lying in wait" hoping the court would exclude the plaintiff's expert, is therefore misplaced. No. 616CV138ORL37KRS, 2017 WL 1396477, at *10 (M.D. Fla. Apr. 19, 2017). Nor is HS3 making "repetitive motions" for summary judgment. Rather, HS3, and the Court, were denied access to key evidence when the parties prepared their summary judgment briefing and the Court issued the Omnibus Order.

[7] The only case Plaintiffs cite addressing a party's perjury is inapposite. In *Byrne v. Nezhat*, the court found that the plaintiff did not knowingly make false assertions to further baseless litigation. 261 F.3d 1075, 1125 n.93 (11th Cir. 2001). Here, Hall's own statement of intent establishes he manufactured and advanced a perjured narrative.

[8] Many of Plaintiffs' cited cases nonetheless resulted in sanctions for the withholding party, as the

unlike the cases Plaintiffs highlight to argue against designation of facts, HS3 was prejudiced by Plaintiffs' failure to disclose Hall's admission—having spent the past two years preparing a case based on an incomplete record. Indeed, were it not for the COVID-19 pandemic, this case already would have been adjudicated.[9] Thus, Hall's perjury and pervasive misconduct warrant sanctions in this case. *People for the Ethical Treatment of Animals, Inc. v. Dade City's Wild Things, Inc.*, No. 8:16-CV-2899, 2020 WL 897988, at *5 (M.D. Fla. Feb. 25, 2020) (sanctions pursuant to court's inherent authority appropriate when "a party destroys or **conceals evidence or commits perjury**").

Plaintiffs argue, without support or explanation, that HS3's cited perjury cases are "cases involving extreme disregard for the integrity of the judicial process," and that "[n]othing remotely similar has occurred here." Opp. at 12. However, Plaintiffs' unsupported claim that these cases are "inapt" simply ignores Hall's perjury and the holdings of those cited cases.

For example, Plaintiffs attempt to distinguish *Brown v. Oil States Skagit Smatco*, 664 F.3d 71 (5th Cir. 2011) (per curiam) from this case because *Brown* involved an "outright lie" whereas, here, the Court only need address discovery violations. Opp. at 11. But Hall similarly lied about the key issues in this case. In *Brown*, the court found that the plaintiff, by lying in deposition testimony, "plainly committed perjury, a serious offense that constitutes a severe affront to the courts and thwarts the administration of justice." 664 F.3d at 80. The court in *Brown* emphasized that "[t]he proper administration of justice depends on people testifying truthfully under oath," and found that the plaintiff's lies under oath justified dismissal of his case. *Id.* at 77. Here, Hall violated his oath to tell the truth, and his perjured deposition testimony regarding the motivation behind his acquisition of the HS3 Material bears directly on the central issue in this case.

Plaintiffs ignore *Englebrick v. Worthington Industries, Inc.*, 620 F. App'x 564 (9th Cir. 2015), as it directly supports HS3's motion for sanctions. In *Englebrick*, the court found that the record supported dismissal as a sanction because the plaintiffs "**repeatedly lied under oath** during

---

fact that a party "engaged in discovery in 'good faith' [did] not absolve it from sanctions because the relevant state of mind for sanctions under Rule 37(c) is 'ordinary negligence,' not intentional conduct." *Fossil Indus., Inc. v. Onyx Specialty Papers, Inc.*, 302 F.R.D. 288, 293 (E.D.N.Y. 2014).
[9] Plaintiffs quote *Brock v. Cty. of Napa*, to argue against the imposition of fees for additional discovery but omit a key excerpt indicating that the "situation" not justifying fees is one in which the movant "is not seeking to recover any other costs or fees incurred as a result of the violation." 2012 WL 2906593, at *6 (N.D. Cal. July 16, 2012). Here, HS3 is seeking not only fees incurred as a result of the violation but also a range of sanctions calibrated to address Hall's perjury.

7

the pretrial proceedings about a topic essential to [the defendant's] defense." *Id.* at 566. The court noted that this "deception made it impossible for the Court to believe a word that Plaintiffs have to say at trial" about any of the issues in the case. *Id.* at 567. Here, Hall lied repeatedly under oath about a topic essential to his claims and to HS3's defense.

Plaintiffs also ignore *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1045 (10th Cir. 2005). In *Chavez*, the plaintiff brought suit against the City of Albuquerque following a police encounter during which the plaintiff alleged the police used excessive force. The plaintiff's "lack of candor" in his sworn answers to interrogatories and in his sworn deposition testimony about the events leading up to the alleged excessive force was not only material in and of itself, but was also "material to the determination of the central issue of the case." *Id.* As in *Chavez*, Hall's pervasive perjury is material to the determination of the central issue in this case.

Similarly, in *Lambert v. Worldwide Marketing Tech. Corp.*, 708 F. App'x 559, 563 (11th Cir. 2017), the Eleventh Circuit held dismissal of the plaintiff's complaint with prejudice was an appropriate sanction where the plaintiff "attempted to deceive the magistrate judge." Here, Hall has attempted (and thus far succeeded) to deceive this Court with his perjured testimony, an action that plainly merits sanctions.[10]

Finally, Plaintiffs contend the failure to produce these key WhatsApp messages until nearly two years after the close of discovery, after submission and adjudication of the summary judgment motions, and after the case was set for trial ***three times***, was simply inadvertent. The failure to timely identify and produce Hall's communications directly referencing a "sex tape" in a case centered around Hall procuring a sex tape is puzzling given modern ESI technology, especially considering Plaintiffs produced fewer than 200 total communications from Hall in the case. Indeed, litigants have a duty to use "reasonable efforts" to locate responsive ESI. *Equal Emp. Opportunity Comm'n v. M1 5100 Corp.*, No. 19-CV-81320, 2020 WL 3581372, at *2 (S.D. Fla. July 2, 2020). Moreover, courts impose sanctions for negligent or inadequate ESI searches. *Seven Seas Cruises*

---

[10] Plaintiffs fail to distinguish other cases cited by HS3, which make clear that sanctions up to dismissal are warranted when a party commits perjury on a central issue in the case. *See* Mot. at 12-13 (citing, e.g., *Qantum Commc'ns Corp. v. Star Broad., Inc.*, 473 F. Supp. 2d 1249, 1270-72, 1277-78 (S.D. Fla. 2007) (issuing default judgment and attorneys' fee award as sanction where the defendant lied under oath about a key issue in the case)). Courts consistently impose sanctions— including dismissal, designation of facts, and shifting of attorneys' fees—when it is apparent a party has repeatedly lied under oath on material issues.

*S. De R.L. v. V. Ships Leisure SAM*, No. 09-23411-CIV, 2011 WL 772855, at *5 (S.D. Fla. Feb. 19, 2011), *R. & R. adopted*, No. 09-23411-CIV, 2011 WL 772902 (S.D. Fla. Feb. 28, 2011). Thus, if Plaintiffs' counsel indeed overlooked these five key messages, despite producing 11 other messages between Hall and Alex MacInnes-Ostrouch ("AMO"), counsel's failure was negligent and, therefore, sanctionable. At all events, it is **Hall's conduct** that alone supports the requested sanctions, including dismissal. If the Court declines to grant HS3 summary judgment or to dismiss this case then, at a minimum, it should designate facts related to Hall acting outside of the scope of his employment and adverse to Burford's interests in seeking and obtaining HS3's sex tapes, a designation supported fully by Hall's admission. *See* Mot. at 17-18 (citing cases); *see also* FED. R. CIV. P. 37(b)(2)(A)(i). Finally, Plaintiffs should be required to pay HS3's attorneys' fees and costs incurred in defending against Hall's baseless breach of contract and malicious prosecution claims, and in bringing this motion. Courts routinely award such sanctions to punish and deter discovery misconduct. *See* Mot., at 18-19 (citing cases).

### III. Alternatively, HS3 Is Entitled to Additional Discovery.

If the Court declines to grant summary judgment or dismiss the action, the Court should reopen limited discovery to allow HS3 to depose and seek further document production from Burford, Will, AMO, Preston, Plaintiffs' (US and UK) counsel, and others in advance of trial.[11]

District courts have the authority to "impose other appropriate sanctions" for a party's failure to disclose or supplement its discovery responses, (FED. R. CIV. P. 37(c)(1)(C)), including additional discovery. *See, e.g., Lakeview Loan Servicing, LLC v. Mobley,* No. 1:16-CV-4572-MHC, 2020 WL 5548769, at *5 (N.D. Ga. Aug. 14, 2020) (reopening discovery as a sanction for failing to produce responsive documents); *Pitts v. HP Pelzer Auto. Sys., Inc.*, 331 F.R.D. 688, 700 (S.D. Ga. 2019) (reopening discovery where a party withheld a critical email).

---

[11] HS3 is entitled to additional discovery from Plaintiffs' counsel. *See Coquina Invs. v. Rothstein*, No. 10-60786-Civ., 2012 WL 3202273 at *2, 4-5, 14 (Aug. 3, 2012) (requiring testimony from counsel on motion for sanctions for withholding discovery and imposing sanctions for negligence in document production). Moreover, since Plaintiffs' counsel have now affirmatively placed their conduct at issue, any privilege or work product protections have been waived as to anything relative to the document review protocol, the Hall production issues, and the interactions with English counsel, all as summarized in the Goldsmith Declaration (ECF No. 480-1). *Sow v. James River Ins. Co.*, No. 9:19-CV-81065, 2020 WL 1322886, at *2 (S.D. Fla. Mar. 20, 2020); *Boateng v. GEICO Gen. Ins. Co.*, No. 10-60147-CIV, 2010 WL 11550033, at *2 (S.D. Fla. June 15, 2010); *Stern v. O'Quinn*, 253 F.R.D. 663, 676 (S.D. Fla. 2008).

Alternatively, courts may reopen discovery upon a showing of good cause and excusable neglect.[12] "To establish good cause, the party seeking the extension must establish that the schedule could not be met despite the party's diligence." *Cerrato v. Nutribullet, LLC,* No. 8:16-CV-3077-T-24JSS, 2017 WL 5000334, at *1 (M.D. Fla. Nov. 2, 2017) (quoting *Ashmore v. Sec'y, Dep't of Transp.,* 503 Fed. App'x. 683, 685 (11th Cir. 2013). To establish excusable neglect, courts consider:

> (1) the danger of prejudice to the nonmovant; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith.

*Abruscato v. GEICO Gen. Ins. Co.*, No. 3:13-CV-962-J-39JBT, 2014 WL 12616965, at *2 (M.D. Fla. May 30, 2014) (quoting *Fisher Island Ltd. v. Fisher Island Invs., Inc.*, 518 Fed. App'x. 663, 667 (11th Cir. 2013).

HS3 has demonstrated both good cause and the absence of neglect. He diligently pursued discovery, unaware Plaintiffs failed to disclose key evidence. Reopening discovery will not prejudice Plaintiffs as, unlike HS3, they always had the benefit of complete information. Conversely, HS3 will be prejudiced if discovery is not reopened because Plaintiffs withheld a critical admission for nearly two years after the discovery cutoff. HS3 was forced to pursue discovery and prepare his case and summary judgment motion with an incomplete record. HS3 only seeks to reopen discovery now due to Plaintiffs' conduct and has acted in good faith despite Plaintiffs' failure to timely disclose key evidence. Reopening discovery will allow HS3 to obtain further evidence of Hall's intent and the full extent of his perjured narrative. Additional discovery is therefore vital to prevent prejudice to HS3 and to ensure a complete record at trial.[13]

---

[12] Federal Rule of Civil Procedure 16(b) allows modification of the schedule for completion of discovery "for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). Additionally, under Rule 6(b) a court may for good cause reopen discovery on motion if the party did not act due to excusable neglect. *See* FED. R. CIV. P. 6(b)(1)(B).

[13] The Court may alternatively reopen discovery as a sanction under Federal Rule of Civil Procedure 26(g), which requires at least one attorney of record to certify that they have fulfilled their discovery obligations. *See* FED. R. CIV. P. 26(g)(1). Violations of Rule 26 result in mandatory sanctions. *See* FED. R. CIV. P. 26(g)(3). The rule requires the court to impose an "appropriate sanction," which can include reopening discovery. *See, e.g., Pardue v. Wal Mart Stores, Inc.*, No. CV 04-82-BU-RWA, 2006 WL 8435813, at *2 (D. Mont. Jan. 19, 2006) (reopening discovery as a sanction for failing to supplement interrogatory until after discovery closed); *Panock v. Knead Dough Baking Co.*, No. 03 C 8550, 2005 WL 8177381, at *3 (N.D. Ill. Apr. 26, 2005) (reopening discovery as remedy for untimely disclosure and imposing attorneys' fees and costs as a sanction).

| | |
|---|---|
| Dated: May 28, 2021 | Respectfully submitted, |
| | /s/ Christopher M. Kise |
| Ryon M. McCabe (FBN 9075) | Christopher M. Kise (FBN 855545) |
| rmccabe@mccaberabin.com | ckise@foley.com |
| Adam T. Rabin (FBN 985635) | Melissa B. Coffey (FBN 84090) |
| arabin@mccaberabin.com | mcoffey@foley.com |
| Lauren E. Johnson (FBN 112027) | Scott T. Allen (*admitted pro hac vice*) |
| ljohnson@mccaberabin.com | sallen@foley.com |
| **MCCABE RABIN, P.A**. | Heather A. Lee (FBN 1011026) |
| 1601 Forum Pl Ste. 201 | hlee@foley.com |
| West Palm Beach, FL 33401-8102 | Caroline M. Poor (FBN 1018391) |
| Office: 561-659-7878 | cpoor@foley.com |
| | **FOLEY & LARDNER LLP** |
| | 106 East College Avenue, Suite 900 |
| | Tallahassee, FL 32301-7732 |
| | Tel: (850) 222-6100 |
| | |
| | Curtis B. Miner (FBN 885681) |
| | curt@colson.com |
| | Stephanie A. Casey (FBN 97483) |
| | scasey@colson.com |
| | **COLSON HICKS EIDSON** |
| | 255 Alhambra Circle |
| | Penthouse |
| | Coral Gables, FL 33134 |
| | Tel: (305) 476-7400 |
| | *Counsel for Defendant Harry Sargeant, III* |